UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

ANNAMAY IVA SHIBLEY, and
CHRISTOPHER SCOTT WHEELER, SR.[1]

                        Plaintiffs,

v.                                                              6:24-CV-01367
                                                                 (AMN/ML)

JULIA M. BROUILLETTE, and
ROBERT M. MACIOL,

                        Defendants.

_____

APPEARANCES:                                  OF COUNSEL:

ANNAMAY IVA SHIBLEY
CHRISTOPHER SCOTT WHEELER, SR.
  Plaintiffs, *Pro Se*
2452 Broad Street
Apartment 3
Frankfort, New York 13340

MIROSLAV LOVRIC, United States Magistrate Judge

### **ORDER and REPORT-RECOMMENDATION**

The Clerk has sent a *pro se* complaint in the above captioned action together with an

application to proceed *in forma pauperis*, filed by Annamay Iva Shibley and Christopher Scott

Wheeler, Sr. ("Plaintiffs") to this Court for review. (Dkt. Nos. 1, 5, 6.) For the reasons

discussed below, I grant each Plaintiff's *in forma pauperis* application, and recommend that their

Complaint be dismissed in its entirety with leave to replead.

_____

[1]      The caption of this Order and Report-Recommendation reflects the full names of each
Plaintiff as set forth in the body of their Complaint (Dkt. No. 1 at 5) and their respective
applications for IFP status. (Dkt. Nos. 5, 6.) The Clerk is directed to update the docket
accordingly.

## I.    BACKGROUND

Construed as liberally[2] as possible, Plaintiffs' Complaint alleges that the Defendants

violated their constitutional rights by removing four children from Plaintiffs' custody or

otherwise reducing or terminating Plaintiffs' parental rights.  The Complaint, which is often

difficult to decipher, contains minimal specific factual allegations against either defendant, but

this Court takes judicial notice that defendant Julia Brouillette serves as an Oneida County

Family Court Judge, and defendant Robert Maciol serves as Oneida County Sheriff.  *See Ming v.*

*Brouillette*, No. 6:23-CV-86 (MAD/ML), 2023 WL 1951792, at *1 (N.D.N.Y. Jan. 24, 2023)

("Defendant Brouillette is a New York State Family Court judge . . ."); *Smith v. Oneida Cnty.*

*Sheriff Dep't*, No. 6:24-CV-687 (GTS/MJK), 2024 WL 3063725, at *4 (N.D.N.Y. June 20,

2024), *report and recommendation adopted sub nom.*, *Smith v. Maciol*, 2024 WL 4799461

(N.D.N.Y. Nov. 15, 2024) ("Robert Maciol is the Oneida County Sheriff . . .").

## II.    PLAINTIFFS' APPLICATIONS TO PROCEED *IN FORMA PAUPERIS*

When a civil action is commenced in a federal district court, the statutory filing fee,

currently set at $405, must ordinarily be paid.  28 U.S.C. § 1914(a).  A court is authorized,

however, to permit a litigant to proceed IFP status if a party "is unable to pay" the standard fee

for commencing an action.  28 U.S.C. § 1915(a)(1).[3]  After reviewing each Plaintiff's IFP

---

[2]    The court must interpret *pro se* complaints to raise the strongest arguments they suggest.
*Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790
(2d Cir. 1994)).'

[3]    The language of that section is ambiguous because it suggests an intent to limit
availability of IFP status to prison inmates.  *See* 28 U.S.C. § 1915(a)(1) (authorizing the
commencement of an action without prepayment of fees "by a person who submits an affidavit
that includes a statement of all assets such prisoner possesses").  The courts have construed that
section, however, as making IFP status available to any litigant who can meet the governing
financial criteria.  *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *Fridman v. City*
*of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

applications, the Court finds that each Plaintiff meets this standard. (Dkt. Nos. 5, 6.)  Therefore, Plaintiffs' applications to proceed IFP are granted.[4] (*Id.*)

## III.  LEGAL STANDARD FOR INITIAL REVIEW OF THE COMPLAINT

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact.  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources.  *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974); *see Fitzgerald v. First East Seventh Street Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000) (a district court "may dismiss a frivolous complaint *sua sponte* even when the plaintiff has paid the required filing fee[.]"); *see also Pflaum v. Town of Stuyvesant, Columbia Cnty., N.Y.*, 11-CV-0335, 2016 WL 865296, at *1, n.2 (N.D.N.Y. Mar. 2, 2016) (Suddaby, C.J.) (finding that the Court had the power to address and dismiss additional theories of the plaintiff's retaliation claim *sua sponte* because those theories were so lacking in arguable merit as to be frivolous).

In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The requirement that a plaintiff "show" that he or she is entitled to relief

---

[4]    Plaintiffs are reminded that, although their IFP applications have been granted, they are still required to pay fees that they may incur in this action, including copying and/or witness fees.

means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 [2007]). "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citation and punctuation omitted).

Moreover, Rule 10 of the Fed. R. Civ. P. provides that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances[.]" Fed. R. Civ. P. 10(b). Rule 10's purpose is to "provide an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" *Clervrain v. Robbins*, 22-CV-1248, 2022 WL 17517312, at *2 (N.D.N.Y. Dec. 8, 2022) (Stewart, M.J.) (citation omitted), *report and recommendation adopted*, 2023 WL 3170384 (N.D.N.Y. May 1, 2023) (D'Agostino, J.). A complaint that does not comply with these Rules "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [the plaintiff's] claims," and may properly be dismissed by the court. *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996) (McAvoy, C.J.).

"In reviewing a complaint . . . the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal

conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Courts are "obligated to construe a pro se complaint liberally."  *Harris v. Mills*, 572 F.3d

66, 72 (2d Cir. 2009); *see also Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam)

(reading the plaintiff's *pro se* complaint "broadly, as we must" and holding that the complaint

sufficiently raised a cognizable claim).  "[E]xtreme caution should be exercised in ordering sua

sponte dismissal of a pro se complaint before the adverse party has been served and [the] parties .

. . have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

## IV.    ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his or her

pleadings liberally.  *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008).

Having reviewed Plaintiffs' Complaint with this principle in mind, I recommend that all causes

of action be dismissed.

As currently drafted, Plaintiffs' Complaint fails to provide fair notice of the claims they

attempt to assert.  By way of example, the Complaint seeks:

> to demand the lawful restoration of custody of the aforementioned biological
> offsprings of i of which i live woman:annamay-iva: have superior right to custody
> of and whom no [PRIVATE CORPORATE FOR PROFIT COURT/Court] has
> any lawful standing to Usurp while further demanding by what authority did
> [Respondents/RESPONDENTS] do claim to exercise entrusted power over
> biological offsprings of i, as without consent of i? and by whos authority are
> [aforementioned Liable respondent] unlawfully looting secret cestui que vie trust
> of i who is: ANNAMAY IVA SHIBLEY and CHRISTOPHER SCOTT
> WHEELER, SR. without consent of i or i? see (Your THING THE PERSON).
> by whose lawful authority did [Respondents/RESPONDENTS] claim to overstand
> that divine live spirit authority within i and of i live woman and live man upon
> this land of i?

(Dkt. No. 1 at 5) (capitalization, punctuation, and spelling in original).

Given its lack of clarity, the undersigned recommends dismissal of the Complaint

because it is not acceptable under Rules 8 and 10 of the Fed. R. Civ. P. and because Plaintiffs'

specific claim or claims against the named defendants are entirely unclear.

This Court also notes that many of Plaintiffs' assertions are of the kind typically used by

litigants who affiliate themselves with the sovereign citizen movement.[5]  The sovereign citizen

movement is "a loosely affiliated group who believe that the state and federal governments lack

constitutional legitimacy and therefore have no authority to regulate their behavior; the FBI has

labeled the sovereign citizens a domestic terrorist group."  *United States v. Ulloa*, 511 F. App'x

105, n.1 (2d Cir. 2013); *see United States v. McLaughlin*, 949 F.3d 780, 781 (2d Cir. 2019)

(cleaned up) (noting that "so-called 'Sovereign Citizens' seek to clog the wheels of justice and

delay proceedings so justice won't ultimately be done.  They do so by raising numerous—often

frivolous—arguments, many alleging that the Courts or the Constitution lack any authority

whatsoever."); *Muhammad v. Smith*, 13-CV-0760, 2014 WL 3670609, at *2 (N.D.N.Y. July 23,

2014) (D'Agostino, J.) ("Theories presented by redemptionist and sovereign citizen adherents

have not only been rejected by the courts, but also recognized as frivolous and a waste of court

resources.") (collecting cases); *see also Balash-Ioannidou v. Contour Mortg. Corp*, 22-CV-4506,

2022 WL 3358082, at *1 (E.D.N.Y. Aug. 15, 2022) (rejecting claim that plaintiff "issued a

payment through Notary Presentment to Defendants in the amount of $645,300.00" to satisfy her

debt, as well as a "Notary Protest" and a "Certificate of Dishonor."); *Tyson v. Clifford*, 18-CV-

1600, 2018 WL 6727538, at *3 (D. Conn. Dec. 21, 2018) ("Adherents of [redemptionist] claims

or defenses 'believe that they are not subject to government authority and employ various tactics

in an attempt to, among other things, avoid paying taxes, extinguish debts, and derail criminal

---

[5]      For example, Plaintiffs assert that they are "not [FOURTEENTH AMENDMENT
CITIZENS]." (Dkt. No. 1 at 7) (brackets and capitalization in original).

proceedings.'").

As a result, I recommend that Plaintiffs' Complaint be dismissed as frivolous.  "[T]here is no requirement that a court address every single potential ground for dismissal where it is clear that a claim should be dismissed."  *Dees v. Zurlo*, No. 1:24-CV-1 (MAD/DJS), 2024 WL 2291701, at *13 (N.D.N.Y. May 21, 2024) (citing, *inter alia, Curtis v. Greenberg*, No. 22-252-CV, 2023 WL 6324324, *2, n.3 (2d Cir. Sept. 29, 2023)).  However, with thoroughness in mind, the undersigned has reviewed several additional or alternate grounds for dismissal.

The Complaint asserts that the Defendants have "unlawfully kidnapped and unlawfully held hostage four biological offsprings" of Plaintiffs and continue to hold the children unlawfully without Plaintiffs' consent. (Dkt. No. 1 at 9.)  This Court notes that one or both Plaintiffs have previously commenced unsuccessful federal litigation related to adverse child custody determinations by local or state agencies.  *See Shibley v. Bixlerond*, No. 6:24-CV-0722 (BKS/TWD), 2024 WL 3460788, at *8 (N.D.N.Y. July 16, 2024), *report and recommendation adopted*, No. 6:24-CV-722 (BKS/TWD), 2024 WL 4203975 (N.D.N.Y. Sept. 16, 2024) (*sua sponte* dismissal of action challenging agency actions related to child custody),[6] *Shibley v. The United States*, No. 1:24-CV-00852-LAS (Ct. Cl. September 12, 2024) (Dkt. Nos. 1, 12) (finding lack of jurisdiction over Federal Court of Claims complaint seeking restoration of child custody and compensation).  Given a liberal reading in that context, the Complaint appears to be challenging a child custody decision made in a family court proceeding involving defendants Brouillette and Maciol.

Even if Plaintiffs improved the clarity of their Complaint, this Court would lack

---

[6]     The named defendants in that dismissed complaint were an officer with the Oneida County Sheriff's Department, an employee of the Oneida County Department of Social Services, a daycare agency, and a babysitter. *See Shibley v. Bixlerond*, 2024 WL 3460788, at *3-5.

jurisdiction over their child custody dispute pursuant to what are commonly referred to as the

*Younger* absention doctrine, the *Rooker-Feldman* doctrine, and the domestic relations exception.

Magistrate Judge Thérèse Wiley Dancks ably covered this ground with these same Plaintiffs in

her recently adopted report-recommendation and her analysis is worth repeating in full:

> "[I]n the event the underlying family court proceedings are pending, such claims are likely barred by the *Younger* absention doctrine." *Walker v. O'Connor*, No. 1:22-CV-0581 (DNH/TWD), 2022 WL 2341420, at *6 (N.D.N.Y. June 29, 2022) (citing *Younger v. Harris*, 401 U.S. 37 (1971)) (additional citation omitted), *report and recommendation adopted*, 2022 WL 2805462 (N.D.N.Y. July 18, 2022). "*Younger* generally requires federal courts to abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings." *Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002) (citing *Younger*, 401 U.S. at 43-44). "*Younger* abstention is required when three conditions are met: (1) there is an ongoing state proceeding; (2) an important state interest is implicated in that proceeding; and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of the federal constitutional claims." *Id*. (citing *Grieve v. Tamerin*, 269 F.3d 149, 152 (2d Cir. 2001)).

> Courts in this circuit have found these conditions to be satisfied in matters involving issues of child custody. *See, e.g., Walker*, 2022 WL 2341420, at *6 (collecting cases applying the *Younger* abstention doctrine in the context of child custody disputes). Therefore, to the extent Plaintiffs' claims involve a "custody dispute [that] is continuing in New York State Family Court, this Court should abstain from interfering with that process." *Id*.; *see also Terpening v. McGinty*, No. 1:21-CV-1215 (GTS/CFH), 2022 WL 17418268, at *6 (N.D.N.Y. Oct. 5, 2022) ("It is unclear whether there are pending family court proceedings in which plaintiff seeks the Court's intervention .... However, 'the heart of this case is a child custody dispute, a matter rightfully reserved for state courts.' ") (citing *McKnight v. Middleton*, 699 F. Supp. 2d 507, 520 (E.D.N.Y. 2010), *aff'd*, 434 F. App'x 32 (2d Cir. 2011)) (additional citation omitted), *report and recommendation adopted*, 2022 WL 17415121 (N.D.N.Y. Dec. 5, 2022).

> Alternatively, to the extent the Plaintiffs' claims concern a state court proceeding which has concluded, such claims are likely barred by the *Rooker-Feldman* doctrine. *See, e.g., Amato v. McGinty*, No. 1:21-CV-0860 (GLS/TWD), 2022 WL 226798, at *10 (N.D.N.Y. Jan. 26, 2022); *Walker*, 2022 WL 2341420, at *6. "Under the *Rooker-Feldman* doctrine, a federal district court lacks authority to review a final state court order or judgment where a litigant seeks relief that invites the federal district court to reject or overturn such a final state court order or judgment." *Porter v. Nasci*, No. 5:24-CV-0033 (GTS/TWD), 2024 WL 1142144, at *4 (N.D.N.Y. Mar. 15, 2024) (citing *Exxon Mobil Corp. v. Saudi*

*Basic Indus. Corp.*, 544 U.S. 280, 291-92 (2005)) (additional citations omitted), *report and recommendation adopted*, 2024 WL 3158645 (N.D.N.Y. June 25, 2024).  "The doctrine also bars the federal court from considering claims that are 'inextricably intertwined' with a prior state court determination."  *Amato*, 2022 WL 226798, at *10 (citing *Fernandez v. Turetsky*, No. 12-CV-4092, 2014 WL 5823116, at *3 (E.D.N.Y. Nov. 7, 2014), *aff'd*, 645 F. App'x 103 (2d Cir. 2016)) (additional citation omitted).

"There is no question that *Rooker-Feldman* bars ... challenges to" a state "family court's decisions regarding child custody ...."  *Phifer v. City of New York*, 289 F.3d 49, 57 (2d Cir. 2002).  Accordingly, to the extent Plaintiffs seek, in effect, an appeal from an unfavorable state court custody judgment, any such claim is barred.  *See Dorce v. City of New York*, 2 F.4th 82, 101 (2d Cir. 2021); *Walker*, 2022 WL 2341420, at *6.

Furthermore, under the domestic relations exception to the jurisdiction of federal courts, cases involving divorce, alimony, and child custody remain outside of this Court's jurisdiction. *See Marshall v. Marshall*, 547 U.S. 293, 308 (2006); *see also, Cruz v. New York*, No. 5:17-CV-0510 (BKS/TWD), 2017 WL 6021838, at *7 (N.D.N.Y. Oct. 27, 2017) ("Claims involving child custody, support, and visitation brought in federal district court in this Circuit have regularly been dismissed for lack of subject matter jurisdiction based on the domestic relations exception to federal jurisdiction.") (collecting cases), *report and recommendation adopted*, 2017 WL 6001833 (N.D.N.Y. Dec. 4, 2017).  "Therefore, insofar as the present *pro se* Complaint seeks the restoration of custody over her son, the federal courts lack jurisdiction to hear that claim, and it should be dismissed." *Reeves v. Dep't of Children, Youth & Families*, No. 1:20-CV-0987 (BKS/DJS), 2020 WL 5898866, at *3 (N.D.N.Y. Sept. 4, 2020) (citation omitted), *report and recommendation adopted*, 2020 WL 5891564 (N.D.N.Y. Oct. 5, 2020).

*Shibley v. Bixlerond*, 2024 WL 3460788, at *6-7.

The same reasoning applies to this Complaint, and thus this Court recommends dismissal for failure to state a claim and lack of jurisdiction.  In addition, to the extent that the Complaint raises claims against defendant Brouillette for actions taken in her judicial capacity as an Oneida County Family Court judge, such claims are likely subject to dismissal based on the doctrine of absolute judicial immunity.  *See Mireles v. Waco*, 502 U.S. 9, 11-12 (1991).

## V.    OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se*

litigant without granting leave to amend at least once "when a liberal reading of the complaint

gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05

(2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when

justice so requires.").  An opportunity to amend is not required, however, where "the problem

with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it."

*Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding*

*L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact

sufficient to support its claim, a complaint should be dismissed with prejudice.").  Stated

differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is

not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d

129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1

(N.D.N.Y. Sept. 22, 1997) (Pooler, J.).[7]

I have serious doubts about whether Plaintiffs can amend their Complaint to assert an

actionable claim against these defendants.  However, given that this is Plaintiffs' initial pleading,

out of an abundance of caution, I recommend that Plaintiffs be permitted to replead their

Complaint.

If Plaintiffs choose to file an amended complaint, they should note that the law in this

circuit clearly provides that "'complaints relying on the civil rights statutes are insufficient

unless they contain some specific allegations of fact indicating a deprivation of rights, instead of

---

[7]    *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015)
(Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171
F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can
rule out any possibility, however unlikely it might be, that an amended complaint would be
successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell
Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

a litany of general conclusions that shock but have no meaning.'" *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *accord Pourzancvakil v. Humphry*, 94-CV-1594, 1995 WL 316935, at *7 (N.D.N.Y. May 22, 1995) (Pooler, J.).  Therefore, in any amended complaint, Plaintiffs must clearly set forth facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act.  In addition, the revised pleading should allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations.  *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).  Finally, Plaintiffs are informed that any such amended complaint will replace the existing Complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court.  *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.").

        **ACCORDINGLY**, it is

        **ORDERED** that Plaintiffs' applications to proceed *in forma pauperis* (Dkt. No. 5, 6) are **GRANTED**; and it is further

        **ORDERED** that the Clerk of the Court update the docket to identify Plaintiffs by their full names, "Annamay Iva Shibley" and "Christopher Scott Wheeler, Sr." consistent with the body of their Complaint (Dkt. No. 1 at  5), their IFP applications (Dkt. Nos. 5, 6), and the caption of this Order and Report-Recommendation; and it is further respectfully

        **RECOMMENDED** that Plaintiffs' Complaint (Dkt. No. 1) be **DISMISSED WITH LEAVE TO REPLEAD**; and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this order, report, and recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules.[8]

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[9]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

Dated: April  7 , 2025
        Binghamton, New York

Miroslav Lovric
U.S. Magistrate Judge

---

[8]     The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

[9]     If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

Ming v. Brouillette, Not Reported in Fed. Supp. (2023)

2023 WL 1951792

2023 WL 1951792
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Tirza F. MING, Plaintiff,

v.

Julia BROUILLETTE, in her official and personal capacities, and Mindy A. Land, Defendants.

6:23-CV-86 (MAD/ML)
|
Signed January 24, 2023

**Attorneys and Law Firms**

TIRZA F. MING, 709 Columbia Street, Utica, New York 13502, Plaintiff pro se.

# ORDER

Mae A. D'Agostino, United States District Judge:

**\*1** Plaintiff commenced this action on January 23, 2023, asserting various causes of action against Defendant Julia Brouillette, an Oneida County Family Court Judge, and Mindy Land, an individual who allegedly lived with Plaintiff while she was a minor and up until January 18, 2023. *See* Dkt. No. 1. Although difficult to discern, the claims in the complaint appear to stem from personal disputes between Plaintiff and Defendant Land, which at various times involved Defendant Brouillette, acting in her capacity as a family court judge. *See id.* Specifically, in her affidavit of facts, Plaintiff alleges that on January 18, 2023, Defendant Land called the police and made "false accusations and filed a temporary refrain from order" against Plaintiff and Zaria Bartolomie, another individual who was temporarily living with them. *See* Dkt. No. 1 at 8. Plaintiff further alleges that, upon returning home, she discovered that Defendant Land had removed all of Plaintiff's and Ms. Bartolomie's belongings from their residence and had allegedly stolen some of the belongings. *See id.* At this point, Plaintiff and Ms. Bartolomie made an "affidavit of facts," which they brought to the Oneida County Family Court Clerk's Office. *See id.* Plaintiff alleges Judge Brouillette heard from both parties that same day, ignored Plaintiff's version of events, and ordered Plaintiff and Ms. Bartolomie to vacate their shared residence with Defendant Land within two hours. *See id.*

Under the causes of action, Plaintiff claims that Defendants' conduct constituted violations of, among other things, (1) various provisions of the New York State Penal Law, (2) 28 U.S.C. § 518, (3) 18 U.S.C. §§ 241-42, 245, (4) 42 U.S.C. §§ 3631, 14141, (5) 28 U.S.C. §§ 351-64, and (6) the First Amendment of the United States Constitution. *See* Dkt. No. 1 at 2, 5-6. In addition to the complaint, Plaintiff has filed a motion for a temporary restraining order, seeking an order directing, among other things, that Defendants "cease their criminal activity." Dkt. No. 2 at 1.

A preliminary injunction "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (internal quotation marks omitted). A party seeking a preliminary injunction must demonstrate "(1) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor, and (2) irreparable harm in the absence of the injunction." *Faiveley Transport Mahno AB v. Wabtec Corp.*, 559 F.3d 110, 116 (2d Cir. 2009) (citation and internal quotation marks omitted). The legal standards governing preliminary injunctions and temporary restraining orders are the same. *See AFA Dispensing Group B.V. v. Anheuser-Busch, Inc.*, 740 F. Supp. 2d 465, 471 (S.D.N.Y. 2010).

In the present matter, the Court finds that Plaintiff's motion for a temporary restraining order must be denied. Initially, the Court notes that it has serious questions regarding whether it has subject matter jurisdiction over Plaintiff's claims. While Plaintiff has sued a state official and her claims could be liberally construed as being brought pursuant to 42 U.S.C. § 1983, Defendant Brouillette is a New York State Family Court judge, and the allegations raised against her relate solely to actions that were taken in her judicial capacity. As such, any claims against her are likely subject to dismissal based on the doctrine of absolute judicial immunity. *See McCluskey v. N.Y.S. Unified Court Sys.*, 442 Fed. Appx. 586, 588 (2d Cir. 2011). Additionally, Defendant Land is a private individual who is not alleged to have been acting under color of state law and, therefore, not subject to suit under Section 1983. *See id.* at 589.

**\*2** Additionally, Plaintiff's complaint makes clear that there is currently an ongoing state court proceeding in the Oneida County Family Court relating to the alleged improper eviction and alleged violation of the order of protection. The Supreme Court has instructed that federal courts are generally required to refrain from enjoining or otherwise interfering in ongoing state court proceedings. *See Younger v. Harris*, 401 U.S. 47, 43-45 (1971). Given the allegations in the complaint, it appears that all of the requirements for *Younger* abstention would apply to this matter, to the extent that Plaintiff is seeking an order enjoining conduct that is subject of an ongoing state court proceeding. Additionally, under the Anti-Inunction Act, 28 U.S.C. § 2283, a federal court is barred from enjoining ongoing state court proceedings.

As noted above, Plaintiff also references several state and federal criminal laws in her complaint and alleges that Defendants have violated these laws. Plaintiff, however, does not have standing to compel any law enforcement agents or state official to prosecute alleged criminal acts because there is no private right of action to enforce state or federal criminal laws. *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973).

Since Plaintiff has failed to demonstrate that the Court has subject matter jurisdiction over her claims and since the Court is otherwise prohibited from granting the relief requested, the Court finds that Plaintiff has failed to demonstrate a likelihood of success on the merits. Alternatively, the Court finds that Plaintiff has failed to demonstrate irreparable harm in the absence of an injunction. Plaintiff's claim of financial distress and reputational harm from being improperly removed from her temporary residence and the alleged false police reports are insufficient to establish irreparable harm. *See Williams v. State Univ. of N.Y.*, 635 F. Supp. 1243, 1247-48 (E.D.N.Y. 1986); *see also Holt v. Continental Grp.*, 708 F.2d 87, 91 (2d Cir. 1983). As such, Plaintiff's motion for a temporary restraining order is denied on this alternative ground.

Accordingly, the Court hereby

**ORDERS** that Plaintiff's motion for a temporary restraining order (Dkt. No. 2) is **DENIED**; and the Court further

**ORDERS** that this matter is referred to Magistrate Judge Lovric for a decision on Plaintiff's motion for leave to proceed *in forma pauperis* and an initial review of the complaint; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2023 WL 1951792

---

**End of Document** <span style="float:right">© 2025 Thomson Reuters. No claim to original U.S. Government Works.</span>

2024 WL 3063725

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.

Wayne R. SMITH, Plaintiff,

v.

ONEIDA COUNTY SHERIFF DEPARTMENT, et al., Defendants.

6:24-CV-687 (GTS/MJK)

|

Signed June 20, 2024

**Attorneys and Law Firms**

WAYNE R. SMITH, Plaintiff, pro se.

MITCHELL J. KATZ, U.S. Magistrate Judge.

### ORDER and REPORT-RECOMMENDATION

Mitchell J. Katz, United States Magistrate Judge

**\*1** TO THE HONORABLE GLENN T. SUDDABY, United States District Court Judge:

Plaintiff commenced this action on May 20, 2024 by filing a complaint (Dkt. No. 1) together with a motion for leave to proceed in forma pauperis (Dkt. No. 2). On June 7, 2024, plaintiff filed an amended complaint ("Amended Complaint") (Dkt. No. 4) together with an amended motion for leave to proceed in forma pauperis ("Amended IFP Application") (Dkt. No. 5). The Clerk has sent to the court for review the Amended Complaint brought pursuant to 42 U.S.C. § 1983 as well as the Amended IFP Application.

### I. Amended IFP Application

Plaintiff's Amended IFP Application declares that he is unable to pay the filing fee. (Dkt. No. 5). After reviewing plaintiff's application, this court finds that he is financially eligible for IFP status.

However, in addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the Amended Complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915 (e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must consider whether the Amended Complaint lacks an arguable basis in law or in fact. *See Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and 28 U.S.C. § 1915. Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *See Neitzke*, 490 U.S. at 327; *see also Harkins v. Eldredge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward pro se litigants and must use extreme caution in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *See Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint sua sponte even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555).

In addition, Fed. R. Civ. P. 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 does not require detailed factual allegations, it does "demand[ ] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Houston v. Collerman*, No. 9:16-CV-1009 (BKS/ATB), 2016 WL 6267968, at *2 (N.D.N.Y. Oct. 26, 2016) (quoting *Ashcroft*, 556 U.S. at 678). A pleading that contains allegations that " 'are so vague as to fail to give the defendants adequate notice of the claims against them' is subject to dismissal." *Id.* (citing *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009)).

## II. Amended Complaint

**\*2**  The Amended Complaint alleges violations of plaintiff's constitutional rights pursuant to 42 U.S.C. § 1983. (Dkt. No. 4).

Plaintiff alleges that he was assaulted at his residence on November 5, 2023 by a process server. (Amended Complaint at 4). [1] Specifically, plaintiff alleges that he instructed a process server to leave his property after the process server identified himself as a law enforcement officer, but the process server refused. (*Id.*). Plaintiff alleges that he did not see a badge or uniform identifying the process server as a police officer. (*Id.*). Plaintiff further alleges that he informed the process server that he had a "guard dog." (*Id.*). The process server proceeded to pull out a large can of mace as plaintiff "was getting 'Henry,' [plaintiff's] German Shep[p]ard[.]" (*Id.*).

Plaintiff alleges that he then proceeded to the front door with Henry on a leash. (*Id.*). When plaintiff opened the door, the process server sprayed plaintiff and his dog with mace and continued to do so, even after the door was shut. (*Id.*). Thereafter, plaintiff called 911 and two Oneida County Sheriff Deputies responded. (*Id.* at 5). Plaintiff recognized the female officer as Deputy Connelly but was unable to identify the male officer, whom plaintiff refers to in the Amended Complaint as Deputy John Doe. (*Id.*). After listening to plaintiff and the process server explain their respective "side[s]," the defendant deputies arrested plaintiff for menacing and harassment. (*Id.*). Plaintiff was issued an appearance ticket to appear in Westmoreland Town Court. (*Id.*). Plaintiff further alleges that Deputies Connelly and Doe "refused to consider the camera footage available to them ... at the scene." (*Id.*). According to plaintiff, the Oneida County District Attorney's Office dismissed the charges against him after reviewing the security camera footage of the incident. (*Id.*).

In his request for relief, plaintiff seeks $10,000,000 in damages for the "gross violation of [his] constitutional rights." (*Id.* at 6).

## III. Oneida County Sheriff Department

The Oneida County Sheriff's Department is not a proper party to this action. "A police department cannot sue or be sued because it does not exist separate and apart from the municipality and does not have its own legal identity." *Baker v. Willett*, 42 F. Supp. 2d 192, 198 (N.D.N.Y. 1999) (dismissing claims against county sheriff's department) (citations omitted); *see also Jackson v. Cnty. of Nassau*, No. 07-CV-245, 2010 WL 335581, at *5 (E.D.N.Y. Jan. 22, 2010) ("Under New York law, departments which are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and cannot sue or be sued."); *La Grande v. Town of Bethlehem Police Dep't*, No. 08-CV-0738 (LEK/DRH), 2009 WL 2868231, at *2 (N.D.N.Y. Sept. 1, 2009) ("Since the Bethlehem Police Department cannot be sued pursuant to 42 U.S.C. § 1983, [the plaintiff's] [c]omplaint is dismissed as against the Town of Bethlehem Police Department."); *Jenkins v. Liadka*, No. 10-CV-1223 (GTS/DEP), 2012 WL 4052286, at *5 (N.D.N.Y. Sept. 13, 2012) ("Because the Syracuse Police Department is merely an administrative arm of the City of Syracuse, it is not a proper defendant.").

2024 WL 3063725

**\*3**  Even if plaintiff had sued the appropriate municipal entity – i.e. Oneida County – his allegations do not sufficiently allege *Monell* liability. When a plaintiff sues a municipality under § 1983, it is insufficient for the plaintiff to allege that one of the municipality's employees or agents engaged in some wrongdoing. The plaintiff must demonstrate that the municipality itself caused the violation of the plaintiff's rights. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011) ("A municipality or other local government may be liable under this section [1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation.") (quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 692 (1978)); *see also Cash v. Cnty. of Erie*, 654 F.3d 324, 333 (2d Cir. 2011). Specifically, to state a § 1983 claim against a municipality, the plaintiff must allege facts showing (1) the existence of a municipal policy, custom, or practice, and (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights. *See Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997) (internal citations omitted).

For the foregoing reasons, the court recommends dismissing plaintiff's Amended Complaint as asserted against the Oneida County Sherriff's Department with prejudice. The court further recommends declining to interpret plaintiff's allegations to plausibly allege *Monell* liability against Oneida County, as plaintiff does not refer to any policy, custom, or practice by a municipality that caused a violation of his constitutional rights. However, in deference to plaintiff's pro se status, the court recommends that plaintiff be provided with an opportunity to amend his Amended Complaint to the extent he can, in good faith, assert a *Monell* claim against Oneida County, including allegations suggesting that a county policy, custom, or practice caused any alleged constitutional violations.

### IV. <u>Oneida County Sheriff Maciol</u>

It has long been established that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983[,]" and supervisory officials may not be held liable merely because they held a position of authority. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citations omitted); *see also Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996); *Grullon v. City of New Haven*, 720 F.3d 133, 138-39 (2d Cir. 2013). In *Colon v. Coughlin*, 58 F.3d 865 (2d Cir. 1995), the Second Circuit articulated standards for courts to use when determining personal involvement or supervisory liability.[2]

However, after the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the factors articulated in *Colon* were called into question. District courts, including the Northern District of New York[3] noted the possibility that the *Colon* factors were no longer viable. Eventually, the Second Circuit revised its standard for determining personal involvement or supervisory liability, finding that the *Colon* factors are no longer controlling and articulating the proper standard for the courts in this circuit to utilize. *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. at 676).

**\*4**  Joining other circuits, the Second Circuit held that, after *Iqbal*, there is no "special" rule for supervisory liability. *Id.*

Instead, a plaintiff must plead and prove 'that each Government official defendant, through the official's own individual actions, has violated the Constitution.' *Iqbal*, 556 U.S. at 676 ... 'The factors necessary to establish a [§ 1983] violation will vary with the constitutional provision at issue' because the elements of different constitutional violations vary. *Id.* The violation must be established against the supervisory official directly.

*Id.* (quoting *Iqbal*, 556 U.S. at 676). The supervisor must have committed the violation him or herself, not by the supervision of others who committed the violation. *Id.* Likewise, the supervisor must personally display the requisite state of mind, depending on the violation at issue. *Id.*

Here, other than being listed as a named defendant, the Amended Complaint is devoid of any allegations against or that otherwise reference Robert Maciol. The fact that Robert Maciol is the Oneida County Sheriff, without more, does not mean that he was personally involved with the alleged violation/deprivation of plaintiff's constitutional rights by his subordinates. The court therefore recommends that the Amended Complaint be dismissed against Robert Maciol without prejudice.

## V. Fourth Amendment Rights/False Arrest/Imprisonment

### A. Legal Standards

These three claims as asserted in the Amended Complaint are duplicative of one another. A section 1983 claim for false arrest or false imprisonment "rest[s] on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). "False arrest is simply false imprisonment accomplished by means of an unlawful arrest." *Jenkins v. City of N.Y.*, 478 F.3d 76, 88 n.10 (2d Cir. 2007). Such claims are one and the same because "[f]alse arrest and false imprisonment overlap; the former is a species of the latter." *Wallace v. Kato*, 549 U.S. 384, 388, 127 S. Ct. 1091, 166 L. Ed. 2d 973 (2007). The elements of a Fourth Amendment false arrest/imprisonment claim under 42 U.S.C. § 1983 are the same as those for a false arrest claim under New York law. *Kraft v. City of New York*, 696 F. Supp. 2d 403, 418 (S.D.N.Y. 2010). The New York State standard for false arrest requires that: " '(1) the defendants intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged.' " *Sethi v. Nassau County*, No. 11-CV-6380, 2014 WL 2526620, at *3 (E.D.N.Y. June 3, 2014) (quoting *Jocks v. Tavernier*, 316 F.3d 128, 134-35 (2d Cir. 2003)). An arrest is privileged if it is based on probable cause. *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007) ("The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest.") (citations and quotations omitted).

### B. Analysis

Plaintiff has pled sufficient facts in the Amended Complaint to survive initial review as against defendant Deputies Connelly and Doe for false arrest/imprisonment.[4] The Amended Complaint alleges the circumstances leading to plaintiff's arrest, the charges ultimately brought against him because of the arrest, and arguably the status of the underlying criminal proceedings.[5]

**\*5** Because the Amended Complaint asserts claims against an individual whose name is not known to plaintiff, service of process cannot be effectuated on Deputy John Doe until he has been identified by name. If the district court accepts this recommendation, and plaintiff wishes to pursue his claims against defendant Deputy John Doe, he must take reasonable steps to ascertain his identity through discovery. Upon learning the identity of the unnamed defendant, plaintiff must amend the operative complaint to properly name that individual as a party. If plaintiff fails to ascertain the identity of the Deputy John Doe to permit timely service of process, all claims against that individual will be dismissed.[6]

## VI. Opportunity to Amend

### A. Legal Standards

Generally, before the court dismisses a pro se complaint or any part of the complaint sua sponte, the court should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *See Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

### B. Application

The court recommends that the claims against the Oneida County Sheriff's Department be dismissed with prejudice. However, in deference to plaintiff's pro se status, the court recommends that plaintiff be provided with an opportunity to amend to clarify what, if any, claims he maintains against the County of Oneida, including facts suggesting that a county policy, custom, or practice caused the alleged constitutional violations.

The court further recommends dismissing the Amended Complaint as against Robert Maciol. To the extent defendant Maciol was personally involved in the alleged violation of plaintiff's constitutional rights, plaintiff should be granted leave to amend his complaint to state facts and circumstances in support of his claim against this individual defendant.

**WHEREFORE**, based on the findings above, it is **ORDERED**, that plaintiff's amended motion to proceed IFP (Dkt. No. 5) be **GRANTED**, [7] and it is

**RECOMMENDED**, that the district court **DISMISS PLAINTIFF'S AMENDED COMPLAINT IN ITS ENTIRETY, WITH PREJUDICE, only** as to defendant Oneida County Sheriff's Department, and it is

**RECOMMENDED**, that the district court **DISMISS PLAINTIFF'S AMENDED COMPLAINT IN ITS ENTIRETY, WITHOUT PREJUDICE**, as to defendant Robert Maciol, and it is

**RECOMMENDED**, that plaintiff's claims for false arrest/imprisonment proceed as against defendants Connelly and Doe, and it is

**RECOMMENDED**, that if the District Judge adopts this Order and Report-Recommendation, plaintiff be given thirty (30) days from the date of the District Judge's order, within which to submit a proposed second amended complaint to the court for its consideration, and that plaintiff be advised that **any amended pleading must be a COMPLETE PLEADING, WHICH WILL SUPERCEDE THE AMENDED COMPLAINT**, and that plaintiff must include all the remaining facts and causes of action in the second amended complaint. **No facts or claims from the original complaint may be incorporated by reference**, and it is

 **\*6  RECOMMENDED,** that if the District Court adopts this Order and Report-Recommendation, and plaintiff files a proposed second amended complaint, the proposed pleading be returned to me for review, and it is

**RECOMMENDED**, that if the District Court adopts this Order and Report-Recommendation, and plaintiff does not elect to further amend his Amended Complaint, the case be returned to me for any orders relating to service of the Amended Complaint on the remaining defendants, and it is

**ORDERED**, that while plaintiff may file objections to this Order and Report-Recommendation, before plaintiff submits any amended pleading, he should wait for the District Court to rule on the above Orders and Recommendations, and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation on plaintiff by regular mail. [8]

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Hum. Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

**All Citations**

Slip Copy, 2024 WL 3063725

## Footnotes

1       The page references to the Amended Complaint are consistent with those assigned by CM/ECF.

2       These factors were:

    (1) the defendant participated directly in the alleged constitutional violation;

    (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong;

    (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;

    (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or

    (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

    *Colon*, 58 F.3d at 873.

3       *See e.g. Vance v. State of New York*, No. 9:19-CV-748 (BKS/ATB), 2020 WL 7481585, at *3 & n.3 (N.D.N.Y. Nov. 30, 2020) (discussing cases), *report-recommendation adopted*, 2020 WL 7480955 (N.D.N.Y. Dec. 18, 2020).

4       In making this determination this court makes no finding as to whether any claims would survive a properly supported motion to dismiss or one for summary judgment.

5       In *Heck v. Humphrey*, 512 U.S. 477 (1994) the United States Supreme Court held that a section 1983 action seeking damages is not cognizable if a decision in favor of the plaintiff would necessarily invalidate a criminal conviction unless the conviction or sentence had been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or called into question by a federal habeas court. 512 U.S. at 486-87. Although the Amended Complaint alleges that the Oneida County District Attorney's office dismissed the menacing and harassment charges, plaintiff lists the Oneida County Jail as his current address. At this juncture, the court is recommending that plaintiff's false arrest claims survive initial review based on plaintiff's representation that the underlying charges relevant to this action have already been resolved in his favor. If it is later determined that plaintiff's charges are still pending to some extent, it is possible that plaintiff's false arrest claims may be barred by *Heck*.

6       Rule 4 of the Federal Rules of Civil Procedure require that a party be served within 90 days of issuance of the summons, absent a court order extending that period. Fed. R. Civ. P. 4(m). The Court's local rules shorten the time for service from 90 days under Rule 4(m) to 60 days. N.D.N.Y. L.R. 4.1(b).

7       Although his IFP Application has been granted, plaintiff will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

8       The Clerk shall also provide plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**End of Document**                                              © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 4799461
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Wayne R. SMITH, Plaintiff,

v.

Robert MACIOL, Oneida County Sheriff; Oneida County Sheriff's Dept.; Connelly,
Oneida County Sheriff Deputy; and John Doe, Oneida County Sheriff Deputy, Defendants.

6:24-CV-0687 (GTS/MJK)
|
Signed November 15, 2024

**Attorneys and Law Firms**

WAYNE R. SMITH, 24-B-3346, Plaintiff, Pro Se, Collins Correctional Facility, P.O. Box 340, Collins, New York 14034.

## DECISION and ORDER

GLENN T. SUDDABY, United States District Judge

**\*1** Currently before the Court, in this *pro se* civil rights action filed by Wayne R. Smith ("Plaintiff") against the Oneida County Sheriff's Department and three of its employees ("Defendants"), is United States Magistrate Judge Mitchell J. Katz's Report-Recommendation recommending that the Court dismiss with prejudice Plaintiff's Amended Complaint to the extent it asserts claims against the Oneida County Sheriff's Department, that the Court dismiss without prejudice (to refiling in this action upon leave of the Court) Plaintiff's Amended Complaint to the extent it asserts claims against Oneida County Sheriff Robert Maciol, and that the Court permit Plaintiff's Amended Complaint to proceed for now to the extent that it asserts claims of false arrest and false imprisonment against Defendants Connelly and Doe. (Dkt. No. 7.) Plaintiff has not filed an Objection to the Report-Recommendation, and the deadline by which to do so has expired. (*See generally* Docket Sheet.) Instead, after the expiration of the Objection deadline, Plaintiff apparently attempted to file two different versions of a pleading labeled "Amended Complaint" (which, in actuality, were a Second Amended Complaint and Third Amended Complaint). (Dkt. Nos. 8, 10.)[1] In addition, Plaintiff has filed a motion to appoint counsel. (Dkt. No. 11.)

After carefully reviewing the relevant papers herein, including Magistrate Judge Katz's thorough Report-Recommendation, the Court can find no clear error in the Report-Recommendation:[2] Magistrate Judge Katz employed the proper standards, accurately recited the facts, and reasonably applied the law to those facts. (Dkt. No. 7.) As a result, the Report-Recommendation is accepted and adopted in its entirety for the reasons set forth therein. (*Id.*) To those reasons, the Court adds only two points.

First, because Plaintiff had already filed an Amended Complaint before the issuance of the Report-Recommendation, he had no right to file, "as a matter of course" under Fed. R. Civ. P. 15(a)(1), either a Second Amended Complaint or Third Amended Complaint: rather, he had to "propose[ ]" that amended pleading, as indicated in the Report-Recommendation. (Dkt. Nos. 4, 7, 8, 10.) As a result, the Court will liberally construe those pleadings a *proposed* ones, and will direct the Clerk's Office to re-label Dkt. No. 8 as a "PROPOSED SECOND AMENDED COMPLAINT" and Dkt. No. 10 as a "PROPOSED THIRD AMENDED COMPLAINT."

**\*2** Second, because Plaintiff had not yet had the benefit of this Court's ruling on the Report-Recommendation when he submitted either of the two above-referenced proposed amended pleadings,[3] the Court will give him thirty days from the entry of

this Decision and Order in which to either (1) file a letter indicating which of his two prior proposed amended pleadings he wishes to submit for Magistrate Judge Katz' consideration, or (2) file a proposed Fourth Amended Complaint for Magistrate Judge Katz' consideration. <u>Again, any amended pleading must be a complete pleading, which will supercede Plaintiff's Amended Complaint in all respects, may not incorporate by reference any portion of his Amended Complaint, and must include all remaining facts and causes of action.</u> (To the extent that it does not so include such facts and causes of action, it will be deemed to have abandoned them.)

Finally, Plaintiff's motion to appoint counsel is denied without prejudice as unsupported by a showing of cause. It appears as though, to date, Plaintiff has been able to effectively litigate this action. Moreover, at this point, it appears that the case does not present issues that are novel or more complex than those raised in most civil rights cases. While it is possible that there will be conflicting evidence implicating the need for cross-examination at the time of the trial (as is the case in many actions brought under 42 U.S.C. § 1983 by *pro se* litigants), it is highly probable that this Court will appoint trial counsel at the final pretrial conference (should this case survive the filing of any dispositive motions). As a result, the Court is unaware of any special reasons why appointment of counsel at this time would be more likely to lead to a just determination of this action. *Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir. 1994); *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986). Plaintiff is hereby notified that he may not file another motion for the appointment of counsel unless and until he can demonstrate that, in light of a specific change in circumstances, consideration of the above-referenced factors warrants the granting of such a motion.

**ACCORDINGLY**, it is

**ORDERED** that the Clerk's Office shall re-label Dkt. No. 8 as a "PROPOSED SECOND AMENDED COMPLAINT" and Dkt. No. 10 as a "PROPOSED THIRD AMENDED COMPLAINT"; and it is further

**ORDERED** that Magistrate Judge Katz's Report-Recommendation (Dkt. No. 7) is **ACCEPTED** and **ADOPTED** in its entirety; and it is further

**ORDERED** that Plaintiff's Amended Complaint (Dkt. No. 4) **SURVIVES** the Court's *sua sponte* review to the extent that it asserts claims of false arrest and false imprisonment against Defendants Connelly and Doe; and it is further

**ORDERED** that Plaintiff's Amended Complaint (Dkt. No. 4) is **<u>DISMISSED</u>** **with prejudice** to the extent it asserts claims against the Oneida County Sheriff's Department; and it is further

 **\*3 ORDERED** that Plaintiff's Amended Complaint (Dkt. No. 4) is **<u>DISMISSED</u>** **without prejudice** (to refiling in this action, upon leave of the Court) to the extent it asserts claims against the Oneida County Sheriff Robert Maciol; and it is further

**ORDERED** that, if Plaintiff wishes to replead his claims against the Oneida County Sheriff Robert Maciol, he must, within **THIRTY (30) DAYS** from the entry of this Decision and Order, either (1) file a letter indicating which of his two prior proposed amended pleadings he wishes to submit for Magistrate Judge Katz' consideration, or (2) file a proposed Fourth Amended Complaint for Magistrate Judge Katz' consideration; and it is further

**ORDERED** that <u>any such proposed amended pleading must be a complete pleading, which will supercede Plaintiff's Amended Complaint in all respects, may not incorporate by reference any portion of his Amended Complaint, and must include all remaining facts and causes of action;</u> and it is further

**ORDERED** that any such proposed amended pleading submitted by Plaintiff be returned to Magistrate Judge Katz for review; and it is further

**ORDERED** that Plaintiff's motion to appoint counsel (Dkt. No. 11) is **<u>DENIED</u>** **without prejudice**.

2024 WL 4799461

**All Citations**

Slip Copy, 2024 WL 4799461

---

## Footnotes

1    The Court notes that neither of the amended pleadings was indicated as being a "proposed" pleading. (Dkt. Nos. 8, 10.)

2    When no objection is made to a report-recommendation, the Court subjects that report-recommendation to only a clear-error review. Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a clear-error review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.*; *see also Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks omitted).

3    The Court is mindful of the Second Circuit's suggestion that it would not be an extension of special solicitude to a plaintiff to consider an amended pleading submitted by him before he had the benefit of a ruling on a pending report-recommendation. *Cf. Cresci v. Mohawk Valley Community College*, 693 F. App'x 21, 25 (2d Cir. June 2, 2017) ("The court's criticism of Cresci for failure to submit a proposed amended complaint before learning whether, and in what respects, the court would find deficiencies was unjustified, and the court's denial of leave to replead, simultaneously with its decision that the complaint was defective, effectively deprived Cresci of a reasonable opportunity to seek leave to amend.").

---

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 6:24-cv-01367-AMN-ML   Document 8   Filed 04/07/25   Page 24 of 186

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

2016 WL 865296

2016 WL 865296
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

William PFLAUM, Individually and as a Citizen, Resident and Taxpayer of Town of Stuyvesant, Plaintiff,

v.

TOWN OF STUYVESANT, COLUMBIA CTY., N.Y.; and Valerie
Bertram, Individually and as Supervisor of Town of Stuyvesant, Defendants.

1:11-CV-0335 (GTS/DJS)
|
Signed 03/02/2016

**Attorneys and Law Firms**

WILLIAM PFLAUM, Plaintiff, Pro Se [1], 3 Rybka Road, Box 40, Stuyvesant Falls, NY 12174.

BRYAN D. RICHMOND, ESQ., THOMAS J. MORTATI, ESQ., BURKE, SCOLAMIERO, MORTATI & HURD, LLP, Attorneys for Defendants, 9 Washington Square, Suite 201, P.O. Box 15085, Albany, NY 12212-5085.

**DECISION and ORDER**

GLENN T. SUDDABY, Chief United States District Judge

**\*1** Currently before the Court, in this civil rights action filed by William Pflaum ("Plaintiff") against the Town of Stuyvesant ("Town") and Valerie Bertram, Town Supervisor ("Bertram") (collectively, "Defendants"), is Defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56. (Dkt. No. 59.) For the reasons set forth below, Defendants' motion is granted.

# I. RELEVANT BACKGROUND

## A. Plaintiff's Complaint

As a result of the Court's prior decisions (Dkt. Nos. 17, 26), Plaintiff's sole remaining claim in this action is his First Amendment retaliation claim. More specifically, as articulated in his Complaint (which was drafted by Plaintiff, *pro se*, and therefore must be construed with special solicitude), that claim alleges three separate ways he was retaliated against for publicly criticizing Town officials. [2] First, Plaintiff alleges that, in retaliation for filing charges of ethical violations against Defendant Bertram, she (a) "collaborated with and supported" the Town's Fire Chief to deny and/or threaten to deny fire protection to Plaintiff, (b) "supported and encouraged" various Town employees to "illegal[ly] revo[ke] ... Plaintiff's permit to operate his business," and (c) "supported and encouraged" the Town Assessor's "campaign to intimidate Plaintiff by linking [his] political speech [with his] real estate assessment." (Dkt. No. 1, ¶¶ 20-23, 116 [Pl.'s Compl.].)

Second, Plaintiff alleges that, in retaliation for writing columns on his Internet blog regarding corruption among the Town's public officials, the Town filed false criminal charges against him. (*Id.*, ¶ 116.)

Third, and finally, Plaintiff alleges that, in retaliation for criticizing Bertram, the Town Assessor, and the Town, the Town Assessor used his authority to raise taxes in order to intimidate Plaintiff into silence. (*Id.*, ¶¶ 23, 39, 47, 116.)

## B. Defendants' Motion for Summary Judgment

**\*2**  In their motion for summary judgment, Defendants request the dismissal of Plaintiff's Complaint in its entirety. (Dkt. No. 59.) In support of their motion, Defendants make the following four arguments. First, Defendants argue that there was no adverse action against Plaintiff in that there was no actual chilling of Plaintiff's First Amendment speech or any other damages. (Dkt. No. 61, at 3-8 [Defs.' Mem. of Law].)

Second, Defendants argue that, in any event, any such adverse action was not motivated or substantially caused by Plaintiff's First Amendment speech. (*Id.* at 5-6.)

Third, in the alternative, Defendants argue that Bertram was not personally involved in any deprivation of fire protection services to Plaintiff. (*Id.* at 5, 8-10.)

Fourth, and finally, Defendants argue that Bertram is entitled to qualified immunity. (*Id.*)

### C. Plaintiff's Opposition Memorandum of Law

Generally construed, Plaintiff makes five arguments in opposition to Defendants' motion. First, Plaintiff argues that he engaged in protected speech by creating an Internet blog on which he publicly criticized Town officials and exposed their illegal activities. (Dkt. No. 65, at 3 [Pl.'s Opp'n Mem. of Law].)

Second, Plaintiff argues that Town officials took adverse action against him by issuing noise violations against him with respect to loud dog barking on his property, retaining special prosecutors to pursue civil suits and criminal charges against him, encouraging harassment and extra-judicial threats against him, and treating him differently from other residents. (*Id.* at 4-5.) As a result, Plaintiff argues that he suffered a chilling effect on his blogging as well as monetary damages due to the expense required to oppose the Town's retaliatory activities. (*Id.* at 6-8.)

Third, Plaintiff argues that the timing of these adverse actions, i.e., that they began after he created his blog, establishes the causal connection between his protected speech and the adverse actions. (*Id.* at 5.)

Fourth, Plaintiff argues that Bertram is not entitled to qualified immunity because it was not objectively reasonable to believe that her actions did not violate Plaintiff's First Amendment rights. (*Id.* at 5-6.) According to Plaintiff, these actions consisted of (1) threatening to fire the Town's Dog Control Officer if he did not serve Plaintiff with a criminal charge related to dog barking, and (2) retaining special prosecutors to pursue this charge against Plaintiff without first obtaining the Town's approval. (*Id.* at 9.)

Fifth, Plaintiff argues that municipal liability extends to the Town because of the actions of Bertram, the Town's supervisor, and her position as a policymaker. (*Id.* at 8-9.)

Finally, the Court notes that Plaintiff spends considerable time in his opposition papers arguing the merits of issues not raised by Defendants in their motion. For example, Plaintiff discusses the Town's denial of his FOIL requests, the Town's failure to respond appropriately to alleged vandalism of his property, and the sufficiency of the evidence that led to the issuance of noise violations related to dog barking. (*See generally id.*, at 3-4, 6-9; Dkt. No. 67, ¶¶ 4, 14, 25, 27, 36, 56-107 [Pl.'s Decl.].)

### D. Defendants' Reply Memorandum of Law

In reply to Plaintiff's opposition memorandum of law, Defendants make two arguments. First, Defendants argue that, because Plaintiff has not complied with Local Rule 7.1(a)(3) in his response to their statement of material facts, their statement of material facts should be deemed admitted. (Dkt. No. 74, at 2-6 [Defs.' Reply Mem. of Law].)

**\*3**  Second, Defendants argue that the record is devoid of any admissible evidence that Bertram was personally involved in an alleged deprivation of fire protection services with regard to Plaintiff's residence. (*Id.* at 6-7.) Furthermore, Defendants argue that Plaintiff cannot demonstrate that any adverse action was taken because he was never actually deprived of fire protection

services and his subjective belief that the fire department may not respond to a fire at his residence is insufficient to create a genuine dispute of fact. (*Id.* at 7-8.)

### E. Statement of Material Facts

#### 1. Plaintiff's Failure to Comply with N.D.N.Y. Local Rule 7.1

Before reciting the material facts of this case, the Court must address Plaintiff's response to Defendant's Rule 7.1 Statement of Material Facts. Local Rule 7.1(a)(3) of the Local Rules of Practice for this Court requires a party moving for summary judgment to submit a statement of material facts supported by specific citations to the record where those facts are established. N.D.N.Y. L.R. 7.1(a)(3). The non-moving party's subsequent response must mirror the moving party's statement of material facts by (1) admitting and/or denying each of the moving party's factual assertions in matching numbered paragraphs and (2) supporting any denials with specific citations to the record where the factual issues arise. *Id.* Importantly, "[t]he Court shall deem admitted any properly supported facts set forth in the [moving party's] Statement of Material Facts that the [non-moving] party does not specifically controvert." *Id.*

This Court's "Local Rule requirements are not empty formalities." *Bombard v. Gen. Motors Corp.*, 238 F. Supp. 2d 464, 467 (N.D.N.Y. 2002) (Munson, J.) (stating that "[t]he courts of the Northern District have adhered to a strict application of Local Rule 7.1[a][3]'s requirement on summary judgment motions"); *accord, Cross v. Potter*, 09-CV-1293, 2013 WL 1149525, at *3 (N.D.N.Y. Mar. 19, 2013) (McAvoy, J.). Indeed, the underlying purpose of this rule "is to assist the court in framing the issues and determining whether there exist any triable issues of fact that would preclude the entry of summary judgment." *Youngblood v. Glasser*, 10-CV-1430, 2012 WL 4051846, at *4 (N.D.N.Y. Aug. 22, 2012) (Peebles, M.J.); *see also N.Y. Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc.*, 426 F.3d 640, 649 (2d Cir. 2005) (noting that "Rules governing summary judgment practice are essential tools for district courts, permitting them to efficiently decide summary judgment motions by relieving them of the onerous task of 'hunt[ing] through voluminous records without guidance from the parties'") (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 [2d Cir. 2001]).

In the present case, Plaintiff has failed to respond appropriately to Defendants' Rule 7.1 Statement of Material Facts. Specifically, Plaintiff has failed to admit and/or deny each of Defendants' factual assertions in matching numbered paragraphs. Indeed, Defendants' Rule 7.1 Statement contains 71 paragraphs of factual assertions, while Plaintiff's 7.1 Response contains only 11 paragraphs. (*Compare* Dkt. No. 62 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 66 [Pl.'s Rule 7.1 Response].) Moreover, many of Plaintiff's responses are conclusory in nature and/or contain legal arguments. The Court notes that, when he responded to Defendants' motion, Plaintiff was represented by counsel. Accordingly, the Court will accept the factual assertions in Defendants' 7.1 Statement as true to the extent that the evidence in the record supports these facts. *See Davis v. Cumberland Farms, Inc.*, 10-CV-0480, 2013 WL 375477, at *4 (N.D.N.Y. Jan. 29, 2013) (Scullin, J.) (accepting the defendant's statement of material facts as true where plaintiff neither admitted nor denied defendant's factual assertions); *Aktas v. JMC Dev. Co., Inc.*, 877 F. Supp. 2d 1, 5 n.3 (N.D.N.Y. 2012) (D'Agostino, J.) (accepting the third-party defendants' statement of material facts as true because the defendant/third-party plaintiff failed to respond to it in accordance with Local Rule 7.1[a][3] ).

#### 2. Undisputed Material Facts

**\*4**  For purposes of this motion, the undisputed material facts are as follows. Gerald Ennis has served as the Zoning Enforcement Officer for the Town of Stuyvesant continuously since 2003. (Dkt. No. 62, ¶ 43 [Defs.' Rule 7.1 Statement].) In this capacity, Mr. Ennis issued Plaintiff a Class 2 Home Occupation Permit in August, 2009. (*Id.*, ¶ 44.) Under this permit, "[n]o unusual appearances, noise, vibration, smoke, dust, odors, heat, glare or electrical disturbances that exceed those normally produced by a resident shall be permitted." (*Id.*, ¶ 45.) Following the issuance of this permit, Mr. Ennis received numerous noise complaints from Plaintiff's neighbors in regard to increasingly loud barking from dogs on Plaintiff's property. (*Id.*, ¶¶ 46-47.) Following

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

2016 WL 865296

an investigation into these complaints, Mr. Ennis concluded that Plaintiff's "home dog kennel which housed up to 50 dogs at a time was producing noise levels that exceeded those normally produced by a resident and, accordingly, [Plaintiff] was in violation of his Permit." (*Id.*, ¶ 48.)

On December 7, 2009, Mr. Ennis issued Plaintiff a notice of violation, which informed Plaintiff that the Town had received several complaints about the noise coming from his property and directed Plaintiff to remedy the violation by December 23, 2009. (*Id.*, ¶ 49.) Subsequently, Plaintiff contacted Mr. Ennis and requested that his phone number be given to those who had complained with instructions that they contact Plaintiff directly when there are noise issues so he can rectify any problems. (*Id.*, ¶ 50.) However, after a few months had passed, Plaintiff stopped answering his neighbors' phone calls; and, as a result, his neighbors made new complaints to Mr. Ennis. (*Id.*, ¶ 51.) After receiving these complaints and personally observing the loud noise emanating from Plaintiff's property, Mr. Ennis issued a second notice of violation to Plaintiff on April 26, 2010. (*Id.*, ¶¶ 52-53.) In response, Plaintiff advised Mr. Ennis that he would erect a sound barrier to remedy the issue. (*Id.*, ¶ 54.)

According to Mr. Ennis, he waited "some time" for Plaintiff to erect, or apply for a permit to construct, a sound barrier but neither action was taken. (*Id.*, ¶¶ 55-56.) After continuing to receive noise complaints, Mr. Ennis issued a third notice of violation to Plaintiff on August 9, 2010. (*Id.*, ¶ 56.) On the same day, Mr. Ennis met with Bertram and the Town Attorney to discuss the noise issue on Plaintiff's property. (*Id.*, ¶ 57.) The Town Attorney advised Bertram that Mr. Ennis had the authority to revoke Plaintiff's home occupation permit if he determined that Plaintiff was in violation of the permit's conditions. (*Id.*, ¶ 37.) As a result, Bertram advised Mr. Ennis that he may revoke Plaintiff's permit if he determined that the permit's conditions had been violated. (*Id.*, ¶ 38.) Later that same day (August 9, 2010), Mr. Ennis made the decision to revoke Plaintiff's permit and notified Plaintiff of that fact. (*Id.*, ¶¶ 39, 59.) Neither Plaintiff's statements concerning various issues in the Town nor his postings on various Internet sites had any bearing on the decision to revoke Plaintiff's permit. (*Id.*, ¶¶ 40, 61.)

Plaintiff testified at his deposition that the basis for his claim that he was deprived of fire protection services is that, "in 2011, or perhaps late 2010," a local fire department chief, Steve Montie, posted an online statement that Plaintiff should move out of town. (*Id.*, ¶ 14.) Plaintiff testified that the post was made in response to one of his earlier posts on a local town Internet forum; in Plaintiff's post, he had complained of alleged ethical violations committed by Bertram. (*Id.*, ¶¶ 15-16.) The alleged post by Mr. Montie states in its entirety as follows:

> William,
>
> How much more of this are you going to do ? ? ? ? You are wasting more tax payer dollars than its worth. Man up correct your problems and move on, or better yet move out.
>
> S

(*Id.*, ¶ 19.) The author of this post is not identified by name but only by the email address stuyvesantchief@fairpoint.net; and, as indicated above, the post is signed only as "S." (*Id.*, ¶ 18.)

**\*5** Plaintiff testified that the statements in the alleged post amounted to a threatened denial of fire department services because "the fire chief told me I should move out of town, which makes me wonder if there was a fire at my house would he come." (*Id.*, ¶ 20.) However, Plaintiff testified that no one has ever told him that the fire department would not respond if there was a fire at his house. (*Id.*, ¶ 22.) In addition, Plaintiff testified that there are two distinct fire departments in the Town, Stuyvesant Company 1 and Stuyvesant Company 2, which divide their responses to emergency calls in the Town geographically. (*Id.*, ¶ 23.) Steve Montie is the Chief of Stuyvesant Company 1 and a different chief controls Company 2. (*Id.*, ¶ 25.) Plaintiff's property is located in the geographic area covered by Company 2. (*Id.*, ¶ 24.) According to Bertram, she did not "in any way direct any fire department to deprive or threaten to deprive [Plaintiff] of fire services." (*Id.*, ¶ 33.)

Finally, Plaintiff testified that there was "never" a time that he did not publicize or speak out against some issues based upon any actions by the Town and the alleged efforts to silence him did not work. (*Id.*, ¶ 26.) In fact, following the alleged actions

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

2016 WL 865296

by the Town, Plaintiff did more blogging and increased his "political activities against the Town." (*Id.*, ¶ 27.) With respect to his business, Plaintiff testified that, despite losing his business permit in August, 2010, he continued to operate his business uninterrupted without a permit as he had before it was issued in 2009. (*Id.*, ¶ 29.) Accordingly, there was no interruption to Plaintiff's business as a result of his home business permit being revoked. (*Id.*, ¶¶ 28, 30.)

## II. STANDARD GOVERNING A MOTION FOR SUMMARY JUDGMENT

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). As a result, "[c]onclusory allegations, conjecture and speculation ... are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) (citation omitted); *see also* Fed. R. Civ. P. 56(e)(2). As the Supreme Court has famously explained, "[the non-moving party] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movign party. *Anderson*, 477 U.S. at 255. In addition, "[the moving party] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the ... [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986); *see also* Fed. R. Civ. P. 56(c), (e). However, when the moving party has met this initial burden of establishing the absence of any genuine issue of material fact, the nonmoving party must come forward with specific facts showing a genuine dispute of material fact for trial. Fed. R. Civ. P. 56(c), (e). Where the non-movant fails to deny the factual assertions contained in the movant's Rule 7.1 Statement of Material Facts in matching numbered paragraphs supported by a citation to admissible record evidence (as required by Local Rule 7.1[a][3] of the Court's Local Rules of Practice), the court may not rely solely on the movant's Rule 7.1 Statement; rather, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143, n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

## III. ANALYSIS

### A. Whether Plaintiff Suffered an Adverse Action

**\*6** After carefully considering the matter, the Court answers this question in the negative for the reasons set forth in Defendants' memorandum of law and reply memorandum of law. (Dkt. No. 61, at 3-8 [Defs.' Mem. of Law]; Dkt. No. 74, at 6-8 [Defs.' Reply Mem. of Law].) To those reasons, the Court adds the following two points.

As this Court noted in its prior decisions, in order to state a claim for retaliation under the First Amendment, "a plaintiff must prove (1) his conduct was protected by the First Amendment, (2) the defendants' actions were motivated or substantially caused by the exercise of that right, and (3) defendants' actions effectively 'chilled' the exercise of plaintiff's First Amendment right." *Pflaum*, 937 F. Supp. 2d at 303 (citing *Dillon v. Morano*, 497 F.3d 247, 251 [2d Cir. 2007]). "In cases 'involving criticism of public officials by private citizens,' the Second Circuit has generally 'impose[d] an actual chill requirement for First Amendment retaliation claims[,]' i.e., a requirement that the plaintiff allege and ultimately prove an 'actual chill' of his First Amendment rights." *Hafez v. City of Schenectady*, 894 F. Supp. 2d 207, 221 (N.D.N.Y. 2012) (D'Agostino, J.) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 381 [2d Cir. 2004]). "To establish this element, it is not enough for the plaintiff simply to show that he changed his behavior in some way; he must show that the defendant intended to, and did, prevent or deter him from exercising his rights under the First Amendment." *Hafez*, 894 F. Supp. 2d at 221. "However, 'where the retaliation is alleged to have caused an injury separate from any chilling effect, such as a job loss or demotion, an allegation as to a chilling effect is not necessary to state a claim.'" *Id.* (quoting *Puckett v. City of Glen Cove*, 631 F. Supp. 2d 226, 239 [E.D.N.Y. 2009]); *see also Brink v. Muscente*, 11-

CV-4306, 2013 WL 5366371, at *7 (S.D.N.Y. Sept. 25, 2013) (noting that, in private citizen cases, "various forms of concrete harm have been substituted for the 'actual chilling' requirement").

First, it is clear from Plaintiff's deposition testimony that there was no actual chilling of his protected speech as a result of Defendants' actions. As discussed above, Plaintiff admitted that he increased his political activities and continued to publicize his opinions against the Town in the face of its alleged efforts to silence him. "Where a party can show no change in his behavior, he has quite plainly shown no chilling of his First Amendment right to free speech." *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001); *see also Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 120 (2d Cir. 1995) (finding no chilling effect where, after an arrest, the plaintiff continued to publish his newspaper through which he criticized the village government); *Spear v. Town of W. Hartford*, 954 F.2d 63, 67 (2d Cir. 1992) (finding no chilling effect where, after the filing of a lawsuit, the plaintiff continued to write criticizing editorials in the same manner as before the lawsuit).

Second, to the extent that Plaintiff argues that he perceived the online post regarding the loss of fire protection as a real threat, he is still required to show that his perception was objectively reasonable, i.e., "that the defendant[s'] actions had some actual, non-speculative chilling effect." *Colombo v. O'Connell*, 310 F.3d 115, 117 (2d Cir. 2002); *see also Laird v. Tatum*, 408 U.S. 1, 13-14 (1972) (holding that "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm"). Plaintiff's subjective belief that the online post constituted a real threat, without more, is insufficient to demonstrate an actual chilling effect on his First Amendment rights. Indeed, as discussed above in Point I.E.2. of this Decision and Order, Plaintiff admitted that no one had told him that the fire department would not respond if there was a fire at his house. Moreover, a different fire chief than the one who allegedly authored the online post is responsible for responding to fire calls in the location of Plaintiff's residence.

**B. Whether There Was a Causal Connection Between Plaintiff's Speech and Any Adverse Action**

**\*7** After carefully considering the matter, the Court answers this question in the negative for the reasons set forth below.

To establish the second element of his First Amendment retaliation claim, "plaintiff must provide specific proof of defendants' improper motivation with either circumstantial or direct evidence." *Media All., Inc. v. Mirch*, 09-CV-0659, 2011 WL 3328532, at *5 (N.D.N.Y. Aug. 2, 2011) (D'Agostino, J.) (citing *Curley*, 285 F.3d at 73). "Circumstantial evidence includes close temporal proximity between plaintiff's speech and the alleged retaliatory act." *Mirch*, 2011 WL 3328532, at *5.

"Regardless of the presence of retaliatory motive, however, a defendant may be entitled to summary judgment if he can show dual motivation, i.e., that even without the improper motivation the alleged retaliatory action would have occurred." *Scott v. Coughlin*, 344 F.3d 282, 287-88 (2d Cir. 2003) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 [1977]). "Plaintiff has the initial burden of showing that an improper motive played a substantial part in defendant's action. The burden then shifts to defendant to show it would have taken exactly the same action absent the improper motive." *Scott*, 344 F.3d at 288.

**1. Revocation of Plaintiff's Business Permit**

In denying Defendants' underlying motion to dismiss Plaintiff's First Amendment claim, this Court held that Plaintiff had sufficiently alleged a concrete harm through the loss of his business permit, and consequently, the loss of business income, as a result of Defendants' alleged retaliatory actions. *Pflaum*, 937 F. Supp. 2d at 308. Having carefully reviewed the record, the Court finds that Plaintiff has failed to create a genuine dispute of material fact regarding Defendants' alleged improper motive. Specifically, with respect to the revocation of his business permit, the undisputed facts establish that the Town received complaints regarding the noise emanating from Plaintiff's property. Plaintiff was given two [3] noise violations over the course of approximately one year and ample opportunity to rectify the problem. (Dkt. No. 67, Attach. 5.) Because the noise problem and complaints continued, Mr. Ennis revoked Plaintiff's permit. [4] Even if Plaintiff were able to establish that an improper motive

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

2016 WL 865296

played a part in this decision, it is clear to the Court that, under these circumstances, the revocation would have still occurred. Indeed, Plaintiff challenged the decision to revoke his permit in appeals made to the Town's Zoning Board of Appeals and in two actions filed in New York State Supreme Court. (Dkt. No. 67, Attachs. 1 & 2.) Although Plaintiff was successful in his state court actions, those decisions were based, in part, upon the Town's failure to follow proper procedure, rather than the merits of the Town's decision. (*Id.*)

### 2. Criminal Charges

**\*8** Plaintiff has also failed to demonstrate an improper motive with respect to his claim that he received false criminal charges in retaliation for comments on his website about corruption among public officials. Plaintiff relies on the temporal proximity of these charges with a meeting he had with Bertram and his filing of an Article 78 petition in New York State Supreme Court. More specifically, Plaintiff argues that he began an Internet blog on or about January 1, 2011, and in that blog reported on what he perceived to be the illegal activities of Town officials. (Dkt. No. 67, ¶ 15 [Pl.'s Decl.].)

For example, on January 1, 2011, Plaintiff wrote about the alleged inflation of billable time by the Town Attorney that was spent on work paid for by the Town. (*Id.* at 65:8-11.) Around the same time, Plaintiff met with Bertram to discuss his discovery of specific instances of corruption by public officials, including the alleged inflation of billable work by the Town Attorney. (Dkt. No. 59, Attach. 7, at 62:13-15; 64:9-15 [Pl.'s Dep. Tr.].) On January 15, 2011, a few days after this meeting occurred, Plaintiff was issued a criminal summons for the offense of "habitual loud barking," in violation of N.Y. Local Law § 1. (*Id.* at 61:19-22; Dkt. No. 68, Attach. 7 [Criminal Summons]; Dkt. No. 67, ¶ 15 [Pl.'s Decl.].) Plaintiff testified at his deposition that the Town Attorney went to great lengths to research the Local Law that he was charged under and assisted one of Plaintiff's neighbors in drafting an affidavit upon which the criminal summons was based. (Dkt. No. 59, Attach. 7, at 65:17-21 [Pl.'s Dep. Tr.]; Dkt. No. 67, ¶ 107 [Pl.'s Decl.].) Plaintiff argues that he is the first Town resident to be charged under this section of the Local Law. (Dkt. No. 67, ¶¶ 100, 106 [Pl.'s Decl.].) Finally, Plaintiff argues that Bertram retained outside counsel to pursue this charge against him, which was later dismissed. (Dkt. No. 67, ¶¶ 5, 19, 21 [Pl.'s Decl.]; Dkt. No. 59, Attach. 7, at 57:16-18 [Pl.'s Dep. Tr.].)

Thereafter, in October 2011, Plaintiff filed an Article 78 petition in New York State Supreme Court challenging the Town's denial of Plaintiff's FOIL requests. (Dkt. No. 59, Attach. 7, at 67:7-12 [Pl.'s Dep. Tr.].) Plaintiff sought disclosure of the information in the FOIL requests to substantiate his belief that Town officials were engaging in illegal activities. (Dkt. No. 67, ¶¶ 43-44 [Pl.'s Decl.].) One week after commencing that action, Plaintiff received a second criminal summons for the same offense related to loud dog barking. (Dkt. No. 68, Attach. 7 [Appearance Ticket]; Dkt. No. 59, Attach. 7, at 56:16-19; 67:7-12 [Pl.'s Dep. Tr.].) Plaintiff testified that he had "almost no dogs" on his property in October 2011. (Dkt. No. 59, Attach. 7, at 67:8-10 [Pl.'s Dep. Tr.].) According to Plaintiff, that charge was neither dismissed nor withdrawn, but "vanished." (*Id.*, at 57:19-58:9.)

While Plaintiff's allegations may plausibly suggest that an improper motive played a role in the charges brought against him, Defendants have submitted admissible record evidence that establishes otherwise. (Dkt. No. 59, Attach. 17.) Specifically, the criminal information in question is signed by one of Plaintiff's neighbors, Frederick Platt, and states, in part, that "my complaint is that the dogs at Glencadia Dog Camp exhibit ongoing habitual barking/howling at any given time of day or night. This has been an issue since the Fall of 2009." (*Id.*) Furthermore, an affidavit filed by Wes Powell, the Town's Dog Control Officer, states that he received repeated complaints from Mr. Platt throughout 2010, culminating in the noise complaint that served as the basis for the criminal charge. (Dkt. No. 59, Attach. 16, ¶¶ 3-5 [Powell Aff.].) Mr. Powell states that the complaint was written by Mr. Platt in his presence and that no Town official directed Mr. Powell to serve Plaintiff with the criminal summons. (*Id.*, ¶¶ 7-10.)

**\*9** Conversely, Plaintiff has not submitted any admissible record evidence supporting his claim that the Town Attorney (who is not a party) played any role in the charge being filed against him or that he is the only resident to have ever been charged under this section of the Local Law. Similarly, Plaintiff's contention that the Town pressured Mr. Platt to file a complaint against him (Dkt. No. 67, ¶ 7[Pl.'s Decl.] ) is unsubstantiated. While the timing of the charge may appear suspicious, the Town cannot control when its residents decide to file a complaint and, in light of the record evidence demonstrating that there was a preexisting

2016 WL 865296

noise problem on Plaintiff's property, the complaint is unsurprising. Moreover, the fact that Plaintiff *believes* the Town shored up its criminal charge against him is of little, if any, materiality. Finally, because the second charge seemingly "vanished," no documentation or evidence (other than the appearance ticket itself) has been submitted with respect to that charge. In any event, because the charge was never prosecuted, Plaintiff has failed to support his claim that he suffered any harm. Accordingly, the Court finds that Plaintiff has failed to meet his burden in demonstrating an improper motive with respect to this charge.

### 3. Town Assessor Gleason

Plaintiff claims that Town Assessor Howard Gleason (also not a party) threatened to raise his property taxes for engaging in political activities when Mr. Gleason hand delivered a letter to Plaintiff before a public meeting. (Dkt. No. 69, Attach. 18, at 3 [Letter from Pl. to Gleason]; Dkt. No. 67, ¶ 29 [Pl.'s Decl.].) The only evidence submitted with respect to this claim is not the original letter from Mr. Gleason to Plaintiff but letter correspondence from Plaintiff to Mr. Gleason. (Dkt. No. 69, Attach. 18, at 3 [Letter from Pl. to Gleason].) Plaintiff's letter to Mr. Gleason, dated October 5, 2010, states that Plaintiff interpreted Mr. Gleason's attempt to speak with him about tax filings before a town hall meeting as threatening in nature due to the "timing and manner of the interaction." (*Id.*) This is because Plaintiff "had announced [his] intention to call for a referendum frequently and in many forums prior to appearing for the meeting." (*Id.*) Furthermore, Plaintiff requested that, in order to "avoid the impression that you coordinate your tax-related activities with other people in government in order to intimidate free speech, please do not present important information to me in such an information [sic] and unverifiable way." (*Id.*)

However, Mr. Gleason's response to Plaintiff's letter suggests that their interaction was not meant as a threat to raise Plaintiff's taxes or "was in any way politically motivated." (Dkt. No. 69, Attach. 18, at 4 [Letter from Pl. to Gleason].) More specifically, Mr. Gleason explains that he needed to re-assess Plaintiff's property in light of the fact that Plaintiff was now running a kennel (business) on his property and decided to hand deliver his letter knowing that Plaintiff would be present for the town hall meeting. (*Id.*) Moreover, Mr. Gleason reassured Plaintiff that politics do not dictate how he performs his job and promised that all future communication will be transmitted through mail rather than in-person. (*Id.*)

Plaintiff has failed to submit any additional evidence with respect to his tax assessment, that his taxes were improperly raised or that Mr. Gleason acted with a retaliatory animus. [5] Similarly, no evidence has been submitted to substantiate Plaintiff's claim that Bertram encouraged Mr. Gleason to use his authority as Town Assessor to intimidate Plaintiff. In sum, Plaintiff has wholly failed to satisfy his burden demonstrating that he suffered harm as a result of any action taken by Mr. Gleason and that Mr. Gleason acted with an improper motive.

**\*10** For all of these reasons, the Court finds that Plaintiff has failed to create a genuine dispute of material fact with respect to his First Amendment claim. Because the Court has reached this conclusion, it need not, and does not, consider the merits of Defendant Bertram's alternative qualified immunity argument.

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 59) is **GRANTED**. The Clerk of the Court is directed to enter judgment in favor of the Defendants and close this case.

### All Citations

Not Reported in Fed. Supp., 2016 WL 865296

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

2016 WL 865296

Case 6:24-cv-01367-AMN-ML   Document 8   Filed 04/07/25   Page 32 of 186

## Footnotes

1    Although Plaintiff is currently proceeding *pro se*, the Court notes that he had counsel when preparing his response to Defendant's motion for summary judgment. Accordingly, no need exists to construe Plaintiff's response with the special solicitude ordinarily afforded to *pro se* litigants.

2    The Court notes that, while it did not previously (i.e., in its prior decisions) liberally construe Plaintiff's retaliation claim as arising under three separate theories, it does so now. The Court further notes that it has the power to address these two additional theories for each of two alternative reasons: (1) because Defendants moved for dismissal of Plaintiff's retaliation claim in its entirety, Plaintiff has had sufficient notice and an opportunity to be heard with respect to the two theories in question; and (2) in any event, even if Plaintiff cannot be said to have had such notice and an opportunity to be heard, he filed his Complaint *pro se* and the Court finds the two theories to be so lacking in arguable merit as to be frivolous, *see Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (recognizing that district court has power to *sua sponte* dismiss *pro se* complaint based on frivolousness notwithstanding fact that plaintiff has paid statutory filing fee).

3    As discussed above, Plaintiff was actually given three noise violations. However, because his permit was revoked on the same day that he received the third violation, the Court will disregard the third violation for purposes of this analysis.

4    The Court notes that Plaintiff spends considerable time in his opposition papers disputing the sufficiency of the evidence and procedures that were followed that led to the issuance of noise violations. (*See generally* Dkt. No. 67, ¶¶ 56-95 [Pl.'s Decl.].) However, this Court is not the proper forum for that dispute. Furthermore, to the extent that the New York Supreme Court observed that there appeared "to have been a disproportionate amount of time and money spent on [the noise violation] notice," and that the records did not "reveal a real issue with dog-barking," those observations are not binding upon this Court. (Dkt. No. 67, Attach. 2, at 6.) Setting aside the fact that the observations constitute dicta, Defendants have submitted admissible record evidence demonstrating that Mr. Ennis acted upon complaints made to him by residents of the Town, which Plaintiff has failed to properly dispute.

5    For example, with regard to this lack of additional evidence regarding retaliatory animus, Plaintiff has failed to adduce admissible record evidence establishing that, even assuming Mr. Gleason knew of Plaintiff's intent to engage in protected speech, the so-called "manner of the interaction" by Mr. Gleason (i.e., the hand delivery of the letter) was in fact unusual for Mr. Gleason given the date of the letter and the date of the public meeting. Moreover, Plaintiff has failed to adduce admissible record evidence that the so-called "timing ... of the interaction" is significant, given his rather constant exercise of his First Amendment rights during the time in question.

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 6:24-cv-01367-AMN-ML    Document 8    Filed 04/07/25    Page 33 of 186

2022 WL 17517312
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Manetirony CLERVRAIN, Plaintiff,
v.
Jonathan ROBBINS, et al., Defendants.

1:22-CV-1248 (MAD/DJS)
|
Signed December 8, 2022

**Attorneys and Law Firms**

MANETIRONY CLERVRAIN, Plaintiff, Pro Se, Anderson, IN 46013.

**REPORT-RECOMMENDATION and ORDER**

DANIEL J. STEWART, United States Magistrate Judge

**\*1**  The Clerk has forwarded for review what has been docketed as a civil complaint filed by Plaintiff. Dkt. No. 1, Compl. Plaintiff has not paid the filing fee but has submitted an application to proceed *in forma pauperis* ("IFP"), Dkt. No. 2, which the Court has granted.[1]

## I. SUFFICIENCY OF THE COMPLAINT

### A. Governing Legal Standard

28 U.S.C. § 1915(e) directs that, when a plaintiff seeks to proceed *in forma pauperis*, "(2) ... the court shall dismiss the case at any time if the court determines that – ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).[2] Thus, even if a plaintiff meets the financial criteria to commence an action *in forma pauperis*, it is the court's responsibility to determine whether the plaintiff may properly maintain the complaint that he filed in this District before the court may permit the plaintiff to proceed with this action *in forma pauperis. See id.*

Likewise, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A; *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (*per curiam*); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (stating that both sections 1915 and 1915A are available to evaluate *pro se* prisoner complaints).

In reviewing a *pro se* complaint, the court has a duty to show liberality toward *pro se* litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (*per curiam*), and should exercise "extreme caution ... in ordering sua sponte dismissal of a pro se complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted). Therefore, a court should not

Case 6:24-cv-01367-AMN-ML    Document 8    Filed 04/07/25    Page 34 of 186

Clervrain v. Robbins, Not Reported in Fed. Supp. (2022)
2022 WL 17517312

dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 556).

**\*2** Although a court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)). Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (internal quotation marks and alterations omitted).

### B. Analysis of the Complaint

A court's initial review of a complaint under § 1915(e) must encompass the applicable standards of the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must contain:

> (1) a short and plain statement of the grounds for the court's jurisdiction ...;

> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

> (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

FED. R. CIV. P. 8(a). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer [and] prepare an adequate defense." *Hudson v. Artuz*, 1998 WL 832708, at \*1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995)). Moreover, Rule 10 of the Federal Rules of Civil Procedure provides, in part:

> **(b) Paragraphs; Separate Statements.** A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). The purpose of Rule 10 is to "provide an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" *Sandler v. Capanna*, 1992 WL 392597, at \*3 (E.D. Pa. Dec. 17, 1992).

A complaint that fails to comply with basic pleading requirements presents too heavy a burden for defendants to craft a defense "and provides no meaningful basis for the Court to assess the sufficiency of [the plaintiff's] claims," and may properly be dismissed. *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996).

Plaintiff's Complaint clearly does not satisfy these requirements. The nature of the Complaint is unclear. The Complaint recites a wide variety of federal statutes and case law, but a thorough review of the main Complaint and the numerous attachments does

Case 6:24-cv-01367-AMN-ML    Document 8    Filed 04/07/25    Page 35 of 186

Clervrain v. Robbins, Not Reported in Fed. Supp. (2022)

2022 WL 17517312

not provide clarity as to what federal claim Plaintiff seeks to pursue in this Court. It is unclear what relationship the individuals identified by Plaintiff as Defendants have to Plaintiff and how he alleges they violated his rights.

Given its lack of clarity, the Complaint is clearly subject to dismissal. "[A] court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once 'when a liberal reading of the complaint gives any indication that a valid claim might be stated.' " *Bruce v. Tompkins Cty. Dep't of Soc. Servs. ex rel. Kephart*, 2015 WL 151029, at *4 (N.D.N.Y. Jan. 7, 2015) (quoting *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991)). Accordingly, the Court recommends that the Complaint be dismissed, but that Plaintiff be afforded an opportunity to amend.

 **\*3**  The Court advises Plaintiff that should he be permitted to amend his Complaint, any amended pleading she submits must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure. Any such amended complaint, **which shall supersede and replace in its entirety the previous Complaint filed by Plaintiff**, must contain **sequentially numbered paragraphs containing only one act of misconduct per paragraph**. Thus, if Plaintiff claims that his civil and/or constitutional rights were violated by more than one defendant, or on more than one occasion, he should include a corresponding number of paragraphs in his amended complaint for each such allegation, with each paragraph specifying (i) the alleged act of misconduct; (ii) the date, including the year, on which such misconduct occurred; (iii) the names of each and every individual who participated in such misconduct; (iv) where appropriate, the location where the alleged misconduct occurred; and, (v) the nexus between such misconduct and Plaintiff's civil and/or constitutional rights.

Plaintiff is further cautioned that no portion of his prior Complaint shall be incorporated into his amended complaint by reference. Any amended complaint submitted by Plaintiff must set forth all of the claims he intends to assert against the defendants and must demonstrate that a case or controversy exists between the Plaintiff and the defendants which Plaintiff has a legal right to pursue and over which this Court has jurisdiction. If Plaintiff is alleging that the named defendant violated a law, he should specifically refer to such law.

## II. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Plaintiff's Complaint be **DISMISSED with leave to amend**; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14)[3] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

**All Citations**

Not Reported in Fed. Supp., 2022 WL 17517312

---

**Footnotes**

2022 WL 17517312

1    Plaintiff has also moved for leave to file electronically. Dkt. No. 3. Given the recommended disposition of this case, that
     Motion is denied with leave to renew if Plaintiff files a complaint that survives review under section 1915.

2    To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis
     either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

3    If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-
     day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections.
     FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the
     deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)
     (1)(C).

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Clervrain v. Robbins, Not Reported in Fed. Supp. (2023)

2023 WL 3170384

Case 6:24-cv-01367-AMN-ML    Document 8    Filed 04/07/25    Page 37 of 186

2023 WL 3170384
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Manetirony CLERVRAIN, Plaintiff,

v.

Jonathan ROBBINS, Jean-Max Bellerive, Josue Pierre-Louis, Garry Conille, Jean-Claude
Theogene, Barthelemy Anteno, Kwasi Amoako-Attah, and Victor (Ito) Bisono Haza, Defendants.

1:22-CV-1248 (MAD/DJS)
|
Signed May 1, 2023

**Attorneys and Law Firms**

MANETIRONY CLERVRAIN, 4326 South Scatterfield Road, Suite 153, Anderson, Indiana 46013, Plaintiff, Pro Se.

## ORDER

Mae A. D'Agostino, United States District Judge:

 **\*1**  On November 22, 2022, *pro se* Plaintiff Manetirony Clervrain ("Plaintiff") filed a complaint against Defendants consisting of 70 pages of forms and documents, *see* Dkt. No. 1, "recit[ing] a wide variety of federal statutes and case law," Dkt. No. 7 at 5, and around two hundred pages of attachments. *See* Dkt. Nos. 1-1, 1-5, 1-6. On the same day, Plaintiff moved for leave to proceed *in forma pauperis* ("IFP"), *see* Dkt. No. 2, and to obtain an ECF login and password. *See* Dkt. No. 3.

On December 8, 2022, Magistrate Judge Daniel J. Stewart granted Plaintiff's motion to proceed IFP. *See* Dkt. No. 6. Additionally, Magistrate Judge Stewart issued a Report-Recommendation and Order recommending that the complaint be dismissed with leave to amend. *See* Dkt. No. 7. Plaintiff has not filed an objection to the Report-Recommendation and Order.

When a party declines to file objections to a magistrate judge's report-recommendation or files "[g]eneral or conclusory objections or objections which merely recite the same arguments [presented] to the magistrate judge," the district court reviews those recommendations for clear error. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, \*1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted); *see also McAllan v. Von Essen*, 517 F. Supp. 2d 672, 679 (S.D.N.Y. 2007). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.' " *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (other citations omitted). The Second Circuit has held that the court is obligated to " 'make reasonable allowances to protect *pro se* litigants' " from inadvertently forfeiting legal rights merely because they lack a legal education. *Govan*, 289 F. Supp. 2d at 295 (quoting *Taguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

Having reviewed the December 8, 2022 Report-Recommendation and Order, Plaintiff's complaint and the applicable law, the Court finds that Magistrate Judge Stewart correctly determined that the complaint should be dismissed. The complaint is largely incomprehensible and suffers from several deficiencies. Rule 8(a) of the Federal Rules of Civil Procedure provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiff's complaint is neither short nor plain. *See* Dkt. No. 1. As currently drafted, and even with the leniency given

Clervrain v. Robbins, Not Reported in Fed. Supp. (2023)
2023 WL 3170384

to a *pro se* litigant's pleadings, Plaintiff failed to meet pleading standards such that the Court is unable to meaningfully analyze whether Plaintiff can allege any colorable claim against Defendants. *See Canning v. Hofmann*, No. 1:15-CV-0493, 2015 WL 6690170, *5 (N.D.N.Y. Nov. 2, 2015) ("[H]aving found that none of the allegations in Plaintiff's meandering and indecipherable Complaint raise a cognizable cause of action, the Court concludes that the Complaint fails to state a claim upon which relief may be granted and is subject to dismissal") (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

**\*2** Finally, the Court agrees with Magistrate Judge Stewart that Plaintiff should be granted an opportunity to amend out of deference to Plaintiff's *pro se* status. *See Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (" 'Generally, leave to amend should be freely given, and a *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim' ") (quotation omitted). Should Plaintiff choose to amend the complaint, the Court urges Plaintiff to review Magistrate Judge Stewart's suggestions in the Report-Recommendation and Order thoroughly. *See* Dkt. No. 7 at 4-6.

Accordingly, the Court hereby

**ORDERS** that the Report-Recommendation and Order (Dkt. No. 7) is **ADOPTED in its entirety**; and the Court further

**ORDERS** that Plaintiff's complaint (Dkt. No. 1) is **DISMISSED with leave to amend**; and the Court further

**ORDERS** that Plaintiff shall file his amended complaint within **thirty (30) days** of the date of this Order; and the Court further

**ORDERS** that, if Plaintiff fails to file an amended complaint within thirty (30) days of the date of this Order, the Clerk of the Court shall enter judgment in Defendants' favor and close this case without further order from this Court; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2023 WL 3170384

---

End of Document                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 3670609
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Jamil Abdul MUHAMMAD, Plaintiff,

v.

Judge Martin E. SMITH; Jason White, Assistant District Attorney; Broome County Courts, 6th
District; American Bar Association; United States of America; and State of New York, Defendants.

No. 3:13–cv–760 (MAD/DEP).
|
Signed July 23, 2014.

**Attorneys and Law Firms**

Jamil Abdul Muhammad, Albion, NY, pro se.

## MEMORANDUM–DECISION AND ORDER

MAE A. D'AGOSTINO, District Judge.

### I. INTRODUCTION

**\*1** Plaintiff, who is currently a New York State prisoner but was not at the time this action was filed, commenced this civil rights action asserting claims against a sitting judge, an assistant district attorney, a county court, and the American Bar Association. *See* Dkt. No. 1. In an October 16, 2013 Report, Recommendation, and Order, Magistrate Judge Peebles conducted an initial review of the complaint and recommended that the complaint be dismissed, with leave to replead only as to any claims asserted against Defendant American Bar Association. *See* Dkt. No. 19.

Currently before the Court is Magistrate Judge Peebles' Report, Recommendation, and Order and Plaintiff's objections thereto.

### II. BACKGROUND

Plaintiff's complaint and his many subsequent filings are largely unintelligible. In his complaint, Plaintiff identifies himself as a "Moor/Sovereign/a Freeman On The Land/ a Man, Real Live Flesh and Blood [.]" Dkt. No. 1 at 3. Plaintiff claims that, through his "unalienated rights under UCC 1–207(308)," he is "entitled to any Interpleted Funds relative to JAMIL ABDUL MUHAMMAD, and the defendant is determined to be Barred from any collection of my alleged debt from JAMIL ABDUL MUHAMMAD relating to Jamil Abdul Muhammad and defendant had in no 'CLAIM IN FACT.' " *Id.* at 5.

From other submissions submitted by Plaintiff, it appears that Plaintiff was sentenced by Broome County Court Judge Martin E. Smith, a named Defendant, based upon a plea of guilty entered in that court. *See* Dkt. No. 7 at 2. Plaintiff appears to allege that, as a result of those proceedings, Judge Smith is guilty of kidnapping, and is liable for conspiracy to violate his civil rights in violation of 18 U.S.C. § 241. *See id.* Further, Plaintiff makes vague references to a clerk in Binghamton named "Karen," and claims that she and other Defendants have placed him in imminent harm. *See* Dkt. No. 21 at 4–5. Plaintiff asks the Court

Muhammad v. Smith, Not Reported in F.Supp.3d (2014)

2014 WL 3670609

to award him "the dismissal of said charges" and to release him "by implying said 'habeas corpus' granting [him] immediate release of confinement[.]" *Id.* at 5.

In a Report, Recommendation, and Order, Magistrate Judge Peebles granted Plaintiff's motion to proceed *in forma pauperis* and then conducted an initial review of the complaint. *See* Dkt. No. 19. Magistrate Judge Peebles noted that Plaintiff's complaint failed to meet the minimal pleading standards set forth in Rule 8 of the Federal Rules of Civil Procedure, as well as *Twombly* and its progeny. *See id.* at 7. In light of his *pro se* status, however, Magistrate Judge Peebles considered Plaintiff's subsequent filings to determine if he has set forth a plausible claim against any named Defendant. *See id.* at 8.

Magistrate Judge Peebles first found that Defendants Smith and White are entitled to absolute immunity because Plaintiff's claims against them are associated with his prosecution in Broome County. *See id.* at 8–9. Further, the report found that Plaintiff's claims brought pursuant to 18 U.S.C. § 241 should be dismissed because it is a criminal statute that does not give rise to a private cause of action. *See id.* at 9 n. 6 (citations omitted). Next, Magistrate Judge Peebles concluded that Plaintiff's claims against the Broome County Courts must be dismissed because they are an extension of the state, immune from suit under the Eleventh Amendment. *See id.* at 10. Thereafter, Magistrate Judge Peebles found that the Court should dismiss Plaintiff's claims against Defendant American Bar Association ("ABA") because Plaintiff failed to allege any facts to plausibly suggest that Defendant ABA is a state actor, or that it acted under color of state law when allegedly violating Plaintiff's rights. *See id.* at 10–11. Finally, Magistrate Judge Peebles recommended that the Court dismiss all claims with prejudice, except those asserted against Defendant ABA. *See id.* at 12–13.

**\*2** Currently before the Court are Magistrate Judge Peebles Report, Recommendation, and Order, and Plaintiff's objections thereto. Additionally pending before the Court are several letter motions, along with an amended complaint Plaintiff filed after the issuance of the Report, Recommendation, and Order.

## III. DISCUSSION

### A. Redemptionist and sovereign citizen theories

Plaintiff's assertions appear to be based, at least in part, on the "redemptionist" theory or the related "sovereign citizen" theory, which are frivolous legal theories that have been consistently rejected by federal courts. *See Monroe v. Beard,* 536 F.3d 198, 203 n. 4 (3d Cir.2008). The United States Court of Appeals for the Third Circuit explained:

> "Redemptionist" theory ... propounds that a person has a split personality: a real person and a fictional person called the "strawman." The "strawman" purportedly came into being when the United States went off the gold standard in 19[3]3, and, instead, pledged the strawman of its citizens as collateral for the country's national debt. Redemptionists claim that government has power only over the strawman and not over the live person, who remains free. Individuals can free themselves by filing UCC financing statements, thereby acquiring an interest in their strawman. Thereafter, the real person can demand that government officials pay enormous sums of money to use the strawman's name or, in the case of prisoners, to keep him in custody. If government officials refuse, inmates are encouraged to file liens against correctional officers and other prison officials in order to extort their release from prison. Adherents of this scheme also advocate that inmates copyright their names to justify filing liens against officials using their names in public records such as indictments or court papers.

*Id.* (citation omitted). [1]

Case 6:24-cv-01367-AMN-ML   Document 8   Filed 04/07/25   Page 41 of 186
Muhammad v. Smith, Not Reported in F.Supp.3d (2014)
2014 WL 3670609

Plaintiff also apparently adheres to the Redemptionist theory regarding the use of capital letters:

> Redemptionists claim that by a birth certificate, the government created strawmen out of its citizens. A person's name spelled in English, that is with initial capital letters and small letters, represents the real person, that is, the flesh and blood person. Whenever a person's name is written in total capitals, however, as it is on a birth certificate, the Redemptionists believe that only the strawman is referenced, and the flesh and blood person is not involved.

*McLaughlin v. CitiMortqage, Inc.,* 726 F.Supp.2d 201, 210 (D.Conn.2010) (internal quotation marks omitted); *see also Bryant v. Wash. Mut. Bank,* 524 F.Supp.2d 753, 758–61 (W.D.Va.2007).

Theories presented by redemptionist and sovereign citizen adherents have not only been rejected by the courts, but also recognized as frivolous and a waste of court resources. *See McLaughlin v,* 726 F.Supp.2d at 210 (providing detailed explanation of the redemptionist theory and rejecting it); *Charlotte v. Hanson,* 433 Fed. Appx. 660, 661 (10th Cir.2011) (rejecting the sovereign citizen theory as having no conceivable validity in American law) (citation omitted). A prisoner's attempt "to avoid the consequences of his criminal conviction" based on the redemptionist theory, has been recognized as "legally frivolous," *Ferguson—El v. Virginia,* No. 3:10CV577, 2011 WL 3652327, *3 (E.D.Va. Aug.18, 2011), and civil cases based on redemptionist and sovereign citizen theories have been found to be "utterly frivolous" and "patently ludicrous," using "tactics" that are "a waste of their time as well as the court's time, which is paid for by hard-earned tax dollars." *Barber v. Countrywide Home Loans, Inc.,* No. 2:09cv40, 2010 WL 398915, *4 (W.D.N.C. Oct.7, 2009).

**\*3** In short, Plaintiff seeks to avoid the consequences of his conviction by suggesting he exists as two separate legal entities and that the State of New York and Broome County do not have jurisdiction over both entities and thus must release him and pay him damages. Such a theory is legally frivolous. *See Tirado v. New Jersey,* No. 10–3408(JAP), 2011 WL 1256624, *4–5 (D.N.J. Mar.28, 2011) (observing a similar argument "has absolutely no legal basis"); *Marshall v. Fla. Dep't Corr.,* No. 10–CV–20101, 2010 WL 6394565, *1 (S.D.Fla. Oct.27, 2010). Although the Court finds that these theories are frivolous, in light of his *pro se* status, the Court will consider each possible claim in greater detail.

**B. The Report, Recommendation, and Order**

Section 1915(e) (2)(B) directs that, when a plaintiff seeks to proceed *in forma pauperis,* "(2) ... the court shall dismiss the case at any time if the court determines that—... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e) (2)(B). [2] Thus, although the Court has the duty to show liberality toward pro se litigants, *see Nance v. Kelly,* 912 F.2d 605, 606 (2d Cir.1990) (per curiam), and should exercise "extreme caution ... in ordering *sua sponte* dismissal of a *pro se* complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond, ..." *Anderson v. Coughlin,* 700 F.2d 37, 41 (2d Cir.1983) (internal citations omitted), the court also has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed with an action *in forma pauperis .* [3]

When reviewing a complaint, the court may also look to the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading that sets forth a claim for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed.R.Civ.P. 8(a)(2). The purpose of Rule 8 " 'is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, ... prepare an adequate defense,' " and determine whether the doctrine of res judicata is applicable. *Hudson v. Artuz,* No. 95 CIV. 4768, 1998 WL 832708, *1 (S.D.N.Y. Nov.30, 1998) (quoting *Powell v. Marine Midland Bank,* 162 F.R.D. 15, 16 (N.D.N.Y.1995) (quoting *Brown v. Califano,* 75 F.R.D. 497, 498 (D.D.C.1977))) (other citation omitted).

2014 WL 3670609

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citation omitted). Although the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly,* 550 U.S. at 555). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show [n]'—'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed.R.Civ.P. 8(a)(2)).

 **\*4**  When a party files specific objections to a magistrate judge's report-recommendation, the district court makes a "*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1) (2006). When a party, however, files "[g]eneral or conclusory objections or objections which merely recite the same arguments [that he presented] to the magistrate judge," the court reviews those recommendations for clear error. *O'Diah v. Mawhir,* No. 9:08–CV–322, 2011 WL 933846, \*1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1) (2006).

A litigant's failure to file objections to a magistrate judge's report-recommendation, even when that litigant is proceeding *pro se,* waives any challenge to the report on appeal. *See Cephas v. Nash,* 328 F.3d 98, 107 (2d Cir.2003) (holding that, "[a]s a rule, a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point" (citation omitted)). A *pro se* litigant must be given notice of this rule; notice is sufficient if it informs the litigant that the failure to timely object will result in the waiver of further judicial review and cites pertinent statutory and civil rules authority. *See Frank v. Johnson,* 968 F.2d 298, 299 (2d Cir.1992); *Small v. Sec 'y of Health & Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989) (holding that a *pro se* party's failure to object to a report and recommendation does not waive his right to appellate review unless the report explicitly states that failure to object will preclude appellate review and specifically cites 28 U.S.C. § 636(b)(1) and Rules 72, 6(a) and former 6(e) of the Federal Rules of Civil Procedure).

Having reviewed the Report, Recommendation, and Order and Plaintiff's objections thereto, the Court finds that Magistrate Judge Peebles correctly determined that Plaintiff's claims should be dismissed. As explained below, however, the Court rejects Magistrate Judge Peebles' recommendation insofar as it found that Plaintiff should be permitted a chance to amend his complaint as to Defendant ABA.

Section 1983 itself does not create any substantive rights; rather, it provides a procedural mechanism for redressing the deprivation of rights created by the Constitution or laws of the United States. *See Sykes v. James,* 13 F.3d 515, 519 (2d Cir.1993) (citing *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 816, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985)). To state a cognizable claim under Section 1983, a plaintiff must allege that " '(1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States.' " *Weiss v. Inc. Village of Sag Harbor,* 762 F.Supp.2d 560, 568 (E.D.N.Y.2011) (quoting *Snider v. Dylag,* 188 F.3d 51, 53 (2d Cir.1999)).

 **\*5**  The Supreme Court, in *Lugar v. Edmondson Oil Co., Inc.,* 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982), established a two-prong test for determining when a private party's actions can be deemed to satisfy Section 1983's requirement that the challenged conduct was "under color of state law." Actions of a private party can be deemed "fairly attributable" to the state, and therefore treated as action taken "under color of state law," when (1) the deprivation is "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible," and (2) "the party charged with the deprivation [is] a person who may fairly be said to be a state actor ." *Hollander v. Copacabana Nightclub,* 624 F.3d 30, 33 (2d Cir.2010) (quoting *Lugar,* 457 U.S. at 937). A private party's actions may be attributable to the state under the second *Lugar* prong if it meets one of three tests: (1) "The 'compulsion test': the entity acts

2014 WL 3670609

pursuant to the 'coercive power' of the state or is 'controlled' by the state"; (2) "The 'public function test': the entity 'has been delegated a public function by the [s]tate' "; or (3) "The 'joint action test' or 'close nexus test': the state provides 'significant encouragement' to the entity, the entity is a 'willful participant in joint activity with the [s]tate,' or the entity's functions are 'entwined' with state policies." *Hollander*, 624 F.3d at 34 (quoting *Sybalski v. Indep. Grp. Home Living Program, Inc.,* 546 F.3d 255, 257 (2d Cir.2008) (internal citations omitted)).

In the present matter, Defendant ABA is a private party which does not meet any of the three tests set forth above. Courts throughout the United States have already addressed this question and they have unanimously held that the American Bar Association is not a state actor for purposes of a Section 1983 action. *See Hu v. American Bar Ass'n,* 334 Fed. Appx. 17, 18–19 (7th Cir.2009) (finding that the district court properly dismissed the plaintiff's complaint because the ABA is not a state actor); *Lawline v. American Bar Ass 'n,* 956 F.2d 1378, 1385 (7th Cir.1992) (concluding that "private bar associations are not state actors for the purpose of Section 1983"); *Rohan v. American Bar Ass'n,* No. 93 CV 1338, 1995 WL 347035, *6–*7 (E.D.N.Y. May 31, 1995) (holding that the ABA is a professional association, not a state actor, even though admission to practice law in New York State requires graduation from an ABA-accredited law school, because "the State of New York has not explicitly delegated to the ABA its responsibility for setting the requirements that an individual must meet in order to be licensed as an attorney-at-law" and "any conferral of monopoly status on the ABA by New York State does not convert the ABA into a state actor"); *see also The Real Estate Bar Ass'n for Mass., Inc. v. Nat'l Real Estate Info. Servs.,* 608 F.3d 110, 121–22 (1st Cir.2010) (finding that state bar association was not a state actor).

 **\*6** In the present matter, the Court agrees that Defendant ABA is not a state actor for Section 1983 purposes. New York has not expressly delegated to the ABA its responsibility for setting the requirements to practice law in New York; rather, to become a member of the New York Bar, an individual must comply with the Rules of the New York Court of Appeals on admission to practice. *See Rohan,* 1995 WL 347035, at *5. Further, the ABA was neither established by the State of New York, nor is it funded or supported by the State. *See id.* at *7 (citations omitted). Additionally, school accreditation has been recognized as a function of private entities, rather than one that "has been traditionally the exclusive prerogative of the State." *Id.* (quotation and other citation omitted).

Based on the foregoing, the Court finds that Defendant ABA is not a state actor. As such, the Court rejects Magistrate Judge Peebles' recommendation only insofar as the report recommended that the Court dismiss the claims against Defendant ABA without prejudice. Although the Court should generally permit a *pro se* litigant an opportunity to amend, dismissal with prejudice is appropriate where, as here, any amendment of the complaint would be futile.

Further, the Court finds that Magistrate Judge Peebles correctly determined that Defendants Smith and White are entitled to absolute immunity since Plaintiff has raised claims against them in their capacities as a judge and prosecutor. *See Hill v. City of New York,* 45 F.3d 653, 660–61 (2d Cir.1995) (quotation omitted); *DuQuin v. Kolbert,* 320 F.Supp.2d 39, 40–41 (W.D.N.Y.2004) (citation omitted). Additionally, Plaintiff's claims against the Broome County Courts are barred by the Eleventh Amendment. *See Thomas v. Bailey,* No. 10–cv–51, 2010 WL 662416, *1 (E.D.N.Y. Feb.22, 2010). Finally, to the extent that Plaintiff is seeking his immediate release from custody, such relief is only available from this Court by way of a writ of habeas corpus, issued pursuant to 28 U.S.C. § 2254. *See Preiser v. Rodriguez,* 411 U.S. 475, 498–99, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1975); *see also Brown v. Freeport Police Dept.,* Nos. 13 CV 4047, 13 CV 6514, 2014 WL 279847, *5 (E.D.N.Y. Jan.23, 2014) (citation omitted).

### C. Plaintiff's amended complaint

In his amended complaint, Plaintiff names as Defendants the "United States of America/Foreign Corporation of United States," and the State of New York, as well as the previously named Defendants. *See* Dkt. No. 34 at 1–2. In the amended complaint, Plaintiff claims that the "United States of America is guilty of criminal infringement of intellectual property, failure of consideration, act of indemnity, insurance fraud, securities fraud," as well as an apparent violation of section 34 of the Judiciary Act [4] and a conspiracy with the other named Defendants in violation of 18 U.S.C. § 241. *See id.* at 4. Plaintiff claims that Defendants' actions were "in violation of misnomer contracts of surety" and led to his "wrongfull [sic] imprisonment via

commercial claims alleging DEATH and DEBT." *Id.* Plaintiff is seeking his immediate release, in addition to $150,0000,000 "upon court ordered 'Release' from cestui que vie life insurance policy and foreign corporation of United States." *Id.* at 6. Additionally, Plaintiff asks the Court to "expunge all criminal proceedings, charges, finger prints, DNA, blood, mugshots, arrest/ arrest record of alleged charges do to illegal commercial ... surety contracts alleging DEATH or DEBT upon 'RELEASE' being granted." *Id.*

**\*7** Having reviewed the amended complaint, the Court finds that Plaintiff has failed to plausibly allege that he is entitled to any of the relief he seeks. A plaintiff may not collect damages for his alleged wrongful imprisonment or conviction without first showing "that [his] conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck v. Humphrey,* 512 U.S. 477, 487, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). Here, Plaintiff has made no such showing and a review of the Department of Corrections and Community Supervision website demonstrates that Plaintiff is still incarcerated.

Additionally, 18 U.S.C. § 241 is a criminal statute which does not create a private cause of action. *See Storm–Eggink v. Gottfried,* 409 Fed. Appx. 426, 427 (2d Cir.2011) (citing cases).

Again, as discussed above, Plaintiff's claims against Defendants Smith and White must be dismissed because they are entitled to absolute immunity. *See Hill,* 45 F.3d at 660–61 (quotation omitted); *DuQuin,* 320 F.Supp.2d at 40–41 (citation omitted). Additionally, Plaintiff's claims against the Broome County Courts and the State of New York are barred by the Eleventh Amendment. *See Thomas,* 2010 WL 662416, at \* 1. Further, to the extent that Plaintiff is seeking his immediate release from custody, such relief is only available from this Court by way of a writ of habeas corpus, issued pursuant to 28 U.S.C. § 2254. *See Preiser,* 411 U.S. at 498–99; *see also Brown,* 2014 WL 279847, at \*5 (citation omitted). Finally, Plaintiff alleges no facts against Defendant United States. Rather, the United States appears to have been included as a Defendant solely under Plaintiff's ludicrous sovereign citizen and redemptionist theories, which are subject to dismissal.

Based on the foregoing, the Court finds that Plaintiff's amended complaint fails to set forth any non-frivolous causes of action. Since permitting additional amendment would be futile, Plaintiff's amended complaint is dismissed with prejudice.

In view of the frivolous nature of Plaintiff's claims, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and, therefore, *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962); *see also Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000).

### IV. CONCLUSION

After carefully considering Magistrate Judge Peebles' Report, Recommendation, and Order, Plaintiff's objections thereto, and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Magistrate Judge Peebles' October 16, 2013 Report, Recommendation, and Order is **ADOPTED in part and REJECTED in part;** [5] and the Court further

**ORDERS** that Plaintiff's complaint and amended complaint are **DISMISSED with prejudice;** and the Court further

**\*8** **ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall terminate all pending motions not addressed in this Memorandum–Decision and Order as moot; and the Court further

**ORDERS** that the Clerk of the Court shall serve Plaintiff with a copy of this Memorandum–Decision and Order.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 3670609

---

### Footnotes

1    The Court notes that Plaintiff was convicted of Falsifying Business Records in the First Degree.

2    To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

3    "Dismissal of frivolous actions pursuant to 28 U.S.C. § 1915e is appropriate to prevent abuses of the process of the court," *Nelson v. Spitzer,* No. 9:07–CV–1241, 2008 WL 268215, *1 n. 3 (N.D.N.Y. Jan.29, 2008) (citation omitted), as well as "to discourage the filing of [baseless lawsuits], and [the] waste of judicial ... resources[.]" *Neitzke,* 490 U.S. at 327.

4    Originally § 34 of the Judiciary Act of 1789, the Rules of Decision Act, now contained in 28 U.S.C. § 1652, reads: "The laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply." It is unclear how an improper application of the Rules of Decision Act violated Plaintiff's rights and Plaintiff's nearly incomprehensible filings provide no insight.

5    Magistrate Judge Peebles' Report, Recommendation, and Order is only rejected insofar as it recommended that the Court dismiss Defendant ABA without prejudice.

---

**End of Document**                                                                © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Balash-Ioannidou v. Contour Mortgage Corporation, Not Reported in Fed. Supp. (2022)

2022 WL 3358082

2022 WL 3358082

Only the Westlaw citation is currently available.

United States District Court, E.D. New York.

Anna T. BALASH-IOANNIDOU, Plaintiff,

v.

CONTOUR MORTGAGE CORPORATION; Wilmington Savings Fund Society, FSB, Defendants.

22-CV-4506 (AMD) (LB)

|

Signed August 15, 2022

**Attorneys and Law Firms**

Anna T. Balash-Ioannidou, Astoria, NY, Pro Se.

## MEMORANDUM AND ORDER

ANN M. DONNELLY, United States District Judge:

**\*1** On July 22, 2022, the *pro se* plaintiff, Anna T. Balash-Ioannidou, filed a complaint against defendants Contour Mortgage Corporation ("Contour") and Wilmington Savings Fund Society, FSB ("Wilmington") in the United States District Court for the Southern District of New York seeking declaratory and injunctive relief with regards to foreclosure proceedings involving real property located in Astoria, Queens County, New York. (ECF No. 1.) The plaintiff also submitted an unsigned order to show cause seeking to enjoin "all actions ... including calculations, notice of sale, auction of property, sale of property and transfer" of the property located at 21-08 30 <sup>th</sup> Avenue, Astoria, New York ("the property") in her Supreme Court of the State of New York, Queens County, Index No. 707379/2015 ("Queens County Supreme Court") foreclosure action. (ECF No. 2.) On August 1, 2022, the action was transferred to this Court. For the reasons set forth below, the case is dismissed for lack of subject matter jurisdiction.

## BACKGROUND

On July 14, 2015, a foreclosure action was instituted against the plaintiff in Queens County Supreme Court seeking final judgment and the sale of the property to satisfy the mortgage in the amount of $645,300.00. Contour was the original lender; Wilmington now holds the mortgage and lien and is the "current foreclosing party" on the property in the Queens County Supreme Court foreclosure action. (ECF No. 1 at 2.) The plaintiff asserts that she has "issued a payment through Notary Presentment to Defendants in the amount of $645,300.00" to satisfy her debt, as well as a "Notary Protest" and a "Certificate of Dishonor." (*Id.* at 3.) She seeks this Court's involvement in the dispute over her alleged satisfaction of the mortgage, for removal of the lien on the property and for "injunctive relief from the ongoing foreclosure action." (ECF No. 1 at 4-5.)

## STANDARD OF REVIEW

In reviewing the plaintiff's complaint, the Court is mindful that the submissions of a *pro se* litigant must be construed liberally and interpreted "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006). A district court may dismiss a *pro se* action *sua sponte*, that is, on its own—even if the plaintiff has paid the requisite

2022 WL 3358082

filing fee—if the action is frivolous, *Fitzgerald v. First East Seventh Street Tenants Corp.,* 221 F.3d 362, 363-64 (2d Cir. 2000), or if the court lacks subject matter jurisdiction over the matter. Fed. R. Civ. P. 12(h)(3). "Failure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court *sua sponte.* If subject matter jurisdiction is lacking, the action must be dismissed." *Lyndonville Sav. Bank & Trust Co. v. Lussier,* 211 F.3d 697, 700-01 (2d Cir. 2000); *see* Fed. R. Civ. P. 12(h)(3). Federal subject matter jurisdiction is available only when a "federal question" is presented, 28 U.S.C. § 1331, or when plaintiffs and defendants are of diverse citizenship, and the amount in controversy exceeds $75,000, 28 U.S.C. § 1332.

## DISCUSSION

### A. *Younger* Abstention

**\*2** Under the abstention doctrine set out by the Supreme Court in *Younger v. Harris,* 401 U.S. 37, 43-45 (1971), this Court lacks jurisdiction over the plaintiff's claims. "The defining feature of *Younger* abstention is that even though either a federal or a state court could adjudicate a given claim, when there is an ongoing state proceeding in which the claim can be raised, and when adjudicating the claim in federal court would interfere unduly with the ongoing state proceeding, the claim is more appropriately adjudicated in state court." *Kirschner v. Klemons,* 225 F.3d 227, 236 (2d Cir. 2000). *Younger* abstention is triggered by three categories of state court proceedings: (1) "state criminal prosecutions," (2) "civil enforcement proceedings," and (3) civil proceedings that "implicate a State's interest in enforcing the orders and judgments of its courts." *Sprint Commc'ns, Inc. v. Jacobs,* 571 U.S. 69, 72-73 (2013).

Here, the third prong of the *Sprint* rationale applies. "[F]ederal court intervention in an on-going state foreclosure proceeding ... [is] generally barred by *Younger v. Harris.*" *Fequiere v. Tribeca Lending,* No. 14-CV-812, 2015 WL 1412580, at \*7 (E.D.N.Y. Mar. 20, 2015) (quoting *Marcelo v. EMC Mortg. Corp.,* No. 10-CV-5964, 2011 WL 1792671, at \*4 (E.D.N.Y. May 6, 2011)). The plaintiff seeks declaratory injunctive relief relating to the same property that is the subject matter of the underlying state court actions. The plaintiff's remedies are therefore limited to state court—either in the original venue, or on appeal to the state appellate court. *Younger* abstention bars her from seeking injunctive and declaratory relief in a federal court.

### B. The Anti-Injunction Act

The plaintiff's request for injunctive relief is also precluded by the Anti-Injunction Act, which provides that, "[a] court of the United States may not grant an injunction to stay proceedings in State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. This provision applies when the requested injunction would either stay the ongoing state proceedings or prevent the parties from enforcing an order that has already issued. *See Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Eng'rs.,* 398 U.S. 281, 294 (1970). Courts in this Circuit have consistently held that the Anti-Injunction Act applies in the context of pending state court foreclosure proceedings. *See DiMicco v. CitiMortgage, Inc.,* No. 20-CV-755, 2020 WL 804949, at \*3 (E.D.N.Y. Feb. 18, 2020); *Abbatiello v. Wells Fargo Bank, N.A.,* No. 15-CV-4210, 2015 WL 5884797, at \*5 (E.D.N.Y. Oct. 8, 2015) (collecting cases).

### C. Frivolous Claim

Finally, the Court would dismiss this case even if it had jurisdiction, because the claims are frivolous. The basis for the plaintiff's claim is that she has satisfied her debt and is entitled to release from the lien on her property because she mailed a "notary presentment" and related documents to defendants. (ECF No. 1 at 1-4.) These documents (*id.* at 7-18), appear to be asserting some sort of "sovereign citizen" claim. *See United States v. Ulloa,* 511 F. App'x 105, 107 n.1 (2d Cir. 2013) ("[S]overeign citizens are a loosely affiliated group who believe that the state and federal governments lack constitutional legitimacy and therefore have no authority to regulate their behavior; the FBI has labeled the sovereign citizens a domestic terrorist group."). People who identify as sovereign citizens use maneuvers like the notary presentment to avoid paying debts or to collect debts that are not actually owed. *See, e.g., Kesick v. Ulloa,* No. 10-CV-1248, 2012 WL 2873364, at \*3 (N.D.N.Y. July 12, 2012) (Ulloa filed fraudulent papers entitled "notary presentment" with the Town of Ulster Justice Court falsely claiming that a Justice of the Ulster Town Court owed him the sum of $176,000,000.00); *see also McKay v. U.S. Bank,* No. 14-CV-872, 2015 WL 5657110, at

Case 6:24-cv-01367-AMN-ML    Document 8    Filed 04/07/25    Page 48 of 186

**Balash-Ioannidou v. Contour Mortgage Corporation, Not Reported in Fed. Supp. (2022)**

2022 WL 3358082

*2 (M.D. Ala. Sept. 24, 2015) (denying plaintiffs' request for declaratory judgment that the defendant was not the real mortgage holder and to quiet title based upon their mailing of a "notarial presentment" and a "notarial notice of Dishonor" to the defendant bank). To the extent the plaintiff claims that her notary presentment discharges her debt, the claim lacks an arguable basis in law or fact. *Muhammad v. Smith*, No. 13-CV-760, 2014 WL 3670609, at *2 (N.D.N.Y. July 23, 2014) ("Theories presented by redemptionist and sovereign citizen adherents have not only been rejected by the courts, but also recognized as frivolous and a waste of court resources.") (collecting cases).

## CONCLUSION

**\*3** Accordingly, the instant *pro se* complaint is dismissed without prejudice for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(h)(3). The motion for preliminary injunctive relief is denied. Further, in keeping with its duty to liberally construe *pro se* complaints, the Court has considered whether to grant leave to amend the complaint but finds that amendment would be futile. *See Johnson v. Univ. of Rochester Med. Ctr.*, 642 F.3d 121, 124-25 (2d Cir. 2011).

Although the plaintiff paid the filing fee to bring this action, the Court certifies pursuant to 28 U.S.C. § 1915 (a)(3) that any *in forma pauperis* appeal from this order would not be taken in good faith. *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2022 WL 3358082

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 6:24-cv-01367-AMN-ML    Document 8    Filed 04/07/25    Page 49 of 186

Tyson v. Clifford, Not Reported in Fed. Supp. (2018)

2018 WL 6727538

2018 WL 6727538
Only the Westlaw citation is currently available.
United States District Court, D. Connecticut.

Deshawn TYSON, Plaintiff,

v.

Patrick J. CLIFFORD, et al., Defendants.

CIVIL CASE NO. 3:18cv1600(JCH)

|

Signed 12/21/2018

**Attorneys and Law Firms**

Deshawn Tyson, Suffield, CT, pro se.

**INITIAL REVIEW ORDER**

Janet C. Hall, United States District Judge

**\*1** The plaintiff, Deshawn Tyson ("Tyson"), is confined at MacDougall-Walker Correctional Institution. He has filed a <u>pro se</u> civil rights action pursuant to section 1983 of title 42 of the United States Code against New Haven Superior Court Judge Patrick J. Clifford ("Judge Clifford") and Connecticut State's Attorney John P. Doyle, Jr. ("Attorney Doyle"). For the reasons set forth below, the Complaint is dismissed.

## I. STANDARD OF REVIEW

Pursuant to section 1915A(b) of title 28 of the United States Code, the court must review prisoner civil complaints against governmental actors and "dismiss ... any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." Id. This standard of review "appl[ies] to all civil complaints brought by prisoners against governmental officials or entities regardless of whether the prisoner has paid [a] filing fee." <u>Shakur v. Selsky</u>, 391 F.3d 106, 112 (2d Cir. 2004) (internal quotation marks and citation omitted).

Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A complaint that includes only " ' labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,' " does not meet the facial plausibility standard. <u>Id.</u> (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555, 557 (2007) ). Although courts still have an obligation to interpret "a <u>pro se</u> complaint liberally," the Complaint must still include sufficient factual allegations to meet the standard of facial plausibility. See <u>Harris v. Mills</u>, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted).

## II. FACTS

Tyson states that he has been "wrong[ly] incarcerated" in a facility within the State of Connecticut Department of Correction since March 10, 2016. [1] See Compl. (Doc. No. 1) at 22. The State of Connecticut Judicial Branch website reflects that New Haven police officers arrested Tyson on March 10, 2016, and that the State of Connecticut has charged him in a criminal case filed in the Connecticut Superior Court for the Judicial District of New Haven with one count of sexual assault in the first degree, in violation of Conn. Gen. Stat. § 53a-70(a)(1), and one count of unlawful restraint in the first degree, in violation of Conn. Gen. Stat. § 53a-95. See State v. Tyson, Case No. NNH-CR16-0165313-T (Conn. Super. Ct. Mar. 10, 2016). [2] The case detail indicates that Tyson is represented by counsel and that a jury trial is scheduled for December 16, 2020. See id.

**\*2** Tyson alleges that, on or about July 26, 2018, in the Connecticut Superior Court for the Judicial District of New Haven, Judge Clifford stated on the record that he had instructed Attorney Doyle to ignore or disregard any motions, memoranda, or affidavits filed by Tyson. See Compl. at 5 ¶ 1, 22. Judge Clifford has ruled against Tyson even when Attorney Doyle refused to oppose Tyson's motions. See id. at 17.

On or about August 22, 2018, Judge Clifford stated on the record that he had instructed Attorney Doyle to remain silent during a pretrial hearing and that Attorney Doyle agreed to do so. See id. at 5 ¶ 2. On or about September 12, 2018, Judge Clifford stated on the record that he had instructed Attorney Doyle to ignore or disregard Tyson's "Conditional Acceptance/Negotiable instrument/grievance" document. See id. at 5 ¶ 3. On that same date, Judge Clifford informed Tyson that he would not consider any motions that Tyson might file. See id. at 5 ¶ 4. Tyson generally asserts that Judge Clifford and Attorney Doyle have misapplied statutes and laws and have failed to provide him with "Discovery/Brady material." Id. at 6 ¶ 6, 17–18.

At one point during the criminal proceeding, Judge Clifford issued an order that Tyson could represent himself. See id. at 22. Judge Clifford subsequently attempted to appoint an attorney to represent Tyson even though the attorney had made threats against Tyson in the past. See id.

## III. DISCUSSION

Tyson alleges that the defendants violated his rights under the First, Fifth, Eighth, Ninth and Fourteenth Amendments as well as under sections 241 and 242 of title 18 of the United States Code. See id. at 17–18. Tyson seeks punitive, compensatory, nominal, and exemplary damages, as well as injunctive and declaratory relief. See id. at 6–7.

As a preliminary matter, the court notes that Tyson includes the following additional allegations in the Complaint. The "State of CT has declared me/plaintiff sovereign [f]rom itself, as establish[ed] by law, because I/plaintiff had/has no residency with the state and therefore plaintiff is not only a private man as opposed to a corporate fiction." See id. at 6 ¶ 7. Tyson asserts that he cannot be "named in any statutes" and has "a Reservation of Rights which was made known to all defendants." See id. at 6 ¶¶ 8–10. Tyson contends that, throughout his criminal case, "defendants [have] refuse[d] to adhere to the Supremacy Clause of the United States Supreme Court rulings." See id. at 6 ¶ 5. Tyson signs the Complaint as: "Secured Party, Sui Juris, one of the sovereign people, a private man on the land, non-combatant, an American by birth, and child of the living God, Grantor, Secured Party/Creditor and principal of which 'Rights' existed long antecedent to the Organization of the State and Trustee." Id. at 33. Attached to the Complaint is a document titled "Memorandum of Law with points and Authorities on 'sovereignty' of the people In Relationship to 'Government' of the several Compact De-facto State and the Federal Government." Id. at 25–32.

This language and the title of the attachment to the Complaint suggest that Tyson considers himself a "sovereign citizen." In United States v. Ulloa, 511 F. App'x. 105 (2d Cir. 2013), the Second Circuit described, "sovereign citizens," as "a loosely affiliated group who believe that the state and federal governments lack constitutional legitimacy and therefore have no authority to regulate their behavior." Id. at 107 n.1.

**\*3** Adherents of such claims or defenses "believe that they are not subject to government authority and employ various tactics in an attempt to, among other things, avoid paying taxes, extinguish debts, and derail criminal proceedings." Gravatt v. United States, 100 Fed. Cl. 279, 282 (2011) (citations omitted). Federal courts across the country, however, have routinely refused to

credit arguments based on a redemption, sovereign citizen, or other similar theory because the arguments are often frivolous, irrational and unintelligible. See United States v. Sterling, 738 F.3d 228, 233 n.1 (11th Cir. 2013) (noting that courts have summarily rejected sovereign citizens' legal theories as frivolous); United States v. Benabe, 654 F.3d 753, 767 (7th Cir. 2011) ("Regardless of an individual's claimed status of descent, be it as a sovereign citizen, a secured-party creditor, or a flesh-and-blood human being, that person is not beyond the jurisdiction of the courts. These theories should be rejected summarily, however they are presented.") (internal quotation marks omitted); Charlotte v. Hanson, 433 F. App'x. 660, 661 (10th Cir. 2011) (rejecting the sovereign citizen theory as having no conceivable validity in American law) (citation omitted); United States v. Jagim, 978 F.2d 1032, 1036 (8th Cir. 1992) (holding that "sovereign citizen" argument was "completely without merit" and "patently frivolous"); Akbar v. Clarke, No. 1:15-CV-338(AJT/TCB), 2016 WL 4150456, at *7 (E.D. Va. Aug. 1, 2016) (noting that sovereign citizen claims are "wholly frivolous"); Berman v. Stephens, No. 4:14-CV-860-A, 2015 WL 3622694, at *2 (N.D. Tex. June 10, 2015) (finding that a prisoner's "reliance on the UCC or a so-called 'sovereign citizen' theory that he is exempt from prosecution and beyond the jurisdiction of the state or federal courts is frivolous") (collecting cases); Gaskins v. South Carolina, C/A No. 2:15-cv-2589 DCN, 2015 WL 6464440, at *4 (D.S.C. Oct. 26, 2015) (affirming recommended ruling dismissing as baseless prisoner's claim, premised upon "sovereign citizen" theory, that the state court lacked jurisdiction over her and that her state conviction was therefore void); Paul v. New York, No. 13-CV-5047 (SJF)(AKT), 2013 WL 5973138, at *3 (E.D.N.Y. Nov. 5, 2013) (dismissing complaint as factually and legally frivolous because "[t]he conspiracy and legal revisionist theories of sovereign citizens are not established law in this court or anywhere in this country's valid legal system") (internal quotation marks and citation omitted).

It is apparent that Tyson is claiming that, as a "sovereign citizen," he is not subject to the jurisdiction of the State of Connecticut or the Connecticut Superior Court and that any criminal charges against him must be dismissed. To the extent that he challenges the jurisdiction of the State of Connecticut, its courts, or Judge Clifford, or the authority of the State, through Attorney Doyle, to prosecute him for a criminal offense, based on a "sovereign citizen" theory, the court concludes that the claim lacks an arguable legal basis. Thus, that claim is dismissed. See 28 U.S.C. § 1915A(b)(1). To the extent that Tyson is challenging the conduct of the defendants on other grounds, the court addresses those claims below.

A. Requests for Injunctive and Declaratory Relief

Tyson seeks a declaration that the defendants violated his constitutional and federal protected rights and an injunction directing the defendants to cease and desist from making further contact with him or harassing him in violation of his rights. See Compl. at 7. He includes, an "Order to Show Cause for an Preliminary Injunction and a Temporary Restraining Order," as an attachment to the Complaint, which seeks a court order that the defendants be enjoined from various types of conduct in connection with his state criminal case. See id. at 19–20.

In Younger v. Harris, 401 U.S. 37 (1971), the Supreme Court held that a federal court, except in cases where an injunction is necessary to prevent immediate and irreparable injury to a defendant, should not enjoin a pending state court criminal proceeding. Id. at 45. The doctrine of federal abstention, as outlined in Younger, "is grounded in principles of comity and federalism and is premised on the belief that a state proceeding provides a sufficient forum for federal constitutional claims." Schlagler v. Phillips, 166 F.3d 439, 442 (2d Cir. 1999). It "is not a jurisdictional bar based on Article III requirements, but instead a prudential limitation on the court's exercise of jurisdiction grounded in equitable considerations of comity." Spargo v. New York State Comm'n on Judicial Conduct, 351 F.3d 65, 74 (2d Cir. 2003) (citations omitted).

In Sprint Comm'ns, Inc. v. Jacobs, 571 U.S. 69 (2013), the Supreme Court clarified that courts should abstain under Younger only in three "exceptional circumstances": (1) pending state criminal proceedings; (2) civil enforcement proceedings that are "akin to criminal prosecutions;" and (3) civil proceedings that "implicate a State's interest in enforcing the orders and judgments of its courts." See id. at 72. The court may address the applicability of the Younger abstention doctrine sua sponte. See Catlin v. Ambach, 820 F.2d 588, 591 (2d Cir. 1987) (citing Bellotti v. Baird, 428 U.S. 132, 143 n.10 (1976) ). The Younger doctrine is as applicable to suits for declaratory relief as it is to those for injunctive relief. See Samuels v. Mackell, 401 U.S. 66, 73 (1971) (holding Younger's policy would "be frustrated as much by a declaratory judgment as it would be by an injunction").

Case 6:24-cv-01367-AMN-ML    Document 8    Filed 04/07/25    Page 52 of 186

Tyson v. Clifford, Not Reported in Fed. Supp. (2018)
2018 WL 6727538

**\*4**  It is clear from the Complaint and the State of Connecticut Judicial Branch website, that Tyson's state criminal proceeding stemming from his arrest on March 10, 2016 is ongoing. See State v. Tyson, Case No. NNH-CR16-0165313-T (Conn. Super. Ct. Nov. 30, 2018). If the court were to grant Tyson's request for a court order directing the defendants to dismiss the criminal charges against Tyson, or were to declare that the defendants had violated Tyson's federal constitutional rights in presiding over and prosecuting Tyson's state criminal case, such Orders would interfere with Tyson's pending state criminal proceeding.

There are two exceptions to the Younger abstention doctrine: bad faith and extraordinary circumstances. See Diamond "D" Constr. Corp. v. McGowan, 282 F.3d 191, 197–198 (2d Cir. 2002). Abstention may be inappropriate if "a prosecution or proceeding has been brought to retaliate for or to deter constitutionally protected conduct, or where a prosecution or proceeding is otherwise brought in bad faith or for the purpose to harass." Id. at 199 (internal quotation marks and citation omitted). This exception focuses on the subjective intent or motivation of the state prosecutor who initiates the proceeding. See id. ("A state proceeding that is legitimate in its purposes, but unconstitutional in its execution—even when the violations of constitutional rights are egregious—will not warrant the application of the bad faith exception.") (citation omitted).

The Second Circuit has described the extraordinary circumstances necessary to invoke the second exception to abstention under Younger as circumstances that "render the state court incapable of fairly and fully adjudicating the federal issues before it" and "creat[e] an extraordinarily pressing need for immediate federal equitable relief." Id. at 201 (citation omitted). Application of the extraordinary circumstances exception requires "two predicates ... (1) that there be no state remedy available to meaningfully, timely, and adequately remedy the alleged constitutional violation; and (2) that a finding be made that the litigant will suffer 'great and immediate' harm if the federal court does not intervene." Id. (citation omitted) (emphasis in original).

Tyson has alleged no facts to suggest that the prosecutor initiated the criminal action against him in bad faith or with "no reasonable expectation of obtaining a favorable outcome." Id. at 199 (internal quotation marks and citation omitted). Nor has Tyson alleged the absence of a remedy available in state court to challenge any alleged constitutional violations associated with his criminal prosecution. Tyson is not precluded from challenging any subsequent conviction or sentence on appeal to the Connecticut Appellate and Supreme Courts, filing a habeas petition in the Connecticut Superior Court, and following that, a habeas petition in federal court. Furthermore, Tyson has not alleged that he will suffer imminent harm if this court does not intervene in the ongoing prosecution. See Davis v. Lansing, 851 F.2d 72, 77 (2d Cir. 1988) (holding the burden of defending criminal prosecution is insufficient, without more, to constitute irreparable harm); Saunders v. Flanagan, 62 F. Supp. 2d 629, 635 (D. Conn. 1999) ("That the plaintiff will be forced to defend against a charge of murder in state court does not constitute the extraordinary circumstances resulting in irreparable harm warranting this court to refuse to apply the doctrine of Younger abstention, and no other specific basis of 'extraordinary circumstances' is asserted.").

**\*5**  Because there are no facts alleged to plausibly suggest that either of the narrow exceptions to the Younger abstention doctrine have been met, the court abstains from exercising jurisdiction over the requests for injunctive and declaratory relief seeking intervention in Tyson's ongoing state criminal case. The court therefore dismisses those requests. See 28 U.S.C. § 1915A(b)(1).

B. Request for Money Damages

Tyson seeks $ 1,000,000 in punitive damages from each defendant as well as damages for harassment, mental anguish, anxiety and annoyance, nominal damages and exemplary damages. See Compl. at 6. The court declines to stay this action pending resolution of the state criminal proceeding because Tyson's claims for damages lack arguable legal merit.

1. Judge Clifford

Judges are immune from suit, not just from the ultimate assessment of damages. See Mireles v. Waco, 502 U.S. 9, 11 (1991). This immunity applies even to claims that a judge acted in bad faith, erroneously, maliciously or "in excess of his authority." Id. at 13. "[O]nce a court determines that an official was functioning in a core judicial or prosecutorial capacity, absolute immunity

Tyson v. Clifford, Not Reported in Fed. Supp. (2018)

2018 WL 6727538

Case 6:24-cv-01367-AMN-ML    Document 8    Filed 04/07/25    Page 53 of 186

applies however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff." DiBlasio v. Novello, 344 F.3d 292, 297 (2d Cir. 2003) (citations and internal quotation marks omitted). There are two situations in which judicial immunity may be overcome. A judge is not immune from suit for actions taken outside his judicial capacity or for actions that are judicial in nature but taken in the absence of all jurisdiction. See Mireles, 502 U.S. at 11 (citations omitted).

Tyson alleges that, at times during the pendency of his state criminal case, Judge Clifford has instructed Attorney Doyle not to speak during a pretrial hearing, has either declined to rule on his motions or ruled against him on matters and motions, has disregarded his Acceptance/Negotiable Instrument/Grievance document, has misapplied statutes, and has refused to provide or disclose discovery/exculpatory material to him. See Compl. at 5, 17–18. Tyson complains that, at one point, Judge Clifford permitted him to proceed pro se, but would not rule on his motions. See id. at 22. Tyson suggests that more recently, Judge Clifford has attempted to appoint counsel for him, even though he did not ask for counsel. See id. Tyson claims that the attorney Judge Clifford attempted to appoint for him had threatened Tyson in the past. See id.

Appointing counsel for a party and determining whether to rule on motions, ruling on motions, including motions related to the disclosure of information or evidence, issuing orders regarding documents that have been filed in a case, directing speakers during proceedings, and interpreting and applying statutes constitute judicial acts within the jurisdiction of a state court judge. See Sadler v. Supreme Court of Connecticut, 167 F. App'x 257, 259 (2d Cir. 2006) ("Superior Court Judge White is immune from liability under § 1983 for damages and injunctive relief. Judge White performed a judicial action within his jurisdiction when he determined that Sadler's counsel ... should not be replaced.") (citation omitted); Ashmore v. Prus, No. 13-CV-2796 (JG), 2013 WL 3149458, at *3 (E.D.N.Y. June 19, 2013) ("Making evidentiary rulings is a paradigmatic judicial function."); Book v. Tobin, No. 3:04CV442 (JBA), 2005 WL 1981803, at *2 (D. Conn. Aug. 16, 2005) ("Quintessential judicial acts include presiding over trial proceedings, making evidentiary rulings, issuing jury instructions, and deciding motions, and remain protected by judicial immunity even if the decisions are erroneous, untimely, and in excess of the judge's authority."). There are no allegations that Judge Clifford engaged in actions that were not judicial in nature or were taken in the absence of all jurisdiction. Thus, Judge Clifford is absolutely immune from suit to the extent that Tyson seeks money damages, and those claims against Judge Clifford are dismissed. See 28 U.S.C. § 1915A(b)(2).

### 2. Attorney Doyle

 **\*6**  Tyson alleges that Attorney Doyle is the State's Attorney prosecuting his criminal case in the Connecticut Superior Court for the Judicial District of New Haven. See Compl. at 3, 5. Tyson asserts that Attorney Doyle did not speak during a pretrial hearing, did not respond to motions that he filed in the case, ignored his Acceptance/Negotiable Instrument/Grievance document, misapplied statutes, and refused to disclose discovery/exculpatory material to him. See id. at 5 ¶ 2, 17–18. Tyson contends that, by failing to respond to his motions, Attorney Doyle has consented to the relief sought in those motions, including a motion to dismiss the charges against him. See id. at 20.

A prosecutor is protected by absolute immunity from a section 1983 action "for virtually all acts, regardless of motivation, associated with his function as an advocate." Dory v. Ryan, 25 F.3d 81, 83 (2d Cir. 1994). In Imbler v. Pachtman, 424 U.S. 409 (1976), the Supreme Court held that a state prosecutor was absolutely immune from a civil suit to recover damages under section 1983 because the prosecutor's conduct "in initiating a prosecution and presenting the State's case" were "intimately associated with the judicial phase of the criminal process." Id. at 430–31. If a prosecutor acts in an investigative rather than an adversarial capacity, he or she is not entitled to absolute immunity. See Kalina v. Fletcher, 522 U.S. 118, 125–27 (1997) (holding that prosecutor was not protected by absolute immunity because she was acting as an investigator when she signed a sworn affidavit attesting to the facts supporting an arrest warrant).

Tyson's allegations against Attorney Doyle pertain to his role in prosecuting the criminal case against Tyson. Decisions involving whether to respond to a motion, to argue a matter in a pretrial hearing, or to disclose evidence to a defendant are all part of the preparation of a case for trial. See Shmueli v. City of New York, 424 F.3d 231, 236 (2d Cir. 2005) ("It is by now well established

Tyson v. Clifford, Not Reported in Fed. Supp. (2018)

2018 WL 6727538

that 'a state prosecuting attorney who acted within the scope of his duties in initiating and pursuing a criminal prosecution' 'is immune from a civil suit for damages under § 1983.' ") (quoting Imbler, 424 U.S. at 410, 431); Smith v. Garretto, 147 F.3d 91, 94 (2d Cir. 1998) ("A prosecutor enjoys absolute immunity for acts taken in initiating a prosecution and in presenting the State's case, whether at a trial, a preliminary hearing, or a bail hearing.")(internal citations and quotation marks omitted); Hill v. City of New York, 45 F.3d 653, 661 (2d Cir. 1995) (explaining that prosecutors are "immune for conduct in preparing for those functions; for example, evaluating and organizing evidence for presentation at trial or to a grand jury, or determining which offenses are to be charged") (citation omitted). Thus, Attorney Doyle is immune from this suit.

## ORDERS

The court enters the following Orders:

**(1)** To the extent that Tyson challenges, based on a "sovereign citizen" theory, the jurisdiction of the State of Connecticut to prosecute him for a criminal offense, or the authority of any defendant to be involved in his prosecution, the court concludes that the claim lacks an arguable legal basis and is **DISMISSED**. See 28 U.S.C. § 1915A(b)(1). The claims against Judge Clifford and Attorney Doyle in their individual capacities for money damages are **DISMISSED** on the ground that they are entitled to absolute immunity. See 28 U.S.C. § 1915A(b)(2). The court concludes that it must abstain from exercising jurisdiction over the requests for injunctive and declaratory relief seeking the court's intervention in Tyson's ongoing state criminal case and **DISMISSES** those requests. See 28 U.S.C. § 1915A(b)(1).

***7 (2)** The Clerk is directed to enter judgment for the defendants and close this case. Any appeal from the Ruling dismissing the Complaint would not be taken in good faith. See 28 U.S.C. § 1915(a)(3).

**SO ORDERED.**

## All Citations

Not Reported in Fed. Supp., 2018 WL 6727538

## Footnotes

1     The State of Connecticut Department of Correction's website indicates, however, that Tyson is currently serving a nine-year sentence, imposed on January 25, 2017, for a violation of probation. Information regarding Tyson's current confinement may be found on the State of Connecticut Department of Correction's website under Inmate Search using his CT DOC Inmate Number 253494. See http://portal.ct.gov/DOC.

2     Information regarding this case may be found on the State of Connecticut's Judicial Branch website at: http://www.jud.ct.gov/jud2.htm under Superior Court Case Look-up; Criminal/Motor Vehicle; Pending Case – Search by Defendant – using plaintiff's last name and first initial of his first name - Tyson, D. (Last visited on December 19, 2018). The court notes that Tyson has filed another federal lawsuit against the victim of the alleged offenses for which he was arrested on March 10, 2016, as well as the police officers who arrested him. See Tyson v. Doe, et al., Case No. 3:17cv731(JCH). The court has stayed that action pending resolution of Tyson's state criminal case. See id. (Ruling on Mot. to Intervene or Stay Discovery, Doc. No. 133).

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 2291701
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Jennifer Lynn DEES and Ethan Davis Smith, Plaintiffs,

v.

Michael ZURLO, et al., Defendants.

1:24-CV-1 (MAD/DJS)
|
Signed May 21, 2024

**Attorneys and Law Firms**

JENNIFER LYNN DEES and ETHAN DAVIS SMITH, 16 Grant Hill Road, Clifton Park, New York 12065, Plaintiffs, pro se.

**MEMORANDUM-DECISION AND ORDER**

Mae A. D'Agostino, United States District Judge:

**I. INTRODUCTION**

**\*1** On January 2, 2024, Plaintiffs Jennifer Lynn Dees and Ethan Davis Smith commenced this action, *pro se*, against fifty-three Defendants. *See* Dkt. No. 1. In their 170-page complaint, Plaintiffs allege that Defendants have deprived them of various constitutional rights because of Defendants' roles and involvement in state-court custody, support, and/or criminal disputes. *See id.* Plaintiffs submitted applications to proceed *in forma pauperis* ("IFP") and for leave to file electronically. *See* Dkt. Nos. 2, 3, 4, 5.

On March 11, 2024, Magistrate Judge Daniel J. Stewart issued an Order granting Plaintiffs' IFP motions. *See* Dkt. No. 11. Magistrate Judge Stewart also issued a Report-Recommendation and Order reviewing Plaintiffs' complaint pursuant to 28 U.S.C. § 1915(e) and recommending that the complaint be dismissed. *See* Dkt. No. 12. He also ordered that Plaintiffs be denied leave to file electronically. *See id.*

Plaintiffs objected to every single aspect of the Report-Recommendation and Order. *See* Dkt. No. 13.[1] "Generally, when a *specific* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to a *de novo* review." *Boice v. M+W U.S., Inc.*, 130 F. Supp. 3d 677, 683 (N.D.N.Y. 2015) (citing FED. R. CIV. P. 72(b)(2); 28 U.S.C. § 636(b)(1)(C)). "To be 'specific,' the objection must, with particularity, 'identify [1] the portions of the proposed findings, recommendations, or report to which it has an objection and [2] the basis for the objection.' " *Id.* (quoting N.D.N.Y. L.R. 72.1(c)) (footnote omitted). "When only a *general* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review." *Id.* at 684 (citations omitted). "Similarly, when an objection merely reiterates the same arguments made by the objecting party in its original papers submitted to the magistrate judge, the Court subjects that portion of the report-recommendation challenged by those arguments to only a *clear error* review." *Id.* (footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

As Plaintiffs are proceeding *pro se*, the Court must review their complaint under a more lenient standard. *See Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2003). The Court must "make reasonable allowances to protect *pro se* litigants from

inadvertent forfeiture of important rights because of their lack of legal training." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983). Thus, "a document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.' " *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "Although the court has the duty to show liberality towards pro se litigants, ... there is a responsibility on the court to determine that a claim has some arguable basis in law before permitting a plaintiff to proceed with an action in forma pauperis. *Moreman v. Douglas*, 848 F. Supp. 332, 333-34 (N.D.N.Y. 1994) (internal citations omitted).

## II. BACKGROUND

 **\*2**  Plaintiffs summarize their claims at the beginning of their complaint as allegations against "a broad spectrum of governmental entities and private defendants" including judges, attorneys, family members, the Saratoga County Sheriff's Office, district attorneys' offices, departments of social service, Warren County, Saratoga County, and the City of Mechanicville. Dkt. No. 1 at ¶ 2. The complaint concerns New York State Family Court and County Court proceedings and events related to custody and supervision of Plaintiff Smith's children. The proceedings are primarily between Plaintiff Smith and Defendant Veronica Smith—the mother of his children. Plaintiff Dees is Plaintiff Smith's partner. Plaintiffs allege that the Defendants engaged in a conspiracy to violate their constitutional rights as well as Plaintiff Smith's rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, *et seq.*, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

For a fuller recitation of the relevant background information, the Court refers to Plaintiffs' complaint and Magistrate Judge Stewart's Report-Recommendation and Order. *See generally* Dkt. No. 1; *see also* Dkt. No. 12 at 4-5.

## III. DISCUSSION

### A. *Rooker-Feldman* Doctrine

In his Report-Recommendation and Order, Magistrate Judge Stewart first addressed the *Rooker-Feldman* doctrine, under which federal courts are divested of jurisdiction over claims that seek to overrule state court determinations. *See* Dkt. No. 12 at 8-9; *see also Green v. Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009). Magistrate Judge Stewart concluded that because Plaintiffs' complaint seeks to overturn state-court custody and support decisions, the Court's review of Plaintiffs' claims is barred by the *Rooker-Feldman* doctrine. *See* Dkt. No. 12 at 8. Plaintiffs object, arguing that because they have appealed the state court decisions, and those appeals have not been decided, the *Rooker-Feldman* doctrine does not apply. *See* Dkt. No. 13 at 1-3.

"The Supreme Court has explained that *Rooker-Feldman* bars 'a party losing in state court ... from seeking what in substance would be appellate review of the state judgment in a United States district court.' " *Hunter v. McMahon*, 75 F.4th 62, 67 (2d Cir. 2023) (quoting *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994)). "*Rooker-Feldman* 'is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.' " *Id.* at 67-68 (quotation omitted). "The doctrine 'does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions.' " *Id.* at 68 (quotation omitted).

The doctrine " 'applies only in limited circumstances where a party in effect seeks to take an appeal of an unfavorable state-court decision to a lower federal court.' " *Id.* (quoting *Lance v. Dennis*, 546 U.S. 459, 466 (2006)). In adopting "the unanimous position of every other circuit court to address it[,]" the Second Circuit in *Hunter* held that "[i]f a federal-court plaintiff's state-court appeal remains pending when she files her federal suit, the state-court proceedings have not ended and *Rooker-Feldman* does not apply." *Id.* at 70 (quoting *Butcher v. Wendt*, 975 F.3d 236, 246 (2d Cir. 2020) (Menashi, J., concurring in part and concurring in the judgment)).

2024 WL 2291701

In their objections, Plaintiffs list eight "currently pending" appeals. Dkt. No. 13 at 1-2. The relevant inquiry is whether those appeals were pending when they filed their complaint with this Court on January 2, 2024. *See* Dkt. No. 1; *see also Hunter*, 75 F.4th at 71 (quoting *E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.*, 241 F.3d 154, 163 (2d Cir. 2001)) ("[F]ederal courts 'assess[ ] jurisdiction ... as of the moment the complaint was filed' "). Upon the Court's review of the state court dockets, seven of the eight appeals that Plaintiffs list were pending at the time they filed their complaint in this Court. *See Smith v. Smith*, CV-23-1726 (3d Dep't 2023); *Smith v. Smith*, CV-23-1805 (3d Dep't 2023); *Veronica LL. v. Ethan LL.*, CV-23-1874 (3d Dep't 2023); *Smith v. Smith*, CV-23-1265 (3d Dep't 2023); *Smith v. Smith*, CV-23-1642 (3d Dep't 2023); *Matter of Smith v. Smith*, CV-23-2087 (3d Dep't 2023); *Matter of Smith v. Smith*, CV-23-2195 (3d Dep't 2023); *Matter of Ethan LL v. Veronica LL*, CV-24-0306 (3d Dep't 2024). Plaintiffs also contend that their "Article 78 action CV-23-1727, against multiple defendants still remains open." Dkt. No. 13 at 2. Upon the Court's search of that case number in the New York State Unified Court System Electronic Filing System, it appears that the final entry is an "order" dated November 21, 2023. *See Ethan Smith et al. v. Karen Heggen et al.*, CV-23-1727 (3d Dep't 2023), Dkt. No. 36. The Court is unable to view the document as it is sealed. *See id.* Plaintiffs do not contend that they appealed this "order" from the Appellate Division.

**\*3**  To the extent Plaintiffs have not appealed Supreme Court, Family Court, or Appellate Division decisions, and such decisions are final, the *Rooker-Feldman* doctrine precludes the Court's consideration of the decisions in which Plaintiffs lost. Insofar as appeals are pending in the Appellate Division from Supreme Court or Family Court decisions, Plaintiffs are correct that the *Rooker-Feldman* doctrine does not apply. *See Hunter*, 75 F.4th at 67-71. However, even where the *Rooker-Feldman* doctrine does not apply, as thoroughly set forth in Magistrate Judge Stewart's Report-Recommendation and Order, Plaintiffs' complaint must be dismissed on numerous other grounds.

## B. *Younger* Abstention

Magistrate Judge Stewart next addressed the *Younger* abstention doctrine which mandates that federal courts abstain from interfering in claims seeking declaratory or injunctive relief over ongoing state proceedings. *See* Dkt. No. 12 at 10 (citing *Younger v. Harris*, 401 U.S. 37, 43-44 (1971)). Magistrate Judge Stewart explained that *Younger* abstention does not apply to claims seeking only monetary relief, as Plaintiffs do in this case, but noted that the doctrine implicates "domestic relations" abstention, which "is based upon a policy dictating that the states have traditionally adjudicated marital and child custody disputes, developing 'competence and expertise in adjudicating such matters,' which the federal courts lack.' " Dkt. No. 12 at 10 (quoting *Thomas v. N.Y. City*, 814 F. Supp. 1139, 1146 (E.D.N.Y. 1993)).

Plaintiffs objected, arguing that they are not seeking declaratory or injunctive relief, so *Younger* abstention does not apply. *See* Dkt. No. 13 at 5. Plaintiffs contends that "[t]he principle of Younger abstention typically applies in scenarios where significant state interests are at stake and does not extend to precluding federal jurisdiction merely due to possible inconsistencies with state court rulings." *Id.* at 6.

*Younger* demands that

federal courts [ ] decline to exercise jurisdiction in three [ ] exceptional categories of cases: "First, *Younger* preclude[s] federal intrusion into ongoing state criminal prosecutions. Second, certain civil enforcement proceedings warrant[ ] abstention. Finally, federal courts [must] refrain[ ] from interfering with pending civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions."

*Trump v. Vance*, 941 F.3d 631, 637 (2d Cir. 2019), *aff'd and remanded*, 591 U.S. 786 (2020) (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013)). "*Younger* abstention is [ ] an 'exception to th[e] general rule' that 'a federal court's obligation to hear and decide a case is virtually unflagging,' ... and the doctrine is also subject to exceptions of its own in cases of bad faith, harassment, or other 'extraordinary circumstances.' " *Id.* (quotations omitted). "[T]he *Younger* doctrine is inappropriate where the litigant seeks money damages for an alleged violation of § 1983." *Rivers v. McLeod*, 252 F.3d 99, 101-02 (2d Cir. 2001).

The Second Circuit, in *American Airlines, Inc. v. Block*, 905 F.2d 12, 14 (2d Cir. 1990), explained that "[a]lthough matrimonial actions may ordinarily be instituted in federal court on diversity grounds, the Supreme Court in *Barber v. Barber*, 62 U.S. ... 582, 584 ... (1859), went so far as to disclaim all federal subject matter jurisdiction for some classes of matrimonial actions." *Id.* This is known as the domestic relations exception to federal jurisdiction, *i.e.*, federal courts should not exercise jurisdiction over matrimonial actions brought under diversity grounds. "[H]owever, the scope of this matrimonial exception to federal jurisdiction is 'rather narrowly confined,' ... only 'where a federal court is asked to grant a divorce or annulment, determine support payments, or award custody of a child' does it generally decline jurisdiction pursuant to the matrimonial exception." *Id.* (quotations omitted). The Second Circuit, in *American Airlines*, expanded the domestic relations exception, noting that "even if subject matter jurisdiction lies over a particular matrimonial action, federal courts may properly abstain from adjudicating such actions in view of the greater interest and expertise of state courts in this field." *Id.* "A federal court presented with matrimonial issues or issues 'on the verge' of being matrimonial in nature should abstain from exercising jurisdiction so long as there is no obstacle to their full and fair determination in state courts." *Id.* (citations omitted). This is known as the domestic relations abstention doctrine. *See Deem v. DiMella-Deem*, 941 F.3d 618, 621 (2d Cir. 2019) ("Although the domestic relations '*exception*' to subject matter jurisdiction ... does not apply in federal-question cases, the domestic relations *abstention* doctrine articulated in *American Airlines* does").

**\*4**  The abstention doctrine has been utilized across the country by federal courts removing themselves from considering a state court domestic relations matter. *See Deem*, 941 F.3d at 623 (collecting cases) (citing, *inter alia, DeMauro v. DeMauro*, 115 F.3d 94, 99 (1st Cir. 1997) ("[A]bstention by use of a stay may be permissible where a RICO action is directed against concealment or transfer of property that is the very subject of a pending divorce proceeding")); *see also Falco v. Justs. of the Matrimonial Parts of Supreme Ct. of Suffolk Cnty.*, 805 F.3d 425, 427 (2d Cir. 2015) (quotation omitted) ("[W]e independently conclude that Falco's case presents circumstances that qualify as 'exceptional' under *Sprint* and that *Younger* abstention was therefore warranted. Falco's federal lawsuit implicates the way that New York courts manage their own divorce and custody proceedings—a subject in which 'the states have an especially strong interest' ").

Here, "the domestic relations *exception* clearly does not apply to this case because it is 'before this Court on federal question jurisdiction, not diversity.' " *Deem*, 941 F.3d at 623 (quoting *Williams v. Lambert*, 46 F.3d 1275 (2d Cir. 1995)) (emphasis added). However, *abstention* is appropriate because Plaintiffs' complaint concerns family court disputes over custody, visitation, and protective orders. *See Reeves v. Reeves*, No. 22-CV-2544, 2022 WL 1125267, *1 (S.D.N.Y. Apr. 14, 2022); *Stumpf v. Maywalt*, 605 F. Supp. 3d 511, 518 (W.D.N.Y. 2022); *Dasler v. Knapp*, No. 2:21-CV-135, 2023 WL 8354441, *9 (D. Vt. Oct. 13, 2023).

Plaintiffs are correct that abstention is usually exercised in scenarios where significant state interests are at stake. *See* Dkt. No. 13 at 6; *see also Sprint*, 571 U.S. at 72-73. This is such a case because states are traditionally tasked with addressing domestic matters. *See Deem*, 941 F.3d at 624 (quoting *In re Burrus*, 136 U.S. 586, 593-94 (1890)) ("[T]he existence of a distinct abstention doctrine for certain domestic relations disputes is supported by the Supreme Court's longstanding recognition — in a non-diversity case involving a child custody dispute — that '[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states, and not to the laws of the United States' "); *see also Amato v. McGinty*, No. 1:17-CV-593, 2017 WL 9487185, *10 (N.D.N.Y. June 6, 2017). Thus, the Court will abstain from exercising jurisdiction over Plaintiffs' complaint insofar as it concerns state court domestic relations matters.

**C. RICO Claims**

Magistrate Judge Stewart concluded that Plaintiffs failed to set forth a cognizable claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*, because, as explained in *Kim v. Kimm*, 884 F.3d 98 (2d Cir. 2018), RICO cannot be used to address litigation activity. *See* Dkt. No. 12 at 11-14. Plaintiffs object, arguing that *Kim* is inapplicable because that case involved a single instance of litigation activity, whereas their case concerns "actions [that] have been concertedly executed over a period of four years." Dkt. No. 13 at 7. Plaintiffs rely on Fifth and Eleventh Circuit caselaw to argue that their claims support a RICO violation. *See id.* at 6-7. Plaintiffs also contend that Magistrate Judge Stewart's decision

supports their assertion of corruption in the judiciary because he took sixty-nine days to issue his Report-Recommendation and Order "as opposed to the swifter resolutions typically observed in cases under the same magistrate." *Id.* at 8.

As an initial matter, Plaintiffs' reliance on out-of-circuit case law is not binding on this Court. *See Goldstein v. Pro. Staff Cong./ CUNY*, 643 F. Supp. 3d 431, 443, n.6 (S.D.N.Y. 2022), *aff'd*, 96 F.4th 345 (2d Cir. 2024) (discussing "vertical stare decisis"). Further, the Court finds no error in the time Magistrate Judge Stewart took to issue his Report-Recommendation and Order. Magistrate Judge Stewart was tasked with reviewing a 170-page complaint and a forty-eight-page RICO statement. *See* Dkt. Nos. 1, 9. A two-month time frame to do so is not inappropriate, let alone conspiratorial, where Magistrate Judge Stewart must balance a heavy case load.

 **\*5** As to the substance of Plaintiffs' RICO claims and their objections, Plaintiffs are correct that *Kim* concerned one federal litigation alleged to be conspiratorial. *See Kim*, 884 F.3d at 101-02. In that case, the Second Circuit specifically "decline[d] to reach the issue of whether all RICO actions based on litigation activity are categorically meritless." *Id.* at 105. Rather, the Second Circuit held only that "where ... a plaintiff alleges that a defendant engaged in a single frivolous, fraudulent, or baseless lawsuit, such litigation activity alone cannot constitute a viable RICO predicate act." *Id.*

The Second Circuit distinguished *Sykes v. Mel Harris & Assocs., LLC*, 757 F. Supp. 2d 413 (S.D.N.Y. 2010) wherein the court allowed a RICO claim to proceed because the plaintiff pled "a pattern of racketeering activity that included 'at least twenty allegedly fraudulent statements and eighteen acts involving use of the mail and wires over three years, in furtherance of the alleged fraud.' " *Kim*, 884 F.3d at 105 (quoting *Sykes*, 757 F. Supp. 2d at 425). This court has also noted that "the Second Circuit decision in *United States v. Eisen*, 974 F.2d 246 (2d Cir. 1992), allows RICO claims based on abusive litigation tactics involving conduct external to any of the particular disputes between the litigants in improperly filed and litigated civil actions." *Carroll v. U.S. Equities Corp.*, No. 1:18-CV-667, 2020 WL 11563716, *9 (N.D.N.Y. Nov. 30, 2020).

The Court concludes that *Kim* does not automatically preclude Plaintiffs' purported RICO claim just because Plaintiffs' complaint concerns litigation activity as the alleged activity is conduct occurring over four years and dozens of individuals. However, Magistrate Judge Stewart did not state that such preclusion was automatic. Rather, he applied the "reasons" and "principle[s]" set forth by *Kim* to Plaintiffs' complaint. Dkt. No. 12 at 12-13. The Court agrees with such application.

"To state a claim for RICO conspiracy under § 1962(d), the plaintiff must also 'allege the existence of an agreement to violate RICO's substantive provisions.' " *Butcher v. Wendt*, 975 F.3d 236, 241 (2d Cir. 2020) (quoting *Williams v. Affinion Grp., LLC*, 889 F.3d 116, 124 (2d Cir. 2018)); *see also First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159, 164 (2d Cir. 2004) (concluding that where the plaintiffs failed to "adequately allege a substantive violation of RICO," the district court properly dismissed allegations of "a RICO conspiracy in violation of 18 U.S.C. § 1962(d)"); *Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1064 (2d Cir. 1996), *as corrected*, 93 F.3d 1055 (2d Cir. 1996) ("Since we have held that the prior claims do not state a cause of action for substantive violations of RICO, the present claim does not set forth a conspiracy to commit such violations").

"To state a claim of a substantive RICO violation under § 1962(c), a plaintiff must allege, among other things, two or more predicate acts 'constituting a pattern' of 'racketeering activity.' " *Butcher*, 975 F.3d at 241 (quoting *Williams*, 889 F.3d at 124). "The RICO statutory scheme defines 'racketeering activity' to include 'a host of criminal offenses, which are in turn defined by federal and state law.' " *Curtis & Assocs., P.C. v. L. Offs. of David M. Bushman, Esq.*, 758 F. Supp. 2d 153, 168 (E.D.N.Y. 2010), *aff'd*, 443 Fed. Appx. 582 (2d Cir. 2011) (quoting *Cofacredit, S.A. v. Windsor Plumbing Supply Co. Inc.*, 187 F.3d 229, 242 (2d Cir. 1999)). "Specifically, the RICO statute defines 'racketeering activity' as including any 'act' indictable under various specified federal statutes, including the mail and wire fraud statutes." *Id.* (quoting 18 U.S.C. § 1961(1)). " 'Pattern' is defined by the statute as 'at least two acts of racketeering activity' within a ten-year period." *Id.* (quoting 18 U.S.C. § 1961(5)).

 **\*6** In their RICO statement, Plaintiffs allege that Defendants violated 18 U.S.C. §§ 1341 (relating to mail fraud), 1343 (relating to wire fraud), 1344 (relating to financial institution fraud), 1503 (relating to financial institution fraud), 1510 (relating to

2024 WL 2291701

obstruction of criminal investigations), 1513 (relating to retaliating against a witness, victim, or an informant), and 1951 (relating to interference with commerce, robbery, or extortion). *See* Dkt. No. 9 at 18-19.

Plaintiffs' complaint and statement fail to sufficiently allege these predicate acts. Plaintiffs allege that Defendants committed mail fraud "by a series of fraudulent support collection letters" which "were issued despite knowledge of fraud and without proper investigation into the claims." Dkt. No. 9 at 22. They contend that Defendants committed wire fraud and financial institution fraud by sending bills and enforcing child support collection orders. *See id.* Plaintiffs state that they have been mailed fraudulent protection orders. *See id.* at 23. They aver that they were e-mailed "fraudulent legal documents including affirmations, affidavits, and protection orders." *Id.* at 25. Plaintiffs also allege that "Defendants each obstructed justice by interfering in state court matters ostensibly to undermine the plaintiff's federal court case and hinder U.S. attorneys' investigations." *Id.* at 19. They state that Defendants have obstructed justice by "tampering with trial proceedings and witnesses, failing to file pertinent motions into the court record, and deliberately withholding compliance with legally mandated FOIL requests." *Id.* at 20-21. Plaintiffs allege that Defendants "engaged in coercive and illicit practices to extort payments from the plaintiff. The purported extortion involved the utilization of duress, public denigration, threats of incarceration, the manipulation of child custody, tolerance of ongoing abuse, initiation of vindictive charges and protective orders, unlawful intimidation, and the fabrication of federal crime accusations." *Id.* at 21.

Although *Kim* concerned only a single litigation, the principles underlying the Second Circuit's decision are applicable to Plaintiffs' claims because their claims stem entirely from state family and criminal court proceedings. Allowing such claims to be the base underlying RICO violations "would erode the principles undergirding the doctrines of res judicata and collateral estoppel, as such claims frequently call into question the validity of documents presented in the underlying litigation as well as the judicial decisions that relied upon them." *Kim*, 884 F.3d at 104 (quotation omitted).

The allegations in Plaintiffs' complaint and RICO statement are similar to those in cases which have not allowed a RICO claim to proceed where the allegations concern only litigation activity. Plaintiffs have not alleged any conduct that is unrelated to state-court litigation. *See Wang v. Yien-Koo King*, No. 18-CV-8948, 2019 WL 1763230, *7 (S.D.N.Y. Apr. 22, 2019) ("[B]ecause the Court has held that [the p]laintiffs have not adequately alleged RICO claims premised on the sale of restrained artwork or the proceedings in probate court, [the p]laintiffs' RICO claim would be rooted solely in litigation-related mail or wire fraud predicates -- specifically, the use of mail and wires in filing legal documents"); *Weaver v. New York State Off. of Ct. Admin.*, No. 22-CV-559, 2023 WL 2500390, *9 (N.D.N.Y. Mar. 14, 2023); *Rajaratnam v. Motley Rice, LLC*, 449 F. Supp. 3d 45, 69 (E.D.N.Y. 2020); *Robinson v. Vigorito, Barker, Patterson, Nichols & Porter, LLP*, No. 19-CV-2914, 2019 WL 13417190, *3 (E.D.N.Y. July 31, 2019); *Verschleiser v. Frydman*, No. 22-CV-7909, 2023 WL 5835031, *13 (S.D.N.Y. Sept. 7, 2023) (citing, *inter alia, Curtis & Assocs., P.C. v. L. Offs. of David M. Bushman, Esq.*, 758 F. Supp. 2d 153, 174 (E.D.N.Y. 2010); *Daddona v. Gaudio*, 156 F. Supp. 2d 153, 161-62 (D. Conn. 2000)).

 **\*7**  Plaintiffs' complaint is also distinguishable from cases where RICO claims have been permitted to proceed. For example, in *Carroll*, the plaintiff alleged that the defendants initiated thousands of lawsuits against the plaintiff and unnamed individuals for fraudulent debts in order to recover monetary default judgments. *Carroll*, 2020 WL 11563716, at *3. The court noted that many acts as alleged by the plaintiff "involved matters beyond proper legal representation and went beyond any of the particular disputes between the litigants" "such as buying uncollectable debts that lacked proof that the debts were owed, conspiring to use a process serving firm that engaged in sewer service to ensure that defendants would not contest the debt-collection actions, using an individual who filed false affidavits of merit in every case, and pressuring defendants to compromise on illegally obtained default judgments were actions external to the individual suits in the state courts." *Id.* at *9. The court concluded that the "case is more closely aligned with *Sykes* than *Kim*." *Id.* In *Sykes*, "[t]he gravamen of [the] racketeering activity was not so much litigation activities, as it was the use of courts to obtain default judgments en masse against defendants who had not been served. The 'litigations' in *Sykes* were mere perfunctory steps to cash in on a portfolio of defaulted debts." *Rajaratnam*, 449 F. Supp. 3d at 71; *see Sykes*, 757 F. Supp. 2d at 425.

Here, the gravamen of Plaintiffs' complaint concerns state court litigation. There are no allegations in either the complaint or RICO statement that are entirely unrelated to litigation. The Defendants are judges, attorneys, law firms, or the mother of Plaintiff Smith's children—who is the primary adversary in the state court cases. Allowing a RICO violation to proceed under these circumstances would, as the Second Circuit cautioned against, " 'chill litigants and lawyers and frustrate the well-established public policy goal of maintaining open access to the courts' because 'any litigant's or attorney's pleading and correspondence in an unsuccessful lawsuit could lead to drastic RICO liability.' " *Kim*, 884 F.3d at 105 (quotation omitted). Thus, the Court concludes that Plaintiffs' complaint fails to state a cognizable RICO claim.

### D. Absolute Judicial Immunity

Plaintiffs seek to bring claims under 42 U.S.C. §§ 1983 and 1985 for alleged constitutional violations against numerous state court judges: Defendants Paul Pelagalli, John Ellis, Jeffrey Wait, Felix Catena, Dianne Freestone, James Murphy, and Elizabeth Garry. *See* Dkt. No. 1 at ¶¶ 24-47. Magistrate Judge Stewart correctly explained that judges are typically immune from such actions. *See* Dkt. No. 12 at 14. Plaintiffs object, arguing that the judicial Defendants' conduct, as outlined in the complaint, constitutes "a significant departure from their judicial responsibilities." Dkt. No. 13 at 11.

"Absolute immunity for judges is 'firmly established' for acts 'committed within their judicial jurisdiction.' " *Peoples v. Leon*, 63 F.4th 132, 138 (2d Cir. 2023) (quoting *Cleavinger v. Saxner*, 474 U.S. 193, 199-200 (1985)). "Absolute immunity for a judge performing his or her judicial functions is conferred in order to insure 'that a judicial officer, in exercising the authority vested in him shall be free to act upon his own convictions, without apprehension of personal consequences to himself.' " *Libertarian Party of Erie Cnty. v. Cuomo*, 970 F.3d 106, 123 (2d Cir. 2020), *abrogated on other grounds by New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022) (quoting *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009)). "Entitlement to absolute immunity does not depend on the individual's title or on the office itself.... A judge may perform tasks that are not essentially judicial, such as supervising and managing court employees, which do not warrant absolute immunity ...; on the other hand, such immunity may be warranted for a person who is not a judge but whose duties are quasi-judicial." *Id.* at 124 (citations omitted). "Judicial acts principally involve adjudication of particularized, existing issues." *Id.* "Thus, some functions may be viewed as judicial acts when performed in the context of a particular case but as administrative when performed for the purpose of overall management in anticipation of future cases." *Id.*

**\*8** "In determining a jurisdictional issue that depended on 'whether a particular proceeding before another tribunal was truly judicial,' ... the Supreme Court stated that the form of the proceeding is less significant than the proceeding's nature and effect." *Id.* (quoting *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476 n.13, 478 (1983)). "Judicial immunity is overcome in only two circumstances: (1) 'a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity'; and (2) 'a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction.' " *McCluskey v. Roberts*, No. 20-4018, 2022 WL 2046079, \*5 (2d Cir. June 7, 2022) (quoting *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991)).

Plaintiffs' allegations against the judicial Defendants stem entirely from the judge's orders and decisions or conduct in controlling their courtroom. *See* Dkt. No. 1 at ¶¶ 24-47. Although Plaintiffs disagree with the judge's actions or inactions related to protective orders, custody orders, and court proceedings, those actions are entirely within the scope of the judges' jurisdiction. Plaintiffs have not presented more than conclusory allegations to establish that the judicial Defendants were acting absent all jurisdiction. They are, therefore, entitled to absolute immunity for that conduct. *See, e.g., King v. New York State*, No. 23-CV-3421, 2023 WL 5625440, \*4 (E.D.N.Y. Aug. 31, 2023); *Wilkins v. Soares*, No. 8:20-CV-00116, 2020 WL 5238598, \*4 (N.D.N.Y. May 27, 2020); *Viola v. Bryant*, No. 3:17-CV-00853, 2017 WL 2676407, at \*4 (D. Conn. June 21, 2017); *Topolski v. Wrobleski*, No. 5:13-CV-0872, 2014 WL 2215761, \*5 (N.D.N.Y. May 29, 2014).

#### 1. Sovereign Immunity

As an alternative to absolute judicial immunity, Magistrate Judge Stewart explained in a footnote that the judicial Defendants were also protected by sovereign immunity. *See* Dkt. No. 12 at 18, n.3. Plaintiffs object to the application of sovereign immunity because "their allegations are distinctly targeted at the defendants in their personal capacities." Dkt. No. 13 at 21.

"The Eleventh Amendment states: 'The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.' " *Gollomp v. Spitzer*, 568 F.3d 355, 365 (2d Cir. 2009) (quoting U.S. Const. amend. XI). "[T]he Eleventh Amendment means that, 'as a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity,' or unless Congress has 'abrogate[d] the states' Eleventh Amendment immunity when acting pursuant to its authority under Section 5 of the Fourteenth Amendment.' " *Id.* at 366 (quoting *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006)).

"The Unified Court System, or 'UCS,' is the name for the entire New York State judiciary. *T.W. v. New York State Bd. of L. Examiners*, 996 F.3d 87, 95 (2d Cir. 2021). "[A] lawsuit against the Unified Court System is 'in essence one for the recovery of money from the state, [so that] the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit.' " *Gollomp*, 568 F.3d at 368 (quotation omitted). As Magistrate Judge Stewart explained, the Second Circuit has recently reaffirmed the application of Eleventh Amendment sovereign immunity to New York State judges. *See* Dkt. No. 12 at 18, n.3 (citing *Bythewood v. New York*, No. 22-CV-2542, 2023 WL 6152796, *1 (2d Cir. Sept. 21, 2023) ("We agree with the district court that Bythewood's claims against the State of New York and the Judicial Defendants are barred by Eleventh Amendment sovereign immunity")).

 **\*9**  As the Court has already concluded that the judicial Defendants were acting within their roles as judges, the Court concludes that they are entitled to sovereign immunity. To the extent Plaintiffs argue that they seek to sue the judicial Defendants in only their individual capacities, such claims "are [ ] barred by absolute judicial immunity." *Bythewood*, 2023 WL 6152796, at \*2.

### *2. Court Attorney*

Magistrate Judge Stewart concluded that Defendant Karla Conway, Judge Pelagalli's court attorney, is also entitled to absolute judicial immunity. *See* Dkt. No. 12 at 19. In Plaintiffs' objections, they state that Conway was "acting beyond her judicial capacity and outside her jurisdiction by orchestrating these unauthorized hearings and issuing void orders when she had no legal authority to do so." Dkt. No. 13 at 14.

Law clerks and court attorneys are entitled to absolute immunity. *See Jackson v. Pfau*, 523 Fed. Appx. 736, 737-38 (2d Cir. 2013) (affirming dismissal of Section 1983 claims against judicial law clerk, the N.Y.S. Chief Administrative Judge, court attorneys, and the Chief Clerks of several state courts, finding that the "defendants were entitled to judicial immunity[ ] because [the] allegations against each of them concerned actions that were judicial in nature or closely related to the judicial process"); *see also Gollomp*, 568 F.3d at 365; *Fishman v. Off. of Ct. Admin. New York State Cts.*, No. 18-CV-282, 2020 WL 1082560, *6 (S.D.N.Y. Mar. 5, 2020), *aff'd*, No. 20-1300, 2021 WL 4434698 (2d Cir. Sept. 28, 2021).

Plaintiffs' allegations against Conway relate solely to "orders and statements in court." Dkt. No. 1 at ¶ 122. Although Plaintiffs argue otherwise, their allegations relate entirely to work performed as an extension of Judge Pelagalli such that Conway is entitled to absolute immunity.

### E. Quasi-Judicial Immunity

Magistrate Judge Stewart next addressed the claims against court-appointed psychologists—Defendants O'Connor and Bashkoff, and court-appointed attorneys for Plaintiff Smith's children—Defendants Carbone, Tastensen, and Corey-Mongue. *See* Dkt. No. 12 at 19-20. Magistrate Judge Stewart concluded that the psychologists and attorneys were entitled to quasi-judicial immunity. *See id.*

Plaintiffs argue that the psychologists should not be entitled to immunity because of "their active participation in a conspiracy." Dkt. No. 13 at 22. Similarly, Plaintiffs contend that the attorneys should not be afforded immunity because of "their repeated violations of constitutional rights and legal statutes." *Id.* at 23. Plaintiffs state that the "attorneys actively campaign and participate in fundraisers for judges who oversee their appointments and approve their billings." *Id.* [2]

 **\*10**  "A private actor may be afforded the absolute immunity ordinarily accorded judges acting within the scope of their jurisdictions if his role is 'functionally comparable' to that of a judge, ... or if the private actor's acts are integrally related to an ongoing judicial proceeding." *Mitchell v. Fishbein*, 377 F.3d 157, 172 (2d Cir. 2004) (quoting *Butz v. Economou*, 438 U.S. 478, 513, (1978); citing *Scotto v. Almenas*, 143 F.3d 105, 111012 (2d Cir. 1998); *Dorman v. Higgins*, 821 F.2d 133, 136-38 (2d Cir. 1987)) (additional quotation marks omitted).

The Second Circuit has affirmed application of quasi-judicial immunity to a "law guardian and her director." *Yapi v. Kondratyeva*, 340 Fed. Appx. 683, 685 (2d Cir. 2009). This is because law guardians or attorneys for children serve "serve[ ] as an 'arm of the court,' or act[ ] as an 'integral part[ ] of the judicial process.' " *Holland v. Morgenstern*, 12-CV-4870, 2013 WL 2237550, \*4 (E.D.N.Y. May 20, 2013) (quoting *Scotto v. Almenas*, 143 F.3d 105, 111 (2d Cir. 1998)). The same can be said for court-appointed psychologists. *See Vargas v. Mott*, No. 21-CV-6165, 2022 WL 3236744, \*3 (W.D.N.Y. July 13, 2022) ("[P]sychiatrists who perform court-ordered examinations enjoy absolute quasi-judicial immunity"). Because these Defendants were appointed by the court and performing court-related functions, they are afforded quasi-judicial immunity. *See Cherner v. Westchester Jewish Cmty. Servs., Inc.*, No. 20-CV-8331, 2022 WL 596074, \*4 (S.D.N.Y. Feb. 28, 2022), *aff'd*, No. 22-642, 2022 WL 17817882 (2d Cir. Dec. 20, 2022); *Wilson v. Wilson-Polson*, No. 09-CV-9810, 2010 WL 3733935, \*7 (S.D.N.Y. Sept. 23, 2010), *aff'd*, 446 Fed. Appx. 330 (2d Cir. 2011); *Thomas v. Martin-Gibbons*, No. 19-CV-7695, 2020 WL 5026884, \*7 (S.D.N.Y. Aug. 25, 2020).

### F. Government Attorney Immunity

Magistrate Judge Stewart addressed the immunity typically afforded to government attorneys when acting as an advocate of a state. *See* Dkt. No. 12 at 21. He concluded that such immunity should apply to Defendants Samuel Maxwell, Emily Williams, Michelle Granger, and Michael Hartnett as district and county attorneys. *See id.* Plaintiffs contend that Defendants William and Maxwell are not entitled to immunity because they engaged in malicious prosecution. *See* Dkt. No. 13 at 23-24. As to Hartnett and Granger, Plaintiffs argue that immunity should not be afforded because their "alleged conduct represents a severe misuse of their positions and constitutes active participation in a broader conspiracy to violate the plaintiffs' rights." *Id.* at 25. Plaintiffs assert that the attorneys requested illegal protective orders, withheld evidence, revoked Plaintiff Smith's drivers license, and refused to investigate Plaintiffs' allegations of fraud. *See id.* at 23-25.

"Absolute immunity protects government officials from suit arising out of acts associated with their 'function as an advocate.' " *Jeanty v. Sciortino*, 669 F. Supp. 3d 96, 108 (N.D.N.Y. 2023) (quoting *Buari v. City of New York*, 530 F. Supp. 3d 356, 378 (S.D.N.Y. 2021)). "Absolute immunity extends to 'government attorneys defending civil suits' and 'government attorneys who initiate civil suits.' " *Id.* (quoting *Spear v. Town of West Hartford*, 954 F.2d 63, 66 (2d Cir. 1992)). "In determining whether an official is entitled to absolute immunity, courts employ a 'functional' approach, 'looking at "the nature of the function performed, not the identity of the actor who performed it." ' " *Id.* (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 394 (2d Cir. 2006)) (additional quotation omitted). "The principle applies to 'functions of a government attorney "that can fairly be characterized as closely associated with the conduct of litigation or potential litigation" in civil suits—including the defense of such actions.' " *Id.* (quotations omitted). " '[O]nce a court determines that challenged conduct involves a function covered by absolute immunity, the actor is shielded from liability for damages regardless of the wrongfulness of his motive or the degree of injury caused.' " *Id.* (quoting *Bernard v. County of Suffolk*, 356 F.3d 495, 503 (2d Cir. 2004)).

 **\*11**  "Post-arraignment, pre-trial 'acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity.' " *Werkheiser v. Cnty. of Broome*, 655 F. Supp. 3d 88, 101 (N.D.N.Y. 2023) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259,

273 (1993)). "In contrast, pre-arraignment actions—such as interviewing a witness to obtain probable cause for an arrest—are not entitled to the protections of absolute immunity." *Id.* (citing *Hill v. City of New York*, 45 F.3d 653, 658, 661 (2d Cir. 1995)). "Additionally, 'absolute immunity may not apply when a prosecutor is not acting as "an officer of the court," but is instead engaged in other tasks, say, investigative or administrative tasks.' " *Id.* (quoting *Van de Kamp v. Goldstein*, 555 U.S. 335, 342 (2009)) (additional quotation omitted). "Investigative tasks beyond the scope of absolute immunity are those 'normally performed by a detective or police officer.' " *Id.* at 102 (quoting *Buckley*, 509 U.S. at 273).

Plaintiffs' allegations against government attorneys stem entirely from these Defendants' functions as counsel for the state. *See* Dkt. No. 1 at ¶¶ 67-71. These Defendants are entitled to absolute immunity for such conduct, even where Plaintiffs contend that the conduct was improperly motivated or "unbecoming." Dkt. No. 13 at 23; *see also Bernard*, 356 F.3d at 504 ("Where ... a prosecutor's charging decisions are not accompanied by any such unauthorized demands, the fact that improper motives may influence his authorized discretion cannot deprive him of absolute immunity"). Moreover, Plaintiffs' allegations of a conspiracy do not save these claims. *See Pinaud v. Cnty. of Suffolk*, 52 F.3d 1139, 1148 (2d Cir. 1995) (quotations omitted) ("As this Court and others circuits have repeatedly held, since absolute immunity covers 'virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate,' ... when the underlying activity at issue is covered by absolute immunity, the 'plaintiff derives no benefit from alleging a conspiracy' "). Thus, the claims against government attorneys are dismissed.

## G. Witness Immunity

Plaintiffs' complaint alleges constitutional violations based on various Defendants providing testimony. Magistrate Judge Stewart recommended dismissing any such claims based on absolute witness immunity. *See* Dkt. No. 12 at 22-23. Plaintiffs object, "grounding their objection in the assertion that the corruption, conspiracy, and collusion among the defendants have led to fraudulent activities within court proceedings." Dkt. No. 13 at 26.

"It is well established that testifying witnesses, including police officers, are entitled to absolute immunity from liability under [Section] 1983 based on their testimony." *Rolan v. Henneman*, 389 F. Supp. 2d 517, 519 (S.D.N.Y. 2005) (citing *Briscoe v. LaHue*, 460 U.S. 325 (1983)) (collecting cases). "As explained in *Briscoe*, absolute immunity for witness testimony in [Section] 1983 cases is rooted in the belief that '[a] witness's apprehension of subsequent damages liability might induce two forms of self-censorship." *Id.* "First, witnesses might be reluctant to come forward to testify. And once a witness is on the stand, his testimony might be distorted by the fear of subsequent liability.' " *Id.* (quoting *Briscoe*, 460 U.S. at 333). "Such absolute immunity applies to witnesses, 'whether governmental, expert, or lay witnesses' in Family Court proceedings." *Santos v. Syracuse Police Dep't*, No. 5:22-CV-1102, 2022 WL 16949542, *7 (N.D.N.Y. Nov. 15, 2022) (quoting *Storck v. Suffolk Cnty. Dep't of Soc. Servs.*, 62 F. Supp. 2d 927, 945 (E.D.N.Y. 1999)).

"In this Circuit, however, absolute witness immunity does not extend to allegations of conspiracy." *Cipolla v. Cnty. of Rensselaer*, 129 F. Supp. 2d 436, 451 (N.D.N.Y.), *aff'd*, 20 Fed. Appx. 84 (2d Cir. 2001) (citing *Dory v. Ryan*, 999 F.2d 679 (2d Cir. 1994); *San Filippo v. U.S. Trust Co.*, 737 F.2d 246, 254 (2d Cir. 1984)); *see also Coggins v. Buonora*, 362 Fed. Appx. 224, 225 (2d Cir. 2010). The Supreme Court, in *Rehberg v. Paulk*, 566 U.S. 356 (2012), "held that grand jury witnesses, like trial witnesses, are entitled to absolute immunity if a plaintiff's claim is based on their allegedly perjurious testimony." *Gonzalez v. Baart*, No. 5:21-CV-01379, 2023 WL 8818302, *3 (N.D.N.Y. Dec. 20, 2023). The Supreme Court stated that "this rule may not be circumvented by claiming that a grand jury witness conspired to present false testimony or by using evidence of the witness' testimony to support any other § 1983 claim concerning the initiation or maintenance of a prosecution." *Rehberg*, 566 U.S. at 369. "Courts have distinguished presenting false testimony and soliciting false testimony from others and creating fabricated evidence." *Gonzalez*, 2023 WL 8818302, at *4 (collecting cases).

**\*12** Plaintiff contends that psychological reports that were used as evidence during hearings were false or unfinished, and that various Defendants either refrained from testifying or testified falsely. *See* Dkt. No. 1 at ¶¶ 93-94, 96, 98, 100-01, 127, 162, 186, 190. Insofar as Plaintiffs allege that witnesses testified falsely, such testimony is protected by absolute immunity. To the extent Plaintiffs allege that some of the Defendants conspired to present false testimony, the claims might not automatically be subject to dismissal on witness immunity grounds. *See Cipolla*, 129 F. Supp. 2d at 451; *Gonzalez*, 2023 WL 8818302, at *4. However,

Plaintiffs have not provided enough information concerning non-testimonial actions used to create fabricated testimony, beyond their assertions of a conspiracy-at-large. Even assuming not all witness Defendants are entitled to absolute immunity, the claims must be dismissed for failure to sufficiently plead state action or a conspiracy.

### H. State Action

Plaintiffs bring their suit against numerous private parties, including Defendant Smith, Plaintiff Smith's stepfather and mother, a nurse, and private lawyers and law firms. *See* Dkt. No. 1 at ¶¶ 82-89, 99-111. Magistrate Judge Stewart recommended that those claims be dismissed because the private Defendants are not state actors: a prerequisite to bringing Section 1983 and 1985 claims. *See* Dkt. No. 12 at 24-25. Plaintiffs object to that conclusion because the private individuals "orchestrated their actions in unison with state actors." Dkt. No. 13 at 27.

" 'Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action.' " *Fabrikant v. French*, 691 F.3d 193, 206 (2d Cir. 2012) (quoting *Flagg v. Yonkers Sav. & Loan Ass'n*, 396 F.3d 178, 186 (2d Cir. 2005)). " 'A plaintiff pressing a claim of violation of his constitutional rights under § 1983 is thus required to show state action.' " *Id.* (quoting *Tancredi v. Metro. Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003)). " '[S]tate action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible," and that "the party charged with the deprivation must be a person who may fairly be said to be a state actor." ' " *Id.* (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)) (additional quotation omitted). " 'Conduct that is formally "private" may become so entwined with governmental policies or so impregnated with a governmental character that it can be regarded as governmental action.' " *Id.* (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 847 (1982)).

" 'To state a claim against a private entity on a section 1983 conspiracy theory, the complaint must allege facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act.' " *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) (quoting *Spear v. Town of West Hartford*, 954 F.2d 63, 68 (2d Cir. 1992)). "Put differently, a private actor acts under color of state law when the private actor 'is a willful participant in joint activity with the State or its agents.' " *Id.* (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)). "A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity." *Id.*

Plaintiffs state in their objections that the attorneys for the children conspired with state actors because their hours are approved by the state court judicial Defendants and their positions are dependent on state funding. *See* Dkt. No. 13 at 28-29. Plaintiffs contend that they "personally observed 'meetings of the mind' occurring during off [the] record court proceedings and informal gatherings, like lunches, where conspiratorial strategies were devised and later executed in court." *Id.* at 29.

**\*13** These contentions and the allegations in Plaintiffs' complaint are insufficient to hold the private Defendants out to be state actors. It is well-settled that " '[t]he fact that a private entity uses the state courts does not transform the private party into a state actor.' " *Rice v. City of New York*, 275 F. Supp. 3d 395, 403-04 (E.D.N.Y. 2017) (quoting *Graham v. Select Portfolio Servicing, Inc.*, 156 F. Supp. 3d 491, 516 (S.D.N.Y. 2016)); *see also Malave-Sykes v. Endicott Police Dep't*, No. 3:23-CV-1215, 2023 WL 6847684, \*5 (N.D.N.Y. Oct. 17, 2023) (quotation omitted) ("[P]roviding false information to the police does not make a private individual a state actor and liable under § 1983' "); *Parent v. New York*, 786 F. Supp. 2d 516, 538 (N.D.N.Y. 2011), *aff'd*, 485 Fed. Appx. 500 (2d Cir. 2012) ("[A]lthough appointed by the state, an attorney for the children or law guardian is not a state actor because he or she must exercise independent professional judgment on behalf of the clients they represent"); *Milan v. Wertheimer*, 808 F.3d 961, 962-64 (2d Cir. 2015) (affirming dismissal of claims against children's grandmother for initiating protective services investigations because grandmother was not a state actor).

Because Plaintiffs have stated no more than conclusory allegations that the private Defendants conspired with state actors, the Court dismisses the complaint against those private Defendants for failure to state a claim under Section 1983.

## I. Affirmative Duty

In Magistrate Judge Stewart's Report-Recommendation and Order, he next addressed Plaintiffs' claims against Saratoga County police officers, county departments of social services, and school district administrators. *See* Dkt. No. 12 at 26-30. Magistrate Judge Stewart summarized the allegations against those various entities and individuals as resting on the failure "to better intervene and prevent misconduct of private parties against [Plaintiffs] or the Smith children." *Id.* at 28. He explained, however, that the Supreme Court has rejected claims of an affirmative duty to act under Section 1983. *See id.* at 28-29 (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 192 (1989); *Town of Castle Rock, Colorado v. Gonzales*, 545 U.S. 748, 768-69 (2005)).

Plaintiffs object and "express confusion and disagreement with Magistrate [Judge] Stewart's ruling, which concluded that the officers had no affirmative duty, a decision that contradicts the policies stated by the plaintiffs in their original complaint." Dkt. No. 13 at 30. Plaintiffs "characterize" the police officers' conduct "as a sustained campaign of retaliation and a persistent failure to provide protection, spanning four years." *Id.* at 32. Plaintiffs also "highlight Magistrate [Judge] Stewart's failure to assert qualified immunity for the officers as further evidence that their claims warrant progression in the legal process. This stance underscores their belief in the seriousness of their allegations and the need for judicial scrutiny of the officers' actions." *Id.* at 31.

First, there is no requirement that a court address every single potential ground for dismissal where it is clear that a claim should be dismissed. *See, e.g.*, *Curtis v. Greenberg*, No. 22-252-CV, 2023 WL 6324324, *2, n.3 (2d Cir. Sept. 29, 2023) ("Because we affirm the dismissal of the RICO claims based on the failure to adequately plead a RICO enterprise, we need not address the district court's alternative grounds for dismissal"); *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 441 (N.D.N.Y. 2009) ("[B]ecause the Court has found adequate grounds on which to adopt Magistrate Judge Lowe's Report-Recommendation, ... the Court does not address th[e] alternative recommendation ...."). Therefore, the Court takes no issue with Magistrate Judge Stewart's decision not to address qualified immunity.

 **\*14** Second, it is well settled that police officers do not have an affirmative duty to investigate alleged crimes to the extent and in the way that a complainant or arrestee requests. *See Buari*, 530 F. Supp. 3d at 389 (quotation omitted) (" '[A] police officer's failure to pursue a particular investigative path is not a constitutional violation' "); *Brown v. City of New York*, No. 12-CV-3146, 2014 WL 5089748, *5 (S.D.N.Y. Sept. 30, 2014) ("Police officers do not have an affirmative duty to investigate allegations made by a complaining witness prior to effectuating an arrest"); *Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) ("Although a better procedure may have been for the officers to investigate plaintiff's version of events more completely, the arresting officer does not have to prove plaintiff's version wrong before arresting him.... Nor does it matter that an investigation might have cast doubt upon the basis for the arrest").

Third, insofar as Plaintiffs allege that the officers violated their First Amendment rights, there are insufficient allegations in Plaintiffs' complaint to state such a claim. *See* Dkt. No. 13 at 31; *see also* Dkt. No 1. Plaintiffs summarily allege that Defendant police officers brought false charges and protection orders against Plaintiffs in retaliation for Plaintiffs' "legal challenges against governmental grievances." Dkt. No. 1 at ¶ 250. Plaintiffs' contention that "the officers" retaliated against them by "levying fraudulent harassment charges," Dkt. No. 13 at 31, cannot stand because criminal charges are brought by a prosecutor, not police officers. *See Mortimer v. Wilson*, No. 15-CV-7186, 2020 WL 3791892, *8-9 (S.D.N.Y. July 7, 2020).

As to social services and the school district, Plaintiffs contend that "[i]ndividuals in these positions are expected to respond to, and report, any instances of wrongdoing, unethical behaviors, or legal violations." Dkt. No. 13 at 32. Specifically, Plaintiffs rely on a school or administrator's mandatory reporting requirements for suspected child abuse. *See id.* at 33.

As Magistrate Judge Stewart aptly explained, "[a]lthough New York State law requires that mandated individuals report instances of suspected child abuse or maltreatment, such reporting is not constitutionally required." Dkt. No. 12 at 30. In other words, violation of a state law does not create a cognizable Section 1983 claim. *See Jackson v. Pfau*, No. 9:10-CV-1484, 2011 WL 13127988, *15 (N.D.N.Y. May 12, 2011), *aff'd*, 523 Fed. Appx. 736 (2d Cir. 2013) ("[A] Section 1983 claim brought in federal court is not the appropriate forum to assert violations of state law or regulations"). Thus, the Court agrees with Magistrate

Judge Stewart that Plaintiffs' claims concerning a school's mandatory reporting obligations does not create a cognizable Section 1983 claim. As such, those claims are dismissed.

**J. *Monell* and Supervisory Liability**

Plaintiffs seek to bring municipal and supervisory liability, or *Monell*, claims in count nine of their complaint. *See* Dkt. No. 1 at ¶¶ 267-73. Magistrate Judge Stewart addressed Plaintiffs' *Monell* claims. *See* Dkt. No. 12 at 30-31. He noted that Plaintiffs are required to plead that each Defendant violated the Constitution through their own acts and that Plaintiffs failed to do so. *See id.* at 31. Magistrate Judge Stewart also explained that because Plaintiffs failed to state any underlying constitutional violations, the *Monell* claims were required to be dismissed. *See id.*

Plaintiffs objected and listed the ways in which they believe their complaint established *Monell* liability. *See* Dkt. No. 13 at 33-34. In doing so, Plaintiffs contend that their constitutional rights were violated through every possible route for supervisory liability: "a specific policy," "actions undertaken by policymaking officials," "pervasive practices by subordinate officials," and "a notable failure by these policymakers to adequately train or supervise municipal employees." *Id.* at 34.

 **\*15**  " 'It is well settled in this Circuit that personal involvement of defendants in the alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " *Forrest v. Cnty. of Greene*, 676 F. Supp. 3d 69, 78 (N.D.N.Y. 2023) (quoting *Johnson v. Miller*, No. 9:20-CV-622, 2020 WL 4346896, \*9 (N.D.N.Y. Jul. 29, 2020)). "As to supervisory liability, there is no 'special test,' and 'a plaintiff must plead and prove "that each Government-official defendant, through the official's own individual actions, has violated the Constitution." ' " *Id.* (quoting *Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020)) (additional quotation omitted). " 'To establish a violation of § 1983 by a supervisor, as with everyone else, then, the plaintiff must establish a deliberate, intentional act on the part of the defendant to violate the plaintiff's legal rights.' ... It is not sufficient to plead that an official was 'conceivably personally involved.' " *Id.* (quoting *Tangreti*, 983 F.3d at 615-16, 618). " '*Tangreti* makes clear that, after *Iqbal*, [a p]laintiff can no longer succeed on a § 1983 claim against [a d]efendant by showing that a supervisor behaved knowingly or with deliberate indifference that a constitutional violation would occur at the hands of his subordinates, unless that is the same state of mind required for the constitutional deprivation.' " *Lalonde v. City of Ogdensburg*, 662 F. Supp. 3d 289, 322 (N.D.N.Y. 2023) (quotation, quotation marks, and emphasis omitted); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

" 'Thus, an official's conduct in making and executing policy, or failing to make or execute policy, may satisfy *Iqbal*'s requirement of personal involvement if such conduct meets the elements required to establish an underlying constitutional violation and is undertaken with the required state of mind.' " *Lalonde*, 662 F. Supp. 3d at 322 (quotation omitted). Importantly, "if the plaintiff cannot show that his or her constitutional rights were violated by any individual defendants, the *Monell* claim will also fail." *Oliver v. City of New York*, 540 F. Supp. 3d 434, 436 (S.D.N.Y. 2021); *see also Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* was entirely correct").

Plaintiff's contentions closely track the pre-*Tangreti* standards for supervisory liability. *See Hendrix v. Annucci, et al.*, No. 9:20-CV-0743, 2021 WL 4405977, \*6 (N.D.N.Y. Sept. 27, 2021) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)) ("[T]he Second Circuit's general rule was that a supervisory official's personal involvement could have been proven by showing any five factors: '(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring' "). Plaintiffs' complaint does not set forth personal involvement in a constitutional violation against every single Defendant.

Regardless, Plaintiffs' *Monell* claims cannot proceed because their underlying constitutional claims fail for the reasons set forth in this decision—abstention, immunity, lack of state action, and failure to state a claim. *See Segal*, 459 F.3d at 219. Thus, without underlying constitutional violations, Plaintiffs' *Monell* claims must be dismissed.

### K. ADA and Rehabilitation Act Claims

Plaintiffs set forth an ADA and Rehabilitation Act claim. *See* Dkt. No. 1 at ¶¶ 299-301. Plaintiffs refer to themselves in the plural form when discussing these claims, but it appears that Plaintiff Smith is the individual with alleged disabilities of "ADHD, Auditory Processing Delay, and a Written Learning Disability." *Id.* at ¶ 300; *see also id.* at ¶¶ 178, 185. Plaintiffs allege that Defendant Judge Wait denied Plaintiff Smith "an ADA-complaint note-taker for court hearings" and that Defendant Wait made derogatory and demeaning comments about Plaintiff Smith's disabilities. *See id.* at ¶¶ 178, 185, 300.

 **\*16** Magistrate Judge Stewart recommended dismissing these claims as "barred by the *Rooker-Feldman* doctrine, judicial immunity, and by § 1983's requirement that injunctive relief against a judge is barred unless a declaratory decree was violated, or declaratory relief was unavailable." Dkt. No. 12 at 32. He also noted that neither the ADA nor Rehabilitation act provide for individual liability. *See id.*

Plaintiffs summarily object, stating that the ADA claim does not fall under the *Rooker-Feldman* doctrine and does not qualify for immunity. *See* Dkt. No. 13 at 33. Plaintiffs contend that "the ADA violations were not only discriminatory but also strategic, serving as a means for the defendants to shield themselves from exposure related to their corruption and malfeasance." *Id.*

The Second Circuit has explicitly applied the *Rooker-Feldman* doctrine to ADA claims. *See DiLauria v. Town of Harrison*, 64 Fed. Appx. 267, 270 (2d Cir. 2003). Similarly, "[c]ourts in this Circuit and others have found judicial immunity to extend to claims under the ADA." *Brooks v. Onondaga Cnty. Dep't of Child. & Fam. Servs.*, No. 5:17-CV-1186, 2018 WL 2108282, \*4 (N.D.N.Y. Apr. 9, 2018) (collecting cases). Thus, the Court finds no clear error in Magistrate Judge Stewart's applications of these rules of law to Plaintiffs' ADA and Rehabilitation Act claims.[3] Importantly, as Magistrate Judge Stewart explained, and to which Plaintiffs do not respond, "neither statute provides for individual liability." Dkt. No. 12 at 32 (citing *Goe v. Zucker*, 43 F.4th 19, 35 (2d Cir. 2022)); *see also Lalonde v. City of Ogdensburg*, 662 F. Supp. 3d 289, 327 (N.D.N.Y. 2023) (quoting *Fera v. City of Albany*, 568 F. Supp. 2d 248, 259 (N.D.N.Y. 2008)) ("[T]o the extent that Plaintiffs are suing the individual Defendants in their individual capacities, 'neither Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suit ....' "). Plaintiffs' ADA and Rehabilitation Act claims are therefore dismissed.

### L. State Claims

Because Magistrate Judge Stewart recommended dismissing all of Plaintiffs' federal claims, he also recommended dismissing Plaintiffs' state-law claims. *See* Dkt. No. 12 at 32-33. Plaintiffs object, arguing that their federal claims are meritorious and should not be dismissed which would save their state-law claims. *See* Dkt. No. 13 at 35.

It is well settled that the Court is not required to retain jurisdiction over state-law claims if the Court dismisses all federal claims. *See Hyman v. Cornell Univ.*, 834 F. Supp. 2d 77, 83 (N.D.N.Y. 2011), *aff'd*, 485 Fed. Appx. 465 (2d Cir. 2012). Indeed, "[a] district court usually should decline the exercise of supplemental jurisdiction when all federal claims have been dismissed at the pleading stage." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006). " 'Dismissal of the pendent state law claims is not, however, "absolutely mandatory" even where the federal claims have been dismissed before trial....' " *Hyman*, 834 F. Supp. 2d at 83 (quoting *Marcus v. AT & T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998)).

All of Plaintiffs' federal claims are subject to dismissal for the reasons set forth in this Memorandum-Decision and Order. As such, the Court declines to exercise jurisdiction over the state-law claims and they too will be dismissed.

### M. Leave to Amend

**\*17** "[P]laintiffs object to the dismissal of any claims without first being given the opportunity to amend them. As pro se litigants, they request that the court allows them the chance to revise their claims if necessary, emphasizing the importance of this consideration in the context of self-representation." Dkt. No. 13 at 37.

Magistrate Judge Stewart recommended dismissal of Plaintiffs' complaint against the following Defendants with prejudice and without leave to amend: Judge Paul Pelagalli; Saratoga Supreme Court Judges John Ellis and Dianne Freestone; City Court Judge Jeffrey Wait; Saratoga County Court Judge James Murphy; Administrative Judge for the Fourth Judicial District Judge Felix Catena; Appellate Division Justices Elizabeth Garry and Christine Clark; Court Attorney Karla Conway; Court-appointed experts Jaqueline Bashkoff and Dr. Mary O'Connor; the private attorneys appointed by the Court to represent the Smith children - Jessica Vinson of Vella Carbone, LLP; Elena Tastensen; and Heather Corey-Mongue; Samuel Maxwell, Emily Williams, Michelle Granger, Michael Hartnett; Jillian Knox; Veronica Smith; and Denise Rista-Tobin. *See* Dkt. No. 12 at 33-34. Magistrate Judge Stewart recommended as such because the claims against those individuals are barred by judicial, quasi-judicial, government attorney, and/or witness immunities. *See id.* He recommended that Plaintiffs be given leave to amend all other claims. *See id.* at 34-35.

" 'Sua sponte dismissal of *pro se* [ ] petitions which contain non-frivolous claims without requiring service upon respondents or granting leave to amend is disfavored by' " the Second Circuit. *Collymore v. Krystal Myers, RN*, 74 F.4th 22, 27 (2d Cir. 2023) (quoting *Moorish Sci. Temple of Am., Inc. v. Smith*, 693 F.2d 987, 990 (2d Cir. 1982)). "In the § 1983 context, such dismissals are 'inappropriate' – regardless of the merits – if the complaint alleges that '(1) the defendant was a state actor ... when he committed the violation and (2) the defendant deprived the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States.' " *Id.* (quoting *Milan v. Wertheimer*, 808 F.3d 961, 964 (2d Cir. 2015)). However, courts often dismiss claims barred by immunity without leave to amend because better pleading cannot dure the deficiency, *i.e.*, amending a complaint does not destroy immunity. *See Clay v. Bishop*, No. 1:22-CV-0983, 2023 WL 3352903, \*7 (N.D.N.Y. Feb. 7, 2023) (collecting cases); *Woods v. Vermont*, No. 2:22-CV-00008, 2023 WL 2624352, \*2 (D. Vt. Mar. 24, 2023); *Burdick v. Town of Schroeppel*, No. 5:16-CV-01393, 2017 WL 5509355, \*9 (N.D.N.Y. Jan. 31, 2017), *aff'd*, 717 Fed. Appx. 92, 93 (2d Cir. 2018).

Because the deficiency in Plaintiffs' claims against judges, court staff, witnesses, government attorneys, and court-appointed individuals are substantive and cannot be cured by better pleading, the Court dismisses those claims with prejudice and without leave to amend. However, the Court will permit Plaintiffs to otherwise amend their complaint. Plaintiffs are informed that any amended complaint will replace the existing complaint and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Jeanty*, 669 F. Supp. 3d at 118.[4]

### N. Electronic Filing

**\*18** Plaintiffs ask that Court "reconsider and override" Magistrate Judge Stewart's decision to deny their request to file electronically. Dkt. No. 13 at 38; *see also* Dkt. No. 12 at 36. Because Plaintiffs' complaint is being dismissed, their request to file electronically is moot. The Court will not reconsider it at this time.

### IV. CONCLUSION

After carefully the Plaintiffs' submissions, Magistrate Judge Stewart's Report-Recommendation and Order, and the applicable law, the Court hereby

**ORDERS** that Magistrate Judge Stewart's Report-Recommendation and Order (Dkt. No. 12) is **ADOPTED in its entirety** for the reasons set forth herein; and the Court further

**ORDERS** that Plaintiffs' complaint (Dkt. No. 1) is **DISMISSED**; and the Court further

**ORDERS** that the claims against Judge Paul Pelagalli; Saratoga Supreme Court Judges John Ellis and Dianne Freestone; City Court Judge Jeffrey Wait; Saratoga County Court Judge James Murphy; Administrative Judge for the Fourth Judicial District Judge Felix Catena; Appellate Division Justices Elizabeth Garry and Christine Clark; Court Attorney Karla Conway; Court-appointed experts Jaqueline Bashkoff and Dr. Mary O'Connor; the private attorneys appointed by the Court to represent the Smith children - Jessica Vinson of Vella Carbone, LLP; Elena Tastensen; and Heather Corey-Mongue; government attorneys Samuel Maxwell, Emily Williams, Michelle Granger, Michael Hartnett; and testifying witnesses Jillian Knox and Veronica Smith be **DISMISSED WITH PREJUDICE AND WITHOUT LEAVE TO AMEND**; and the Court further

**ORDERS** that all other claims be **DISMISSED WITHOUT PREJUDICE** with leave to file an amended complaint within thirty (30) days of the date of this Order; and the Court further

**ORDERS** that, if Plaintiffs fail to file an amended complaint within **thirty (30) days** of this Order, the Clerk of the Court shall enter judgment in Defendants' favor and close this case, without further order of this Court; and the Court further

**ORDERS** that Plaintiffs request to reconsider Magistrate Judge Stewart's denial of leave for electronic filing is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court serve a copy of this Order upon Plaintiffs in accordance with Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2024 WL 2291701

---

### Footnotes

1    Plaintiffs' objections are thirty-eight pages. *See* Dkt. No. 13. Local Rule 71.2(c) instructs that "[o]bjections may not exceed twenty-five (25) pages without the Court's prior approval." N.D.N.Y. L.R. 72.1(c). The Court will consider the entirety of Plaintiffs' objections because they are proceeding *pro se*. However, the Court warns Plaintiffs that future compliance with the Federal Rules, the Court's Local Rules, and the undersigned's Individual Rules is required.

2    Magistrate Judge Stewart also addressed court-appointed attorney Defendant Tobin. *See* Dkt. No. 12 at 19-20. Plaintiffs clarify that Defendant Tobin was not an attorney for a child. *See* Dkt. No. 13 at 23. Rather, Tobin represented Defendant Smith. *See* Dkt. No. 1 at ¶¶ 58-59, 162. Insofar as Tobin was retained counsel, "defense attorneys—even if court-appointed or public defenders—do not act under color of State law when performing traditional functions of counsel." *Krug v. McNally*, 488 F. Supp. 2d 198, 200 (N.D.N.Y. 2007), *aff'd*, 368 Fed. Appx. 269 (2d Cir. 2010). Therefore, Plaintiffs' claims against Tobin must be dismissed for failure to plead state action.

3    Insofar as Magistrate Judge Stewart addressed the injunctive relief issue, the Court reiterates Plaintiffs' contention that they do not seek injunctive or declaratory relief, and request only monetary damages.

4    The Court directs Plaintiffs to the instructions outlined in Magistrate Judge Stewart's Report-Recommendation and Order. *See* Dkt. No. 12 at 35-36.

---

**End of Document**                                          © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Curtis v. Greenberg, Not Reported in Fed. Rptr. (2023)

2023 WL 6324324

2023 WL 6324324
Only the Westlaw citation is currently available.
United States Court of Appeals, Second Circuit.

Wilfred Robert CURTIS, Esq., Plaintiff-Appellant-Cross-Appellee,

v.

Teresa GREENBERG, Esq., The Law Office of Yeung & Wang, PLLC, William J. Larkin, III, Esq., Larkin, Ingrassia & Tepermayster, LLP, Todd A. Kelson, Esq., Todd A. Kelson, PC, Mishael Minnie Pine, Esq., Ronald A. Berutti, Esq., Weiner Law Group, LLP, Gregory Scheindlin, Esq., Scheindlin Law Office, Niloufer Bassa, Defendants-Appellees, Jeffrey Saltiel, Esq., Wenig, Saltiel, LLP, Defendants-Appellees-Cross-Appellants.

22-252-cv (L), 22-346-cv (XAP)
|
September 29, 2023

Appeal from a judgment of the United States District Court for the Eastern District of New York (Chen, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

**Attorneys and Law Firms**

FOR PLAINTIFF-APPELLANT-CROSS-APPELLEE: Wilfred Robert Curtis, Esq., pro se, Brooklyn, NY.

FOR DEFENDANTS-APPELLEES TERESA GREENBERG, ESQ. & THE LAW OFFICE OF YEUNG WANG, PLLC: Anthony D. Green (Alexander Truitt, on the brief), Winget, Spadafora & Schwartzberg, LLP, New York, NY.

FOR DEFENDANTS-APPELLEES WILLIAM J. LARKIN, III, ESQ. & LARKIN, INGRASSIA & TEPERMAYSTER, LLP: Cheryl F. Korman (Merril S. Biscone, on the brief), Rivkin Radler LLP Uniondale, NY.

FOR DEFENDANTS-APPELLEES TODD A. KELSON, ESQ. & TODD A. KELSON, PC: Joseph L. Francoeur, Wilson Elser, Moskowitz, Edelman & Dicker, LLP, New York, NY.

FOR DEFENDANT-APPELLEE MISHAEL MINNIE PINE, ESQ.: Erin A. O'Leary, Lewis Brisbois Bisgaard & Smith LLP, New York, NY.

FOR DEFENDANTS-APPELLEES RONALD A. BERUTTI & WEINER LAW GROUP, LLP: Anthony J. Iaconis (Jonathan P. Whitcomb, Danielle B. Charlot, on the brief), Diserio Martin O'Connor & Castiglioni LLP, Stamford, CT.

FOR DEFENDANTS-APPELLEES GREGORY SCHEINDLIN, ESQ. & SCHEINDLIN LAW OFFICE: Gregory Sheindlin, Sheindlin Law Firm, New York, NY.

FOR DEFENDANTS-APPELLEES-CROSS-APPELLANTS JEFFREY SALTIEL, ESQ. & WENIG, SALTIEL, LLP: Howard S. Bonfield, Wenig Saltiel LLP, New York, NY.

PRESENT: JOSEPH F. BIANCO, EUNICE C. LEE, ALISON J. NATHAN, Circuit Judges.


### SUMMARY ORDER

Curtis v. Greenberg, Not Reported in Fed. Rptr. (2023)

2023 WL 6324324

**\*1** Appellant Wilfred Robert Curtis, an attorney proceeding *pro se*, sued various attorneys and law firms under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c)–(d) and 1964, alleging that the defendants colluded to take control of his assets through fraud while he was medically incapacitated and abusing alcohol. The district court dismissed Curtis's second amended complaint and denied his subsequent motion for reconsideration, which was premised, in part, on an untimely challenge to an earlier order on a motion to compel issued by the magistrate judge. [1] *See Curtis v. Greenberg*, No. 20-cv-824, 2021 WL 4340788, at \*1 (E.D.N.Y. Sept. 23, 2021), *reconsideration denied*, 2022 WL 173108 (E.D.N.Y. Jan. 19, 2022). Curtis appealed. [2] We assume the parties' familiarity with the underlying facts, the procedural history, and the issues on appeal, which we reference only as necessary to explain our decision to affirm.

We review *de novo* a district court's grant of a motion to dismiss under Rule 12(b)(6). *Honickman v. BLOM Bank SAL*, 6 F.4th 487, 495 (2d Cir. 2021). To survive a Rule 12(b)(6) motion, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotation marks and citation omitted). We review the denial of a motion for reconsideration under Federal Rule of Civil Procedure 59(e) for abuse of discretion. *Padilla v. Maersk Line, Ltd.*, 721 F.3d 77, 83 (2d Cir. 2013).

In its thorough and well-reasoned decision, the district court correctly determined that Curtis did not plead a RICO claim because he failed to plausibly allege that the defendants were part of a RICO enterprise. "To establish a civil RICO claim, a plaintiff must allege: (1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity, as well as injury to business or property as a result of the RICO violation." *Lundy v. Cath. Health Sys. of Long Island, Inc.*, 711 F.3d 106, 119 (2d Cir. 2013) (internal quotation marks and citation omitted). The RICO statute defines "enterprise" to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Although the "statute does not specifically define the outer boundaries of [an] enterprise," the Supreme Court has held that an "enterprise" must have "at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 944, 946 (2009).

**\*2** Curtis argues that his operative complaint identified two enterprises for the purposes of RICO. Specifically, he maintains that "Enterprise I" consisted of defendants The Law Office of Yeung & Wang and Teresa Greenberg (who was employed by Yeung & Wang), and certain related corporations that Yeung & Wang "controlled or owned before, during, and after" Greenberg represented Curtis. Appellant's Br. at 5. According to Curtis, "Enterprise II" was composed of defendants Larkin, Ingrassia & Tepermayster, LLP, Todd A. Kelson, PC, Mishael Minnie Pine, Weiner Law Group LLP, Sheindlin Law Office, and Wenig Saltiel, LLP. *Id.* at 19–20.

However, Curtis failed to plausibly allege that the members of either of these alleged enterprises acted with a common purpose. Instead, at most, he alleged that some of the defendants agreed at different times to engage in some fraudulent conduct. Such allegations fall well short of adequately pleading that the defendants functioned as "a continuing unit" with "a common purpose." *Boyle*, 556 U.S. at 948. As we have observed, alleging that various defendants "agreed at different times to engage in various fraudulent schemes" does not "plausibly support the inference, essential to a RICO association-in-fact enterprise, that they acted with a sufficiently common purpose." *D'Addario v. D'Addario*, 901 F.3d 80, 101–02 (2d Cir. 2018). The RICO conspiracy claim also fails for the same reason. *See Williams v. Affinion Grp., LLC*, 889 F.3d 116, 126 (2d Cir. 2018) (concluding that RICO conspiracy claims fail when the "alleged conspiracy involved an agreement to commit the same substantive RICO violations [the Court has] deemed insufficiently pled"). Accordingly, Curtis failed to plausibly allege a RICO claim. [3]

We also conclude that the district court did not abuse its discretion in denying Curtis's motion for reconsideration under Rule 59(e). None of Curtis's arguments provides any basis for disturbing the district court's decision, and the district court correctly determined that any challenge to the magistrate judge's order disposing of his motion to compel was untimely. *See* Fed. R. Civ. P. 72(a) ("A party may serve and file objections to the [non-dispositive] order within 14 days after being served with a copy. A party may not assign as error a defect in the order not timely objected to."); *see also Caidor v. Onondaga County*, 517 F.3d

Curtis v. Greenberg, Not Reported in Fed. Rptr. (2023)

Case 6:24-cv-01367-AMN-ML    Document 8    Filed 04/07/25    Page 73 of 186

2023 WL 6324324

601, 605 (2d Cir. 2008) (holding that "a *pro se* litigant who fails to object timely to a magistrate's order on a non-dispositive matter waives the right to appellate review of that order").

* * *

We have considered Curtis's remaining arguments and find them to be without merit. For the foregoing reasons, the judgment of the district court is **AFFIRMED**.[4]

**All Citations**

Not Reported in Fed. Rptr., 2023 WL 6324324

---

### Footnotes

1    In addition to his federal RICO claims, Curtis also brought various state law claims. The district court declined to exercise supplemental jurisdiction over these claims after it dismissed his RICO claims.

2    One group of defendants cross-appealed a concomitant denial of sanctions under Rule 11 of the Federal Rules of Civil Procedure. Because no arguments have been raised on appeal pertaining to sanctions, any challenge to that portion of the district court's judgment has been waived. *See Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998) ("Issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal.").

3    Because we affirm the dismissal of the RICO claims based on the failure to adequately plead a RICO enterprise, we need not address the district court's alternative grounds for dismissal.

4    While the appeal was pending, defendant-appellee William Larkin III died. Counsel for Mr. Larkin and Larkin, Ingrassia & Tempermayster, LLP have sought additional time to determine whether there should be a substitution of a personal representative of the estate under Federal Rule of Appellate Procedure 43(a)(1). Because we affirm, however, none of the defendants-appellees are subject to liability and the request for additional time to consider the necessity of a substitution under Rule 43(a)(1) is denied as moot.

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 3460788
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Annamay SHIBLEY, et al., Plaintiffs,

v.

Jennifer BIXLEROND, et al., Defendants.

6:24-cv-0722 (BKS/TWD)
|
Signed July 16, 2024

**Attorneys and Law Firms**

ANNAMAY SHIBLEY, Plaintiff, pro se, 2452 Broad Street, Apt. 3, Frankfort, NY 13340.

CHRISTOPHER WHEELER, SR., Plaintiff, pro se, 2452 Broad Street, Apt. 3, Frankfort, NY 13340.


**REPORT-RECOMMENDATION AND ORDER**

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

**I. INTRODUCTION**

 **\*1**  The Clerk has sent to the undersigned for review a complaint submitted by *pro se* plaintiffs Annamay Shibley and Christopher Wheeler, Sr. ("Plaintiffs"), together with two applications to proceed *in forma pauperis* ("IFP"). Dkt. Nos. 1, 3, 4. For the reasons set forth below, the Court recommends the complaint be dismissed.


**II. IFP APPLICATIONS**

Plaintiffs have not paid the statutory filing fee for this action and seek leave to proceed IFP. Dkt. Nos. 3, 4. Upon review, the Plaintiffs' IFP applications demonstrate economic need. *See id.* Therefore, Plaintiffs are granted permission to proceed IFP.


**III. COMPLAINT**

Plaintiffs commenced the instant action utilizing the Court's form complaint for civil rights actions, asserting claims under 42 U.S.C. § 1983. *See* Dkt. No. 1 at 3.[1] The complaint lists four defendants: "Jennifer bixlerond" of the Oneida County Sheriff's Department;[2] the Department of Social Services ("DSS"); the Mohawk Valley Community Action Agency; and Heidi Garber. *Id.* at 2-3.

Plaintiff Annamay Shibley states,[3] on February 2, 2021, "2 of my children were taken by CPS." *Id.* at 8. CPS accused her of "abusing my children even though the babysitter named Heidi garber was the one that abused my children and amidded it to CPS." *Id.* "CPS wanted the babysitter my boyfriend and myself to take a lie detector test." *Id.* Garber "refused to take a test" but Shibley and her boyfriend agreed to take the test at the Oneida County Jail. *Id.* After she completed the test,

they said I failed the test but when the officer showed me the test I did not see where I failed the test. But they still arrested me and I spent one night in jail but when I went to court the next day the judge released me and told me that there was not enough evidence to prove I did anything wrong.

*Id.* She later learned "the charges were dismissed and sealed." *Id.*

Shibley avers "CPS did not have a warrant to remove my children from my care. I did not get a court date for the removal order of my children until a week and a half after my children were already removed." *Id.* She states she has "done everything that the cps workers wanted me to do" including "mental health councling, parenting class, anger management class, domestic violence classes and also find better housing for myself and my children." *Id.* Plaintiff also "had 2 more children" after the first two were removed from her home "and they did not have a warrant to remove them children both from St. Luke's hospital the days that they were born." *Id.*

**\*2** She has not abused any of her children, and seeks to have the children returned to her home, arguing "CPS should have never taken my children after they got the confession out of the babysitter." *Id.* at 9. Further, she "would like the babysitter held accountable for her actions." *Id.* Additionally, in October of 2023, "Laurie Ellis who used to work for Onidea County dss" entered Shibley's residence "without knocking and also after numerous times I told her she was not welcome into my house." *Id.* Plaintiff "had to call the police and make a police report on her once I made a police report she took herself off of my family court case." *Id.*

Shibley "was suppost to have home visits back in 2022 and they took them away all because someone lied and said that I took inappropite pictures of one of my children during a visit and also abused my child during a visit but yet that never happened." *Id.* The visit during which the alleged abuse occurred "was conducted at The House of good Shepard and I had many staff in and out of the room that cps tried to say it happened at." *Id.* Additionally, DSS did not have custody of the child Plaintiff allegedly abused at the time, as the child's biological father had custody. *Id.* "He had custody and then abandoned her and left her with his ex girlfriend. I then fought like no tomorrow to have the foster parents gain custody of her so she was back with her siblings and I now feel like that was a big mistake." *Id.*

From the day Shibley's four children entered foster care, the foster parents allowed the children to be hurt and have failed to contact her "until days after or not being fulted for it." *Id.* For example, one of the children "was bitten by a dog and could have been blind and they still have the dog, they want to get rid of the dog and that they have the dog locked up away from the kids." *Id.* However, it is "very unlikely that they are able to keep that dog away far from 11 kids all under 10 years old!" *Id.*

"DSS has not done everything to make sure I can get my children back, I think there goal for all children around the world is to human traffic them. They have been wanting to terminate my rights from the day they wrongfully took my children!" *Id.* at 10. Furthermore, "it's wrong that Christopher Wheeler, who has raised" two of the children from August 23, 2019, until February 24, 2021, "with out a problem is not allowed to see or talk to them just because he is a registered sex offender but yet cps had no problems with my children being in his care from Feb 11th of 2020 til they were removed." *Id.* "We had several cps cases called on us between that time and IF cps believed they were in danger why didn't cps remove the kids then." *Id.*

Plaintiff seeks to "have the phone records from cps and the House of good shepard pulled and listened to." *Id.* She states "I just want to be able to get my children back and I want to get paid for my pain and suffering I have been through. I have ptsd from all of this nonsense!" *Id.*

## IV. STANDARD OF REVIEW

Section 1915 of Title 28 requires a district court to dismiss an IFP complaint if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B)(i)-(iii); *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint, or portion thereof, when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest arguments that they *suggest.*" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks and citation omitted, emphasis in original). A claim is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *see also Denton v. Hernandez*, 504 U.S. 25, 33 (1992) (holding "a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible"); *Livingston*, 141 F.3d at 437 ("[A]n action is 'frivolous' when either: (1) the factual contentions are clearly baseless ... or (2) the claim is based on an indisputably meritless legal theory.").

**\*3** To survive dismissal for failure to state a claim, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This short and plain statement of the claim must be "plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The statement of the claim must do more than present "an unadorned, the-defendant-harmed-me accusation." *Id.* It must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotation marks and citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citations omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Moreover, a court should not dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## V. ANALYSIS

### A. Section 1983

Plaintiffs commenced this action pursuant to 42 U.S.C. § 1983, which "establishes a cause of action for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y.) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

To state a valid claim under § 1983, a plaintiff must allege the challenged conduct: (1) was attributable to a person acting under color of state law; and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Whalen v. Cnty. of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997). Even affording the complaint a liberal construction, Plaintiffs have failed to state a claim under § 1983 against any of the named defendants.

### 1. Oneida County Sheriff Jennifer Bixlerond

The first defendant identified in the Plaintiffs' complaint is Jennifer Bixlerond. Dkt. No. 1 at 2. Plaintiffs indicate Bixlerond is employed by the Oneida County Sheriff's Department and they seek to hold her liable in her official capacity. *See id.* Plaintiffs state "Jennifer Bixler was personally involved in the wrongful actions of" two of Shibley's children "being removed from my care." *Id.* at 4.

"[A] § 1983 suit against a municipal officer in his official capacity is treated as an action against the municipality itself." *Coon v. Town of Springfield.*, 404 F.3d 683, 687 (2d Cir. 2005); *see also, e.g.*, *Polinski v. Oneida Cnty. Sheriff*, No. 6:23-CV-0316 (DNH/ML), 2023 WL 2988753, at *5 (N.D.N.Y. Apr. 18, 2023) ("A claim against [an] Oneida County Sheriff in his official capacity, is essentially a suit against the Oneida County Sheriff's Department.") (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Reynolds v. Giuliani*, 506 F.3d 183, 191 (2d Cir. 2007)), *report and recommendation adopted*, 2023 WL 3344060 (N.D.N.Y. May 10, 2023), *appeal dismissed*, No. 23-867, 2023 WL 8357375 (2d Cir. Oct. 12, 2023). However, a municipality such as Oneida County may be "liable under section 1983 only if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 62 (2d Cir. 2014) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978)) (additional citation omitted).

**\*4** "The policy or custom need not be memorialized in a specific rule or regulation," *Kern v. City of Rochester*, 93 F.3d 38, 44 (2d Cir. 1996) (citations omitted), and "may be pronounced or tacit and reflected in either action or inaction." *Cash v. Cnty. of Erie*, 654 F.3d 324, 334 (2d Cir. 2011). Municipal liability under *Monell* may be established by way of:

> (1) a policy formally adopted and endorsed by the municipality; (2) actions taken by policymaking officials that caused the particular deprivation alleged; (3) practices by subordinate officials that are not expressly authorized but are so widespread and consistent that policymakers must have been aware of them; or (4) a failure by policymakers to train or supervise that amounts to "deliberate indifference" to the rights of those who come into contact with the inadequately trained or supervised municipal employees.

*Crawley v. City of Syracuse*, 496 F. Supp. 3d 718, 729 (N.D.N.Y. 2020) (citing *Deferio v. City of Syracuse*, 770 F. App'x 587, 589 (2d Cir. 2019) (Summary Order)) (additional citation omitted). "Once a plaintiff has demonstrated the existence of a municipal policy, a plaintiff must then establish a causal connection, or an 'affirmative link,' between the policy and the deprivation of his constitutional rights." *Deferio*, 770 F. App'x at 590 (citing *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985)).

In the instant complaint, Plaintiffs have failed to identify any municipal policy or custom or allege facts plausibly suggesting a basis for municipal liability. Therefore, they have failed to state a viable *Monell* claim, and dismissal as to Bixlerond is warranted. *See, e.g.*, *Polinski*, 2023 WL 2988753, at *5-7.

### 2. Department of Social Services, Grade B Supervisor

The complaint next identifies as a defendant the "Department of Social Services." Dkt. No. 1 at 2. Yet, "Grade b Supervisor" is listed as the department's "Job or Title" and the complaint references "Grade B supervisor ... Laurie Ellis." *Id.* at 4; *see also id.* at 9. Irrespective of whether Plaintiffs intend to pursue a claim against the Oneida County DSS or Ellis in her official capacity, however, the complaint fails to state a viable claim.

"Under New York law, a department of a municipal entity is merely a subdivision of the municipality and has no separate legal existence. Therefore, municipal departments like the Department of Social Services are not amenable to suit ... and no

claims lie directly against the Department." *Hoisington v. Cnty. of Sullivan*, 55 F. Supp. 2d 212, 214 (S.D.N.Y. 1999) (citations omitted). Further, as explained above, Plaintiffs have failed to allege facts plausibly suggesting a basis for municipal liability as to Oneida County. *See supra* Section V.A.1. Therefore, to the extent Plaintiffs intend to state a claim against the Oneida County DSS, dismissal is warranted. *See, e.g., White v. Syracuse Police Dep't*, No. 5:18-CV-1471 (GTS/DEP), 2019 WL 981850, at *3 (N.D.N.Y. Jan. 7, 2019) ("I would ordinarily recommend that, for the sake of judicial efficiency, the court substitute the ... [municipality] in place of the" municipal department, however, because the "plaintiff's complaint contains no factual allegations that would support a *Monell* claim against the" municipality, "I recommend dismissal of plaintiff's claims asserted against the" department.), *report and recommendation adopted*, 2019 WL 974824 (N.D.N.Y. Feb. 28, 2019).

**\*5** Alternatively, to the extent Plaintiffs intended to state a claim against Oneida County DSS Supervisor Laurie Ellis in her official capacity, as explained above, "a § 1983 suit against a municipal officer in his official capacity is treated as an action against the municipality itself." *Coon*, 404 F.3d at 687. Therefore, the Plaintiffs' failure to identify a basis for municipal liability as to Oneida County also precludes a viable claim against the County DSS Supervisor in her official capacity. *See supra* Section V.A.1; *see also, e.g., Welch v. Fitzgerald*, No. 5:18-CV-0461 (MAD/ATB), 2018 WL 6173796, at *6 (N.D.N.Y. May 16, 2018), *report and recommendation adopted*, 2018 WL 4795759 (N.D.N.Y. Oct. 4, 2018). Additionally, Laurie Ellis "is not named or identified in the caption or list of parties" as a defendant, therefore, any claim against her in her individual or official capacity would be subject to dismissal for failure to state a claim. *Burrell v. DOCCS*, 655 F. Supp. 3d 112, 125 (N.D.N.Y. 2023).

### 3. Mohawk Valley Community Action Agency

The third defendant listed in the complaint is the Mohawk Valley Community Action Agency daycare center. Dkt. No. 1 at 3. Plaintiffs seek to hold this defendant liable in its official capacity. *See id.* However, Plaintiffs have not alleged the entity is a state actor for purposes of § 1983, nor have they asserted any facts which would permit the Court to draw that inference. *See id.* at 3-10. Indeed, the sole factual assertion concerning this defendant is that "[t]here were multiple times that Mohawk Valley Community Action Agency were involved in calling CPS to have my children removed." *Id.* at 4. Accordingly, the undersigned recommends dismissal of the complaint as to the Mohawk Valley Community Action Agency. *See Fabrikant v. French*, 691 F.3d 193, 206 (2d Cir. 2012) (explaining, "[b]ecause the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action.") (citation omitted); *see also, e.g., Burgdorf v. Betsy Ross Nursing & Rehab. Ctr. Inc.*, No. 6:22-CV-0987 (DNH/ATB), 2023 WL 112092, at *5 (N.D.N.Y. Jan. 5, 2023) (recommending dismissal of § 1983 claims against three entities where the plaintiff had "not alleged any facts suggesting that these entities are state actors under any of the aforementioned exceptions, or describing how their actions are otherwise fairly attributable to the state.") (internal quotations omitted), *report and recommendation adopted*, 2023 WL 418045 (N.D.N.Y. Jan. 26, 2023).

### 4. Heidi Garber

The final defendant listed in the complaint is Heidi Garber, in her individual capacity. Dkt. No. 1 at 3. Plaintiffs state Garber worked as a babysitter, *see id.*, and allege she "abused" two of the children, admitted such conduct to Plaintiff(s), and "refused to take" a "lie detector test" regarding the incident, *id.* at 5, 8. However, Plaintiffs do not assert any facts from which the Court could conclude Garber is a state actor or that her alleged actions are fairly attributable to the state. Therefore, the undersigned recommends dismissal of the complaint as to Heidi Garber. *See supra* Section V.A.1; *see also Basile v. Connolly*, 538 F. App'x 5, 7 (2d Cir. 2013) (Summary Order) ("private individuals ... cannot be sued under 42 U.S.C. § 1983 absent a plausible allegation that they acted under color of state law.").

**B. *Younger* Abstention,[4] *Rooker-Feldman*,[5] and the Domestic Relations Exception**

**\*6** Next, from what the undersigned can glean, Plaintiffs seek both monetary damages and custody of Shibley's four children. *See* Dkt. No. 1 at 6, 8-10. Although the nature of Plaintiffs' complaint makes it difficult to determine which of the following doctrines apply, based on the relief sought, this Court likely lacks jurisdiction to hear and/or should abstain from hearing the Plaintiffs' claims.

"[I]n the event the underlying family court proceedings are pending, such claims are likely barred by the *Younger* abstention doctrine." *Walker v. O'Connor*, No. 1:22-CV-0581 (DNH/TWD), 2022 WL 2341420, at \*6 (N.D.N.Y. June 29, 2022) (citing *Younger v. Harris*, 401 U.S. 37 (1971)) (additional citation omitted), *report and recommendation adopted*, 2022 WL 2805462 (N.D.N.Y. July 18, 2022). "*Younger* generally requires federal courts to abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings." *Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002) (citing *Younger*, 401 U.S. at 43-44). "*Younger* abstention is required when three conditions are met: (1) there is an ongoing state proceeding; (2) an important state interest is implicated in that proceeding; and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of the federal constitutional claims." *Id.* (citing *Grieve v. Tamerin*, 269 F.3d 149, 152 (2d Cir. 2001)).

Courts in this circuit have found these conditions to be satisfied in matters involving issues of child custody. *See, e.g.*, *Walker*, 2022 WL 2341420, at \*6 (collecting cases applying the *Younger* abstention doctrine in the context of child custody disputes). Therefore, to the extent Plaintiffs' claims involve a "custody dispute [that] is continuing in New York State Family Court, this Court should abstain from interfering with that process." *Id.*; *see also Terpening v. McGinty*, No. 1:21-CV-1215 (GTS/CFH), 2022 WL 17418268, at \*6 (N.D.N.Y. Oct. 5, 2022) ("It is unclear whether there are pending family court proceedings in which plaintiff seeks the Court's intervention .... However, 'the heart of this case is a child custody dispute, a matter rightfully reserved for state courts.' ") (citing *McKnight v. Middleton*, 699 F. Supp. 2d 507, 520 (E.D.N.Y. 2010), *aff'd*, 434 F. App'x 32 (2d Cir. 2011)) (additional citation omitted), *report and recommendation adopted*, 2022 WL 17415121 (N.D.N.Y. Dec. 5, 2022).

Alternatively, to the extent the Plaintiffs' claims concern a state court proceeding which has concluded, such claims are likely barred by the *Rooker-Feldman* doctrine. *See, e.g.*, *Amato v. McGinty*, No. 1:21-CV-0860 (GLS/TWD), 2022 WL 226798, at \*10 (N.D.N.Y. Jan. 26, 2022); *Walker*, 2022 WL 2341420, at \*6. "Under the *Rooker-Feldman* doctrine, a federal district court lacks authority to review a final state court order or judgment where a litigant seeks relief that invites the federal district court to reject or overturn such a final state court order or judgment." *Porter v. Nasci*, No. 5:24-CV-0033 (GTS/TWD), 2024 WL 1142144, at \*4 (N.D.N.Y. Mar. 15, 2024) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291-92 (2005)) (additional citations omitted), *report and recommendation adopted*, 2024 WL 3158645 (N.D.N.Y. June 25, 2024). "The doctrine also bars the federal court from considering claims that are 'inextricably intertwined' with a prior state court determination." *Amato*, 2022 WL 226798, at \*10 (citing *Fernandez v. Turetsky*, No. 12-CV-4092, 2014 WL 5823116, at \*3 (E.D.N.Y. Nov. 7, 2014), *aff'd*, 645 F. App'x 103 (2d Cir. 2016)) (additional citation omitted). [6]

**\*7** "There is no question that *Rooker-Feldman* bars ... challenges to" a state "family court's decisions regarding child custody ...." *Phifer v. City of New York*, 289 F.3d 49, 57 (2d Cir. 2002). Accordingly, to the extent Plaintiffs seek, in effect, an appeal from an unfavorable state court custody judgment, any such claim is barred. *See Dorce v. City of New York*, 2 F.4th 82, 101 (2d Cir. 2021); *Walker*, 2022 WL 2341420, at \*6.

Furthermore, under the domestic relations exception to the jurisdiction of federal courts, cases involving divorce, alimony, and child custody remain outside of this Court's jurisdiction. *See Marshall v. Marshall*, 547 U.S. 293, 308 (2006); *see also*, *Cruz v. New York*, No. 5:17-CV-0510 (BKS/TWD), 2017 WL 6021838, at \*7 (N.D.N.Y. Oct. 27, 2017) ("Claims involving child custody, support, and visitation brought in federal district court in this Circuit have regularly been dismissed for lack of subject matter jurisdiction based on the domestic relations exception to federal jurisdiction.") (collecting cases), *report and recommendation adopted*, 2017 WL 6001833 (N.D.N.Y. Dec. 4, 2017). "Therefore, insofar as the present *pro se* Complaint seeks the restoration of custody over her son, the federal courts lack jurisdiction to hear that claim, and it should be dismissed." *Reeves v. Dep't of Children, Youth & Families*, No. 1:20-CV-0987 (BKS/DJS), 2020 WL 5898866, at \*3 (N.D.N.Y. Sept. 4, 2020) (citation omitted), *report and recommendation adopted*, 2020 WL 5891564 (N.D.N.Y. Oct. 5, 2020).

**C. Additional Deficiencies**

Finally, notwithstanding the aforementioned issues, the complaint suffers from additional defects. First, while Christopher Wheeler, Sr., is listed as a plaintiff and has submitted an IFP application, he has not signed the compliant. *See generally*, Dkt. Nos. 1, 4. Thus, the complaint violates Federal Rule of Civil Procedure 11(a) and Northern District of New York Local Rule 10.1(c)(2). *See, e.g.*, *Boyle v. Town of Hammond*, No. 7:08-CV-1065 (TJM/GJD), 2008 WL 11416992, at *1 (N.D.N.Y. Oct. 24, 2008) (explaining, *pro se* plaintiff "James F. Boyle may not represent any of the other individuals that he lists as plaintiffs. Those individuals could have signed the complaint and appeared as *pro se* plaintiffs, but James F. Boyle may not sign the complaint for them or proceed on their behalf."), *aff'd*, 375 F. App'x 85 (2d Cir. 2010); *Goode v. Halderman*, No. 3:11-CV-1461, 2011 WL 6122960, at *1 n.1 (D. Or. Dec. 9, 2011) ("the Complaint, while purportedly brought by [two individuals], was signed only by [one of the plaintiffs] .... a *pro se* Plaintiff may not bring an action on behalf of another; instead, both *pro se* Plaintiffs must sign every pleading or other document submitted to the Court.") (citing Fed. R. Civ. P. 11(a)); N.D.N.Y. L.R. 10(c)(2).

The complaint also falls short of the pleading requirements set forth in Federal Rules 8 and 10. Rule 8 requires, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief ...." Fed. R. Civ. P. 8(a)(2). Each statement must be "simple, concise, and direct," Fed. R. Civ. P. 8(d)(1), and provide "fair notice of the claims asserted." *Whitfield v. Johnson*, 763 F. App'x 106, 107 (2d Cir. 2019) (Summary Order) (citing *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)). "A complaint may be dismissed under Rule 8 if it 'is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised.' " *Id.* (quoting *Simmons*, 49 F.3d at 86 (2d Cir. 1995)).

**\*8** Moreover, Rule 10 provides "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). The Rule's purpose is "to provide an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" *Clervrain v. Robbins*, No. 1:22-CV-1248 (MAD/DJS), 2022 WL 17517312, at *2 (N.D.N.Y. Dec. 8, 2022) (citation omitted), *report and recommendation adopted*, 2023 WL 3170384 (N.D.N.Y. May 1, 2023).

A complaint that fails to comply with basic pleading requirements presents too heavy a burden for defendants to craft a defense, "provides no meaningful basis for the Court to assess the sufficiency of [the plaintiff's] claims[,]" and may properly be dismissed. *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). Therefore, dismissal of the instant complaint on this basis would also be appropriate. *See, e.g.*, *Griffith v. New York State*, No. 5:23-CV-1266 (DNH/ML), 2024 WL 1641587, at *4 (N.D.N.Y. Mar. 20, 2024) (recommending "dismissal of the Complaint because it is not acceptable under Rules 8 and 10 of the Fed. R. Civ. P. and because Plaintiff's Section 1983 claim or claims against Defendant are entirely unclear."), *report and recommendation adopted*, No. 5:23-CV-1266, 2024 WL 1639856 (N.D.N.Y. Apr. 16, 2024).

**D. Leave to Amend**

Although the Court has serious doubts, it is not clear whether Plaintiffs could assert a cognizable cause of action against the Defendants by way of a better pleading. Therefore, out of an abundance of caution and in deference to the Plaintiffs' *pro se* status, the undersigned recommends the action be dismissed without prejudice and with leave to amend. If Plaintiffs chose to avail themselves of an opportunity to amend, such amended pleading must set forth a short and plain statement of the facts on which they rely to support any legal claims asserted, which Plaintiffs have a legal right to pursue, and over which this Court has jurisdiction. Of course, Plaintiffs may also pursue their claims in state court if appropriate.

**VI. CONCLUSION**

**WHEREFORE**, it is hereby

**ORDERED** that Plaintiffs' motions to proceed IFP (Dkt. Nos. 3, 4) are **GRANTED**, [7] and it is further

**RECOMMENDED** that the complaint be **DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO AMEND**; and it is further

**ORDERED** that the Clerk provide to Plaintiffs a copy of this Report-Recommendation and Order, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.[8] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**\*9  IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2024 WL 3460788

---

### Footnotes

1    Citations to Plaintiffs' submissions will refer to the pagination generated by CM/ECF, the Court's electronic filing system. Unless otherwise indicated, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

2    The Court notes, while Plaintiffs listed "Jennifer bixlerond" as "Defendant No. 1" on the second page of the complaint, *see* Dkt. No. 1 at 2, in a later portion of the same document, *see* Dkt. No. 1 at 4, and on both IFP applications, *see generally*, Dkt. Nos. 3, 4, Plaintiffs appear to refer to the same individual as "Jennifer Bixler."

3    As discussed in greater detail below, the complaint is signed only by Annamay Shibley. *See* Dkt. No. 1 at 7.

4    *See generally, Younger v. Harris*, 401 U.S. 37 (1971).

5    *See generally, District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923).

6    *See also*, *Amato*, 2022 WL 226798, at \*11 (explaining, "[t]he *Rooker-Feldman* doctrine applies where the federal court plaintiff: (1) lost in state court, (2) complains of injuries caused by the state court judgment, (3) invites the district court to review and reject the state court judgment, and (4) commenced the district court proceedings after the state court judgment was rendered.") (citing *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014)).

7    Although their applications to proceed IFP have been granted, Plaintiffs will still be required to pay fees that they may incur in the future regarding this action, including, but not limited to, copying and/or witness fees.

8    If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that

prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

---

**End of Document**                              © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 4203975
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Annamay SHIBLEY and Christopher Wheeler, Sr., Plaintiffs,

v.

Jennifer BIXLEROND, Department of Social Services, Mohawk
Valley Community Action Agency, and Heidi Garber., Defendants.

6:24-cv-722 (BKS/TWD)
|
Signed September 16, 2024

**Attorneys and Law Firms**

Plaintiffs pro se: Annamay Shibley, Christopher Wheeler, Sr., Frankfort, NY 13340.

**MEMORANDUM-DECISION AND ORDER**

Brenda K. Sannes, Chief United States District Judge:

 **\*1** Plaintiffs Annamay Shibley and Christopher Wheeler, Sr. commenced this proceeding under 42 U.S.C. § 1983, and sought leave to proceed *in forma pauperis* ("IFP"). (Dkt. Nos. 1, 3,4). This matter was referred to United States Magistrate Judge Therese Wiley Dancks who, on July 16, 2024, granted Plaintiffs' applications to proceed IFP, and issued a Report-Recommendation, recommending that Plaintiffs' complaint be dismissed without prejudice and with leave to amend. (Dkt. No. 10). Plaintiffs were informed that they had fourteen days within which to file written objections to the report under 28 U.S.C. § 636(b)(1), and that the failure to object to the report within fourteen days would preclude appellate review. (*Id.* at 12-13). On July 29, 2024, the Court issued an Order giving Plaintiffs an extension of time to file objections to the Report-Recommendation. (Dkt. No. 12). No objections to the Report-Recommendation have been filed.

As no objections to the Report-Recommendation have been filed, and the time for filing objections has expired, the Court reviews the Report-Recommendation for clear error. *See Petersen v. Astrue*, 2 F. Supp. 3d 223, 228–29 (N.D.N.Y. 2012); Fed. R. Civ. P. 72(b) advisory committee's note to 1983 amendment. Having reviewed the Report-Recommendation for clear error and found none, the Court adopts the Report-Recommendation in its entirety.

For these reasons, it is hereby

**ORDERED** that Magistrate Judge Dancks's Report-Recommendation (Dkt. No. 10) is **ADOPTED**; and it is further

**ORDERED** that Plaintiffs' Complaint (Dkt. No. 1) is **DISMISSED** without prejudice and with leave to amend; and it is further

**ORDERED** that any amended complaint must be filed **within thirty (30) days** of the date of this Order. Any amended complaint must be a complete pleading which will replace the current complaint in total; and it is further

**ORDERED** that if Plaintiffs file a timely amended complaint, it shall be referred to Magistrate Judge Dancks for review; and if Plaintiffs fail to file a timely amended complaint, the Clerk is directed to close this case; and it is further

**ORDERED** that the Clerk serve a copy of this Order on Plaintiffs in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2024 WL 4203975

---

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Walker v. O'Connor, Not Reported in Fed. Supp. (2022)

2022 WL 2341420

2022 WL 2341420
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Alisha Clark WALKER, Plaintiff,

v.

Dr. Mary O'CONNOR, Defendants.

1:22-cv-581 (DNH/TWD)
|
Signed June 29, 2022

**Attorneys and Law Firms**

ALISHA CLARK WALKER, Plaintiff, pro se, 757 Taborton Road, Sand Lake, NY 12153.

**ORDER AND REPORT-RECOMMENDATION**

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

**\*1**  Alisha Clark Walker ("Plaintiff") initiated this action *pro se* on June 2, 2022, claiming Dr. Mary O'Connor ("Defendant") violated 42 U.S.C. § 1983 and § 1985. (Dkt. No. 1.) Plaintiff simultaneously moved to proceed *in forma pauperis* ("IFP"). (Dkt. No. 2.) Having reviewed Plaintiff's motion to proceed IFP, the undersigned GRANTS the motion for purposes of this review. *See id.* The undersigned now considers the sufficiency of the allegations set forth in the Complaint under 28 U.S.C. § 1915(e). For the reasons discussed below, the undersigned recommends that the Court dismiss Plaintiff's Complaint in its entirety with leave to amend. (Dkt. No. 1.)

**I. SUMMARY OF THE COMPLAINT** [1]

This is the second of two actions Plaintiff initiated against various individuals stemming from a child custody dispute in New York State Family Court. (*See* Dkt. No. 1; *see also* Case No. 1:22-cv-560, Dkt. No. 1.) In the first (hereinafter, "*Walker I*"), Plaintiff claimed several New York State Family Court Judges, two private attorneys, and the Averill Park School District violated her First and Fourteenth Amendment rights. (Case No. 1:22-cv-560, Dkt. No. 1.) In this case, Plaintiff restates and reasserts many of the same claims against Dr. Mary O'Connor, a private individual ordered by the New State Family Court to render forensic psychological evaluations in the underlying custody dispute. (*See* Dkt. No. 1 at 1-2, 8.) Here, as in *Walker I*, Plaintiff invokes this Court's jurisdiction under 28 U.S.C. § 1331 and § 1343, purporting to advance several causes of action under 42 U.S.C. § 1983 and § 1985. (Dkt. No. 1 at 4.)

Plaintiff claims "the policies, practices, procedures, and standards established and/or maintained by Defendant/s [sic] violate the Right to Free speech under the First Amendment, and the Due Process and Equal Protection clauses of the Fourteenth Amendment to the U.S. Constitution." *Id.* at 4. Plaintiff accordingly recycles many of the same claims against Dr. O'Connor that she asserted against the Defendants in *Walker I. See id.* at 9-31. Through the first cause of action, Plaintiff claims Dr. O'Connor "religiously discriminated against" her in violation of the First Amendment. *Id.* at 9. In her second cause of action, Plaintiff claims Dr. O'Connor retaliated against her in violation of the First Amendment. *Id.* at 10. By her third cause of action, Plaintiff claims Dr. O'Connor "deprived [her] of the rights of a mother to her children and due process and freedom of speech" in violation of the First and Fourteenth Amendments. *Id.* at 12-13. Through her fourth cause of action, Plaintiff claims Dr. O'Connor discriminated against her. *Id.* at 14-19. In her fifth cause of action, Plaintiff claims Dr. O'Connor used her position

Walker v. O'Connor, Not Reported in Fed. Supp. (2022)

2022 WL 2341420

to "maliciously intentionally inflict harm and pain on the Plaintiff." *Id.* at 20. By her sixth and final cause of action, Plaintiff claims Dr. O'Connor engaged in sex bias discrimination. *Id.* at 25.

## II. STANDARD OF REVIEW

**\*2** This Court must conduct an initial review of complaints filed *in forma pauperis*, and "complaints in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915(e)(2)(B) (governing complaints filed *in forma pauperis*); 28 U.S.C. § 1915A (governing complaints filed by prisoners against the government). When reviewing these types of complaints, this Court must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A; 28 U.S.C. § 1915(e)(2)(B); *see also Allen v. Stringer*, No. 20-3953, 2021 WL 4472667, at \*1 (2d Cir. Sept. 30, 2021) (applying Section 1915(e)(2)(B)); *Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (applying Section 1915A).[2]

This Court must exercise caution when determining whether to *sua sponte* dismiss a *pro se* complaint on the grounds that it is frivolous. *See Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991); *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983). "An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). "A claim is based on an indisputably meritless legal theory when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." *Id.*

When undertaking this initial review, the Court must construe *pro se* pleadings with the utmost leniency. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding that a *pro se* litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers"); *see also Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). To survive dismissal for failure to state a claim, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This short and plain statement of the claim must be "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The statement of the claim must do more than present "an unadorned, the-defendant-harmed-me accusation." *Iqbal*, 556 U.S. 662, 678. It must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. 544, 555; *see also* Fed. R. Civ. P. 8(a)(2).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## III. SUFFICIENCY OF THE COMPLAINT

**\*3** Plaintiff's Complaint should be dismissed because it fails to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B). Moreover, just like *Walker I*, Plaintiff's claims are likely barred by either the *Younger* abstention or the *Rooker-Feldman* doctrine.

### A. Plaintiff's Section 1983 Claims

Construing Plaintiff's Complaint liberally, *Sealed Plaintiff*, 537 F.3d at 191, the undersigned concludes Plaintiff has failed to state a claim for relief under 42 U.S.C. § 1983. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).[3] Plaintiff purports to bring this action against Dr. O'Connor, a court-appointed forensic psychologist, under 42 U.S.C. § 1983. (*See* Dkt. No. 1 at 3-4.) "To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must allege (1) that some person has deprived him of a federal right, and (2) that the person

Case 6:24-cv-01367-AMN-ML   Document 8   Filed 04/07/25   Page 87 of 186

Walker v. O'Connor, Not Reported in Fed. Supp. (2022)

2022 WL 2341420

who has deprived him of that right acted under color of state law." *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005). "[P]rivate individuals ... cannot be sued under 42 U.S.C. § 1983 absent a plausible allegation that they acted under color of state law." *Basile v. Connolly*, 538 F. App'x 5, 7 (2d Cir. 2013). A conclusory allegation that a private individual acted in concert with a state actor does not constitute a plausible allegation that the private individual acted under color of state law. *See Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002); *see, e.g.*, *Asensio v. DiFiore*, No. 18-CV-10933 (RA), 2019 WL 4392743, at *8 (S.D.N.Y. Sept. 13, 2019) (concluding the plaintiff's "conclusory allegations" of conspiracy were "plainly insufficient to support a finding that [the defendant] has acted under color of state law."); *Bornschein v. Herman*, 304 F. Supp. 3d 296, 301 (N.D.N.Y. 2018) (same).

Plaintiff's Section 1983 claims against Dr. O'Connor are inadequately pled because she failed to allege Dr. O'Connor acted under color of state law. *See* 42 U.S.C. § 1983; *Velez*, 401 F.3d at 84. Plaintiff's conclusory allegations that Dr. O'Connor acted in concert with state actors do not plausibly allege that Dr. O'Connor acted under color of state law. *See Asensio*, 2019 WL 4392743, at *8; *Bornschein*, 304 F. Supp. 3d at 301. Similarly, Plaintiff's allegation that Dr. O'Connor was ordered by the court to issue a forensic evaluation does not give rise to the reasonable inference that she was acting under color of state law. *See, e.g.*, *Markham v. Rosenbaum*, No. 20-CV-6039-FPG, 2020 WL 3316099, at *9 (W.D.N.Y. June 18, 2020), *appeal dismissed*, No. 20-2223, 2021 WL 3027159 (2d Cir. May 13, 2021) (concluding a court-appointed psychologist was not a state actor for purposes of a claim brought pursuant to 42 U.S.C. § 1983 arising out of child custody dispute); *Elmasri v. England*, 111 F. Supp. 2d 212, 221 (E.D.N.Y. 2000) (same); *see generally Estiverne v. Esernio-Jenssen*, 910 F. Supp. 2d 434, 444 (E.D.N.Y. 2012) ("Dr. Jenssen's cooperation in the [Administration for Children's Services] investigation, by providing medical information and opinion, does not transform her into a state actor."). The undersigned accordingly recommends that the Court dismiss all claims asserted under 42 U.S.C. § 1983 on the grounds that Plaintiff failed to adequately allege Dr. O'Connor acted under color of state law. *See* 28 U.S.C. 1915(e)(2)(B)(ii).

**\*4** Moreover, Plaintiff has failed to adequately allege Dr. O'Connor violated one of her federal rights. *See* 42 U.S.C. § 1983; *see also Velez*, 401 F.3d at 84. Plaintiff repeatedly claims Dr. O'Connor violated her First and Fourteenth Amendment rights. (*See* Dkt. No. 1 at 4, 9-31.) Yet, Plaintiff failed to support this general claim with sufficient factual allegations to give rise to the reasonable inference that Dr. O'Connor's conduct amounted to *an actual violation* of her First and Fourteenth Amendment rights. *See Iqbal*, 556 U.S. at 678. Because Plaintiff failed to plausibly allege that Dr. O'Connor violated one or more of her federal rights, the undersigned recommends that the Court dismiss every cause of action Plaintiff asserts under Section 1983 for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *see, e.g.*, *Perez v. Colon*, No. 9:19-CV-0722 (BKS), 2019 WL 5102612, at *6 (N.D.N.Y. Oct. 11, 2019) ("In the absence of factual allegations sufficient to plausibly suggest that the defendant was personally involved in conduct that violated Plaintiff's constitutional rights, the complaint fails to state a cognizable claim against him/her."); *Hamilton v. New York State Dep't of Corr. & Cmty. Supervision*, No. 9:18-CV-1312 (MAD), 2019 WL 2352981, at *7 (N.D.N.Y. June 4, 2019) (same).

**B. Plaintiff's Section 1985 Claims**

Construing Plaintiff's Complaint liberally, *Sealed Plaintiff*, 537 F.3d at 191, the undersigned concludes Plaintiff has failed to state a claim for relief under 42 U.S.C. § 1985. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). [4] To state a conspiracy claim under 42 U.S.C. § 1985(3), a plaintiff must allege: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007); *see also DeRouseau*, 2022 WL 1747859, at *3. Further, the "conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Cine SK8, Inc.*, 507 F.3d at 791. "Complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *DeRouseau*, 2022 WL 1747859, at *3; *see, e.g.*, *Webb v. Goord*, 340 F.3d 105, 110-11 (2d Cir. 2003) ("The plaintiffs have not alleged, except in the most conclusory fashion, that any such meeting of the minds occurred

Walker v. O'Connor, Not Reported in Fed. Supp. (2022)

2022 WL 2341420

among any or all of the defendants. Their conspiracy allegation must therefore fail."); *Morpurgo v. Inc. Vill. of Sag Harbor*, 697 F. Supp. 2d 309, 340 (E.D.N.Y. 2010), *aff'd*, 417 F. App'x 96 (2d Cir. 2011) (concluding the § 1985 conspiracy claim failed because "Plaintiff has provided only conclusory, vague and unsupported allegations ... as a basis for asking the Court to find the existence of a conspiracy."). Moreover, a § 1985 conspiracy claim fails as a matter of law where there is no underlying constitutional violation. *See, e.g., Oliver v. Penny*, No. 21-111, 2022 WL 2165814, at *3 (2d Cir. June 16, 2022) (concluding plaintiff's § 1985 conspiracy claim "failed because she did not plausibly allege an underlying constitutional violation"); *Tirse v. Gilbo*, No. 6:15-CV-0987 (GTS) (ATB), 2016 WL 4046780, at *18 (N.D.N.Y. July 27, 2016) ("Because the Court has found that Plaintiff has failed to allege facts plausibly suggesting a conspiracy and/or an underlying constitutional violation, Plaintiff's § 1985 claim is likewise dismissed.").

 **\*5** Here, Plaintiff failed to advance any non-conclusory factual allegations suggesting Dr. O'Connor targeted and discriminated against her on the basis of sex. (*See generally* Dkt. No. 1; *see, e.g., Doe v. Fenchel*, 837 F. App'x 67, 68 (2d Cir. 2021) (concluding plaintiff failed to plead any facts in support of the "conclusory allegations" that defendants "targeted him and discriminated against him based on his race, color, gender, sex, veteran status, disability status, and so forth.").) Although Plaintiff alleges Dr. O'Connor "acted in malice with bias" and "routinely engag[ed] in sex bias and discrimination," she fails to advance any factual allegations to support this conclusory statement. (*See* Dkt. No. 1 at 5, 25.) "Such naked assertions devoid of further factual enhancement are insufficient to give rise to a plausible entitlement to relief." *Doe*, 837 F. App'x at 68.

Plaintiff also failed to adequately allege Dr. O'Connor conspired with other individuals to engage in unlawful conduct against her. (*See generally* Dkt. No. 1 at 13-14.) Plaintiff advanced the general allegation that Dr. O'Connor acted in concert with others during the custody dispute before the New York State Family Court, but advanced no factual allegations indicating that Dr. O'Connor agreed to engage in *unlawful conduct* against her. *See id.* As explained above, the Complaint lacks sufficient factual allegations to give rise to the reasonable inference that Dr. O'Connor violated Plaintiff's First and Fourteenth Amendment rights. *See Iqbal*, 556 U.S. at 678. The general allegation that Dr. O'Connor acted in concert with others, without more, does not give rise to the inference that she agreed to engage in *unlawful conduct* against Plaintiff. *See, e.g., Webb*, 340 F.3d at 110-11; *Alston v. Sebelius*, No. 13-CV-4537 (SJF) (ARL), 2014 WL 4374644, at *18 (E.D.N.Y. Sept. 2, 2014); *Morpurgo*, 697 F. Supp. 2d at 340.

Finally, Plaintiff failed to allege facts plausibly suggesting an underlying constitutional violation. (*See generally* Dkt. No. 1 at 9-31; *see, e.g., Tirse*, 2016 WL 4046780, at *18 (dismissing a § 1985 conspiracy claim because "Plaintiff has failed to allege facts plausibly suggesting ... an underlying constitutional violation".).) Plaintiff alleged in conclusory fashion that Dr. O'Connor violated her First and Fourteenth Amendment rights, but her Complaint lacks factual allegations to support this claim. (*See generally* Dkt. No. 1 at 4, 6, 9-31.) Those conclusory allegations fail to plausibly allege a constitutional violation. *See id.*; *see also Iqbal*, 556 U.S. at 678. Plaintiff has accordingly failed to state a claim for relief under 42 U.S.C. § 1985(3). *See, e.g., Oliver*, 2022 WL 2165814, at *3; *Tirse*, 2016 WL 4046780, at *18; *Alston*, 2014 WL 4374644, at *18. The undersigned therefore recommends that the Court dismiss every cause of action Plaintiff asserts under 42 U.S.C. § 1985(3) for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). [5]

### C. Jurisdiction

Although the nature of Plaintiff's Complaint makes it difficult to precisely determine which doctrines apply, her claims are likely barred by *Younger* abstention and/or the *Rooker-Feldman* doctrine. (*See* Dkt. No. 1; *see, e.g., Amato v. McGinty*, No. 1:21-CV-00860 (GLS) (TWD), 2022 WL 226798, at *10-11 (N.D.N.Y. Jan. 26, 2022) (concluding plaintiff's claims, which stemmed from an underlying New York State Family Court custody dispute, were likely barred by *Younger* abstention and the *Rooker-Feldman* doctrine).)

 **\*6** First, in the event the underlying family court proceedings are pending, such claims are likely barred by the *Younger* abstention doctrine. *See generally Younger v. Harris,* 401 U.S. 37 (1971); *see, e.g., Amato*, 2022 WL 226798, at *11. In *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69 (2013), the Supreme Court clarified that the *Younger* abstention doctrine is limited to three exceptional circumstances, including: (1) state criminal prosecutions; (2) civil enforcement, or "quasi-criminal,"

proceedings; and (3) "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Id.* at 72-73; *see also id.* ("This Court has extended *Younger* abstention to particular state civil proceedings that are akin to criminal prosecutions ... or that implicate a State's interest in enforcing the orders and judgments of its courts").

Here, Plaintiff seeks injunctive relief from a child custody dispute before New York State Family Court. (Dkt. No. 1 at 1-2, 32.) "[I]t is well-settled that a custody dispute raises important state interests." *Stumpf v. Maywalt*, No. 21-CV-06248 (EAW), 2022 WL 2062613, at *3 (W.D.N.Y. June 6, 2022) (collecting cases); *see also Graham v. N.Y. Ctr. for Interpersonal Dev.*, No. 15-CV-00459 (PKC), 2015 WL 1120120, at *3 (E.D.N.Y. Mar. 12, 2015). Accordingly, to the extent the custody dispute is continuing in New York State Family Court, this Court should abstain from interfering with that process. *See, e.g.*, *Stumpf*, 2022 WL 2062613, at *3 (applying *Younger* abstention in an action stemming from an ongoing child custody dispute); *Walker v. Fam. Ct. Judge Catherine Cholakis*, No. 1:19-CV-1288 (LEK) (CFH), 2020 WL 3503158, at *4 (N.D.N.Y. June 29, 2020) (applying *Younger* abstention in an action seeking declaratory relief over a child custody dispute); *Graham*, 2015 WL 1120120, at *3 (applying *Younger* abstention in an action seeking injunctive relief over a child custody dispute); *Rhee-Karn v. Burnett*, No. 13 CIV. 6132 (JPO), 2014 WL 4494126, at *7 (S.D.N.Y. Sept. 12, 2014) (applying *Younger* abstention in an action seeking declaratory and injunctive relief over a child custody dispute).

Second, in the event the relevant underlying state court proceedings are concluded, such claims are likely barred by the *Rooker-Feldman* doctrine. *See Phifer v. City of New York*, 289 F.3d 49, 57 (2d Cir. 2002) ("There is no question that *Rooker–Feldman* bars Phifer's challenges to the family court's decisions regarding custody, neglect, and visitation."); *Fernandez v. Turetsky*, No. 1 2-CV-4092 (SLT) (MDG), 2014 WL 5823116, at *4 (E.D.N.Y. Nov. 7, 2014), *aff'd*, 645 F. App'x 103 (2d Cir. 2016) ("Courts have repeatedly invoked the [*Rooker-Feldman*] doctrine in cases, like the one currently before the Court, in which plaintiffs challenge family court decrees setting child support arrears.") (collecting cases). "The *Rooker-Feldman* doctrine bars federal district courts from hearing cases that in effect are appeals from state court judgments, because the Supreme Court is the only federal court with jurisdiction over such cases." *Dorce v. City of New York*, 2 F.4th 82, 101 (2d Cir. 2021); *see also Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 94 (2d Cir. 2015). The *Rooker-Feldman* doctrine applies where the federal court plaintiff: (1) lost in state court, (2) complains of injuries caused by the state court judgment, (3) invites the district court to review and reject the state court judgment, and (4) commenced the district court proceedings after the state court judgment was rendered. *Dorce*, 2 F.4th at 101; *Sykes*, 780 F.3d at 94.

Here, it appears Plaintiff "lost" in New York State Family Court, complains of injuries caused by that court's judgments, and asks this Court to invalidate those judgments on the grounds that they violated her due process rights. (*See* Dkt. No. 1 at 32 (requesting an "injunction barring Defendant from continuing their [sic] illegal acts," and a "permanent restraining order to be placed on the defendant [sic]").) Thus, as currently drafted, Plaintiff's Complaint is likely barred under the *Rooker-Feldman* doctrine. *See, e.g.*, *Phifer*, 289 F.3d at 57; *Stumpf*, 2022 WL 2062613, at *4 n.4; *Amato*, 2022 WL 226798, at *10; *Fernandez*, 2014 WL 5823116, at *4.

## IV. CONCLUSION

**\*7** For the foregoing reasons, the undersigned recommends that the Court dismiss Plaintiff's Complaint with leave to amend. (Dkt. No. 1.)

**ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiff's IFP Application (Dkt. No. 2) is **GRANTED** solely for purposes of initial review; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam); and it is further

**RECOMMENDED** that Plaintiff's Complaint (Dkt. No. 1) be **DISMISSED WITH LEAVE TO AMEND** pursuant to 28 U.S.C. § 1915(e)(2)(B).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [6] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

**All Citations**

Not Reported in Fed. Supp., 2022 WL 2341420

---

## Footnotes

1  The following recitation of facts is drawn from the Complaint, which the Court accepts as true for purposes of initial review. *See, e.g.*, *LaTouche v. Rockland County*, No. 22-CV-1437 (LTS), 2022 WL 953111, at *1 (S.D.N.Y. Mar. 29, 2022); *Walker v. City of New York*, No. 20-CV-5240 (PKC) (LB), 2021 WL 1838277, at *1 n.1 (E.D.N.Y. May 7, 2021).

2  Unless otherwise indicated, in quoting cases, all alterations, internal quotation marks, emphases, footnotes, and citations are omitted. *See, e.g.*, *Sczepanski v. Saul*, 946 F.3d 152, 157 n.4 (2d Cir. 2020).

3  Plaintiff does not explain or distinguish which of her six causes of action are advanced under 42 U.S.C. § 1983, and which are advanced under 42 U.S.C. § 1985. (*See generally* Dkt. No. 1 at 9-31.) The undersigned accordingly considers whether *any* of Plaintiff's six causes of action state a claim for relief under 42 U.S.C. § 1983. *See Sealed Plaintiff*, 537 F.3d at 191.

4  Plaintiff does not explain or distinguish which of her six causes of action are advanced under 42 U.S.C. § 1983, and which are advanced under 42 U.S.C. § 1985. (*See generally* Dkt. No. 1 at 9-31.) The undersigned accordingly considers whether *any* of Plaintiff's six causes of action state a claim for relief under 42 U.S.C. § 1985. *See Sealed Plaintiff*, 537 F.3d at 191.

5  The undersigned notes that, nested within Plaintiff's third cause of action, she purports to assert a "civil rights action brought pursuant to Title VII of the Civil Rights Act of 1964." (Dkt. No. 1 at 4, 14.) That claim fails, however, because Plaintiff did not allege she is or was an employee of Dr. O'Connor, and she did not allege any employment discrimination. *See, e.g.*, *Amato v. McGinty*, No. 1:21-CV-00860 (GLS) (TWD), 2022 WL 226798, at *8 (N.D.N.Y. Jan. 26, 2022) (dismissing plaintiff's Title VII claim as frivolous because she did not "allege employment discrimination or that she is or was an employee of Judge McGinty") (collecting cases).

6  If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. 6(a)(1)(C).

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Walker v. O'Connor, Not Reported in Fed. Supp. (2022)

2022 WL 2805462

2022 WL 2805462
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Alisha Clark WALKER, Plaintiff,

v.

Dr. Mary O'CONNOR, Defendant.

1:22-CV-581
|
Signed July 18, 2022

**Attorneys and Law Firms**

ALISHA CLARK WALKER, Plaintiff, Pro Se, 757 Taborton Road, Sand Lake, NY 12153.

## ORDER ON REPORT & RECOMMENDATION

DAVID N. HURD, United States District Judge

**\*1** On June 2, 2022, *pro se* plaintiff Alisha Clark Walker ("plaintiff") filed this action alleging that defendant, a private individual ordered by a state court to render forensic psychological evaluations in an underlying child custody dispute, discriminated against her. Dkt. No. 1. Along with her complaint, plaintiff sought leave to proceed *in forma pauperis* ("IFP Application"). Dkt. No. 2.

On June 29, 2022, U.S. Magistrate Judge Thérèse Wiley Dancks granted plaintiff's IFP Application for the purpose of an initial review and advised by Report & Recommendation ("R&R") that plaintiff's complaint be dismissed with leave to amend. Dkt. No. 4. Although Judge Dancks observed that plaintiff's claims were almost certainly barred by various jurisdictional or immunity principles, in light of plaintiff's *pro se* status Judge Dancks concluded that plaintiff should be given an opportunity to amend. *Id.*

Plaintiff has not filed objections, and the time period in which to do so has expired. *See* Dkt. No. 4. Upon review for clear error, the R&R will be accepted and adopted in all respects. *See* FED. R. CIV. P. 72(b).

Therefore, it is

ORDERED that

1. The Report & Recommendation is ACCEPTED;

2. Plaintiff's complaint is DISMISSED with leave to amend;

3. Plaintiff shall have thirty days from the date of this Order in which to amend her pleading in accordance with the instructions set forth in Judge Dancks's Report & Recommendation and this Order; and

4. If plaintiff does not file an amended complaint within this thirty-day period, the Clerk of the Court shall enter a judgment accordingly and close the file without further Order of this Court.

IT IS SO ORDERED.

**Walker v. O'Connor, Not Reported in Fed. Supp. (2022)**
Case 6:24-cv-01367-AMN-ML     Document 8     Filed 04/07/25     Page 92 of 186
2022 WL 2805462

**All Citations**

Not Reported in Fed. Supp., 2022 WL 2805462

---

    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

---

Case 6:24-cv-01367-AMN-ML    Document 8    Filed 04/07/25    Page 93 of 186

Terpening v. McGinty, Not Reported in Fed. Supp. (2022)

2022 WL 17418268

2022 WL 17418268
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Tammy TERPENING, Plaintiff,

v.

Anthony MCGINTY, in his judicial and individual capacities, Defendant.

No. 1:21-CV-1215 (GTS/CFH)
|
Signed October 5, 2022

**Attorneys and Law Firms**

Tammy Terpening, 17 Blair Road, Apt. 6, Kerhonkson, New York 12446, Plaintiff pro se.

### REPORT-RECOMMENDATION AND ORDER

Christian F. Hummel, United States Magistrate Judge

#### I. Procedural Background

**\*1**  Plaintiff pro se Tammy Terpening ("plaintiff") commenced this action on November 9, 2021, with the filing a complaint and an application to proceed in forma pauperis ("IFP"). See Dkt. No. 1 ("Compl."); Dkt. No. 2. In a Report-Recommendation and Order dated April 28, 2022, the undersigned: (1) granted plaintiff's IFP application; (2) recommended that plaintiff's 42 U.S.C. § 1983 and Title VII claims, and Americans with Disabilities Act ("ADA") claim against defendant Judge Anthony McGinty ("defendant") in his individual capacity be dismissed with prejudice and without leave to amend; and (3) recommended that plaintiff's ADA claim against defendant in his official capacity be dismissed without prejudice and with leave to amend. See Dkt. No. 6. Plaintiff was informed that she had fourteen days to file objections to the Report-Recommendation and Order. See id. at 19. Plaintiff did not file any objections and on June 13, 2022, Judge Suddaby adopted the Report-Recommendation and Order in its entirety. See Dkt. No. 8. Presently before the Court is plaintiff's amended complaint for review pursuant to 28 U.S.C. § 1915. See Dkt. No. 9 ("Am. Compl.").

#### II. Initial Review of Amended Complaint

##### A. Legal Standard

Section 1915 [1] of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). It is a court's responsibility to determine that a plaintiff may properly maintain his or her complaint before permitting him or her to proceed with the action.

Where, as here, the "plaintiff proceeds pro se, the court must construe his [or her] submissions liberally and interpret them to raise the strongest arguments that they suggest." Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (citation and internal quotation marks omitted). This does not mean that the Court is required to accept unsupported allegations

Case 6:24-cv-01367-AMN-ML   Document 8   Filed 04/07/25   Page 94 of 186
Terpening v. McGinty, Not Reported in Fed. Supp. (2022)
2022 WL 17418268

that are devoid of sufficient facts or claims. Pro se litigants are "not exempt ... from compliance with relevant rules of procedural and substantive law[.]" Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) (citation omitted). Although detailed allegations are not required at the pleading stage, the complaint must still include enough facts to provide the defendants with notice of the claims against them and the grounds on which these claims are based. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic v. Twombly, 550 U.S. 544, 555-56 (2007). Ultimately, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citation omitted).

**\*2** Pleading guidelines are set forth in the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). Specifically, Rule 8 provides that a pleading which sets forth a claim for relief shall contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "The purpose ... is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (citations and internal quotation marks omitted). Rule 8 also requires the pleading to include "a short and plain statement of the grounds for the court's jurisdiction" and "a demand for the relief sought...." FED. R. CIV. P. 8(a)(1), (3). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." Id. at 8(d)(1).

Further, Rule 10 provides in pertinent part that:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189 F.R.D. at 55 (citations and internal quotation marks omitted). A complaint that fails to comply with the pleading requirements "presents far too [ ] heavy [a] burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). The Second Circuit has held that "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative ... to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (internal citation omitted). However, "[d]ismissal [ ] is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citation omitted). If dismissal is warranted and the plaintiff is pro se, the court generally affords the plaintiff leave to amend the complaint. See Simmons v. Abruzzo, 49 F.3d 83, 86-87 (2d Cir. 1995).

## B. Plaintiff's Amended Complaint [2]

Plaintiff's amended complaint raises essentially the same claims as her original complaint. See generally Compl.; Am. Compl. Plaintiff asserts that defendant was the Ulster County Family Court Judge presiding over child custody proceedings between her and her children's father. See id. at 4, 8, 16-17. Plaintiff claims that the children's father was abusive towards plaintiff and the children. See id. at 3. Plaintiff states that "since at least 2019, [she] filed a [custody] petition however [she] became ill and temporarily required the care of a hospital." Id. at 13. Plaintiff submits a photocopy of discharge instructions from Vassar Brothers Medical Center Emergency Department, dated September 29, 2019, which indicated a Hematochezia [3] diagnosis for one of her daughters. See id. at 14, 16. [4] Plaintiff also submits a discharge summary dated December 12, 2019, which stated

Case 6:24-cv-01367-AMN-ML    Document 8    Filed 04/07/25    Page 95 of 186

Terpening v. McGinty, Not Reported in Fed. Supp. (2022)

2022 WL 17418268

that plaintiff was "admitted to medicine service. MRI done was positive for stroke. Patient started on stroke care measure medications. Found to be B12 deficient and started on supplementation." Id. at 15. The hospital summary notes that plaintiff had "iron deficiency secondary to dysfunctional uterine bleeding. Started on iron supplementation. Pelvic ultrasound was negative for ovarian or uterine lesions. Patient with new onset diabetes, added on diabetic heart healthy diet." Id. An "[e]chocardiogram was found to have global hypokinesis with ejection fraction of 40-45%. She was recommended to proceed with transesophageal echocardiogram." Id. The summary states, however, that "because Family Court judge did not consider her hospitalized status as justification to delay deciding custody for her minor children, with potential to release to their biological father, who has been accused of sexually molesting them, discharge was attested in order for patient to appear in family court." Id. Plaintiff was "strongly encouraged to return for inpatient hospitalization management if symptoms were to recur." Id.

 **\*3** Plaintiff attests that she requested "to adjourn the court date for necessary provisions for health and safety[,]" but "[d]efendant steadfastly refused and denied with blatant disrespect for the well being of [p]laintiff." Am. Compl. at 16-17. Plaintiff states that she arrived late to the court proceeding and her sister, who was already in attendance, informed plaintiff that defendant "harassed, intimidated, and threatened [plaintiff's sister] with incarceration if she interfered with watching [plaintiff's] children." Id. at 17. Plaintiff asserts that "[i]t was at this Court's first appearance where the [d]efendant on his own accord without explanation changed custody[ ]" in favor of the children's father. Id. Plaintiff states that she was "[s]ick, crushed, and in depair[.]" Id. She attests that "[l]ater that day," she received an email from her children's school which explained that the children's father said that "he is not able to have the girls with him at the moment and wishes for them to remain with their mother until he has prepared for them." Id. at 17-18.

On the first page of her amended complaint, plaintiff states that she is

> seeking zero monetary damages, punitive damages, injunctive relief with penalties under [ ] 42 U.S.C.
> § 1988, declaratory judgment, pursuant to 18 U.S.C. §§ 241 and 242, 42 U.S.C. § 1985, 42 U.S.C. §
> 12203, 42 U.S.C. § 12182, 42 U.S.C. § 12301(3)(5)(7)(A)(B), Title II claim of American Disabilities
> Act, seeking, appointed counsel and in the alternative, tortious interference with parental rights under the
> common law and for such other relief The Court deems just and appropriate.

Am. Compl. at 1. In her "claims for relief[,]" plaintiff states that she "seeks all prescribed relief stated throughout this action" and specifically prays for the appointment of counsel, a jury trial, and "[a] judgment against [d]efendant for costs and such other relief as the Court may deem appropriate." Id. at 24. [5]

### C. Analysis

#### 1. Miscellaneous Statutes

Plaintiff cites a string of statutes under which she purports to assert causes of action. See Am. Compl. at 1. First among them is 42 U.S.C. § 1988. See id. "[Section] 1988 does not provide an independent cause of action, but instead provides a mechanism by which particular remedies may be sought in civil rights actions." Solomon v. City of Rochester, 449 F. Supp. 3d 104, 113 (W.D.N.Y. 2020) (citation and quotation marks omitted). Plaintiff also cites 18 U.S.C. §§ 241 and 242. See Am. Compl. at 1. These statutes concern criminal conspiracy and criminal deprivation of rights under the color of law, but "they do not provide a private right of action to civil litigants." Burke v. APT Found., 509 F. Supp. 2d 169, 173 (D. Conn. 2007) (citations omitted); see 18 U.S.C. §§ 241, 242. Next, plaintiff cites 42 U.S.C. § 12301(3), (5), (7)(A)(B). See Am. Compl. at 1. This statute explains a Congressional policy enacted as part of its Helping America's Youth initiative and the provisions that plaintiff references discuss the importance of children's health and safety. See 42 U.S.C. § 12301(3), (5), (7)(A)(B). However, the policy states

Case 6:24-cv-01367-AMN-ML    Document 8    Filed 04/07/25    Page 96 of 186

Terpening v. McGinty, Not Reported in Fed. Supp. (2022)

2022 WL 17418268

that it "is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity, by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person." Improving the Coordination and Effectiveness of Youth Programs, Exec. Order No. 13459, § 6(c), 73 FR 8003 at *8005. Accordingly, it is recommended that any purported claims under 42 U.S.C. § 1988, 18 U.S.C. §§ 241 and 242, and 42 U.S.C. § 12301, are dismissed with prejudice and without leave to amend as plaintiff cannot state a cognizable claim. [6]

### 2. 42 U.S.C. § 1985

**\*4** "Section 1985 prohibits conspiracies to deprive individuals of civil rights." Johnson v. City of New York, 669 F. Supp. 2d 444, 451 (S.D.N.Y. 2009); see Am. Compl. at 1. As an initial matter, defendant is immune from suit under 42 U.S.C. § 1985 to the extent she seeks damages. See Walker v. Rivera, No. 1:22-CV-560 (DNH/TWD), 2022 WL 2341544, at *4 (N.D.N.Y. June 29, 2022) (explaining that judicial immunity "immunizes [ ] judges from [ ] causes of action [ ] assert[ed] under both 42 U.S.C. § 1983 and § 1985."), report and recommendation adopted, 2022 WL 2805477 (N.D.N.Y. July 18, 2022).

"It is well-established that judges have absolute immunity from suit for acts performed in their judicial capacities." Cruz v. N.Y., No. 5:17-CV-00510 (BKS/TWD), 2017 WL 6021838, at *18 (N.D.N.Y. Oct. 27, 2017) (citing Bradley v. Fisher, 80 U.S. 335 (1871); Mireles v. Waco, 502 U.S. 9, 11(1991)), report and recommendation adopted, 2017 WL 6001833 (N.D.N.Y. Dec. 4, 2017). "Immunity from suit is overcome in only two narrow circumstances. [ ] [A] judge is not immune from liability for ... actions not taken in a judge's judicial capacity ... [and] for actions, though judicial in nature, taken in the complete absence of all jurisdiction." Id. (citations and quotation marks omitted). "The Supreme Court has 'generally concluded that acts arising out of, or related to, individual cases before the judge are judicial in nature.' " Id. (quoting Bliven v. Hunt, 579 F.3d 204, 210 (2d Cir. 2009)). "Judges enjoy absolute immunity even when a plaintiff offers allegations of 'bad faith or malice.' " Id. (quoting Mireles, 502 U.S. at 11). "Whether an act by a judge is a 'judicial one' relates to the 'nature of the act itself'—whether it is a function that is necessarily performed by a judge." Amato v. McGinty, No. 1:17-CV-593 (MAD/ATB), 2017 WL 9487185, at *3 (N.D.N.Y. June 6, 2017) (quoting Mireles, 02 U.S. at 12), report and recommendation adopted, 2017 WL 4083575 (N.D.N.Y. Sept. 15, 2017). "The parties must have dealt with the judge in his or her 'judicial capacity.' " Id. (citation omitted).

Plaintiff contends that defendant was acting outside of his judicial capacity, and instead as "a witness" when he changed a custody order. Am. Compl. at 17. Although plaintiff asserts that defendant altered the custody agreement "on his own accord" and "without explanation[,]" custody orders are a judicial function of a family court judge. Id.; see Amato, 2017 WL 9487185, at *3 ("[A]ll of Judge McGinty's alleged 'biased' or 'illegal' conduct was taken in connection with his position as a Family Court judge presiding over plaintiff Amato's custody case. Whether the judge's conduct involved issuing orders based on 'funding,' allegedly biased decisions in favor of defendant [ ], or making decisions that were not in the best interest of [the child], these were all actions taken in the course of a custody proceeding in his capacity as a Family Court Judge. Thus, Judge McGinty is entitled to judicial immunity."); Walker v. Fam. Ct. Judge Catherine Cholakis, No. 1:19-CV-1288 (LEK/CFH), 2020 WL 3503158, at *7 (N.D.N.Y. June 29, 2020) (citation quotation marks omitted) (determining that the defendant was entitled to judicial immunity despite allegations of the defendant "lack[ing] judicial competence and exhibit[ing] personal animus and bias" towards the plaintiff).

**\*5** As defendant was acting in his judicial capacity as a family court judge when he changed the custody order, he is entitled to judicial immunity as to plaintiff's purported § 1985 claim against him in his individual capacity to the extent plaintiff seeks punitive damages. [7] See Cruz, 2017 WL 6021838, at *18 ("Because the allegations in [the p]laintiff's complaint indicate that his claims against [various defendants] were all related to the support, visitation, and/or custody proceedings between [the p]laintiff and [his wife], the Court finds that they are all entitled to judicial immunity and recommends dismissal of [the p]laintiff's complaint against them with prejudice on judicial immunity grounds."); Bliven v. Hunt, 418 F. Supp. 2d 135, 137 (E.D.N.Y. 2005) ("Judges are absolutely immune from liability for judicial acts, however erroneous the act and however evil the motive."); Kampfer v. Scullin, 989 F. Supp. 194, 202 (N.D.N.Y. 1997) ("[T]he doctrine of absolute judicial immunity bars suits for monetary damages, including compensatory and punitive damage suits."). Additionally, defendant is immune from suit

Case 6:24-cv-01367-AMN-ML    Document 8    Filed 04/07/25    Page 97 of 186
Terpening v. McGinty, Not Reported in Fed. Supp. (2022)
2022 WL 17418268

under the Eleventh Amendment to the extent plaintiff seeks to sue him in his "judicial" or official capacity for damages. See Washington v. Ciccone, No. 3:21-CV-0564 (MAD/ML), 2021 WL 2935950, at *4 (N.D.N.Y. July 13, 2021) ("While judicial immunity shields judges from suit to the extent they are sued in their individual capacities, the Eleventh Amendment shields judges from suit to the extent that they are sued in their official capacities."), report and recommendation adopted, 2021 WL 4859663 (N.D.N.Y. Oct. 19, 2021); Hines v. City of Albany, 542 F. Supp. 2d 218, 227 (N.D.N.Y. 2008)("Claims against a government employee in his official capacity are treated as a claim against the municipality[.]").

"Although the doctrine of judicial immunity provides that a judge is not liable for damages for acts performed in the exercise of her judicial function, judicial immunity does not bar actions seeking prospective injunctive relief against judicial officers. Nor does judicial immunity bar actions seeking declaratory relief." Estes-El v. Town of Indian Lake, 954 F. Supp. 527, 534 (N.D.N.Y. 1997) (citations omitted). Further, "the Eleventh Amendment does not bar a suit against a state official when that suit seeks ... prospective injunctive relief." Nassau & Suffolk Cnty. Taxi Owners Ass'n, Inc. v. State, 336 F. Supp. 3d 50, 65 (E.D.N.Y. 2018) (citations and quotation marks omitted). However, "[w]hen 'only past acts are involved,' declaratory relief is unavailable." Guan v. Mayorkas, 530 F. Supp. 3d 237, 255 (E.D.N.Y. 2021) (citations omitted). Plaintiff's allegations concern only past acts; therefore, she is not entitled to declaratory relief. See, e.g., Amato v. McGinty, No. 1:21-CV-00860 (GLS/TWD), 2022 WL 226798, at *8 (N.D.N.Y. Jan. 26, 2022). Moreover, whether plaintiff seeks the Court's involvement in past custody orders or ongoing custody proceedings, both requests are likely barred by the Younger and Rooker-Feldman doctrines. See Younger v. Harris, 401 U.S. 37 (1971); Rooker v. Fidelity Trust Co., 263 U.S. 413; District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).

"[T]he Supreme Court has established that plaintiffs can properly bring a federal action 'seeking injunctive relief against a state official for an ongoing violation of law or the Constitution.' " Torres v. New York State Dep't of Corr. & Cmty. Supervision, No. 9:20-CV-301 (GLS/TWD), 2020 WL 7316120, at *3 (N.D.N.Y. Dec. 11, 2020) (citations omitted); see Ex Parte Young, 209 U.S. 123 (1908). "Under this doctrine, an action may proceed against a state official when a plaintiff: '(a) alleges an ongoing violation of federal law, and (b) seeks relief properly characterized as prospective.' " Id. (quoting In re Deposit Ins. Agency, 482 F.3d 612, 618 (2d Cir. 2007)). However, under the Younger abstention doctrine, "federal courts are forbidden from enjoining ongoing state proceedings." McKnight v. Middleton, 699 F. Supp. 2d 507, 520 (E.D.N.Y. 2010), aff'd, 434 F. App'x 32 (2d Cir. 2011) (summary order) (citation omitted). "The Younger abstention doctrine is limited to three exceptional circumstances, including: (1) state criminal prosecutions; (2) civil enforcement, or 'quasi-criminal,' proceedings; and (3) 'civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions.' " Walker, 2022 WL 2341544, at *6 (quoting Sprint Communications, Inc. v. Jacobs, 571 U.S. 69 (2013)). "Younger abstention is mandatory when three conditions are met: '(1) there is an ongoing state proceeding; (2) an important state interest is implicated in that proceeding; and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of the federal constitutional claims.' " McKnight, 699 F. Supp. 2d at 520.

 *6  It is unclear whether there are pending family court proceedings in which plaintiff seeks the Court's intervention. See generally Am. Compl. [8] However, "the heart of this case is a child custody dispute, a matter rightfully reserved for state courts." McKnight, 699 F. Supp. 2d at 520; see Walker, 2022 WL 2341544, at *6 (collecting cases applying Younger abstention in the context of child custody disputes). Additionally, "[p]laintiff would [likely] have 'an adequate opportunity for judicial review of the federal [ ] claims' in state court." McKnight, 699 F. Supp. 2d at 520-21 (quoting McGowan, 282 F.3d at 198). "For example, after the Family Court makes its final disposition on custody and visitation, [the p]laintiff may appeal that decision to the Appellate Division and raise the unconstitutionality of the N.Y. Dom. Rel. Law and the orders of the Family Court ... in that court." Id. Thus, it is likely that plaintiff's request for injunctive or declaratory relief are barred insofar as there are pending custody proceedings.

Next, any claim asking the Court to provide a declaratory judgment on a prior custody order is barred by the Rooker-Feldman doctrine. "The Rooker-Feldman doctrine bars federal district courts from hearing cases that in effect are appeals from state court judgments, because the Supreme Court is the only federal court with jurisdiction over such cases." Dorce v. City of N.Y., 2 F.4th 82, 101 (2d Cir. 2021). For the Rooker-Feldman doctrine to apply: "(1) the federal-court plaintiff must have lost in state court[;]

(2) the plaintiff must complain of injuries caused by a state-court judgment[;] (3) the plaintiff must invite district court review and rejection of that judgment[;] and (4) the state-court judgment must have been rendered before the district court proceedings commenced." Id. (citation and quotation marks omitted).

It appears that plaintiff is challenging Judge McGinty's December 2019 custody order granting the children's father custody. See Am. Compl. at 17. Intervention into that custody order is barred by the Rooker-Feldman doctrine. See Phifer v. City of N.Y., 289 F.3d 49, 57 (2d Cir. 2002) ("There is no question that *Rooker-Feldman* bars [the plaintiff's] challenges to the family court's decisions regarding custody, neglect, and visitation."); Amato, 2022 WL 226798, at *11 (citation omitted) ("[I]t appears [the p]laintiff 'lost' in state court, complains of injuries caused by the state court judgments, and asks this Court to invalidate the state court's judgments regarding child custody. Thus, as currently drafted, the amended complaint is likely barred under the *Rooker-Feldman* doctrine.").

 **\*7**  Plaintiff also fails to state a claim for relief under § 1985. To plead a conspiracy claim, "a plaintiff must allege: (1) a conspiracy"; "(2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges or immunities under the laws;" "(3) an overt act in furtherance of the conspiracy;" "and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States." Thomas v. Roach, 165 F.3d 137, 146 (2d Cir. 1999). In her amended complaint, plaintiff states that "this case involves a multifaceted campaign to silence, harass, and discredit [p]laintiff for exercising her freedoms and rights afforded and protected by United States Law." Am. Compl. at 2. Plaintiff has only named one defendant and she does not otherwise allege any facts that would support a conspiracy claim. See generally Am. Compl.; see also Thomas, 165 F.3d at 146 (citations omitted) (explaining that "[a] conspiracy 'need not be shown by proof of an explicit agreement but can be established by showing the parties have a tacit understanding to carry out the prohibited conduct.' "); see also Walker, 2022 WL 2341544, at *5 (citation and quotation marks omitted) ("[T]he conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action."). Accordingly, it is recommended that plaintiff's purported § 1985 claim seeking injunctive and declaratory relief against defendant in his individual and official capacities be dismissed without prejudice, but be dismissed with prejudice and without leave to amend to the extent she seeks punitive damages.

### 3. ADA Claims

Plaintiff's amended complaint raises three ADA claims: Title II discrimination and retaliation claims and a Title III discrimination claim. See generally Am. Compl. (citing, inter alia, 42 U.S.C. §§ 12182 and 12203, and "Title II claim of American Disabilities Act"). First, "Title III of the ADA proscribes discrimination against the disabled in public accommodations[,]" stating that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns ... or operates a place of public accommodation." Powell v. Nat'l Bd. of Med. Examiners, 364 F.3d 79, 85 (2d Cir.), opinion corrected, 511 F.3d 238 (2d Cir. 2004) (quoting 42 U.S.C. § 12182(a)); see Benyi v. N.Y., No. 3:20-CV-1463 (DNH/ML), 2021 WL 1406649, at *14 (N.D.N.Y. Mar. 23, 2021) ("Title III 'expressly does not apply to public entities, including local governments.' "), report and recommendation adopted, 2021 WL 1404555 (N.D.N.Y. Apr. 13, 2021) (citations omitted). As plaintiff brings this action against Judge McGinty, whose position is not a "public accommodation[,]" she cannot state a claim under Title III of the ADA, and it is recommended that any purported claim be dismissed with prejudice and without leave to amend. 42 U.S.C. § 12181(7).

Second, as to her Title II claims, the undersigned previously explained in its April 28, 2022, Report-Recommendation and Order, that defendant cannot be sued in his individual capacity under the ADA. See Dkt. No. 6 at 10-11. Judge Suddaby subsequently adopted the Report-Recommendation and Order and dismissed with prejudice the ADA claims against defendant in his individual capacity. See Dkt. No. 8 at 3. As such, the only purported ADA claims that the undersigned now addresses are those seeking to sue defendant in his "judicial" or official capacity. See Rosenfield v. N.Y. State Div. of Veterans' Affs., No.

Case 6:24-cv-01367-AMN-ML    Document 8    Filed 04/07/25    Page 99 of 186

Terpening v. McGinty, Not Reported in Fed. Supp. (2022)

2022 WL 17418268

1:18-CV-1299 (GTS/CFH), 2019 WL 4621962, at *10 (N.D.N.Y. Sept. 24, 2019) (collecting cases) ("It is well recognized in this Circuit that individuals cannot be sued in their personal capacity under either the ADA or the Rehabilitation Act.").

Generally, "suits for money damages against state officials in their official capacities are barred by the Eleventh Amendment." Torres, 2020 WL 7316120, at *3. It does not appear that plaintiff seeks money damages in her amended complaint as she states that she is seeking "zero money damages, punitive damages...." Am. Compl. at 1. It is not clear whether plaintiff intended the "zero" to extend to punitive damages; regardless, punitive damages are not an available remedy for an ADA discrimination claim. See Cosby v. Tawanna, No. 3:19-CV-401 (MPS), 2019 WL 1921709, at *5 (D. Conn. Apr. 30, 2019) (citing Barnes v. Gorman, 536 U.S. 181, 189, (2002) ("Because punitive damages may not be awarded in private suits brought under Title VI of the 1964 Civil Rights Act, it follows that they may not be awarded in suits brought under § 202 of the ADA and § 504 of the Rehabilitation Act.")) (explaining that "[p]unitive damages are not available in private suits under the ADA or the [Rehabilitation Act].")); see also Askins v. N.Y.C. Transit, No. 11-CV-6371 (PGG), 2013 WL 142007, at *6 (S.D.N.Y. Jan. 8, 2013) (same). [9] Declaratory relief under the ADA is also unavailable. See Torres, 2020 WL 7316120, at *4; see also T.W. v. N.Y. State Board of Law Examiners, 16-CV-3029 (RJD/MMH), 2022 WL 2819092, at *8 (E.D.N.Y. July 19, 2022) ("The declaratory relief T.W. seeks — a declaration that the individual Board member defendants violated Title II — is plainly foreclosed by the Ex parte Young doctrine."). However, "prospective injunctive relief [ ] may be asserted against [ ] individual defendants [ ] in their official capacities[ ]" under Title II of the ADA. Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009). [10]

**\*8** Whether punitive damages are available for an ADA retaliation claim is not as straightforward as the Second Circuit has not explicitly addressed the issue. See Edwards v. Brookhaven Sci. Assocs., LLC, 390 F. Supp. 2d 225, 234 (E.D.N.Y. 2005) (citations omitted) (explaining that "the Second Circuit, without analyzing the issue, has affirmed an award of compensatory damages in a retaliation case brought under the ADA[ ]"; "employees who prevail on a claim under Title I of the ADA may recover compensatory and punitive damages and demand and receive a trial by jury[ ]" and the remedies available for retaliation under the ADA are commensurate with those available under Title I[.]"). At this juncture, the undersigned need not determine whether plaintiff could recover punitive damages for an ADA retaliation claim because, as explained infra, plaintiff has not sufficiently stated a claim for relief.

### a. Discrimination

To support an ADA discrimination claim, "a plaintiff must show the following: (1) plaintiff is a qualified individual with a disability; (2) plaintiff was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by [the] public entity; and (3) such exclusion or discrimination was due to [plaintiff's] disability." B.C. v. Mount Vernon Sch. Dist., 837 F.3d 152, 158 (2d Cir. 2016) (citation and quotation marks omitted). "Although the scope of Title II is not limitless, the phrase services, programs, or activities has been interpreted to be a catch-all phrase that prohibits all discrimination by a public entity." Hulett v. City of Syracuse, 253 F. Supp. 3d 462, 484 (N.D.N.Y. 2017) (quoting, inter alia, Noel v. N.Y.C. Taxi & Limousine Comm'n, 687 F.3d 63, 68 (2d Cir. 2012)) (quotation marks and internal citation omitted). [11]

As with her original complaint, here too, plaintiff's claim fails because she has not plausibly alleged a "disability." Dkt. No. 6 at 13-15. The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment[ ]." 42 U.S.C. § 12101(1).

### i. Whether plaintiff has, or has a record of, a physical or mental impairment that substantially limits one or more major life activities

Case 6:24-cv-01367-AMN-ML    Document 8    Filed 04/07/25    Page 100 of 186

Terpening v. McGinty, Not Reported in Fed. Supp. (2022)
2022 WL 17418268

"[A] plaintiff who seeks to show that he [or she] is disabled within the meaning of the ADA must do more than 'merely submit evidence of a medical diagnosis of an impairment.' " Sussle v. Sirina Prot. Sys. Corp., 269 F. Supp. 2d 285, 305 (S.D.N.Y. 2003) (quoting Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S 184, 198 (2002), overturned on other grounds by ADA Amendments Act of 2008, Pub. L 110-325, 122 Stat. 3553 (Jan. 1, 2009)). "A diagnosis alone is insufficient to establish disability under the statute." Ibela v. Allied Universal, No. 21-1995-CV, 2022 WL 1418886, at *2 (2d Cir. May 5, 2022) (citing Toyota Motor Mfg., 534 U.S at 198). Additionally, "major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working[ ]"; as well as "major bodily functions" such as "functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions' within the definition of 'major life activities.' " 42 U.S.C. § 12102(2)(A),(B).

**\*9**  The Second Circuit has clarified that "the substantial-limitation requirement in the definition of 'disability' is not an exacting one." Hamilton v. Westchester Cnty., 3 F.4th 86, 92 (2d Cir. 2021). The substantial-limitation inquiry "usually will not require scientific, medical, or statistical analysis," and is "made without regard to the ameliorative effects of mitigating measures[.]" 29 C.F.R. § 1630.2(j)(1)(v), (vi); see also 42 U.S.C. 12102(4)(E). Additionally, "a plaintiff's actual disability claim under the ADA does not fail solely because he [or she] failed to "state that his [or her disability] will be permanent or chronic ... [or] indicate the duration or long-term impact of his [or her] impairment such that the Court may infer that his [or her] injury was not temporary." Id. at 93-94 (citation and quotation marks omitted) (alterations in original). However, "[w]hile an impairment lasting less than six months *can* constitute a disability since the 2008 amendments, it obviously does not follow that such an impairment *will* constitute a disability." Id. (citation omitted); see 28 C.F.R. § 35.108(d)(1)(i).

Plaintiff does not explicitly state what her "disability" is but asserts that she had a stroke and was hospitalized, and that defendant did not believe her hospitalization and "her health and safety" were reason enough to adjourn the custody proceeding.[12] Am. Compl. at 13-17. Plaintiff has not alleged any facts explaining how her stroke or hospitalization substantially limited one or more of her major life activities. See generally Am. Compl. In the hospital record documenting plaintiff's stroke, it was noted that an "[e]chocardiogram was found to have global hypokinesis with ejection fraction of 40-45%." Id. at 15. The hospital record also notes that plaintiff was diabetic and had low iron form uterine bleeding. See Am. Compl. at 15. However, plaintiff does not allege that either of these conditions caused her hospitalization or are a "disability." See generally Am. Compl.

Although plaintiff provided documentation to corroborate that she was in the hospital following a stroke, there is no indication of how it limited her activities. See id. at 15-16. This is insufficient to establish a "disability." See Ouderkirk, 2021 WL 4958845, at *5 (determining that the plaintiff's complaint "failed to allege facts plausibly suggesting that [the p]laintiff was disabled within the meaning of the ADA" where the plaintiff alleged that the defendant "took [the p]laintiff's arm brace that she 'wore for a disability and subjected her to several weeks of physical pain.' "); but see Bernheim v. N.Y.C. Dep't of Educ., No. 19-CV-9723 (VEC/JLC), 2021 WL 2619706, at *8 (S.D.N.Y. June 25, 2021) (concluding that the plaintiff "sufficiently alleged a disability under the ADA by pleading" "that her severe [irritable bowel syndrome ("IBS")] substantially limited her ability to work. Specifically, she alleges that due to her severe IBS, she has had to 'take a number of absences on an intermittent basis' and also points to a 'six month medical sabbatical' she took for her condition.... [The plaintiff] has thus sufficiently alleged a disability under the ADA by pleading that the irregularity of her bowel functions, due to her 'severe' IBS, limited her ability to attend her teaching job on an intermittent to long term basis."), report and recommendation adopted, 2021 WL 4198126 (S.D.N.Y. Sept. 15, 2021); Blair v. SUNY Univ. at Buffalo, No. 17-CV-1317S, 2020 WL 695870, at *6 (W.D.N.Y. Feb. 11, 2020) (explaining that the plaintiff's complaint referring "to a need for 'frequent visits to the bathroom' to manage his Crohn's disease[ ]" and "his allegation of 'low blood volume' " is sufficient to establish a disability).

**\*10**  It is generally known that that a stroke impacts numerous functions including, for example, walking, memory, emotion regulation, and talking.[13] Plaintiff's echocardiogram also indicated that she had an "ejection fraction[.]" Am. Compl. at 15. If an ejection fraction is between forty to fifty-five percent, that is "[b]elow normal heart function. Can indicate previous heart damage from heart attack or cardiomyopathy."[14] This result appears to indicate that plaintiff's circulatory system was not functioning perfectly. See 42 U.S.C. § 12102 (including "the operation of a major bodily function" such as "circulatory" in

Case 6:24-cv-01367-AMN-ML    Document 8    Filed 04/07/25    Page 101 of 186
Terpening v. McGinty, Not Reported in Fed. Supp. (2022)
2022 WL 17418268

the definition of "a major life activity"). However, neither the hospital reports, nor plaintiff's amended complaint indicate how plaintiff's impairments substantially limited her in one or more major life activity and it was only through the undersigned's independent research that it learned of the symptoms from a stroke and an ejection fraction that may be experienced by the general public. See generally Am. Compl.; see O'Connor v. N.Y. State Dep't of Fin. Servs., No. 1:21-CV-00828 (BKS/ATB), 2022 WL 3998099, at *3 (N.D.N.Y. Sept. 1, 2022) (The "[p]laintiff fails to identify any activity that her depression or PTSD impairs. But even assuming [the p]laintiff sufficiently alleged the first two steps with respect to hearing loss, depression, and PTSD, the Amended Complaint is devoid of factual details that would allow an inference that these impairments 'substantially limit' any major life activity."); Owens v. Longo, No. 06-CV-0281 (GLS/DRH), 2008 WL 84594, at *6 (N.D.N.Y. Jan. 7, 2008) ("[A] plaintiff will not automatically be found disabled upon presentation of records of a medical appointment or surgery regarding an impairment."), aff'd, 326 F. App'x 626 (2d Cir. 2009) (summary order); Horwitz v. L. & J.G. Stickley, Inc., 20 F. App'x 76, 80 (2d Cir. 2001) (summary order) ("Because past hospitalization, even coupled with continued treatment, does not create a record of a substantially limiting medical condition, the plaintiff was not protected by the ADA.").

Although the standards to be applied are liberal for pro se plaintiffs and the definition of "disability" is to be construed broadly, plaintiff has failed to allege any facts concerning how any impairment limits her major life activities other than her being in a generally "weakened[,]" "[s]ick," and "crushed" state. Am. Compl. at 17. This is insufficient to plead a qualifying disability under the ADA. See O'Connor, 2022 WL 3998099, at *3 (citations omitted) ("While courts broadly apply the term 'substantially limits,' a '[p]laintiff still must plead sufficient facts to raise a right to relief above a speculative level.' ").

### ii. Whether plaintiff was "regarded as" having an impairment that substantially limits one or more major life activities

A "disability" can be established if an individual is "regarded as having" an impairment that substantially limits one or more major life activities. 42 U.S.C. § 12102(1)(C). An individual can be "regarded as having such an impairment" "if the individual establishes that he or she has been subjected to an action prohibited under this Act because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." Id. § 12102(3)(A). A "plaintiff need only establish that [the] defendant regarded him [or her] as having a mental or physical impairment and is 'not required to present evidence of how or to what degree [defendant] believed the impairment affected him [or her].' " Rodriguez v. Verizon Telecom, No. 13-CV-6969 (PKC/DCF), 2014 WL 6807834, at *5 (S.D.N.Y. Dec. 3, 2014) (quoting Hilton v. Wright, 928 F. Supp. 2d 530, 554 (N.D.N.Y. 2013)). However, "[a]n individual is not 'regarded as having [a disability]' if the public entity demonstrates that the impairment is, objectively, both 'transitory' and 'minor,' with 'transitory' statutorily defined as 'lasting or expected to last six months or less.' " Hamilton v. Westchester Cnty., 3 F.4th 86, 94 (2d Cir. 2021) (quoting 28 C.F.R. § 35.108(f)(2)); see also 42 U.S.C. § 12102(3)(B).

Plaintiff asserts that she "made a reasonable request to adjourn the court date and necessary for the provisions of her health and safety[.]" Am. Compl. at 16-17. The hospital record similarly states that "because Family Court judge did not consider her hospitalized status as justification to delay deciding on custody for her minor children, ... discharge was attested in order for patient to appear in family court." Id. at 15. There is no indication of what defendant was told or believed concerning plaintiff's "hospitalization[,]" such as whether or what physical or mental impairment plaintiff had or how long it would last. [15] Id. Whether a plaintiff is "regarded" as having a disability is "a question of intent[.]" Francis v. City of Meriden, 129 F.3d 281, 284 (2d Cir. 1997). Plaintiff has not alleged what defendant believed or perceived concerning an impairment. See generally Am. Compl. For instance, there is no indication if defendant believed the veracity of plaintiff's statement that she was in the hospital, or that she was suffering from any mental or physical impairment. See Sacks v. Gandhi Eng'g Inc., No. 11-CV-5778 (DAB/DF), 2013 WL 8282955, at *13 (S.D.N.Y. Aug. 23, 2013) (citing 29 C.F.R. § 1630.2(h)(1) ("Physical or mental impairment" to mean "[a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine.")) (concluding that there was sufficient evidence to withstand summary judgment where the defendant told the plaintiff he was fired because of "his lack of 'agility'

Case 6:24-cv-01367-AMN-ML    Document 8    Filed 04/07/25    Page 102 of 186

Terpening v. McGinty, Not Reported in Fed. Supp. (2022)

2022 WL 17418268

"), report and recommendation adopted, 999 F. Supp. 2d 629, 636 (S.D.N.Y. 2014); see also Laface v. E. Suffolk Boces, 349 F. Supp. 3d 126, 147 (E.D.N.Y. 2018) (citation omitted) ("While the [p]laintiff has alleged that he informed the [d]efendants of his disability, he has not alleged that his employer, BOCES, regarded him as disabled under the ADA. In fact, even when BOCES agreed to temporarily accommodate his disability, [a defendant] specifically noted that 'it is not clear we are obligated to provide you with an accommodation.' ").

**\*11** Accordingly, plaintiff has not shown that she was "regarded as" having a disability within the meaning of the ADA. Cf. Gentile v. Potter, 509 F. Supp. 2d 221, 238 (E.D.N.Y. 2007) (citation omitted) ("Mere knowledge is insufficient to prove 'either that the employer regarded the employee as disabled or that the perception caused the adverse employment action.' "). As plaintiff has not sufficiently plead a "disability" or that defendant "regarded" her as having a disability, the undersigned recommends dismissing plaintiff's ADA discrimination claims against defendant in his official capacity without prejudice.

As to the undersigned's April 28, 2022, Report-Recommendation and Order discussion concerning the sufficiency of the original complaint and whether plaintiff was denied access to services "because of" a disability, the undersigned clarifies that it does not appear that plaintiff is making an intentional discrimination claim. Dkt. No. 6 at 13-15. Rather, plaintiff is making a reasonable accommodation claim. See Am. Compl. at 2, 16-17. To plead such a claim, plaintiff is not "required [to] pro[ve] that the defendants' actions were motivated by animus towards the [disabled]." Amato v. McGinty, No. 1:17-CV-1280 (GLS/TWD), 2019 WL 8064011, at \*3 (N.D.N.Y. Aug. 7, 2019) (quoting Good Shepherd Manor Found., Inc. v. City of Momence, 323 F.3d 557, 562 (7th Cir. 2003)). Rather, plaintiff "must [ ] 'demonstrate that a denial of benefits occur[ed] ... because of [her] disability.' " Id. (citing Henrietta D. v. Bloomberg, 331 F.3d 261, 278 (2d Cir. 2003)) (internal quotation marks and citations omitted). "Quite simply, the demonstration that a disability makes it difficult for a plaintiff to access benefits that are available to both those with and without disabilities is sufficient to sustain a claim for a reasonable accommodation." Henrietta, at 277. However, as plaintiff has not sufficiently alleged a disability, the undersigned need not determine whether plaintiff sufficiently alleged that a disability caused her difficulty accessing any "benefits[ ]" that would amount to a denial of a "reasonable accommodation." Id. at 282 (citation omitted) ("A 'reasonable accommodation' is one that gives the otherwise qualified plaintiff with disabilities 'meaningful access' to the program or services sought.").

### b. Retaliation

To plead a claim for retaliation under the ADA, there must be facts alleging that: "(i) a plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that [the] plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against [the] plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action." Weixel v. Bd. of Educ. of City of N.Y., 287 F.3d 138, 148 (2d Cir. 2002) (citations omitted). "Requesting reasonable accommodations for a disability may also constitute protected activity." Konieczny v. N.Y. State Div. of Parole, 647 F. Supp. 2d 256, 264 (W.D.N.Y. 2009) (citation omitted). "Generally, any activity designed to resist or antagonize ...; to contend against; to confront; resist; [or] withstand discrimination prohibited by Title VII constitutes a protected oppositional activity." Straw v. Wolters Kluwer United States, Inc., No. 20-CV-3251 (LLS), 2020 WL 2115177, at \*4 (S.D.N.Y. May 1, 2020), appeal dismissed (July 2, 2020) (quotation marks omitted) (quoting Littlejohn v. City of N.Y., 795 F.3d 297, 317 (2d Cir. 2015)). "[A] plaintiff pursuing a retaliation claim need not prove that he or she was actually 'disabled' within the meaning of the ADA." Frantti v. N.Y., 414 F. Supp. 3d 257, 290 (N.D.N.Y. 2019) (citation omitted).

**\*12** Plaintiff's initial reference to a retaliation claim is in her recitation of various statutes, in which she includes the ADA's retaliation provision, 42 U.S.C. § 12203. See Am. Compl. at 1. Plaintiff then states that defendant's "willfully brazen behavior can no longer torment my family and/or retaliate against potential witnesses, and profit off of someone else's loss." Id. at 2. Plaintiff explains that defendant "harassed, intimidated, and threatened [plaintiff's sister] with incarceration if she interfered with watching [plaintiff's] children." Id. at 17. Although is it possible for a retaliation claim to be based on action taken towards a thirty-party, plaintiff does not allege that defendant acted in such a way towards plaintiff's sister because of an exercise of protected activity. But see Thompson v. N. Am. Stainless, LP, 562 U.S. 170, 174-75 (2011) (explaining that in the context of a

Case 6:24-cv-01367-AMN-ML    Document 8    Filed 04/07/25    Page 103 of 186
**Terpening v. McGinty, Not Reported in Fed. Supp. (2022)**
2022 WL 17418268

Title VII claim, retaliation against a third party may constitute an adverse action if it would have dissuaded the plaintiff from engaging in his or her protected activity); Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 223 (2d Cir. 2001) ("We analyze a retaliation claim under the ADA using the same framework employed in Title VII cases."). It is also not clear whether plaintiff contends that defendant took actions against her sister because of her request to adjourn the proceedings, because plaintiff was in the hospital, or for some other non-disability related reason. See Am. Compl. at 17.

Plaintiff does not otherwise allege facts concerning retaliation against her for engaging in protected activity. See generally Am. Compl. Plaintiff does not assert, for example, that any adverse action was taken against her because she "made a reasonable request to adjourn the court date[.]" Id. at 16. Rather, plaintiff states that defendant denied her request "with blatant disrespect for the well being of [p]laintiff" and he subsequently granted her children's father custody, "without explanation[.]" Id. at 17; but see Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 85 (2d Cir. 2015) ("A retaliatory purpose can be shown indirectly by timing: protected activity followed closely in time by adverse [ ] action."). Plaintiff also states that defendant's conduct was the result of "cultural and class bias" and was an "outrageous unauthorized social experiment[ ]" which does not implicate retaliation against protected activity under the ADA. Am. Compl. at 3.

Although plaintiff's pro se complaint is to be read liberally and to raise the strongest arguments it suggests, it is not the function of initial review to read any claims into the complaint. See Triestman, 470 F.3d at 477 (citations and quotation marks omitted) ("There are many cases in which we have said that a *pro se* litigant is entitled to 'special solicitude,' that a *pro se* litigant's submissions must be construed 'liberally,' and that such submissions must be read to raise the strongest arguments that they 'suggest[.]' At the same time, our cases have also indicated that we cannot read into *pro se* submissions claims that are not 'consistent' with the *pro se* litigant's allegations, or arguments that the submissions themselves do not 'suggest[.]' ").

As plaintiff has not elaborated on any purported retaliation claim beyond listing the statute as one of many under which she seeks to bring this action, and using the word "retaliation," the undersigned recommends dismissing it without prejudice. See Amato v. McGinty, No. 1:21-CV-00860 (GLS/TWD), 2022 WL 226798, at *9 (N.D.N.Y. Jan. 26, 2022) (citing Barr v. Abrams, 810 F.2d 358, 362 (2d Cir. 1986) (the Second Circuit has repeatedly held, "complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning")) (explaining that "[t]he use of 'buzz words' such as 'disability,' 'accommodation,' and 'retaliation' does not cure a pleading defect.... She does not allege any facts suggesting a plausible connection between her alleged PTSD and '[Legal Abuse Syndrome]' and the actions that were taken against her in the state court proceedings.").

### 4. "Tortious Interference with Parental Rights Under the Common Law"

Plaintiff purports to assert a claim of "tortious interference with parental rights under the common law[.]" Am. Compl. at 1. The Eastern District of New York has explained that "[w]ith respect to 'parental' rights, [the] plaintiffs have not cited, nor has this Court identified, any cause of action related to such rights. Most cases involve the more specific right of custody...." Decter v. Second Nature Therapeutic Program, LLC, 42 F. Supp. 3d 450, 457 (E.D.N.Y. 2014). "[T]he existence and contours of a tort cause of action for interference with parental custody under New York law are far from clear." Pittman by Pittman v. Grayson, 149 F.3d 111, 120 (2d Cir. 1998). However, "[t]he 'unlawful taking or withholding of a minor child from the custody of the parent entitled to such custody is a tort.' " Whalen v. Cnty. of Fulton, 941 F. Supp. 290, 299 (N.D.N.Y. 1996) (quoting Kajtazi v. Kajtazi, 488 F. Supp. 15, 18 (E.D.N.Y. 1978)), aff'd, 126 F.3d 400 (2d Cir. 1997). "The plaintiff must have a legal right to custody in order to possess a cause of action for custodial interference." Id. (citation omitted).

**\*13** "[T]he State of New York has not waived its Eleventh Amendment immunity to suit in federal court for state common law [torts]." Hayut v. State Univ. of N.Y., 127 F. Supp. 2d 333, 340 (N.D.N.Y. 2000); cf. Lambert v. N.Y. State Office of Mental Health, No. 97-CV-1347 (JG), 2000 WL 574193, at *7 (E.D.N.Y. Apr. 24, 2000) ("Likewise, the Eleventh Amendment bars [the plaintiff]'s common law tort claim for intentional infliction of emotional distress."), aff'd, 22 F. App'x 71 (2d Cir. 2001) (summary order). Judicial immunity has also been applied to common law torts. See, e.g., Holbert v. Cohen-Gallet, No. 05-

Case 6:24-cv-01367-AMN-ML    Document 8    Filed 04/07/25    Page 104 of 186

Terpening v. McGinty, Not Reported in Fed. Supp. (2022)

2022 WL 17418268

CV-1281 (NGG), 2006 WL 47452, at *6 (E.D.N.Y. Jan. 9, 2006) ("Because the doctrine of judicial immunity rests on the need for uninhibited judicial decision-making, immunity extends to the exercise of judicial power by any judicial officer.... Presiding over the [the p]laintiff's custody modification proceeding was without question a judicial act and [the defendant], as a Family Court Referee, had jurisdiction to do so. Thus, [the defendant's] actions in the courtroom ... cannot be grounds for tort liability against her."). As such, defendant is immune in both his individual and "judicial" capacities.

Further, "a district court 'cannot exercise supplemental jurisdiction unless there is first a proper basis for original federal jurisdiction.' " Cohen v. Postal Holdings, LLC, 873 F.3d 394, 399 (2d Cir. 2017) (quoting Nowak v. Ironworkers Local 6 Pension Fund, 81 F.3d 1182, 1187 (2d Cir. 1996)). As the undersigned recommends denying plaintiff's federal claims, the undersigned also recommends declining to exercise supplemental jurisdiction over any purported state law claim. See id. (citing Kolari v. N.Y. Presbyterian Hosp., 455 F.3d 118, 120 (2d Cir. 2006) (district court has discretion to decline to exercise supplemental jurisdiction over state law claims because all claims over which the federal court has jurisdiction have been dismissed)). [16]

### D. Amendment of the Complaint

"Generally, when the court dismisses a pro se complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once, however, leave to re-plead may be denied where any amendment would be futile." Griffin v. Doe, 71 F. Supp. 3d 306, 319-20 (N.D.N.Y. 2014) (citing Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993)). "[A]n opportunity to amend is not required where the plaintiff has already amended the complaint." Tafari v. McCarthy, 714 F. Supp. 2d 317, 339 (N.D.N.Y. 2010) (citation omitted). In light of plaintiff's pro se status, it is recommended that she be afforded another opportunity to amend her complaint for the claims that defendant is not immune and where there is a cognizable cause of action. See Amato, 2022 WL 226798, at *12 ("[I]n light of [the p]laintiff's *pro se* status and in an abundance of caution, as was the case in the related action, better pleading—addressing the deficiencies outlined above—could potentially save [the p]laintiff's ADA claim for prospective injunctive relief against Judge McGinty from being *sua sponte* dismissed on initial review.").

### III. Appointment of Counsel

**\*14**  In Judge Suddaby's June 13, 2022, Decision and Order, he addressed plaintiff's two motions to appoint counsel. See Dkt. Nos. 4, 7; Dkt. No. 8 at 2-3. Judge Suddaby denied plaintiff's request for counsel without prejudice because plaintiff had not substantiated her efforts to procure counsel, it was too soon to determine whether plaintiff's claims were of substance, and the other relevant factors weighed against granting the request. See Dkt. No. 8 at 2-3.

In her amended complaint, plaintiff states that "[a]lthough this Court noted that this Pro Se litigant is able to effectively litigate this action thus far, ... my disabilities put me in an inferior position and not on equal ground as a highly trained and skilled professional attorney"; therefore, she "specifically request[s] appointed counsel to ensure a just and proper opportunity to further present my claim...." Am. Compl. at 2.

"[T]he indigent [person must demonstrate that they are] unable to obtain counsel before appointment will even be considered." Hodge v. Police Officers, 802 F.2d 58, 61 (2d Cir. 1986). Plaintiff has not asserted any information indicative of an attempt to secure counsel. See generally Am. Compl. Additionally, "in deciding whether to appoint counsel ... the [court] should first determine whether the indigent's position seems likely to be of substance." Hodge, 802 F.3d at 61. If the claim is likely to be of substance, the Court must consider certain factors, including

> [t]he indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present

Case 6:24-cv-01367-AMN-ML    Document 8    Filed 04/07/25    Page 105 of 186

Terpening v. McGinty, Not Reported in Fed. Supp. (2022)

2022 WL 17418268

the case, the complexity of the legal issues, and any special reason ... why appointment of counsel would be more likely to lead to a just determination.

Id. "[A]ppointments of counsel are not to be granted 'indiscriminately.' " Edwards v. Troy Police Dept., No. 1:19-CV-543 (LEK/CFH), 2019 WL 13217234, at *1 (N.D.N.Y. Oct. 23, 2019) (quoting Cooper v. A. Sargente & Co., Inc., 877 F.2d 170, 172 (2d Cir. 1989)). "Although 28 U.S.C. § 1915(e)(1) authorizes the court 'to request an attorney to represent any person unable to afford counsel,' a civil litigant has no constitutional right to the assistance of counsel." Id. (quoting Berrios v. N.Y.C. Housing Auth., 564 F.3d 130, 135 (2d Cir. 2009)).

As Judge Suddaby stated in his Decision and Order, "because [d]efendant has not yet appeared and answered, the Court is unable to determine, as a threshold matter, whether [p]laintiff's claims are likely to be of substance." Dkt. No. 8 at 2-3 (citing Terminate Control Corp. v. Horowitz, 28 F.3d 1335, 1341 (2d Cir. 1994)). Next, "although plaintiff contends that h[er] mental illness/diagnoses make it difficult for h[er] to litigate this action, it appears that plaintiff has been able to represent h[erself] thus far by communicating with the Court and filing a detailed complaint in this action." Edwards, 2019 WL 13217234, at *2. Plaintiff was able to then review the undersigned's Report-Recommendation and Order, and Judge Suddaby's Decision and Order and produce an amended complaint attempting to address the faults identified in her original complaint. See Am. Compl. As such, it does not appear that, as to date, plaintiff has been unable to effectively litigate this action. Finally, "[a]ppointment of counsel in civil cases is a privilege which is justified only by exceptional circumstances, not a right accorded to any plaintiff who would be better equipped or would feel more comfortable with legal representation." Edwards, 2019 WL 13217234, at *2. "Lack of knowledge of the law does not suffice to demonstrate that appointment of counsel would increase the likelihood of a just determination in this case." Id. Accordingly, plaintiff's request for the appointment of counsel is denied without prejudice.

### IV. Conclusion

**\*15  WHEREFORE**, for the reasons set forth herein, it is hereby

**RECOMMENDED**, that any purported claims under 18 U.S.C. §§ 241 and 242, 42 U.S.C. § 12301(3)(5)(7)(A)(B), 42 U.S.C. § 12182, and "tortious interference with parental rights under the common law" (Dkt. No. 9) be **DISMISSED WITH PREJUDICE WITHOUT LEAVE TO AMEND**; and it is further

**RECOMMENDED**, that plaintiff's purported (1) 42 U.S.C. § 1985 claim against defendant in his individual and official capacities seeking injunctive and declaratory relief; and (2) ADA claims against defendant in his official capacity seeking injunctive relief (Dkt. No. 9) be **DISMISSED WITHOUT PREJUDICE WITH LEAVE TO AMEND**; [17] and it is further

**RECOMMENDED**, that should the District Judge adopt this Report-Recommendation and Order, plaintiff be given thirty (30) days from the date of the Order adopting this Report-Recommendation and Order to file a second amended complaint, and if plaintiff does not file a second amended complaint it will be deemed as an abandonment of any claims for which leave to replead has been granted and will result in judgment being entered against plaintiff on these claims without further order by the Court; and it is further

**ORDERED**, that plaintiff's request for the appointment of counsel is **DENIED without prejudice**.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has **FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993)

Case 6:24-cv-01367-AMN-ML    Document 8    Filed 04/07/25    Page 106 of 186

Terpening v. McGinty, Not Reported in Fed. Supp. (2022)

2022 WL 17418268

(citing <u>Small v. Sec'y of Health and Human Servs.</u>, 892 F.2d 15 (2d Cir. 1989)); <u>see also</u> 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a). [18]

**All Citations**

Not Reported in Fed. Supp., 2022 WL 17418268

---

## Footnotes

1    The language of § 1915 suggests an intent to limit availability of IFP status to prison inmates. <u>See</u> 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). The courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria. <u>See, e.g.</u>, <u>Fridman v. City of N.Y.</u>, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

2    All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

3    Hematochezia is bleeding in the stools. <u>See</u> Stedmans Medical Dictionary 397760 (Nov. 2014).

4    Because of plaintiff's <u>pro se</u> status, the undersigned has considered the allegations in the amended complaint along with the documents attached thereto. <u>See, e.g.</u>, <u>Anthony v. Murphy</u>, No. 5:15-CV-00450 (DNH/TWD), 2015 WL 1957694, at *1 n.1 (N.D.N.Y. Apr. 28, 2015) ("[I]n light of [the p]laintiff's pro se status, the Court has considered the allegations in, and attachments to, both [the p]laintiff's original and amended/supplemental complaints upon its initial review."), <u>report and recommendation adopted</u>, No. 5:15-CV-450 (DNH/TWD), 2015 WL 3409261 (N.D.N.Y. May 27, 2015).

5    Plaintiff submits a letter addressed to defendant wherein she complained that her children's appointed attorney, William Pape, was ineffective, and she sought a different attorney. <u>See</u> Am. Compl. at 8. Plaintiff does not make any substantive allegations against Mr. Pape in her amended complaint or name him as a defendant. <u>See generally</u> Am. Compl.

6    At the end of her amended complaint, plaintiff recites the standards for a motion for summary judgment pursuant to Fed. R. Civ. P. 56 and caselaw concerning qualified immunity. <u>See</u> Am. Compl. at 18-21. Neither are applicable to the standards applied at this stage.

7    Plaintiff states that see seeks "zero monetary damages, punitive damages[.]" Am. Compl. at 1. It is unclear whether the "zero" extends to punitive damages. <u>Id.</u>

8    Plaintiff attaches to her amended complaint protective orders against the children's father from December 2015 and March and October 2019, a visitation order from April 2019, and a family offense petition from October 2019. <u>See</u> Am. Compl. at 5-7, 9-12. In her original complaint, plaintiff specifically requested "injunctive relief and a permanent restraining order against [defendant] to stop his abuse and to avoid any further harm." Compl. at 6. She also sought declaratory relief in the form of statements that (1) "the policies, practices, procedures and standards [of d]efendant apply to her contested lawsuit proceedings, contested motion hearings and trail to issued Custody and related Orders are 'program activities'[; (2)] Custody Order are 'services' as defined by ADA which ADA equal rights, opportunities and benefits, direct threat risk prevention modification rights and accommodation rights apply to[; and (3)] declar[e d]efendant[']s [ ] practices ... a[s] unconstitutional." <u>Id.</u> at 5. The undersigned previously noted that any relief concerning past custody orders and any intervention into ongoing family court proceedings are likely barred by the <u>Younger</u> and

Rooker-Feldman doctrines. See Dkt. No. 6 at 16, n.7. Plaintiff does not state in her amended complaint the precise declaratory or injunctive relief she seeks. See generally Am. Compl.

9     If plaintiff were to seek monetary damages, the undersigned incorporates by reference its discussion in its April 28, 2022, Report-Recommendation and Order concerning Congress' abrogation of Eleventh Amendment immunity concerning money damages. See Dkt. No. 6 at 14, n.6; see also Colliton v. D'Alessio, No. 22-CV-7200 (LTS), 2022 WL 4110191, at *3, n.2 (S.D.N.Y. Sept. 6, 2022) (citations omitted) (declining to address whether Congress abrogated sovereign immunity for Title II claims that "actually violate[ ] the Fourteenth Amendment" because the plaintiff "fail[ed] to state a claim under Title II of the ADA).

10    The undersigned notes, however, that the Younger doctrine cautions against interfering with ongoing family court matters. See supra at 11-14; see also Amato, 2022 WL 226798, at *11.

11    The undersigned incorporates by reference its previous discussion concerning whether defendant is a "public entity"— an analysis that the undersigned need not perform as plaintiff has not alleged sufficient facts to surpass the threshold "disability" inquiry. See Dkt. No. 6 at 12, n.5; 14-15, n.6.

12    As explained in the undersigned's April 28, 2022, Report-Recommendation and Order, in her original complaint, plaintiff alleged that because of defendant's actions, she developed post-traumatic stress disorder ("PTSD"). See Dkt. No. 6 at 14-15; see also Compl. at 14. Plaintiff does not reallege any facts related to PTSD in her amended complaint. See generally Am. Compl.

13    Stedmans Medical Dictionary 397760 (Nov. 2014); Mayo Clinic, Stroke, https://www.mayoclinic.org/diseases-conditions/stroke/symptoms-causes/syc-20350113 (last visited September 26, 2022).

14    Ejection Fraction: What the Numbers Mean, Penn Heart and Vascular Blog, (April 13, 2022), https://www.pennmedicine.org/updates/blogs/heart-and-vascular-blog/2022/april/ejection-fraction-what-the-numbers-mean.

15    In plaintiff's original complaint, she specified that her family court attorney told defendant that plaintiff had a stroke. See Compl. at 6. However, even if plaintiff had repleaded this specific information, plaintiff has not sufficiently alleged what defendant's belief was concerning any impairment. See generally Am. Compl. Plaintiff is reminded that amended pleadings are intended to completely replace prior complaints and she must include all of the allegations, without reference to a prior complaint, that she seeks to base her claims on.

16    Plaintiff also includes a header titled "Defendant's Fraudulent Scheme to Hide and/or Tamper with Witness and/or Alter Court Records." Am. Compl. at 21. Plaintiff submitted a one-page letter from a court clerk at the Town of Rochester Justice Center which states, "We have no records pertaining to Docket No. 18070010." Id. at 22. Plaintiff also states that she has been unable to obtain transcripts from the relevant custody proceedings. See id. at 17. Plaintiff has not otherwise plead any facts that suggest that defendant has taken any actions to tamper with evidence, or hide or alter any records; thus, there are no facts on which the undersigned could find a plausible claim for relief. See London v. Cnty. of Ulster, No. 1:14-CV-01095 (MAD), 2015 WL 1579147, at *9 (N.D.N.Y. Apr. 9, 2015) ("While [the p]laintiff has scripted pages upon pages of accusations against these two [d]efendants, including claims of bias, coercion, and witness/evidence tampering, these accusations are a cavalcade of conclusions and not facts upon which this Court may find that a plausible claim has been pled here. Thus, we recommend dismissing these [d]efendants from this action pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii).").

17    Should the District Judge adopt this Report-Recommendation & Order, permitting plaintiff file a second amended complaint, plaintiff is advised that any second amended complaint will supersede and replace the amended complaint in its entirety. Plaintiff is not permitted to incorporate by reference any portion of earlier complaints and may not attempt to replead claims that have already been dismissed by this Court with prejudice.

2022 WL 17418268

18      If you are proceeding pro se and are served with this Report-Recommendation & Order by mail, three (3) additional
        days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-
        Recommendation & Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that
        prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next
        day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(c).

---

**End of Document**                                                                 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 6:24-cv-01367-AMN-ML    Document 8    Filed 04/07/25    Page 109 of 186
Terpening v. McGinty, Not Reported in Fed. Supp. (2022)
2022 WL 17415121

2022 WL 17415121
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Tammy TERPENING, Plaintiff,

v.

Anthony MCGINTY, in both judicial and individual capacity, Defendant.

1:21-CV-1215 (GTS/CFH)
|
Signed December 5, 2022

**Attorneys and Law Firms**

TAMMY TERPENING, Plaintiff, Pro Se, 17 Blair Road, Apt. 6, Kerhonkson, New York 12446.

**DECISION and ORDER**

GLENN T. SUDDABY, United States District Judge

**\*1**  Currently before the Court, in this *pro se* civil rights action filed by Tammy Terpening ("Plaintiff") against Anthony McGinty ("Defendant"), is United States Magistrate Judge Christian F. Hummel's Report-Recommendation recommending that certain of the claims asserted in Plaintiff's Amended Complaint be dismissed with prejudice, and that the remainder of those claims be dismissed without prejudice and with leave to amend. (Dkt. No. 10.) Plaintiff has not filed an objection to the Report-Recommendation, and the deadline in which to do so has expired. (*See generally* Docket Sheet.)

After carefully reviewing the relevant filings in this action, the Court finds no error in the Report-Recommendation, clear or otherwise:[1] Magistrate Judge Hummel employed the proper standards, accurately recited the facts, and reasonably applied the law to those facts. As a result, the Court accepts and adopts the Report-Recommendation for the reasons stated therein.

**ACCORDINGLY**, it is

**ORDERED** that Magistrate Judge Hummel's Report-Recommendation (Dkt. No. 10) is **ACCEPTED** and **ADOPTED**; and it is further

**ORDERED** that the following claims asserted in Plaintiff's Amended Complaint (Dkt. No. 9) are **DISMISSED with prejudice**:

   (1) any claims under 18 U.S.C. §§ 241 and 242,

   (2) any claims under 42 U.S.C. § 12301(3)(5)(7)(A)(B),

   (3) any claims under 42 U.S.C. § 12182, and

   (4) any claim for "tortious interference with parental rights under common law"; and it is further

**ORDERED** that the remaining claims asserted in Plaintiff's Amended Complaint (Dkt. No. 9)–specifically, her claim under 42 U.S.C. § 1985 against Defendant in his individual and official capacities seeking declaratory and injunctive relief, and her claims under the Americans with Disabilities Act against Defendant in his official capacity seeking injunctive relief–**shall be DISMISSED with prejudice** and without further order of the Court **UNLESS, within THIRTY (30) DAYS** of the date of this

2022 WL 17415121

Decision and Order, Plaintiff files a Second Amended Complaint curing the pleading defects in those claims identified in the Report-Recommendation; and it is further

**ORDERED** that, should Plaintiff file a Second Amended Complaint, the Second Amended Complaint must be a complete pleading that supersedes and replaces the Amended Complaint in all respects and does not incorporate by reference any portion of the Amended Complaint; and it is further

 **\*2  ORDERED** that, should Plaintiff file a Second Amended Complaint, the Second Amended Complaint will be referred to Magistrate Judge Hummel for further review pursuant to 28 U.S.C. § 1915(e).

**All Citations**

Not Reported in Fed. Supp., 2022 WL 17415121

---

**Footnotes**

---

1     When no objection is made to a report-recommendation, the Court subjects that report-recommendation to only a clear error review. Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a "clear error" review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.*; *see also Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at \*1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks omitted).

---

                                          © 2025 Thomson Reuters. No claim to original U.S. Government Works.

   © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Amato v. McGinty, Not Reported in Fed. Supp. (2022)

2022 WL 226798

2022 WL 226798
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Francesca AMATO, Plaintiff,

v.

Anthony MCGINTY, Defendant.

1:21-cv-00860 (GLS/TWD)
|
Signed 01/26/2022

**Attorneys and Law Firms**

FRANCESCA AMATO, Plaintiff, pro se, PO Box 774, Marlboro, NY 12542.

**ORDER AND REPORT-RECOMMENDATION**

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

**\*1** Francesca Amato ("Plaintiff" or "Amato"), proceeding *pro se*, filed an action against Ulster County Family Court Judge Anthony McGinty ("Defendant" or "Judge McGinty"). (Dkt. No. 1.) This case is related to *Orr v. McGinty*, 1:17-cv-1280 (GLS/TWD). (Dkt. No. 5.[1]) Plaintiff has not paid the filing fee, but instead seeks leave to proceed *in forma pauperis* ("IFP"). (Dkt. No. 16.) For the reasons discussed below, the Court grants Plaintiff's fourth IFP application (Dkt. No. 16) and recommends dismissal of the amended complaint (Dkt. No. 6) in its entirety.

**I. BACKGROUND**

Plaintiff initiated this action and moved to proceed IFP on July 30, 2021. (Dkt. Nos. 1, 2.) However, the initial pleading was not signed and Plaintiff was directed to submit a signed copy of the complaint. (Dkt. No. 5.) On August 13, 2021, Plaintiff submitted a signed copy of the complaint, but also attached five exhibits that were not submitted with the original pleading. (Dkt. No. 6.) As such, the signed pleading was docketed as the amended complaint.

Thereafter, by Orders filed October 28, 2021, November 17, 2021, and December 17, 2021, this Court denied Plaintiff's motions to proceed IFP. (Dkt. Nos. 8, 11, 14.) In the December 17, 2021, Order, Plaintiff was afforded one final opportunity to submit a fully completed IFP application or pay the entire filing fee by January 6, 2022. (Dkt. No. 14.) Despite the foregoing directive, Plaintiff's fourth IFP application was not filed until January 10, 2022. (Dkt. No. 16.)

**II. IFP APPLICATION**

Plaintiff declares in her fourth IFP application that she is unable to pay the filing fee. (Dkt. No. 16.) After reviewing the submission, the Court finds Plaintiff meets the requirement for economic need and thus her IFP application is granted.

**III. SUFFICIENCY OF THE AMENDED COMPLAINT**

**A. Legal Standard**

28 U.S.C. § 1915(e) directs that, when a plaintiff seeks to proceed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that – ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). To survive dismissal for failure to state a claim, a complaint must plead enough facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

**\*2**  In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

A *pro se* litigant's pleadings are held to a less strict standard than attorney drafted pleadings. *See Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008) ("Even in the formal litigation context, *pro se* litigants are held to a lesser pleading standard than other parties."). Because Plaintiff is proceeding *pro se*, the Court construes her pleadings "to raise the strongest arguments that they suggest." *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (per curiam) (internal quotation marks omitted). However, this "does not exempt [Plaintiff] from compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983).

### B. Summary of the Amended Complaint

Plaintiff brings this action against Defendant in both his "judicial" and "individual" capacity. (Dkt. No. 6 at 1.[2]) The amended complaint is written on a form complaint brought pursuant to the American with Disabilities Act ("ADA"). *Id.* at 1-4. Plaintiff also lists her minor child, C.A.B., as a plaintiff. *Id.* at 1, 5 ("Plaintiffs Francesca Amato & C.A.B. (hereafter, the 'Plaintiffs')— hereby makes these allegations against Defendant herein as follows[.]").

Her disabilities are listed as "ptsd" and "LAS," which she defines as "Legal Abuse Syndrome caused by defendant's actions and inactions." *Id.* at 2. She complains of the following conduct: denial of participation in public service or program, failure to make alterations to accommodate disability, retaliation, and others "in federal suit." *Id.* at 3. However, the section of the form complaint titled "Facts" is blank. *See id.* As to the "Prayer for Relief", Plaintiff states "see attached lawsuit." *Id.* at 4.

The "attached lawsuit" consists of 24 typewritten, single spaced pages, *id.* at 5-29, along with an additional 56 pages of exhibits. (Dkt. Nos. 6-1 through 6-5.) The "attached lawsuit" references the related action, *Orr v. McGinty*, 1:17-cv-1280 (GLS/TWD), and Plaintiff states she is "requesting the right to re plead [and] I am also filing a new verified complaint due to ongoing abuse by the defendant." *Id.* at 5.

Plaintiff's amended complaint also references 42 U.S.C. § 1983. *See id.* at 5-6. Plaintiff claims the "policies, practices, procedures and standards established and/or maintained by Defendant violate the Due Process and Equal Protection Clauses of the Fourteenth Amendments to the U.S. Constitution." *Id.* at 5. She also claims that "[u]nder color of authority, Anthony McGinty deprived me of my rights to my child, due process, and ADA rights were completely violated." *Id.* Plaintiff seeks compensatory and punitive damages, along with injunctive and declaratory relief. *Id.* at 5-6. She further states:

2022 WL 226798

**\*3** I demand my son's immediate return to his home with me at once and that a permanent restraining order is placed on this highly abusive Judge Anthony McGinty and also in his individual capacity as I feel he is a threat and danger to my family within his political power and lack of professionalism and boundaries. I'm also concerned with his mental state and feel he is unfit and I have overwhelming information and belief that he is an addict.

*Id.* at 26.

According to Plaintiff, "this is also a civil rights action brought pursuant to Title VII of the Civil Rights Acts of 1964" because Defendant authorized "unconstitutional, gender-biased contested Judgment of Custody polices, practices, procedures and standards." *Id.* at 6. Plaintiff contends Judge McGinty's "policies, practices, procedures and standards are gender biased, unconstitutional, have disparate impact on women and violate women's NYS entitled equal economic, property ownership and custody rights in contested Judgement of Custody Orders when domestic violence ("DV") exists." *Id.* at 7. Judge McGinty "has a history of court orders that change custody to abusive fathers and remove them from safe, loving caretakers with an extreme general bias against mothers." *Id.* at 11. Defendant also ignores the ACP address confidentially program of New York State. *Id.*

Generally, Plaintiff alleges that from "February 2019 to Ongoing" Defendant "enforced polices, practices, procedures, and standards that prevented Plaintiff from proving the Custody Orders issued by trial were based on the wrong legal standards, erroneous facts, a biased unconstitutional trial. And prevented me from being able to have my witnesses and my own testimony." *Id.* at 7. Defendant also "denied Plaintiff child access to his Service dogs and home status quo and private bedroom and consistent life needed to heal from past abuse." *Id.*

Plaintiff alleges Judge McGinty denied her "all ADA accommodations requested over and over orally and in writing and further abuse[d] his power by forcing plaintiff to draft own motions and train all parties in the ADA in order to protect my rights that continually are denied." *Id.*

She further claims Judge McGinty is "intentionally practicing and inflicting highly unlawful Discriminatory abuse upon [Plaintiff] due to [her] years of reputable advocacy and exposure of him." *Id.* at 6. He has also retaliated against her because of her "two time best-selling book, *Punished 4 Protecting: The Injustice of Family Court.*" *Id.*[3]

Plaintiff explains that "anytime I enter the Family Court it will be the three of them[4] against me leaving an extremely unfair disadvantage, further harm and suffering and full control. I am constantly bullied and they cooperate together to continue to retaliate against me by using my child as their pawn. McGinty's actions have caused my son and I irreparable injury and each second this continues threatens to harm us indefinitely." *Id.* at 11.

**\*4** Plaintiff claims "having pre diagnosed ptsd and LAS received zero ADA Accommodations requested and missed a court appearance on March 8, 2020." *Id.* at 12. According to Plaintiff, she missed the court appearance "due to stress and denial of rights combined with fear of [the] court causing further harm to my son and family and fear of further McGinty retaliation causing ptsd to be triggered." *Id.* She has "no recollection of being handed a slip" and did not put the March 8, 2020, court date on her calendar. *Id.* Plaintiff claims Defendant:

refused to give me enough time to get proper expensive counsel needed to fight such a traumatic 3rd trial. I was thrown into trial and discriminated further bc I "did such a good job, I couldn't possibly have ptsd" this only proves that I didn't willfully miss a court date two days before our Country was on COVID quarantine but that with ptsd memory issues occur during high stress moments. McGinty used it as a legal loophole to strip me of all custody giving my son to his estranged father

who barely had visits of 8 hours a month and abandoned the child in California after he was released from jail. McGinty was clearly Aware of all of this as he testified to it during the 2020 trial.

*Id.* at 13.

Plaintiff also claims Judge McGinty "intentionally ignores all emergency motions and puts them out months and months at a time; and takes hearsay from the father without any evidence or fact finding violating and taking/ away more rights." *Id.* at 14.

Plaintiff references the related case, and states that her ADA claims against Judge McGinty were dismissed in *Orr v. McGinty*, without prejudice and with leave to replead. *Id.* at 15.[5] According to Plaintiff, she is pursuing her "right to replead and add ongoing violations in current proceedings against Judge Antony McGinty and his ongoing abuse to me and my son C.A.B." *Id.* She explains that she "didn't continue at that time to fight this case because my son was returned to my sole custody on September 17, 2017[,] and we were healing from the damages and severe trauma." *Id.*

Plaintiff states that she was diagnosed in 2016 and "orally and in writing has requested ADA Accommodations" "numerous" times to "let the court know" that Defendant has "withheld" her child's "full service therapy dogs" since October 2, 2020, amounting to "intentional and deliberate indifference." *Id.* at 15.

According to Plaintiff, "Anthony McGinty continues his abuse in the form of retaliation, abuse of power, extreme harm and pain and suffering, violations of ADA title ii [which resulted] in a final order dated October 2, 2020. Granting Patrick Beesmer sole physical custody [of C.A.B.] and all decision making power...." *Id.*

Plaintiff lists several ways Judge McGinty has "denied" her "reasonable accommodations" and "basic rights." *Id.* at 16-17. For example, she claims Judge McGinty failed to recuse himself and denied her a fair trial. *Id.* at 16. He also denied C.A.B. his "full service therapy dogs since October 2, 2020." *Id.* Judge McGinty denied and restricted communication between Plaintiff and C.A.B., conspired with C.A.B.'s and Beesmer's attorneys, and omitted "strong evidence off the record," and "pushed several emergency motions out far past their legal requirements." *Id.* at 16-17. She also complains of "ongoing discrimination." *Id.* Plaintiff also alleges Judge McGinty failed to replace C.A.B.'s attorney with an "ethical" attorney. *Id.*

**\*5** She further alleges Judge McGinty lied in the October 2, 2020, Order which cited "concerns" in Plaintiff's home, without evidence, and falsely stated C.A.B.'s father's home "has no domestic violence." *Id.*

Additionally, on June 3, 2021, Judge McGinty denied C.A.B.'s "rights to his service dog again" and "showed preference to fathers" in that he gave C.A.B.'s father a "courtesy call" when he missed "virtual court" but did not extend the same courtesy to Plaintiff on March 8, 2021, when she failed to appear in court. *Id.* at 16. When she questioned Judge McGinty, he "falsely" explained that "virtual court is different from physical Court when someone doesn't show up we call them." *Id.*

Under a section of the amended complaint labeled "Damages" Plaintiff lists twelve "counts." *Id.* at 17-19. Plaintiff also lists five "counts" under Title II ADA Violations. *Id.* at 19. Plaintiff also devotes several pages to what appears to be excerpts and summaries of what she refers to as "Title II ADA Case Law re: Accommodations." *See id.* at 19-26.

As relief, Plaintiff seeks a temporary restraining order, a permanent restraining order, and preliminary injunction. *Id.* at 26, 28. Plaintiff is "seeking injunctive relief and a permanent restraining order against [Judge McGinty] to stop his abuse and allow us to have a fair trial with an unbiased Judge without any connections to him whatsoever to avoid any further harm." *Id.* at 9. She requests declaratory relief "to the effect" that Defendant's "actions were illegal and violative of Plaintiff's right to due process of the law and to equal protection of the laws." *Id.* at 28.

Case 6:24-cv-01367-AMN-ML    Document 8    Filed 04/07/25    Page 115 of 186

Amato v. McGinty, Not Reported in Fed. Supp. (2022)

2022 WL 226798

Plaintiff seeks damages in the amount of at least $3,000,000. *Id.* at 27-28. Plaintiff asks this Court to "assume jurisdiction over this matter." *Id.* Plaintiff also wants this Court to "restore" her sole custody rights over her minor child. *Id.* at 28. She also asks for any further relief as the Court shall deem just and proper. *Id.* [6]

For a complete statement of Plaintiff's claims, reference is made to the amended complaint. (*See generally* Dkt. No. 6.)

**C. Discussion**

Initially, the Court finds the amended complaint fails to comply with Rules 8 and 10 of the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of this Rule "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer [and] prepare an adequate defense." *Hudson v. Artuz*, No. 95 CIV 4768, 1998 WL 832708, *1 (S.D.N.Y. Nov. 30, 1998) (citations omitted). The statement should be "short and plain" because "[u]nnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage." *Salahuddin v. Cuomo*, 861 F.2d 40, 41-42 (2d Cir. 1998) (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1281, at 365 (1969)). Moreover, Rule 10 of the Federal Rules of Civil Procedure provides, in part:

> **\*6** (b) Paragraphs; Separate Statements. A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances.

Fed. R. Civ. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" *Flores v. Graphtex*, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (quotation marks and citations omitted).

A complaint that does not comply with these Rules "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [the plaintiff's] claims," and may properly be dismissed by the court. *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). "Dismissal, however, is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Artuz*, 1998 WL 832708, at *2 (internal quotation marks omitted).

The amended complaint contains rambling legal arguments, numerous disjointed sentences, and repeated conclusory allegations. (Dkt. No. 6.) Moreover, while the amended complaint contains some numbered sections, the numbering is of limited value since some of the numbered sections contain numerous sentences, and/or contain multiple paragraphs, and/or are repeated. *Id.* As a result, it is difficult for the Court to determine the sufficiency of Plaintiff's allegations, and it would be difficult for Defendant to shape a comprehensive defense. As such, the amended complaint fails to comply with Rules 8 and 10 of the Federal Rules of Civil Procedure.

However, the Court refrains from recommending dismissal on this basis alone because the amended complaint does not quite rise to the level of being "so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Rather, this action represents yet another lawsuit whereby Plaintiff is complaining of Defendant's handing of and decisions issued in family court proceedings. Construed liberally, Plaintiff seeks to nullify family court and custody determinations issued by Defendant, and asks this Court to restore her sole custody, requests declaratory and injunctive relief, and monetary compensation. As such, in accordance with 28 U.S.C. § 1915(e), the Court will review the sufficiency of the amended complaint.

**1. Minor Plaintiff**

2022 WL 226798

As Plaintiff is aware, an individual "who has not been admitted to the practice of law may not represent anybody other than himself." *Amato v. McGinty*, No. 1:17-CV-00593 (MAD/ATB), 2017 WL 4083575, at \*4 (N.D.N.Y. Sept. 15, 2017) (quoting *Guest v. Hansen*, 603 F.3d 15, 20 (2d Cir. 2010) (citing *Lattanzio v. COMTA*, 481 F.3d 137, 139 (2d Cir. 2007))); *see also Orr v. McGinty*, No. 1:17-cv-1280 (GLS/TWD), ECF Dkt. No. 47 at 1 n.1, 13 (plaintiff-mothers cannot bring an action "as next of friend for their minor children" and directing the Clerk to amend the caption to remove all references to the minor children). Similarly, "a non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child." *Amato v. McGinty*, 2017 WL 4083575, at \*4 (quoting *Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990)).

**\*7** Therefore, the Court does not construe the amended complaint to include any claims or causes of action brought on behalf of C.A.B. The Court also recommends that the Clerk be directed to amend the docket to remove all references to C.A.B.

### 2. Section 1983

Section 1983 provides redress for a deprivation of federally protected rights by persons acting under color of state law. 42 U.S.C. § 1983; *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155-57 (1978). To state a claim under Section 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *West v. Atkins*, 487 U.S. 42, 48-49 (1988).

As noted, Plaintiff has named Judge McGinty as the sole defendant in his "judicial" and "individual" capacity. However, and as Plaintiff was previously informed in the related action, Plaintiff's Section 1983 claims against Judge McGinty are barred by the Eleventh Amendment and judicial immunity.[7] *See Orr v. McGinty*, No. 1:17-cv-1280 (GLS/TWD), ECF Dkt. No. 47 at \*4 (dismissing Amato's Section 1983 claims against Judge McGinty with prejudice); *Treistman v. McGinty*, No. 1:16-cv-1403, 2018 WL 4078262, at \*1 (N.D.N.Y. Aug. 27, 2018) (finding the plaintiff's claims against the individual defendants in their official capacity as Family Court employees are barred by the Eleventh Amendment); *see also Amato v. McGinty*, 2017 WL 4083575, at \*4. The same result is required here.

Judges are absolutely immune from suit for damages for any actions taken within the scope of their judicial responsibilities. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Generally, "acts arising out of, or related to, individual cases before the judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). "Even allegations of bad faith or malice cannot overcome judicial immunity." *Id.* at 209 (citations omitted). This is because, "[w]ithout insulation from liability, judges would be subject to harassment and intimidation [.]" *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994). In addition, Section 1983 provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983.

Judicial immunity does not apply when the judge takes action "outside" his judicial capacity, or when the judge takes action that, although judicial in nature, is taken "in absence of jurisdiction." *Mireles*, 502 U.S. at 9-10; *see also Bliven*, 579 F.3d at 209-10 (describing actions that are judicial in nature). But "the scope of [a] judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978).

**\*8** As detailed above, Plaintiff has brought several allegations against Judge McGinty, including that he violated her constitutional rights, conspired with other individuals, endangered the welfare of C.A.B., denied her "accommodations," and retaliated against her for being outspoken about Judge McGinty's purported abuses and discrimination against mothers and children. However, all of the acts described in the amended complaint arise out of family court proceedings before Judge McGinty, the functions complained of were ones normally performed by a judge, and Plaintiff was a party who dealt with Judge McGinty in his judicial capacity. Plaintiff has not alleged that Judge McGinty took nonjudicial actions or that he acted in the absence of jurisdiction. Notwithstanding Plaintiff's allegations that Judge McGinty made improper adverse rulings against Plaintiff during the custody proceedings with malice or in retaliation for her "exposing" abuses in Family Court, Judge McGinty was still performing judicial functions and presiding over Plaintiff's custody action in Ulster County Family Court. As stated

Amato v. McGinty, Not Reported in Fed. Supp. (2022)

2022 WL 226798

above, a judge does not lose his or her judicial immunity because he is accused of acting with malice or corruptly. Accordingly, Judge McGinty is entitled to judicial immunity. *See Mireles*, 502 U.S. at 12-13; *Bliven*, 579 F.3d at 210.

Judge McGinty is also protected under sovereign immunity. In *Gollomp v. Spitzer*, the Court held that the New York Unified Court System is an "arm of the State" and affirmed the dismissal of a Section 1983 claim against a judge under sovereign immunity. 568 F.3d 355, 365-68 (2d Cir. 2009). Likewise, Plaintiff has filed her complaint against Judge McGinty, a member of the Ulster County Family Court, which is part of the New York Unified Court System. N.Y. Const. Art. VI, §§ 1, 13. All of Judge McGinty's alleged constitutional violations occurred while he acted within his official capacity as a Family Court judge in adjudicating a custody dispute. Therefore, all claims against Judge McGinty should be dismissed, because "a suit against a state official in his official capacity is, in effect, a suit against the state itself, which is barred." *Walker v. Fam. Ct. Judge Catherine Cholakis*, No. 1:19-CV-1288 (LEK/CFH), 2020 WL 3503158, at *7 (N.D.N.Y. June 29, 2020) (citations omitted).

Moreover, Plaintiff is not entitled to injunctive relief because she "allege[d] neither the violation of a declaratory decree, nor the unavailability of declaratory relief." *See Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999). Nor is Plaintiff entitled to declaratory relief because she alleges only past conduct and does not seek to prevent an ongoing or future violation of federal law. *See Shtrauch v. Dowd*, 651 F. App'x 72, 74 (2d Cir. 2016) (citing *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 698 (3d Cir. 1996) (concluding that relief sought was not prospective where the "specific allegations target[ed] past conduct" and the "remedy [was] not intended to halt a present, continuing violation of federal law")).

The Court therefore recommends dismissing Plaintiff's Section 1983 claims against Judge McGinty under the doctrines of judicial and sovereign immunity and as frivolous. *See* 28 U.S.C. § 1915(e)(2)(B)(i), (iii); *see also Montero*, 171 F.3d at 760 ("A complaint will be dismissed as 'frivolous' when 'it is clear that the defendants are immune from suit.' " (quoting *Neitzke*, 490 U.S. at 327)).

### 3. Title VII

Title VII provides that "[i]t shall be unlawful employment practice for an employer ... to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a); *see Vega v. Hempstead Union Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015) (A plaintiff asserting a Title VII discrimination claim must allege facts showing that "(1) the employer took adverse action against him and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision.").

Here, Plaintiff claims in conclusory fashion that Judge McGinty "discriminates" against women in violation of Title VII. Plaintiff does not, however, allege employment discrimination or that she is or was an employee of Judge McGinty and, therefore, the claim is frivolous.[8] *See Jones v. Thomas*, No. 20-CV-5581, 2020 WL 5077026, at *4 (S.D.N.Y. Aug. 27, 2020) (dismissing plaintiff's claims pursuant to Title VII where the plaintiff did not allege that he is or was an employee of any of the defendants); *Basora-Jacobs v. Palevsky*, No. 20-CV-1675, 2020 WL 3868710, at *2 (E.D.N.Y. July 10, 2020) (dismissing the plaintiff's Title VII claims because "[t]he complaint does not list Plaintiff's employer as a defendant in the case caption."). Since Title VII claims are to be raised against a plaintiff's employer, there is no proper Title VII defendant in this case. *Militinska-Lake v. Kirnon*, No. 1:20-CV-443 (TJM/CFH), 2021 WL 3569807, at *9 (N.D.N.Y. Aug. 11, 2021) ("As a general rule, the proper defendant in a Title VII case against a State entity is the actual department or agency that employs the plaintiff.") (citation omitted).

**\*9** Accordingly, the Court recommends that Plaintiff's Title VII claims against Judge McGinty be dismissed.

### 4. ADA

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To plead an ADA claim, a plaintiff must allege: "(1) that [s]he is a qualified individual with a disability; (2) that [s]he was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to [her] disability." *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) (internal quotation marks and citation omitted).

As discussed, Plaintiff has utilized a form ADA complaint, largely alleges disability due to PTSD, and claims Judge McGinty denied her "accommodations" and "retaliated" against her during family court proceedings. For reasons set forth below, Plaintiff's purported disability-based claims under the ADA must also be dismissed.

First, to the extent Plaintiff asserts ADA claims against Judge McGinty in his individual capacity, such claims fail as a matter of law because there is no individual liability under Title II of the ADA. *See Garcia v. SUNY Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) (holding that defendants cannot be sued in their individual capacities for violating Title II of the ADA); *see also Spiegel v. Schulmann*, 604 F.3d 72, 79 (2d Cir. 2010) ("the retaliation provision of the ADA ... cannot provide for individual liability"); *Myers v. N.Y.-Dep't of Motor Vehicles*, No. 06-CV-4583, 2013 WL 3990770, at *9 (E.D.N.Y. Aug. 5, 2013) ("[N]umerous district courts in this [C]ircuit have persuasively held that there is no individual liability under Title I or Title II of the ADA, regardless of whether the claim is brought in an individual or official capacity."); *Netti v. Ayers*, No. 17-CV-976, 2017 WL 7542494, at *18 (Oct. 5, 2017) ("individuals cannot be held liable under the ADA") (citing cases). Thus, Plaintiff's ADA claims against Judge McGinty, insofar as he is sued in his individual capacity, must be dismissed. [9]

Even if the Court assumes for purposes of initial review only, that Plaintiff was disabled during the state court proceedings within the meaning of the ADA, and Judge McGinty was a proper defendant in his official capacity, [10] her assertions do not show that Judge McGinty discriminated or retaliated against her because of her PTSD. It is not enough for Plaintiff to state that she is disabled and that bad things happened to her in the state court proceedings; she must allege facts from which a reasonable trier of fact could infer that these things happened to her because of discrimination on the basis of her disability. The use of "buzz words" such as "disability," "accommodation," and "retaliation" does not cure a pleading defect such as the one herein. *See Barr v. Abrams*, 810 F.2d 358, 362 (2d Cir. 1986) (the Second Circuit has repeatedly held, "complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning"). She does not allege any facts suggesting a plausible connection between her alleged PTSD and "LAS" and the actions that were taken against her in the state court proceedings. Rather, Plaintiff merely states she "has no recollection of being handed a slip" regarding the March 8, 2020, court date that she missed. Moreover, Plaintiff's passing reference that she "requested audio of the court hearings so that I can have time to listen to prepare as *pro se* for continuing proceedings" or that Judge McGinty "refused to give me enough time to get proper expensive counsel needed to fight such a traumatic 3rd trial" are insufficient to state a claim. (Dkt. No. 6 at 13, 14.)

**\*10**  In light of the foregoing, the Court recommends dismissing Plaintiff's ADA claims, if any, against Judge McGinty. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

### 5. Domestic Relations Exception, *Rooker-Feldman* [11] Doctrine, and *Younger* [12] Abstention

Due to the nature of Plaintiff's amended complaint, it is difficult to precisely determine exactly which doctrines apply, but based upon the relief sought, even if Plaintiff had sued an appropriate defendant, her claims are also likely barred by the *Rooker-Feldman* doctrine, domestic relations exception, and/or *Younger* abstention.

Case 6:24-cv-01367-AMN-ML     Document 8     Filed 04/07/25     Page 119 of 186

Amato v. McGinty, Not Reported in Fed. Supp. (2022)
2022 WL 226798

### a. Domestic Relations Exception

Under the domestic relations exception to the jurisdiction of federal courts, cases involving divorce, alimony, and child custody remain outside federal court jurisdiction. *Marshall v. Marshall*, 547 U.S. 293, 308 (2006). This exception is based upon a policy dictating that the states have traditionally adjudicated marital and child custody disputes, developing "competence and expertise in adjudicating such matters, which federal courts lack." *Thomas v. N.Y. City*, 814 F. Supp. 1139, 1146 (E.D.N.Y. 1993).

Here, in order to return custody of C.A.B. to Plaintiff, or to "enjoin" the state court's orders, this Court would have to re-determine Judge McGinty's decision in the custody matter. This would also involve resolving factual disputes regarding custody and visitation. This court is divested of jurisdiction to make such determinations. *See Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992); *Hernstadt v. Hernstadt*, 373 F.2d 316, 317 (2d Cir. 1967) (it has been uniformly held that federal courts do not adjudicate cases involving the custody of minors and rights of visitation); *Sobel v. Prudenti*, 25 F. Supp. 3d 340, 353 (E.D.N.Y. 2014) (the domestic relations exception "divests the federal courts of power to issue divorce, alimony, and child custody decrees"). Accordingly, to the extent the amended complaint is seeking a child custody decree from the Court, the court lacks jurisdiction to adjudicate such a claim. *See, e.g.*, *Amato v. McGinty*, No. 17-CV-593 (MAD/ATB), 2017 WL 9487185, at *8 (N.D.N.Y. Jun. 6, 2017) *report and recommendation adopted* by 2017 WL 4083575 (N.D.N.Y. Sept. 15. 2017).

### b. *Rooker-Feldman* Doctrine

In the event the relevant underlying state court proceedings are concluded, such claims may be barred by the *Rooker-Feldman* doctrine. This doctrine divests the federal court of jurisdiction to consider actions that seek to overturn state court judgments. *Fernandez v. Turetsky*, No. 12-CV-4092, 2014 WL 5823116, at *3 (E.D.N.Y. Nov. 7, 2014) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *Dorce v. City of New York*, 2 F.4th 82, 101 (2d Cir. 2021) ("The *Rooker-Feldman* doctrine bars federal district courts from hearing cases that in effect are appeals from state court judgments, because the Supreme Court is the only federal court with jurisdiction over such cases.")). The doctrine also bars the federal court from considering claims that are "inextricably intertwined" with a prior state court determination. *Fernandez v. Turetsky*, 2014 WL 5823116, at *3 (quoting *Johnson v. Smithsonian Inst.*, 189 F.3d 180, 185 (2d Cir. 1999)).

 **\*11**  The *Rooker-Feldman* doctrine applies where the federal court plaintiff: (1) lost in state court, (2) complains of injuries caused by the state court judgment, (3) invites the district court to review and reject the state court judgment, and (4) commenced the district court proceedings after the state court judgment was rendered. *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014).

Here, it appears Plaintiff "lost" in state court, complains of injuries caused by the state court judgments, and asks this Court to invalidate the state court's judgments regarding child custody. *See* Dkt. No. 6 at 29. Thus, as currently drafted, the amended complaint is likely barred under the *Rooker-Feldman* doctrine.

### c. *Younger* Abstention

In the event the underlying state court proceedings remain pending, Plaintiff's request for this Court's involvement may also implicate the *Younger* abstention doctrine. *See generally Younger v. Harris*, 401 U.S. 37 (1971). Under the *Younger* doctrine, "federal courts [must] abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings." *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002); *see also Huffman v. Pursue, Ltd.*, 420 U.S. 592, 602 n.16 (1975) (extending the equitable principles that required abstention with respect to injunctive relief in *Younger* apply to requests for declaratory relief as well).

2022 WL 226798

In *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69 (2013), the Supreme Court clarified that the *Younger* doctrine is limited to three exceptional circumstances, including (1) state criminal prosecutions; (2) civil enforcement, or "quasi-criminal," proceedings; and (3) "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Id.* at 72-73. "[T]here can be no doubt that a custody dispute ... raises important state interests." *Graham v. N.Y. Ctr. for Interpersonal Dev.*, No. 15-CV-459, 2015 WL 1120121, at *2-3 (E.D.N.Y. Mar. 12, 2015) (holding that plaintiff's claim for injunctive relief was barred by *Younger* when the plaintiff sought to challenge an ongoing family court custody proceeding) (citation omitted).

Accordingly, to the extent that the child custody issues are continuing in Family Court, the Court should abstain from interfering with that process. *See, e.g.*, *Cogswell v. Rodriguez*, 304 F. Supp. 2d 350, 357 (E.D.N.Y. 2004) (applying *Younger* abstention in child support matter); *Lomtevas v. New York State*, No. 03-CV-2359, 2003 WL 22937688, at *2 (E.D.N.Y. Nov. 13, 2003) (same).


## IV. LEAVE TO AMEND

Generally, when the court dismisses a *pro se* complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once, however, leave to replead may be denied where any amendment would be futile. *Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with the plaintiff's causes of action is substantive such that better pleading will not cure it. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

Here, better pleading could not cure the Court's lack of subject matter jurisdiction based on the immunities described above, which appear to apply to all claims except for Plaintiff's ADA claim seeking prospective injunctive relief.

**\*12**  Nevertheless, in light of Plaintiff's *pro se* status and in an abundance of caution, as was the case in the related action, better pleading—addressing the deficiencies outlined above—could potentially save Plaintiff's ADA claim for prospective injunctive relief against Judge McGinty from being *sua sponte* dismissed on initial review. *See, e.g.*, *Orr v. McGtiny*, No. 1:17-cv-1280 (GLS/TWD), ECF Dkt. No. 47 at 10-11. [13]  As such, the Court recommends this claim be dismissed without prejudice and with leave to amend. [14]


## V. PLAINTIFF'S ADDRESS

Under this Court's rules, an unrepresented litigant is under a duty to inform the Court of any address changes in writing. L.R. 10.1(c)(2). For the orderly disposition of cases, it is essential that litigants honor their continuing obligation to keep the Court informed of address changes. To date, all the Court's Orders mailed to Plaintiff's address on file have been returned as undeliverable. (Dkt. Nos. 10, 12, 15.)

In an extraordinary display of special solicitude to Plaintiff as a *pro se* litigant, the Clerk was directed to mail a one-time courtesy copy of each Order at the confidential and redacted address indicated on the envelope of Plaintiff's submissions to the Court and as verbally provided to the Clerk on December 1, 2021. (*See generally* Docket Report; *see* Dkt. Nos. 11, 14. [15] ) However, Plaintiff must file a change of address IN WRITING within thirty days, and she must continue to submit any address changes to the Court as long as her action is pending. "Failure to notify the Court of a change of address in accordance with L.R. 10.1(c)(2) may result in the dismissal of any pending action." L.R. 41.2(b).


## VI. CONCLUSION

**WHEREFORE**, after carefully considering this matter, and for the reasons explained above, it is hereby

**ORDERED** that Plaintiff's IFP application (Dkt. No. 16) is **GRANTED**; [16] and it is further

Case 6:24-cv-01367-AMN-ML    Document 8    Filed 04/07/25    Page 121 of 186

Amato v. McGinty, Not Reported in Fed. Supp. (2022)
2022 WL 226798

**\*13  RECOMMENDED** that Plaintiff's amended complaint (Dkt. No. 6) be *sua sponte* dismissed in its entirety pursuant to 28 U.S.C. § 1915(e); and it is further

**RECOMMENDED** that all claims be **DISMISSED WITH PREJUDICE** except that Plaintiff's ADA claim for prospective injunctive relief be **DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO REPLEAD**; and it is further

**RECOMMENDED** that the Clerk be directed to amend the docket to remove all references to C.A.B., and it is further

**ORDERED** that Plaintiff must file a **CHANGE OF ADDRESS** within **THIRTY DAYS** of the date of the Report-Recommendation, and she must continue to submit any address changes to the Court as long as this action is pending; failure to notify the Court of a change of address in accordance with L.R. 10.1(c)(2) may result in the dismissal of any pending action; and it is further

**ORDERED** that the Clerk mail a copy of this Order and Report-Recommendation to Plaintiff at the address listed on the docket and to mail a **FINAL** one-time courtesy copy to the confidential and redacted address indicated on the envelope of Dkt. No. 16 and as verbally provided to the Clerk on December 1, 2021.

Pursuant to 28 U.S.C. § 636(b)(1), Plaintiff has fourteen days within which to file written objections to the foregoing report. [17] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

**All Citations**

Not Reported in Fed. Supp., 2022 WL 226798

---

# Footnotes

1    Amato was terminated as party plaintiff in the related action by Order entered August 7, 2019. *See Orr v. McGinty*, 1:17-cv-1280 (GLS/TWD), ECF Dkt. No. 73. The Court assumes familiarity with the related case.

2    Page references to documents identified by docket number refer to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office. Unless otherwise indicated, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

3    Plaintiff explains the book "talks about the ongoing abuse of Anthony McGinty and his ongoing abuse to my family for exposing him. I have been publicly outspoken long before he was put on my case in 2016. I've been exposing him since 2014 and my best selling book was published in 2018. He refuses to recuse from this case which I orally explained pre trial in 2019 that I would not only never receive a fair trial but that having to come before him after the tremendous harm he caused my son...." (Dkt. No. 6 at 14.)

4    Plaintiff appears to be referring to Defendant, along with "Child Attorney Amy Ingram and opposing Counsel Andy Gilday." (Dkt. No. 6 at 11.) The Court notes Amy Ingram was named as a defendant in the related case and all claims asserted against her were dismissed with prejudice. *See Orr v. McGinty*, No. 1:17-cv-1280 (GLS/TWD), ECF Dkt. No. 47 at 13. The Court takes judicial notice that Amato, along with others, also filed suit against Judge McGinty, Amy

Ingram, and Attorney Andrew Gilday (for his role as assigned counsel to Patrick Beesmer, C.A.B.'s father), Beesmer, and another individual in a previous action, also captioned *Amato v. McGinty*, 1:17-cv-00593 (MAD/ATB), ECF Dkt. No. 1. In that case, although Amato paid the filing fee, United States Magistrate Judge Baxter recommended, *inter alia*, that Amato's Section 1983 claims against Judge McGinty be dismissed with prejudice as barred by judicial immunity. *See id.*, ECF Dkt. No. 11. United States District Judge D'Agostino adopted the report-recommendation in its entirety and judgment was entered accordingly on September 15, 2017. *See id.* at ECF Dkt. Nos. 19, 20.

5    However, and contrary to Plaintiff's assertion, in the related action she was not afforded the "right to replead and add current ongoing violations" rather, Amato's Section 1983 claims against Judge McGinty were dismissed with prejudice and her Title II ADA claims were dismissed for failure to state a claim upon which relief may be granted. *Orr v. McGinty*, 1:17-CV-01280 (GLS/TWD), ECF Dkt. Nos. 47, 74.

6    Plaintiff also seeks attorneys fees pursuant to 42 U.S.C. § 1988 and the Equal Access to Justice Act. (Dkt. No. 6 at 28.) However, as she was informed in the related action, *pro se* plaintiffs are not entitled to such fees. *Orr v. McGinty*, No. 1:17-cv-01280, ECF Dkt. No. 47 at 3 n.6 (citing *SEC v. Price Waterhouse*, 41 F.3d 805, 808 (2d Cir. 1994)).

7    Judicial immunity shields judges from suit to the extent that they are sued in their individual capacities. *See Ying Jing Gan v. City of N.Y.*, 996 F.2d 522, 529 (2d Cir. 1993); *Martinez v. Queens Cty. Dist. Attorney*, No. 12-CV-06262, 2014 WL 1011054, at *8 n. 8 (E.D.N.Y. Mar. 17, 2014), *aff'd*, 596 F. App'x 10 (2d Cir. 2015); *McKnight v. Middleton*, 699 F.Supp.2d 507, 521-25 (E.D.N.Y. 2010), *aff'd*, 434 F. App'x 32 (2d Cir. 2011). The Eleventh Amendment, on the other hand, shields judges from suit to the extent that they are sued in their official capacities. *See Ying Jing Gan*, 996 F.2d at 529 ("To the extent that ... a claim is asserted against the state official in his official capacity, he may assert the state's Eleventh Amendment immunity against suit.").

8    Moreover, "[i]t is axiomatic that 'Title VII does not impose liability on individuals.' " *Hamlett v. City of Binghamton*, No. 3:20-CV-880 (GLS/ML), 2021 WL 3723091, at *2 (N.D.N.Y. Aug. 23, 2021) (quoting *Lore v. City of Syracuse*, 670 F.3d 127, 169 (2d Cir. 2012) (citations omitted)); *see also Golden v. Syracuse Reg'l Airport Auth.*, No. 5:20-CV-1566 (MAD/TWD), 2021 WL 485731, at *1 (N.D.N.Y. Feb. 10, 2021) ("[I]ndividuals are not subject to liability under Title VII.") (quotation marks and citation omitted).

9    The Court notes judicial immunity also extends to Plaintiff's ADA claims for damages. *See Orr v. McGinty*, No. 1:17-cv-01280, Dkt. No. 47 at 5 (citing *Brooks v. Onondaga Cty. Dep't of Children & Family Servs.*, 5:17-CV-1186, 2018 WL 2108282, at *4 (N.D.N.Y. Apr. 9, 2018) (collecting cases)).

10   As observed in the related case, "It is questionable whether defendants, even when sued in their official capacities, are public entities." *Orr v. McGinty*, No. 1:17-cv-01280, Dkt. No. 74 at 4 n.4 (citing *Santiago v. Garcia*, 70 F. Supp. 2d 84, 89 (D. P.R. 1999) (holding state court judge sued in official capacity was not "public entity" under Title II); *but see Shollenberger v. N.Y. State Unified Court Sys.*, 18 CV 9736, 2019 WL 2717211, at *5 (S.D.N.Y. June 28, 2019) (allowing ADA claims seeking prospective injunctive relief to proceed against Chief Judge of the State of New York and Chief Administrator of the New York State Unified Court System because "a plaintiff need only allege the defendant[s] ha[ve] responsibility for the alleged conduct and the ability to redress the alleged violations")).

11   *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 414-17 (1923).

12   *Younger v. Harris*, 401 U.S. 37 (1971).

13   At this juncture, the Court expresses no opinion on the sufficiency of any such claim.

14   If the District Court adopts this Report-Recommendation, and if Plaintiff chooses to file a second amended complaint, the pleading must comply with Rules 8 and 10 of the Federal Rules. The revised pleading will replace the amended complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference

Case 6:24-cv-01367-AMN-ML    Document 8    Filed 04/07/25    Page 123 of 186

**Amato v. McGinty, Not Reported in Fed. Supp. (2022)**

2022 WL 226798

any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect."). The revised pleading should not attempt to resurrect any claims dismissed with prejudice in this action and/or claims brought or could have been brought in the related case. *See Lopez v. Jet Blue Airways*, No. 12-CV-0057, 2012 WL 213831, at *2 (E.D.N.Y. Jan. 24, 2012) ("Under the doctrine of *res judicata*, once a final judgment has been entered on the merits of a case, that judgment will bar any subsequent litigation by the same parties or those in privity with them concerning the transaction, or series of connected transactions, out of which the [first] action arose.").

15    While not entirely clear to the Court, it appears this "confidential" address differs from Plaintiff's residence, while the PO Box on file is the business address for Plaintiff's "home office" Punished 4 Protecting. (*See* Dkt. No. 16.)

16    Plaintiff should note that although her IFP application has been granted, she will still be required to pay fees that she may incur in this action, including copying and/or witness fees.

17    If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. 6(a)(1)(C).

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 1142144
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

John A. PORTER, III, Plaintiff,

v.

Susan Hamlin NASCI, Defendant.

5:24-CV-0033 (GTS/TWD)

|

Signed March 15, 2024

**Attorneys and Law Firms**

JOHN A. PORTER, III, 175 Parkside Ave, Syracuse, NY 13207, Plaintiff, pro se.

**ORDER AND REPORT-RECOMMENDATION**

Thérèse Wiley Dancks, United States Magistrate Judge

**\*1**  The Clerk has sent a *pro se* complaint together with an application to proceed *in forma pauperis* ("IFP") filed by Plaintiff John A. Porter, III, to the Court for review. (Dkt. Nos. 1, 2.)

**I. BACKGROUND**

Plaintiff brings this action under 42 U.S.C. § 1983 alleging Defendant Susan Hamlin Nasci, "acting as a non-judicial court employee without proper authority and jurisdiction," violated his "constitutional rights." [1] *Id.* Plaintiff claims "Defendant's actions constitute a violation of the Plaintiff's right to a trial by jury, equal protection of the law, and due process, resulting in substantial emotional and financial harm to the Plaintiff." [2] *Id.* The complaint does not include any other factual allegations.

As relief, Plaintiff seeks: (1) $50,000 in actual damages "for medical conditions and lost income due to severe anxiety and reduced work capacity"; (2) $50,000 in compensatory damages for emotional distress "caused by the estrangement from the Plaintiff's son"; (3) $50,000 in punitive damages to "penalize the Defendant and deter similar future misconduct"; (4) "the immediate dismissal" of the "fraudulent child support financial order imposed upon the Plaintiff"; and (5) the "return of all payments made by the Plaintiff under the fraudulent child support order up to the present day." *Id.* at 2.

**II. IFP APPLICATION**

Plaintiff declares in his IFP application that he is unable to pay the statutory filing fee to commence this action. (Dkt. No. 2.) After reviewing his application, this Court finds Plaintiff is financially eligible for IFP status. According, Plaintiff's IFP application is granted. [3]

**III. STANDARD OF REVIEW**

The Court must dismiss an IFP complaint, or any portion thereof, if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B)(i)-(iii); *see also Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that

a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee). The Court must also dismiss a complaint, or portion thereof, when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

"An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). "A claim is based on an indisputably meritless legal theory when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." *Id.*

**\*2** To survive dismissal for failure to state a claim, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This short and plain statement of the claim must be "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The statement of the claim must do more than present "an unadorned, the-defendant-harmed-me accusation." *Id.* It must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555; *see also* Fed. R. Civ. P. 8(a)(2).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

The Court will construe the allegations in the complaint with the utmost leniency. *See, e.g.*, *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding that a *pro se* litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers."); *see also Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008).

## IV. ANALYSIS

Liberally construed, Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted); *see also Myers v. Wollowitz*, No. 95-CV-0272, 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) ("42 U.S.C. § 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights."). [4]

"Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted). To establish liability under the statute, a plaintiff must plead that each government official defendant violated the Constitution through that official's own individual actions. *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020).

Having carefully reviewed Plaintiff's complaint and for the reasons discussed below, the Court recommends dismissal of complaint without prejudice and with leave to amend.

### A. Failure to State a Claim

The complaint alleges Defendant denied Plaintiff his "right to a trial by jury, equal protection of the law, and due process." (Dkt. No. 1 at 1.) However, Plaintiff has failed to adequately set forth sufficient factual content to allow this Court to reasonably infer Defendant was personally involved and liable for the alleged unconstitutional conduct. *See Iqbal*, 556 U.S. at 678. Specifically, he has failed to set forth a short and plain statement stating what Defendant did to him, when she did it, and how he was injured.

*See id.*; *see also* Fed. R. Civ. P. 8(a)(2). Absent these basic details, Plaintiff's complaint has failed to give Defendant fair notice of what his claims are, and the Court is left with "an unadorned, the-defendant-harmed-me accusation." *See Iqbal*, 556 U.S. at 678.

**\*3** Therefore, it is recommended that Plaintiff's complaint be dismissed for failure to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii); Fed. R. Civ. P. 8(a).

## B. Judicial Immunity

Judges are immune from suit for damages for any actions taken within the scope of their judicial responsibilities. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Generally, "acts arising out of, or related to, individual cases before the judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). "Even allegations of bad faith or malice cannot overcome judicial immunity." *Id.* at 209. This is because, "[w]ithout insulation from liability, judges would be subject to harassment and intimidation." *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994). In addition, Section 1983, as amended in 1996, provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983.

Judicial immunity does not apply when a judge takes action "outside" his or her judicial capacity, or when a judge takes action that, although judicial in nature, is taken "absence of all jurisdiction." *Mireles* 502 U.S. at 11-12; *see also Bliven*, 579 F.3d at 209-10 (describing actions that are judicial in nature). But "the scope of [a] judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978).

"New York Family Court Support Magistrates, as New York State judicial officers, enjoy this judicial immunity, when presiding over child support proceedings." [5] *Cora v. Wright*, No. 1:24-CV-0263, 2024 WL 450247, at \*2 (S.D.N.Y. Feb. 5, 2024) (citing *Arce v. Turnbull*, No. 21-642, 2021 WL 5816687 (2d Cir. Dec. 8, 2021) (summary order)); *see, e.g., Phillips v. Wagner*, No. 1:22-CV-0833 (DNH/ML), 2022 WL 17406092, at \*4 (N.D.N.Y. Nov. 4, 2022) ("Plaintiff's claims under § 1983 against Defendant Wagner, who acted as the support magistrate judge, are barred under the doctrine of judicial immunity."), *report and recommendation adopted*, 2022 WL 17403441 (N.D.N.Y. Dec. 2, 2022), *appeal dismissed*, No. 23-68, 2023 WL 4445323 (2d Cir. Apr. 25, 2023).

While not entirely clear, Plaintiff seems to assert claims for damages and injunctive relief pursuant to Section 1983 against Defendant, a Support Magistrate, who presumably presided over the child support proceedings that resulted in the alleged "fraudulent child support financial order imposed upon the Plaintiff." (Dkt. No. 1 at 1-2.) Plaintiff, however, fails to allege any facts showing Defendant acted beyond the scope of her judicial responsibilities or outside her jurisdiction. *See Mireles*, 509 U.S. at 11-12. Moreover, Plaintiff does not allege any facts suggesting that a declaratory decree was violated or that declaratory relief was unavailable.

**\*4** Thus, insofar as Plaintiff sues Defendant "for acts arising out of, or related to, individual cases before [her]," Defendant would be entitled to judicial immunity. [6] *Bliven*, 579 F.3d at 210; *see* 28 U.S.C. § 1915(e)(2)(b)(iii); *see also Mills v. Fischer*, 645 F. 3d 176, 177 (2d Cir. 2011) ("Any claim dismissed on the ground of absolute judicial immunity is 'frivolous' for purposes of [the IFP statute].").

## C. Jurisdiction

Although the nature of Plaintiff's complaint makes it difficult to precisely determine which doctrines apply, based on the relief Plaintiff seeks, this Court may lack jurisdiction to hear Plaintiff's claims and/or it should likely abstain from hearing Plaintiff's claims.

Under the *Rooker-Feldman* doctrine, a federal district court lacks authority to review a final state court order or judgment where a litigant seeks relief that invites the federal district court to reject or overturn such a final state court order or judgment. *See*

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291-92 (2005); *Dorce v. City of New York*, 2 F.4th 82, 101 (2d Cir. 2021) (The *Rooker-Feldman* doctrine "bars federal district courts from hearing cases that in effect are appeals from state court judgments, because the Supreme Court [of the United States] is the only federal court with jurisdiction over such cases." (citing 28 U.S.C. § 1257)). "This includes when a litigant seeks relief that invites a federal district court to reject or overturn a final decision of a New York Family Court as to a child support dispute brought in that state court." *Sims v. Kaufman*, No. 23-CV-7927, 2024 WL 757338, at *4 (S.D.N.Y. Feb. 14, 2024) (citing *Legister v. Radowitz*, No. 1:20-CV-9330, 2020 WL 7405672, at *3 (S.D.N.Y. Dec. 16, 2020)) ("A plaintiff's challenge in a federal district court to 'the validity or enforcement of [a] child support order itself' is barred by the *Rooker-Feldman* doctrine." (quoting *Sykes v. Bank of Am.*, 723 F.3d 399, 404 (2d Cir. 2013))).

District court review of claims is barred under the *Rooker-Feldman* doctrine when four requirements are met: (1) the litigant lost in state court; (2) the litigant complains of injuries caused by a final state court order or judgment; (3) the litigant invites district court review and rejection of the final state court order or judgment; and (4) the final state court order or judgment was rendered before the district court proceedings commenced. *Dorce*, 2 F.4th at 101 (internal quotation marks and citation omitted). [7]

**\*5** Plaintiff's claims also appear to implicate the domestic relations abstention doctrine, which requires federal courts to abstain from exercising federal question jurisdiction of domestic relations issues such as divorce, child support payments and child custody. *See Deem v. DiMella-Deem*, 941 F.3d 618, 621-24 (2d Cir. 2019) (holding that federal district courts must abstain from exercising federal-question jurisdiction of claims involving domestic-relations issues); *American Airlines, Inc. v. Block*, 905 F.2d 12, 14 (2d Cir. 1990) (holding that where a federal district court is "asked to grant a divorce or annulment, determine support payments, or award custody of a child," the court should abstain from exercising its jurisdiction of such claims if "there is no obstacle to their full and fair determination in [the] state courts.") (internal quotation marks omitted); *see, e.g.*, *Simmons v. NYS Dep't of Soc. Servs.*, No. 19-CV-3633, 2019 WL 5810307, at *4 n.2 (S.D.N.Y. Nov. 5, 2019) ("[C]alculation of support payments is the type of domestic relations issue that the Court generally abstains from hearing.").

## V. OPPORTUNITY TO AMEND

As discussed above, the Court finds Plaintiff's complaint is subject to dismissal failure to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii); Fed. R. Civ. P. 8(a). Generally, before the Court dismisses a *pro se* complaint or any part of the complaint *sua sponte*, the Court should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

Although the Court has serious doubts about whether Plaintiff can amend to assert an actionable claim given the various jurisdictional and immunity principles discussed above, since this is Plaintiff's initial complaint and out of an abundance of caution, the Court recommends that Plaintiff be given an opportunity to amend to cure the deficiencies identified above.

The Court advises Plaintiff that should he be permitted to amend his complaint, any amended pleading he submits to this Court must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure. [8] Any such amended complaint should specifically identify the legal theory or theories that form the basis for his claim. Plaintiff is cautioned that no portion of his original complaint shall be incorporated into his amended complaint by reference. Any amended complaint submitted by Plaintiff must set forth all of the claims he intends to assert against the defendants and must demonstrate that a case or controversy exists between the Plaintiff and the defendant which Plaintiff has a legal right to pursue and over which this Court has jurisdiction. Of course, Plaintiff may also pursue his claims in state court if appropriate.

## VI. CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's IFP application (Dkt. No. 2) is **GRANTED**; and it is further

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1) be **DISMISSED WITH LEAVE TO AMEND**; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), Plaintiff has fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. [9] **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

**\*6  IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2024 WL 1142144

---

### Footnotes

1    The Court takes judicial notice Susan Hamlin Nasci, Esq., is a New York Family Court Support Magistrate. *See* https://ww2.nycourts.gov/courts/5jd/onondaga/index.shtml (last visited Mar. 13, 2024).

2    Unless otherwise indicated, excerpts from the complaint are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

3    Plaintiff is advised that he will still be required to pay any costs and fees that he may incur in this matter, including, but not limited to, any copying fees or witness fees.

4    Plaintiff also claims Defendant, "acting as a non-judicial court employee without proper authority and jurisdiction, has trespassed upon the Plaintiff's right, specifically under 18 USC Section 242." (Dkt. No. 1 at 1.) However, 18 U.S.C. § 242 is a criminal statute, which does not give rise to civil liability or authorize a private right of action. *See Storm-Eggink v. Gottfried*, 409 F. App'x 426, 427 (2d Cir. 2011) (holding there is "no private right of action" under 18 U.S.C. § 242).

5    According to the website maintained by the New York State Unified Court System, "[a] 'Support Magistrate' conducts the hearing, taking testimony from both sides concerning their income and expenses and the cost of supporting the child. The parties can present evidence and witnesses and cross-examine each other and the witnesses. The Support Magistrate calculates how much support the non-custodial parent must pay to the parent with custody, and sets a schedule for regular payments." *See* https://ww2.nycourts.gov/courts/5jd/family/support.shtml (last visited Mar. 13, 2024).

6    Defendant also would be protected under the doctrine of sovereign immunity. In *Gollomp v. Spitzer*, the Court held that the New York Unified Court System is an "arm of the State" and affirmed the dismissal of a § 1983 claim against a judge under sovereign immunity. 568 F.3d 355, 365-68 (2d Cir. 2009). That holding was recently reaffirmed by the Second Circuit. *Bythewood v. New York*, No. 22-2542-cv, 2023 WL 6152796, at *1 (2d Cir. Sept. 21, 2023) ("The New York State Unified Court System is 'unquestionably an arm of the state' that shares in New York's immunity to suit.").

2024 WL 1142144

7    To the extent Plaintiff is asking the Court to grant injunctive and declaratory relief with respect to ongoing Family Court proceedings, including any post-judgment proceedings, the Court must likely abstain from hearing those claims under the *Younger* abstention doctrine. *Younger v. Harris*, 401 U.S. 37 (1971).

8    "A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b).

9    If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. 6(a)(1)(C).

---

**End of Document**                                          © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 3158645
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

John A. PORTER, III, Plaintiff,

v.

Susan Hamlin NASCI, Defendant.

5:24-CV-0033 (GTS/TWD)
|
Signed June 25, 2024

**Attorneys and Law Firms**

JOHN A. PORTER, III, Plaintiff, Pro Se, 175 Parkside Ave, Syracuse, New York 13207.

### DECISION and ORDER

GLENN T. SUDDABY, United States District Judge

**\*1** Currently before the Court, in this *pro se* civil rights action filed by John A. Porter, III ("Plaintiff") against Susan Hamlin Nasci, Support Magistrate employed by the Onondaga County Family Court ("Defendant"), is United States Magistrate Judge Thérèse Wiley Dancks' Report-Recommendation recommending that Plaintiff's Complaint be *sua sponte* dismissed with leave to amend pursuant to 28 U.S.C. § 1915(e)(2)(B), and Plaintiff's Objection to the Report-Recommendation and Amended Complaint. (Dkt. Nos. 4, 5.)

After carefully reviewing the relevant papers herein, including Magistrate Judge Dancks' thorough Report-Recommendation, the Court can find no error in the Report-Recommendation, clear or otherwise: Magistrate Judge Dancks employed the proper standards, accurately recited the facts, and reasonably applied the law to those facts. (*See generally* Dkt. No. 4.) As a result, the Report-Recommendation is accepted and adopted in its entirety for the reasons set forth therein. To those reasons, the Court adds only two points.

First, even when construed liberally, Plaintiff's "Objection" fails to contain a *specific* challenge to a finding or conclusion contained in the Report-Recommendation. (See generally Dkt. No. 5.) As a result, the "challenged" portions of the Report-Recommendation are entitled to only a clear-error review,[1] which they easily survive. In the alternative, the Court finds that those portions of the Report-Recommendation survive a *de novo* review.

Second, rather than file a specific challenge to the Report-Recommendation, Plaintiff has filed an Amended Complaint. (Dkt. No. 5.) This haste to litigate has complicated matters because, even assuming Plaintiff had an absolute right to file such an Amended Complaint under Fed. R. Civ. P. 15(a)(1) despite that he had not yet served his Complaint,[2] an amended complaint supersedes an original complaint in all respects.[3] This means that, potentially, Plaintiff's Amended Complaint has partially mooted Magistrate Judge Dancks' Report-Recommendation, which analyzed Plaintiff's *original* Complaint.

**\*2** Out of a desire for judicial efficiency, the Court is tempted to apply the recommendations in the Report-Recommendation to Plaintiff's Amended Complaint. However, the Court is mindful of the Second Circuit's admonition that a *pro se* plaintiff's request to amend his complaint when a motion to dismiss is pending should be denied only without prejudice, or perhaps stayed until he has had the benefit of the district court's ruling on the motion to dismiss.[4]

As a result, the Court has chosen to apply Magistrate Judge Dancks' Report-Recommendation to Plaintiff's original Complaint while deeming Plaintiff's "Amended Complaint" (Dkt. No. 5) as a *proposed* Amended Complaint, and holding that proposed Amended Complaint in abeyance pending confirmation from him that it is indeed the Amended Complaint on which he wishes to proceed.

**ACCORDINGLY**, it is

**ORDERED** that Magistrate Judge Dancks' Report-Recommendation (Dkt. No. 4) is **ACCEPTED** and **ADOPTED** in its entirety; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No 1) shall be **DISMISSED with prejudice UNLESS, within THIRTY (30) DAYS** of the date of this Decision and Order, Plaintiff files an **AMENDED COMPLAINT** that cures the pleading defects identified in the Report-Recommendation; and it is further

**ORDERED** that, if Plaintiff wishes his proposed Amended Complaint (Dkt. No. 5) to serve as that Amended Complaint, he shall notify the Court of that fact in writing within thirty days of the date of this Decision and Order; and it is further

**ORDERED** that, should Plaintiff file a timely Amended Complaint (by either of the two methods identified in the two prior paragraphs), it shall be automatically referred to Magistrate Judge Dancks for her review.

**All Citations**

Slip Copy, 2024 WL 3158645

---

**Footnotes**

1    When no specific challenge is made to a magistrate judge's report-recommendation, the Court subjects that report-recommendation to only a clear error review. Fed. R. Civ. P. 72(b)(2),(3); Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition; *see also Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *2-3 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.) [collecting cases], *aff'd without opinion*, 175 F.3d 1007 (2d Cir. 1999). When performing such a "clear error" review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition; *see also Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks omitted).

2    Rule 15(a)(1)(A) of the Federal Rules of Civil Procedure provides that "[a] party may amend its pleading once as a matter of course *within* ... 21 days after serving it ...." Fed. R. Civ. P. 15(a)(1)(A) (emphasis added). Here, Plaintiff never served his Complaint; thus, he was arguably not yet *within* the 21-day window in which he could properly file an Amended Complaint as a matter of course. *Compare Morris v. New York State Gaming Comm'n*, 18-CV-0384, 2019 WL 2423716, at *4 (W.D.N.Y. March 14, 2019) ("Because Plaintiff never served the original Complaint, the 21-day time limit to file an amended complaint under Rule 15(a)(1)(A) never *commenced*.") (emphasis added) *with Henderson v. Wells Fargo Bank, NA*, 13-CV-0378, 2015 WL 630438, at *2 (D. Conn. Feb. 13, 2015) ("Fed. R. Civ. P. 15(a) provides that a 'party may amend its pleading once as a matter of course within ... 21 days after serving it.' Because Plaintiff has not yet served Defendant with the complaint, her motion is granted although unnecessary because leave of the Court is not required.").

3    *See Int'l Controls Corp. v. Vesco,* 556 F.2d 665, 668 (2d Cir. 1977) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect."); 6 C. Wright & A. Miller, *Federal Practice & Procedure* § 1476, at 556-57 (2d ed. 1990) ("A pleading that has been amended under Rule 15(a) supersedes the pleading it modifies and remains in effect throughout the action unless it subsequently is modified."); *cf.* N.D.N.Y. L.R. 7.1(a)(4) ("[T]he proposed amended pleading ... will supersede the pleading sought to be amended in all respects.").

4    *See Cresci v. Mohawk Valley Community College,* 693 F. App'x 21, 25 (2d Cir. June 2, 2017) ("The court's criticism of Cresci for failure to submit a proposed amended complaint before learning whether, and in what respects, the court would find deficiencies was unjustified, and the court's denial of leave to replead, simultaneously with its decision that the complaint was defective, effectively deprived Cresci of a reasonable opportunity to seek leave to amend.").

---

**End of Document**                                   © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 6:24-cv-01367-AMN-ML    Document 8    Filed 04/07/25    Page 133 of 186
Fernandez v. Turetsky, Not Reported in F.Supp.3d (2014)

2014 WL 5823116

2014 WL 5823116
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Edwin FERNANDEZ, Plaintiff,

v.

Vicky TURETSKY, et al., Defendants.

No. 12–cv–4092 (SLT)(MDG).
|
Signed Nov. 5, 2014.
|
Filed Nov. 7, 2014.

**Attorneys and Law Firms**

Edwin Fernandez, Staten Island, NY, pro se.

Kathleen Anne Mahoney, United States Attorneys Office, Elizabeth A. Forman, Attorney General of the State of New York, Gloria Mihee Yi, NYC Law Department, Omar Hani Tuffaha, New York City Law Department Office of the Corporation Counsel, New York, NY, for Defendants.

## MEMORANDUM & ORDER

TOWNES, District Judge.

**\*1** Plaintiff Edwin Fernandez, proceeding *pro se,* alleges that his constitutional right to due process was violated by (1) federal defendants: Vicki Turetsky and Joyce A. Thomas, respectively, the Commissioner and Regional Administrator of the U.S. Department of Health and Human Services, Office of Child Support Enforcement; (2) state defendants: Thomas H. Mattox and C. Duncan Kerr, respectively, the Commissioner and Deputy Tax Commissioner of the New York State Department of Taxation and Finance, Office of Child Support Enforcement; and three Tax Compliance Agents employed by the New York State Department of Taxation and Finance, Child Support Enforcement Section–Patty Whitford, Georgia Brown, and Margaret Ramsay; and (3) a municipal defendant: Robert Doar, a former Commissioner of the New York City Human Resources Administration. Plaintiff alleges that his vehicles and funds were seized, wages garnished, and tax refunds intercepted in order to collect child support arrears even though "Plaintiff was in compliance paying child support arrears." [Dkt. 4, Amd. Compl. ¶ 26.] This action was reassigned to this Court on March 18, 2014, after Judge Mauskopf entered a recusal order on March 17, 2014. Currently before the Court is state defendants' ("Defendants") motion to dismiss for, *inter alia,* lack of subject matter jurisdiction.[1]

## Legal Standard

Defendants move to dismiss on the grounds that this Court lacks subject matter jurisdiction. *Remy v. New York State Dep't of Taxation & Fin.,* 507 F. App'x 16, 18 (2d Cir.2013) ("A challenge under the *Rooker–Feldman* doctrine is for lack of subject matter jurisdiction.") (quoting *Moccio v. N.Y. State Office of Court Admin.,* 95 F.3d 195, 198 (2d Cir.1996)). "A case may properly be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) 'when the district court lacks the statutory or constitutional power to adjudicate it.' " *Sobel v. Prudenti,* 12 CV 3258 DRH WDW, 2014 WL 2750364, at \*10 (E.D.N.Y. June

18, 2014) (quoting *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000)). Unlike on a motion to dismiss for failure to state a claim under Rule 12(b)(6), a "plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." ' *Mac Pherson v. State St. Bank & Trust Co.,* 452 F.Supp.2d 133, 136 (E.D.N.Y.2006) *aff'd,* 273 F. App'x 61 (2008) (quoting *Makarova,* 201 F.3d at 113). In resolving a motion to dismiss under Rule 12(b)(1), the Court is not limited to the face of the complaint, but may also consider evidence such as affidavits submitted by the parties. *Robinson v. Government of Malaysia,* 269 F.3d 133, 141 (2d Cir.2001).

## Factual History

According to the factual recitation in the May 13, 2008 Decision and Order of the Honorable Francois A. Rivera, Justice of the Supreme Court of the State of New York, Kings County dismissing Plaintiff's CPLR Article 78 petition, Plaintiff's obligation to pay child support to his ex-wife, custodial parent of their child, arises out of a June 7, 1990 divorce decree. After Plaintiff did not comply with his child support obligations, in June 1999, his ex-wife requested that the New York City Support Collection Unit assist her in enforcing Plaintiff's support obligations. Justice Rivera's May 13, 2008 Order finds that although the child support order was terminated *nunc pro tunc* to January 9, 2007, the day that the subject child turned 21 Plaintiff still owed outstanding support arrears. Subsequently, a Supreme Court of the State of New York, Kings County Family Court Support Magistrate, at an October 23, 2007 hearing, set Plaintiff's child support arrears at $33,468.80. Justice Rivera's Order rejects Plaintiff's contention "that he has paid the required child support and now that the child is emancipated, he no longer owes any money," because "[i]n actuality, though Mr. Fernandez's [*sic* ] paid child support through an income execution of his wages, and the child in question is now emancipated, *he is still in arrears for prior child support payments that he never paid.*" (emphasis added). Accordingly, Justice Rivera dismissed Plaintiff's CPLR Article 78 petition.

**\*2** Plaintiff filed the instant lawsuit pursuant to 42 U.S.C. § 1983 against employees of federal, state, and municipal child support enforcement agencies alleging that, because his ongoing support obligations were terminated *nunc pro tunc* to January 9, 2007 when his child turned 21, he had no further support obligations and all subsequent child support collection efforts were unconstitutional.[2] In his papers, Plaintiff challenges the October 23, 2007 decision of a Family Court Support Magistrate setting Plaintiff's child support arrears at $33,468.80. Although he does not mention his unsuccessful CPLR Article 78 petition in his pleadings, he, in effect, asks this Court to reconsider Justice Rivera's May 13, 2008 Order finding that Plaintiff owed money under a valid child support arrears decree. Defendants have moved to dismiss Plaintiff's action for, *inter alia,* lack of subject matter jurisdiction based on the domestic relations exception to federal jurisdiction and the *Rooker–Feldman* doctrine.

## Discussion

### A. *Domestic Relations Exception to Jurisdiction*

Defendants contend that this Court lacks subject matter jurisdiction over the action under the domestic relations exception to federal court jurisdiction. *See Ankenbrandt v. Richards,* 504 U.S. 689, 703, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992). The so-called "domestic relations exception" dates back to 1858, when the Supreme Court announced that federal courts have no jurisdiction over suits for divorce or the allowance of alimony. *Barber v. Barber,* 62 U.S. 582, 584, 21 How. 582, 16 L.Ed. 226 (1858); *Ankenbrandt,* 504 U.S. at 703 (explaining that exception "divests the federal courts of power to issue divorce, alimony, and child custody decrees.") Although courts frequently use broad language when characterizing the exception, the Supreme Court has clarified that, in actuality, the exception is narrow, and "encompasses *only* cases involving the issuance of a divorce, alimony, or child custody decree." *Ankenbrandt,* 504 U.S. at 704 (emphasis added). Thus, where a lawsuit "in no way seeks such a decree," the exception's invocation is inappropriate. *Id.; Williams v. Lambert,* 46 F.3d 1275, 1283 (2d Cir.1995) ("[T]he exception is very narrow."); *but see McKnight v. Middleton,* 699 F.Supp.2d 507, 516–17 (E.D.N.Y.2010) *affd,* 434 F. App'x 32 (2d Cir.2011) (observing that in *Schottel v. Kutyba,* 06–1577–CV, 2009 WL 230106 (2d Cir. Feb.2, 2009), the Second Circuit expanded the exception to claims that, in fact, challenge domestic relations decrees, even where they are recast as actions seeking monetary relief).

The domestic relations exception is rooted in an understanding that "[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states, and not to the laws of the United States." *In re Burrus,* 136 U.S. 586, 593–94, 10 S.Ct. 850, 34 L.Ed. 500 (1890). "[T]he exception is grounded, not in the Constitution, but as a matter of 'statutory construction' of the federal diversity statute." *Tilley v. Anixter Inc.,* 283 F.Supp.2d 729, 733–34 (D.Conn.2003) (citing *Ankenbrandt,* 504 U.S. at 703). Despite its origins in the federal diversity statute, courts in this district routinely apply the exception to cases brought under the federal courts' federal question jurisdiction. *See Mitchell–Angel v. Cronin,* 101 F.3d 108 (2d Cir.1996) ("District courts in this Circuit have held that the exception includes civil rights actions directed at challenging the results of domestic relations proceedings.") (citing *McArthur v. Bell,* 788 F.Supp. 706, 708 (E.D.N.Y.1992)); *see also Sobel,* 2014 WL 2750364, at *11 (finding exception strips federal court of jurisdiction where "Plaintiff's complaint is, in effect, a civil rights action directed at challenging the results of domestic relations proceedings, and, in particular, a state court's decisions regarding child support."); *Sullivan v. Xu,* No. 10–CV–3626 (ENV), 2010 WL 3238979, at *2 (E.D.N.Y. Aug.13, 2010) ("Although plaintiff invokes his constitutional rights, the substance of his claims concern state law domestic relations matters."). That said, the Second Circuit recently noted in a summary order that the Circuit "expressly decline[s] to address whether the domestic relations exception to federal subject matter jurisdiction applies to federal question actions." *See Ashmore v. Prus,* 12–2760–CV, 2013 WL 362998, at *2 (2d Cir. Jan.31, 2013) (summary order); *see also Ahlawat v. State of Connecticut Superior Court,* 3:12–CV–1042 JBA, 2013 WL 3338572, at *1 n. 2 (D.Conn. July 2, 2013) (noting that "the Second Circuit has not resolved whether [the domestic relations] exception would provide a further bar to Plaintiff's federal question lawsuit.").

**\*3** Here, if Plaintiff's claim is read to challenge the enforcement of a child support decree on the grounds it is erroneous, his lawsuit, even though framed as a civil rights action, would be barred by the domestic relations exception. However, reading *pro se* Plaintiff's complaint to "raise the strongest arguments that they suggest," *Triestman,* 470 F.3d at 474, Plaintiff's complaint can be read more narrowly to seek monetary damages for violations of his due process rights that occurred during the enforcement of a *valid* child support decree. *Ankenbrandt,* 504 U.S. at 704 (noting that the exception has no application where the lawsuit "in no way seeks [a domestic relation] decree"). Even so, some courts in this district have held that lawsuits seeking monetary relief for purportedly unlawful conduct undertaken to enforce valid support decrees are also barred by the domestic relations exception. *See Joseph v. Stewart,* 13–CV–1678 NGG LB, 2013 WL 3863915, at *2 (E.D.N.Y. July 24, 2013) (applying domestic relations exception where "Plaintiff challenges the enforcement and effect of his child support obligations, and although he invokes his constitutional rights, the essence of his allegations concern state law domestic relations matters.").[3] This Court need not resolve whether such a narrow challenge would be barred by the domestic relations exception because the Court lacks subject matter jurisdiction over this action under, *inter alia,*[4] the *Rooker–Feldman* doctrine.

### B. *Rooker–Feldman Doctrine*

The so-called *Rooker–Feldman* doctrine divests federal courts of jurisdiction to consider suits which seek to overturn state court judgments. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005). Additionally, the doctrine "bars federal courts from considering claims that are 'inextricably intertwined' with a prior state court determination." *Johnson v. Smithsonian Inst.,* 189 F.3d 180, 185 (2d Cir.1999) (citations and internal quotation marks omitted). In *Exxon Mobil,* the Supreme Court reined in the use of the doctrine, explaining that the doctrine "is confined to cases ... brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* In the wake of *Exxon Mobil,* the Second Circuit revisited its prior precedents and limited the application *of Rooker–Feldman* to cases satisfying four "requirements":

First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must "complain[ ] of injuries caused by [a] state-court judgment [.]" Third, the plaintiff must "invit[e] district court review and rejection of [that] judgment[ ]." Fourth, the state-court judgment must have been "rendered before the district court proceedings commenced"-i.e., *Rooker–Feldman* has no application to federal-court suits proceeding in parallel with ongoing state-court litigation. The first and fourth of these requirements may be loosely termed procedural; the second and third may be termed substantive.

Fernandez v. Turetsky, Not Reported in F.Supp.3d (2014)

2014 WL 5823116

*4  *Hoblock v. Albany Cnty. Bd. of Elections,* 422 F.3d 77, 85 (2d Cir.2005) (quoting *Exxon Mobil,* 544 U.S. at 284); *see also McKit hen v. Brown,* 626 F.3d 143, 154 (2d Cir.2010).

Courts have repeatedly invoked the doctrine in cases, like the one currently before the Court, in which plaintiffs challenge family court decrees setting child support arrears. *See Sorenson v. Suffolk Cnty. Child Support Enforcement Bureau,* 07–CV–03755JFBAKT, 2009 WL 580426, at *6–7 (E.D.N.Y. Mar.5, 2009) (finding plaintiff, who previously unsuccessfully sought to have child support "arrears vacated ... in state court" cannot "utilize the federal courts to, in essence, challenge the existing judgment regarding child support arrears, or the County's enforcement of that judgment."); *Remy,* 507 F. App'x at 18–19 (finding that court was barred under *Rooker–Felman* from exercising jurisdiction over suit challenging "Family Court's arrears order[, where plaintiff] ... had a full and fair opportunity to litigate [the arrears order in state court]."); *Chestnut v. Gabler,* No. 06 Civ. 34E(F), 2007 WL 529556, at *3 (W.D.N.Y.Feb.13, 2007) ("Construed liberally, the complaint essentially alleges that plaintiff's constitutional rights were violated during the course of the Family Court proceedings and plaintiff now seeks, in part, to challenge in this Court the orders issued in those proceedings. To the extent plaintiff is asking this Court to review the proceedings before the Allegany County Family Court, said review by this Court is barred by the *Rooker–Feldman* doctrine and the complaint must be dismissed accordingly."). In *Sorenson,* the Court explained that although the plaintiff attempted to recast his claims as alleging "improper enforcement of the Family Court judgment rather than [challenging] the judgment itself[,] ... *Rooker–Feldman* also bars such claims because the enforcement is inextricably intertwined with the state court judgment." *Sorenson,* 2009 WL 580426, at *7 (collecting cases).

Plaintiff expressly asks this Court to review the October 23, 2007 family court order setting arrears on the grounds that the decision was erroneous because he had complied with all previous child support obligations and thus could not be liable for arrears. Under the *Rooker–Feldman* doctrine, this Court may not do so. As in *Sorenson,* to the extent Plaintiff recasts his claims as alleging improper enforcement of the child support arrears decree, under these circumstances, the enforcement of the arrears decree is inextricably intertwined with the validity of the decree, itself. Thus this Court is barred under the *Rooker–Feldman* doctrine from reviewing the claim. Additionally, this Court is precluded from reviewing Plaintiff's claims for the separate reason that Plaintiff has already brought an Article 78 petition in state court raising these exact arguments. Thus, the instant lawsuit, in effect, challenges not only the October 23, 2007 arrears order, but also the May 13, 2008 decision of Justice Rivera dismissing the Article 78 petition. Plaintiff's attempts to appeal to this Court the decisions of the Family Court Support Magistrate and Justice Rivera are barred by the *Rooker–Feldman* doctrine. Accordingly, Defendant's motion to dismiss is granted.

 *5  The above reasoning applies with equal force to Plaintiff's claims against the other defendants who allegedly enforced the child support arrears decree. Thus, this Court lacks subject matter jurisdiction to adjudicate Plaintiff's claims against all of the remaining defendants in the action. Given that this Court has determined that it lacks subject matter jurisdiction over the entire action, the Court, *sua sponte,* dismisses Plaintiff's claims against the remaining defendants and dismisses Plaintiff's complaint in its entirety. *Morris v. Rosen,* 12–3143–CV, ––– F. App'x ––––, 2014 WL 4233392, at *1 (2d Cir. Aug.28, 2014) (affirming district court's *sua sponte* dismissal of *pro se* plaintiff's complaint for lack of subject matter jurisdiction under the *Rooker–Feldman* doctrine.)

## Conclusion

For the foregoing reasons, the State Defendant's motion to dismiss is granted on the grounds that this Court lacks subject matter jurisdiction over the instant action under the *RookerFeldman* doctrine. For the same reasons, the Court *sua sponte* dismisses the action against all other defendants. The Clerk of Court is respectfully directed to enter judgment accordingly and close the case.

**SO ORDERED.**

Case 6:24-cv-01367-AMN-ML    Document 8    Filed 04/07/25    Page 137 of 186
Fernandez v. Turetsky, Not Reported in F.Supp.3d (2014)
2014 WL 5823116

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 5823116

---

**Footnotes**

1    Defendants also seeks to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that Plaintiff's claims are time-barred. This Court need not reach the issue because it lacks subject matter jurisdiction over the case.

2    *Pro se* complaints "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir.2006) (internal quotation marks omitted).

3    *But see King v. Comm'r & New York City Police Dep't,* 60 F. App'x 873, 874–75 (2d Cir.2003) (summary order) ("The instant appeal is brought pursuant to the court's federal question jurisdiction, not its diversity jurisdiction. Nevertheless, the City argues that the domestic relations exception is not limited to diversity cases. Although this seems contrary to precedent, the city does cite language to support its argument. We need not examine this question, however, because even under the broadest interpretation of the exception, it applies only to cases that seek issuance or modification of divorce, alimony, or child custody decrees. Appellant is not seeking a domestic relations award, and he is not asking that his parental rights be reinstated. Instead, his complaint seeks monetary damages. The domestic relations exception to federal jurisdiction is therefore irrelevant to this action.") (citation and parenthetical explanation omitted).

4    Even if this Court has jurisdiction, "[a] federal court presented with matrimonial issues or issues 'on the verge' of being matrimonial in nature should abstain from exercising jurisdiction so long as there is no obstacle to their full and fair determination in state courts." *Am. Airlines, Inc. v. Block,* 905 F.2d 12, 14 (2d Cir.1990).

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.    5

Cruz v. New York, Not Reported in Fed. Supp. (2017)
2017 WL 6021838

Case 6:24-cv-01367-AMN-ML    Document 8    Filed 04/07/25    Page 138 of 186

2017 WL 6021838
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kiplind L. CRUZ, Plaintiff,

v.

The State of NEW YORK, et al., Defendants.

5:17-CV-00510 (BKS/TWD)
|
Signed 10/26/2017
|
Filed 10/27/2017

**Attorneys and Law Firms**

KIPLIND L. CRUZ, 5825 Townline Road, Cincinnatus, NY 13040, pro se.

**ORDER AND REPORT-RECOMMENDATION**

Thérèse Wiley Dancks, United States Magistrate Judge

**\*1** This matter has been referred to the undersigned by the Hon. Brenda K. Sannes, U.S. District Judge, for a report and recommendation on the initial review of *pro se* Petitioner/Plaintiff (hereinafter "Plaintiff") Kipland L. Cruz's motions to amend his complaint and for a temporary restraining order ("TRO") and preliminary injunction. (Dkt. Nos. 8, 9 and 11.) The Court also has before it the initial review under 28 U.S.C. § 1915(e) of Plaintiff's original filings (Dkt. Nos. 1, 1-1, and 1-2.) For the reasons explained herein, the Court recommends that (1) none of the state court proceedings Plaintiff has described in his removal notice and exhibits be deemed to have been properly removed to, or to be subject to removal to, federal district court [1]; (2) his petition for a writ of habeas corpus be dismissed with prejudice on initial review; (3) his motion to amend be denied; (4) civil rights complaint be dismissed on initial review; and (5) his motion for a temporary restraining order and preliminary injunction be denied as moot or, in the alternative, on the merits.

## I. BACKGROUND

### A. Plaintiff's Original Filings

On May 9, 2017, Plaintiff Kipland L. Cruz, individually and on behalf of his two minor children, submitted for filing by the Clerk a notice of removal to federal court, pursuant to 28 U.S.C. § 1443, and with it a habeas corpus petition under 18 U.S.C. §§ 242, 1512(b)(3), and 1513(b). [2] The various state court proceedings identified by Plaintiff, and out of which his habeas corpus petition arises, involve unpaid child support, child custody, and visitation disputes between Plaintiff and his estranged wife Nicole A. Cruz. (*See generally* Dkt. Nos. 1; 1-1 at 1-3. [3] )

Plaintiff also filed a civil rights complaint brought under 42 U.S.C. §§ 1983, 1985, and 1986. (Dkt. Nos. 1 and 1-2.) Plaintiff named nearly seventy defendants whom he presumably believes to have been involved in matters related, either directly or indirectly, to the subject matter of the state court proceedings, reports made to the New York State Central Register of Child Abuse and Maltreatment ("SCR"), or his former employment. (*See generally* Dkt. No. 1-2.) The complaint contains factual allegations similar to those in Plaintiff's removal/habeas corpus papers. [4]

Cruz v. New York, Not Reported in Fed. Supp. (2017)

2017 WL 6021838

Case 6:24-cv-01367-AMN-ML     Document 8     Filed 04/07/25     Page 139 of 186

**\*2**  In addition to his federal civil rights claims under 42 U.S.C. §§ 1983, 1985, and 1986, Plaintiff has asserted claims for unfair employment practices and discrimination; claims under the Fair Housing Act, 42 U.S.C. §§ 3602-3631; the Violent Crime Control and Law Enforcement Act, 42 U.S.C. § 14141; and two criminal statutes, 18 U.S.C. §§ 245 (federally protected activities), § 2258 (sexual exploitation of children), and 18 U.S.C. § 3509 (child victims and witnesses rights); and Child Abuse Prevention and Treatment Act ("CAPTA"), 42 U.S.C. §§ 101-105, *et seq.* [5]  (Dkt. No. 1-2 at 16.) Plaintiff's complaint seeks money damages, along with declaratory and injunctive relief. *Id.* at 29-31.

### B. Stay Order

In May of this year, the Clerk sent Plaintiff's notice of removal with habeas petition and civil rights complaint to the Court for initial review pursuant to 28 U.S.C. § 1915(e). The Court, noting that Plaintiff, who is not an attorney, was impermissibly seeking to represent both his own and the interests of his two minor children in the case, issued an Order finding that initial review was premature and staying the action for ninety days in order to give Plaintiff time to retain counsel to represent the interests of his children. [6]  (Dkt. No. 6 at 6.) The Order advised Plaintiff if the Court did not receive notice by September 11, 2017, that Plaintiff had retained counsel with regard to all claims being pursued on behalf of his minor children, moved for appointment of counsel, or filed an amended notice of removal and amended complaint deleting all claims asserted on behalf of his minor children, it would issue a Report-Recommendation to the assigned District Court judge recommending dismissal of Plaintiff's notice of removal, habeas corpus petition, and civil rights complaint without prejudice. *Id.*

### C. Plaintiff's Failure to Comply with the Court's Stay Order

Plaintiff has failed to comply with the Court's Order regarding counsel for his minor children. (Dkt. No. 6.) He has, however, filed motions to amend and for a TRO and preliminary injunction in which he has omitted his minor children from the caption and has identified himself as "Man-prosecutor." (Dkt. Nos. 8-9, 11.) Therefore, the Court concludes that Plaintiff, whom the Court notes has requested that he be called by his natural name, Beau Jangles, [7]  intends to proceed in federal district court solely on his own behalf. As such, the Court will conduct its initial review of Plaintiff's notice of removal, habeas corpus petition, and civil rights complaint under 28 U.S.C. § 1915(e), in conjunction with its review of Plaintiff's motions to amend and for a TRO and preliminary injunction, with the understanding that Plaintiff is appearing solely on his own behalf. It is the express intention of the Court that the recommendations made by it with respect to claims that may relate in some fashion to his minor children have no affect whatsoever on the minor children's right to have those claims properly pursued by them, or by counsel on their behalf, in any other proceeding.

## II. LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

**\*3**  28 U.S.C. § 1915(e) directs that when a plaintiff is allowed to proceed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must look to see whether the complaint lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). "An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (citations and internal quotation marks omitted). Although extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983), the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *See, e.g., Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991) (per curiam) (holding that a district court has the power to dismiss a complaint *sua sponte* if the complaint is frivolous).

Cruz v. New York, Not Reported in Fed. Supp. (2017)

2017 WL 6021838

To survive dismissal for failure to state a claim, a complaint must plead enough facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-harmed-me accusation." *Id.* In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir.), *cert. denied*, 513 U.S. 836, 115 S.Ct. 117, 130 L.Ed.2d 63 (1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Where a plaintiff proceeds *pro se*, the pleadings must be read liberally and construed to raise the strongest arguments they suggest. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citation omitted). A *pro se* complaint should not be dismissed "without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir 1999) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

### III. NOTICE OF REMOVAL AND HABEAS CORPUS PETITION

**\*4** On May 9, 2017, Plaintiff submitted to the Clerk a petition which he entitled:

> 5 Day Notice: Petition for Writ of Habeas Corpus in United States District Court pursuant of 18 USC 1512(b)(3) & 18 U.S.C. § 1513(b)[;] 18 USC § 242[;] Defendants Federal Removal from State of New York, County of Cortland, Chenango, Onondaga, New York State[;] Cortland County Combined Court to US District Court pursuant to 28 U.S.C. § 1443[;] State of New York, County Court Case # 9788 Docket #v-01361/1362 16/16A file # 9788 docket #v01361-16/17B file #9788 docket#v-1361/1362 16/17F file #9788 docket # v-1361/1362 16/17F and any other unlawfully ordered hearings of cases Federal Removal pursuant of 28 U.S.C. § 1443 child abuse cover-up U.S. Code § 241 For witness and victim Retaliation, intimidation, public corruption, judicial corruption and misconduct, intrusion, unlawful search and seizure, harassment, obstruction of Justice, Unlawful Activities, slander, perjury, false Statements, violations and denial of movants Constitutional I, V, VI & XIV Amendment Rights's, privileges, and immunities, Civil Human Universal, International & Fundamental

(Dkt. No. 1 at 1-2.)

Plaintiff has named as Respondents in his removal notice and petition for a writ of habeas corpus the State of New York, Cortland County, Chenango County, Onondaga County, Hon. William Ames, Hon. Julie Campbell, Chenango and Cortland County Departments of Social Services, CPS/DSS, Court appointed Law Guardian Ad Litem Natalie Miner, Nicole Cruz, and S. Francis Williams, attorney for Nicole Cruz. (Dkt. No. 1 at 1.) Plaintiff has identified his grounds for removal to federal district court under 28 U.S.C. § 1443 and for a writ of habeas corpus as: (1) deprivation of rights under color of law in violation of criminal statute 18 USC § 242; (2) witness and victim retaliation, intimidation, public corruption, judicial corruption and misconduct, intrusion, unlawful search and seizure, harassment, obstruction of justice, unlawful activities, slander, perjury, false statements in violation of criminal statutes 18 U.S.C. §§ 1512(b)(3) and 1513(b), the United States Constitution Amendments I, V, VI and XIV, and civil human, universal, international, and fundamental rights. *Id.* at 4.

Case 6:24-cv-01367-AMN-ML    Document 8    Filed 04/07/25    Page 141 of 186

Cruz v. New York, Not Reported in Fed. Supp. (2017)

2017 WL 6021838

**A. Plaintiff's Affidavit in Support of Removal and his Habeas Corpus Petition**

In an affidavit submitted by Plaintiff in support of his notice of removal and petition for a writ of habeas corpus, he describes a child support proceeding in Chenango County Family Court in which he planned to place a lien and judgment on real property of his estranged wife, Nicole Cruz, that had a pending sale during the spring and summer of 2016. (Dkt. Nos. 1 at 5-7; 1-1 at 1-4; 8-5 at 2.) Nicole Cruz owed Plaintiff back child support in the amount of $7,813.97. *Id.* In response, Nicole Cruz filed what Plaintiff claims to have been a fraudulent contempt proceeding against him claiming violation of her visitation rights with the couple's minor children. *(*Dkt. No. 1-1 at 5-8.)

According to Plaintiff, a hearing was held on August 10, 2016, behind closed doors with the Judge and counsel, after which his attorney came out and told him that the Judge had made him an offer that he should accept. (Dkt. No. 1 at 11.)

 **\*5** Plaintiff's employment with the New York State Education Department was terminated on September 19, 2016, and Plaintiff claims the termination was unlawful. (Dkt. No. 1 at 32.) Thereafter, the superintendent and administration at Unadilla Central School began to make false allegations against Plaintiff, his home was broken into and recordings of court hearings were stolen, and he was forced to move to Cayuga County. *Id.* at 33.

On October 7, 2016, Plaintiff was advised by his counsel that his former wife had no intention of continuing a relationship with his minor children, and the Judge was forcing the children to go with abusers. *Id.* at 34. On December 21, 2016, Plaintiff appeared for a custody hearing in Cortland County Family Court, planning to submit documentary evidence that would result in dismissal of the case. *Id.* at 37. Instead, the Judge denied Plaintiff's right to be heard and appointed a guardian ad litem for the minor children. (Dkt. No. 1 at 37.)

On January 3, 2017, Plaintiff realized everything was a conspiracy in which his counsel were members, and his minor children were being targeted by Chenango, Cortland, and Onondaga County, and the State of New York. *Id.* at 38. The same day he emailed his attorney, demanding that she recuse herself and informing her of his findings of fraud and malpractice. *Id.* at 39; Dkt. No. 1-1 at 24. In another email to his attorney the same day, Plaintiff stated that his children had been abused for five years. (Dkt. No. 1-1 at 24.)

Plaintiff received a January 9, 2017, letter from the Cortland County Department of Social Services informing him that a suspected child abuse or maltreatment report against him had been received by the SCR. (Dkt. Nos. 1 at 39; 1-1 at 27-28.) From that point forward, Plaintiff has constantly received summonses for preliminary conferences held by a clerk or county attorney in the Judge's chambers, with a woman named J. Kuhn impersonating Nicole Cruz at the hearings. *Id.* at 40.

On March 30, 2017, Plaintiff tried to serve a federal removal notice on Cortland County Family Court but was told he could not serve it because he had no case in the court. *Id.* at 41. On April 5, 2017, the Cortland County Family Court Judge dismissed all petitions. *Id.* Plaintiff claims retaliation against him and his children by the Cortland County Sheriff, Cortland County DSS/ CPS, and the Cortland County Family Court since he served removal papers. *Id.* at 43. According to Plaintiff, they have ignored his removal notice. *Id.*

**B. Removal**

Plaintiff seeks to remove Cortland County Family Court proceedings involving child support, custody, and visitation, which Plaintiff has stated are no longer be pending (*see* Dkt. No. 1 at 41), to federal district court pursuant to 28 U.S.C. § 1443, which provides that:

Any of the following civil actions or criminal prosecutions, commenced in a State court may be removed by the defendant to the district court of the United States for the district and division embracing the place wherein it is pending:

Case 6:24-cv-01367-AMN-ML   Document 8   Filed 04/07/25   Page 142 of 186

Cruz v. New York, Not Reported in Fed. Supp. (2017)

2017 WL 6021838

**(1)** Against any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof;

**(2)** For any act under color of authority derived from any law providing for equal rights, or for refusing to do any act on the ground that it would be inconsistent with such law.

**\*6**  28 U.S.C. § 1443.

28 U.S.C. § 1446(a) provides that "a defendant ... shall file in the district court ... a notice of removal containing a short and plain statement of the grounds for removal, with a copy of all process, pleadings, and orders served upon such defendant." 28 U.S.C. § 1446. Plaintiff's notice of removal identifies two state court proceedings his petition for child support and Nicole Cruz's petition to hold Plaintiff in contempt for violating a visitation order. (Dkt. Nos. 1 at 5-6; 1-1 at 1-8.) Plaintiff has also submitted documentation regarding a custody/visitation proceeding commenced by Nicole Cruz in Cortland County Family Court, FF No. 9788, Dkt. No. V-01361/132-16/16A, for enforcement of a preliminary conference agreement reached on August 10, 2016, in connection with the proceeding referenced in the notice of removal. (Dkt. No. 1-1 at 35-42.)

### 1. No Action or Proceeding is Pending in State Court

Under the clear language of § 1443, a state court action must be pending in order for the provision to apply. *See, e.g., Nuccio v. Heyd*, 299 F.Supp. 939, 940 (E.D. La. 1969) (there must exist either a civil action or criminal prosecution to invoke federal jurisdiction under § 1443; otherwise there is nothing to remove). Plaintiff has stated in his affidavit that the Cortland County Family Court Judge dismissed all state court petitions on April 5, 2017. (Dkt. No. 1 at 40.) Documentation submitted by Plaintiff shows that Nicole Cruz's petition in FF No. 9788 was dismissed by the Family Court Judge on April 5, 2017. (Dkt. No. 1-1 at 36-37.) Therefore, by Plaintiff's own admission, there is no federal removal jurisdiction under § 1443.

Furthermore, even if the child support proceeding against Nicole Cruz were still pending, as petitioner in that proceeding, Plaintiff lacks authority to remove the proceeding to federal district court under the applicable federal removal statutes. *See* 28 U.S.C. §§ 1441(a), (b); 1443(a); *Hamilton v. Aetna Life and Cas. Co.*, 5 F.3d 642, 643 (2d Cir. 1993) (per curiam) (no section in the removal statutes provides for removal by a plaintiff).

### 2. The Court is Without Removal Jurisdiction under 28 U.S.C. § 1443

Even if Nicole Cruz's visitation contempt and custody/visitation proceedings were presently pending in state court, Plaintiff has failed to show the state court proceedings are subject to removal under § 1443. [8]  In *Georgia v. Rachel*, 384 U.S. 780, 792, 86 S.Ct. 1783, 16 L.Ed.2d 925 (1966), the Supreme Court concluded that the phrase " 'any law providing for ... equal civil rights' must be construed to mean any law providing the specific civil rights stated in terms of racial equality." *See also Chestnut v. People of State, N.Y.*, 370 F.2d 1, 3-4 (2d Cir. 1966) (only due process and equal protection claims which specifically involve racial equality can support a valid claim for removal under § 1443(1)).

**\*7**  Plaintiff has not alleged the violation of his civil rights based on race as a ground for removal under § 1443, nor has he identified himself as a member of a racial minority. (*See generally* Dkt No. 1.) Furthermore, Plaintiff is identified in SCR records as "White." (Dkt. No. 8-10 at 7.) Therefore, the Court finds Plaintiff has failed to make a plausible showing that removal is available under § 1443(1).

Removal is likewise unavailable under § 1443(2). In *People of State of N.Y. v. Galamison*, 342 F.2d 255, 264 (2d Cir. 1965), the Second Circuit described the phrase "color of authority" in § 1443(2) as "primarily aimed" at "acts of officers or quasi-

Case 6:24-cv-01367-AMN-ML    Document 8    Filed 04/07/25    Page 143 of 186

Cruz v. New York, Not Reported in Fed. Supp. (2017)

2017 WL 6021838

officers," and concluded it was necessary that the party seeking removal not be "relying on a general constitutional guarantee but on a special statute or order telling him to act." *Id.* The Court determined that "[a] private person claiming the benefit of § 1443(2) can stand no better; he must point to some law that directs or encourages him to act in a certain manner, not merely to a generalized constitutional provision that will give him a defense or to an equally general statute that may impose civil or criminal liability on persons interfering with him." *Id.* Plaintiff has failed to point to any law directing or encouraging him to act in a certain manner with regard to his estranged wife's visitation contempt or custody/visitation proceedings which he seeks to remove to federal court.

The "refusal to act clause" of § 1443(2) is available "to state officers, and those acting with or for them including local and municipal officers." [9] *White v. Wellington*, 627 F.2d 582, 585 (2d Cir. 1980); *see also Wells Fargo Bank, N.A. v. Stephens*, No. 3:14-cv-1982 (VLB), 2015 WL 6551782, at *3 (D. Conn. Oct. 29, 2015) [10] (citing *White*, 627 F.2d at 585). Plaintiff has not alleged facts plausibly showing that he is a state officer or that he was or is acting with or for state actors in connection with the proceedings on which he seeks removal.

### 3. The Domestic Relations Exception Would Divest the Court of Subject Matter Jurisdiction in Any Event

In *Ex Parte Burrus*, 136 U.S. 586, 593-94, 10 S.Ct. 850, 34 L.Ed. 500 (1890), the Supreme Court held that "the whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the State and not to the laws of the United States." A century later, in *Ankenbrandt v. Richards*, 504 U.S. 689, 703, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992), the Supreme Court reaffirmed what had become known as "the domestic relations exception" to federal jurisdiction "divests the federal courts of power to issue divorce, alimony, and child custody decrees."

Claims involving child custody, support, and visitation brought in federal district court in this Circuit have regularly been dismissed for lack of subject matter jurisdiction based on the domestic relations exception to federal jurisdiction. *See, e.g., Sobel v. Prudenti*, 25 F.Supp.3d 340 (E.D.N.Y. 2014) (federal district court without jurisdiction to hear child support claims); *Neustein v. Orbach*, 732 F.Supp. 333, 339 (E.D.N.Y. 1990) (action barred by domestic relations exception if, "in resolving the issues presented, the federal court becomes embroiled in factual disputes concerning custody and visitation ..."). Courts have relied on the domestic relations exception to dismiss complaints and petitions removed to federal court under 28 U.S.C. § 1443 for lack of subject matter jurisdiction on initial review under 28 U.S.C. § 1915(e). *See, e.g., Steele v. Steele*, No. 1:12-cv-439 (KLL), 2012 WL 3061028 (S.D. Ohio July 3, 2012) (dismissal on initial review on removal dealing with dispute over child support and custody in state court domestic relations proceeding). It is clear that even if there were a pending state court proceeding subject to removal jurisdiction under 28 U.S.C. § 1443, the district court would be without subject matter over claims related to custody, child support, and visitation under the domestic relations exception. [11]

**\*8** Based upon the foregoing, the Court recommends that none of the state court proceedings Plaintiff has described in his removal notice or with respect to which he has submitted documentation be deemed to have been properly removed to, or to be subject to removal to federal district court.

### C. Habeas Corpus Petition

Plaintiff has filed his writ for a petition for habeas corpus under 18 U.S.C. §§ 242, 1512 (b)(3), and 1513(b). All three are criminal statutes. Section 242 is for criminal deprivation of rights under color of law. Section 1512(b)(3) is for hindering, delaying, or preventing communication to a law enforcement officer or federal judge relating to the possible commission of a federal offense or violation of conditions of probation, supervised release, parole, or release pending judicial proceedings. Section 1513(b) is for "knowingly engag[ing] in any conduct and thereby caus[ing] bodily injury to another person or damages to the tangible property of another person, or threaten[ing] to do so, with the intent to retaliate against a person for (1) the attendance of a witness or party at an official proceeding, or any testimony given or any record, document, or other object produced by a witness in any official proceeding; or (2) any information relating to the commission or possible commission of a Federal offense or

Case 6:24-cv-01367-AMN-ML    Document 8    Filed 04/07/25    Page 144 of 186

Cruz v. New York, Not Reported in Fed. Supp. (2017)
2017 WL 6021838

a violation of conditions of probation, supervised release, parole, or release pending judicial proceedings given by a person to a law enforcement officer." 18 U.S.C. § 1513.

None of the three criminal statutes provides a private right of action. *See Weinstein v. City of New York*, No. 13 Civ. 06301 (LGS), 2014 WL 2991000, at *4 (S.D.N.Y. April 8, 2014) (collecting cases). Nor has the Court found any legal support for seeking a writ of habeas corpus under any of the criminal statutes. Furthermore, the Supreme Court long ago held that a habeas petition under 28 U.S.C. § 2254 could not be used to collaterally attack a state decree awarding child custody. *Lehman v. Lycoming Co. Children's Services Agency*, 458 U.S. 502, 515-16, 102 S.Ct. 3231, 73 L.Ed.2d 928 (1982); *see also Woolsey on behalf of R.M.R. v. Mitzel*, No. 1:17-CV-0074 (TJM/DEP), 2017 WL 2241527, at *2 (N.D.N.Y. Feb. 27, 2017) ("It is well established that a petitioner for habeas relief pursuant to section 2254 is not an appropriate vehicle for challenging a child custody determination.") (citing *Davis v. Baldwin*, 594 Fed.Appx. 49, 50 (2d Cir. 2015)).

The Court, therefore, recommends that Plaintiff's petition for a writ of habeas corpus be dismissed with prejudice.


## IV. PLAINTIFF'S CIVIL RIGHTS COMPLAINT

Plaintiff has filed a civil rights complaint under 42 U.S.C. §§ 1983, 1985, and 1986 with his notice of removal and habeas corpus petition. (Dkt. No. 1-2.) As noted above, the Court's initial review of Plaintiff's complaint presumes he is proceeding solely on his own behalf.


### A. Named Defendants in Plaintiff's Complaint, Including Parties added in Joinder and as Necessary Parties

Plaintiff's complaint names nearly seventy Defendants including those named in the caption and those identified as "required parties in joinder." (Dkt. No. 1-2 at 1-5.) Party Defendants named in the caption of Plaintiff's complaint include:

> Chenango, Cortland, Onondaga Counties, the State of New York & the following additional defendants in joinder: Hon. Kevin M. Dowd, Chenango County Supreme Court; Hon. Steven M. Dunshee, Chenango County Support Magistrate; Joseph McBride, District Attorney; Steven M. Dunshee, Chenango County First Assistant District Attorney; Chenango County Public Defender; Sabrina Dier Public Defenders Office; James Taylor, Esq.; James H. Fertig, Esq., Court appointed Guardian ad Litem; Chenango County Sheriff's Office; Ernest R. Cutting, Sheriff; Joe Warren owner of Lakeside Rentals—landlord; Ben Bergman part owner of Jackson Bergman LLP; Alyssa Cogden, Jackson Bergman LLP; Hon. William Ames; Kristen Monroe, Commissioner Cortland County DDS; David K. Knickerbocker, Director of Administrative Services, Cortland County DDS; Cortland County CPS; Melissa Archer, CPS; Colin [CPS], Supervisor Cortland County Child Advocacy Center; Jane Doe, Cortland County; 2 Cortland County Officer John Does; S. Francis Williams, Esq.; Cincinnatus CSD—Board of Education; Thomas Durkot, Elementary Principal; Cathy Aitchison LCSW, Cincinnatus CSD; Carnitra White, County Director of Human Resources at Anne Arundel CSCU, City of Annapolis, State of Maryland; Nicole Cruz, Broward County, Davie, State of Florida.

**\*9**  (Dkt. No. 1-2 at 1-2.) The following Defendants have been joined by Plaintiff as necessary defendants:

> Brian J. Doliver, Second Ward Alderman; Detective John Fern; Sheila J. Poole, Acting Commissioner NYS Central Register OFCS; Sarah Simon, Regional Director of Child Welfare Services; Betty Osborne, Commissioner, Cathy Lavoli, Supervisor, Beth Beers, and CPS Patricia Luca, Chenango County DSS; Sarah Fitzpatrick, Esq., Chenango County DSS; Irene A. Flores, Esq.; DCMOBOCES Board of

Cruz v. New York, Not Reported in Fed. Supp. (2017)

2017 WL 6021838

Case 6:24-cv-01367-AMN-ML    Document 8    Filed 04/07/25    Page 145 of 186

Education Superintendent Doreen Rowe, Deputy Superintendent Kim Corcoran, District School Lunch Director, Connie Bambino, Asst. District School Lunch Director, Pam Rowe, School Lunch Cook; City of Norwich Fire Department, Terry Kuhn; Johanna Kuhn, City of Norwich Police Department; Chief Joseph Angelino; Sergeant John Doe; Norwich Central School District Board of Education President Joseph McBride, Vice-President Tom Sutton, and member Howie Sullivan; Gerrard O'Sullivan Superintendent; Karrie Stainbauer Director of Special Education; Nicole A. Cruz, Special Education Teacher; Christine Bienick, NYSUT President, Unadilla Valley Teacher Assoc.; Dr. Alfred Barnes; Unadilla Valley Central School District Board of Education President Kristen Romavicz, Vice-President Mark Davis, Vicky Gregory, Kim Murray, and Robert Mackey; Superintendent Mike Brown; Business Official Frank Johnson; Building Principal Chris Harper; Elementary Principal Sherri Houck; Elementary School Counselor; Chris Wilkinson, Labor Negotiations; and Mike Lyn, Regional President.

(Dkt. No. 1-2 at 3-5.)

Another group of defendants added in joinder include Cortland County Sheriff's Department; Hon. Julie Campbell, Cortland County Family Court; three Jane Doe Cortland County Family Court Clerks; and four John Doe officers. *Id.* at 6.

**B. Factual Allegations in the Complaint**

The factual allegations in Plaintiff's complaint and his claims for relief arise in substantial part out of the child support, custody, and visitation disputes between the Plaintiff and Nicole Cruz. (*See generally* Dkt. No. 1-2.) Reference is also made to both Nicole Cruz and the Plaintiff having been made the subject of reports of child abuse or maltreatment received by the SCR. *Id.* at 12; Dkt. No. 1-1 at 27-28. In addition, there are references in the complaint to the transfer and subsequent termination of Plaintiff's employment. (Dkt. No. 1-2 at 13-14.)

Plaintiff has made specific factual allegations against a mere fraction of the Defendants named by him in his original complaint. They include the following.

1. Defendants Nicole Cruz, Terry Kuhn, and Johanna Kuhn

Plaintiff alleges that beginning in June 2012, he and estranged wife Nicole were in the process of starting a business in the City of Norwich and were approved for loans from the City and Chamber of Commerce. (Dkt. No. 1-2 at 10-11.) Plaintiff claims that Terry Kuhn, acting out of power and jealousy, along with his wife Johanna Kuhn, forced Nicole to force Plaintiff from his home and to default on the loans and a business Plaintiff and Nicole were buying. *Id.* at 11. A short time later, Terry Kuhn, through the abuse of his power as a local firefighter, conspired with his friends at the Chenango County Sheriff's office and buddy Frank Revoir and conjured up baseless false statements about Plaintiff. *Id.* at 11-12. Terry Kuhn also allegedly has the Chenango County Sheriff's Department and the court in his pocket. *Id.* at 19.

**\*10** The alleged conspiracy caused a temporary order for protection to be issued against Plaintiff, who received no due process, not even a hearing. *Id.* at 12. Plaintiff was required to pick his children up at the police department for three years while one of the Kuhns was president of the Union, and he was harassed and discriminated against the entire time. *Id.* From December 2012 to the present, Nicole Cruz had three indicated reports of child abuse and two indicated reports for child maltreatment. *Id.* Copies were given to Plaintiff by Defendant Sheila Poole, Acting Commissioner of the New York State Office of Children and Family Services ("OCFS"). *Id.*

Cruz v. New York, Not Reported in Fed. Supp. (2017)
Case 6:24-cv-01367-AMN-ML    Document 8    Filed 04/07/25    Page 146 of 186
2017 WL 6021838

Plaintiff alleges that Nicole Cruz fled the State in July 2016 in the middle of a child abuse trial, owing Plaintiff over $8,000 in back child support since October 2015. *Id.* at 13. On August of 2016, Plaintiff learned that Nicole had moved to North Carolina. (Dkt. No. 1-2 at 13.) Plaintiff has also alleged:

18. Complainant(s) have been subjected to and have witnessed as well as fell subject to multiple crimes and actions committed by the defendants, including crimes committed and against minor children under the ages of 5 years old. The Complainants minor children were victims of repeated sexual abuse, mental and emotional abuse, and child maltreatment by N. Cruz an elementary Special Education teacher, abused the oldest Minor Child while on duty at work in the School, Johanna Kuhn, Terry Kuhn City of Norwich Paid Fireman, and from (sic) I been told the President of the Union for the Fireman and Police officers, see NYS Registry case # the defendants have committed multiple federal felonies and misdemeanor crimes and actions committed against the complainant.

19. The complainant alleges that the defendants Nicole A. Cruz, Johanna Kuhn and Terry Kuhn, recently have committed Multiple federal crimes including HUD Fraud, mail fraud, recent S. Francis Williams Esq., and Johanna posing as N. Cruz, (I have documentary evidence and eye witnesses to this crime False Impersonation in Cortland County Family Court), falsifying government documents, perjury libel in writing on court documents, Multiple at least 40 counts of False information and Hoaxes placed against the complainant, child abuse, child exploitation, public corruption, Unlawful transfer and Unlawful termination of the complainants tenure position with the NYSED, and conspiracy with 5 counties, 4 in the State of NY and 1 in the State of Maryland.

(Dkt. No. 1-2 at 14-16.)

Plaintiff further alleged that "Nicole Cruz appeared before Chenango County Court and Hon. Kevin M. Dowd in violation of a federal Felony owing the complainants over $8,000 in back non-paid child support, and also had fled the state in the middle of a child abuse custody trial, this abuse was repeated sexual abuse ..." *Id.* at 20.

### 2. Chenango County Sheriff's Department

Plaintiff alleges that members of the Chenango County Sheriff's Department conspired with Terry Kuhn to conjure up baseless false statements against Plaintiff. (Dkt. No. 1-2 at 11.) Plaintiff also alleges that Terry Kuhn has the Chenango County Sheriff's Department in his pocket. *Id.* at 19.

### 3. Hon. Kevin M. Dowd, New York State Supreme Court Justice, Chenango County

Plaintiff alleges that after purposefully postponing a custody trial between Plaintiff and Nicole Cruz for over a year, during which time Nicole fled the State, Judge Dowd held a "surprise" initial appearance "that apparently overruled the complaints (sic) due process mandated by the congressional act of CAPTA Act of 2010 and the Adam Walsh Act 2006." (Dkt. No. 1-2 at 13.) Plaintiff claims that he was deprived of the opportunity to be heard and call witnesses, and that Judge Dowd, who met with counsel behind closed doors for almost an hour, then told Plaintiff that Nicole had moved and explained an offer being made to Plaintiff. *Id.*

**\*11** Plaintiff also alleges that Judge Dowd had his brother-in-law and his assistant pay a staff member at the Public Defender's Office to impersonate a child care provider at a non-profit childcare center paid for by Plaintiff without financial assistance from his estranged wife. *Id.* at 19. In addition, Plaintiff contends that Judge Dowd's order, received by Plaintiff via email fifty-nine days after the hearing, was completely illegal and unconstitutional, and that Judge Dowd is in contempt and in violation of an act of Congress as well as international law and treaties. *Id.* at 20. Plaintiff claims that Judge Dowd's order is null and void under the Supremacy Clause, Cannon Law, and the Fourteenth Amendment, and that Judge Dowd became a witness and denied

Cruz v. New York, Not Reported in Fed. Supp. (2017)
Case 6:24-cv-01367-AMN-ML     Document 8     Filed 04/07/25     Page 147 of 186
2017 WL 6021838

Plaintiff his rights under the First, Second, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and Fourteenth Amendments continuously, and purposely, and engaged in a completely premeditated action with malice. (Dkt. No. 1-2 at 21.)

#### 4. Hon. William Ames, Cortland County Family Court

In the affidavit in support of his notice of removal and habeas corpus petition, Plaintiff stated that certain petitions had been transferred to Cortland County Family Court, and Plaintiff reported for a hearing before Judge Ames on December 21, 2016. (Dkt. No. 1 at 37.) The sole allegation regarding Judge Ames in Plaintiff's civil rights complaint is that:

> The complainant appeared before the Hon. Ames at Cortland County Family Court locked and loaded with enough documentation to tear the Court house down, the complainant aske (sic) Honorary W. Ames to be herd (sic) at this very hearing, my 1st amendment right as a US Citizen, not to mention Son of the Revolution. The Complainant explained clearly and sternly that he had the documentation to have the petition dismissed on the ground of documentary defense, not to mention the defendant N. Cruz petition also lacks validity nor executes any claim. Hon. W. Ames denied the complainants right to be heard as well as right as a pro se litigant, Hon. Ames is also guilty of misappropriate of Federal funds by hiring a Law Guardian for an act of fraud and conspiracy.

(Dkt. No. 1-2 at 20.)

#### 5. Attorney Defendants Williams, Taylor, and Fertig

Attorney S. Francis Williams was Nicole Cruz's counsel in the Family Court proceedings involving child support and visitation issues. (*See* Dkt. No. 1 at 38.) In his civil rights complaint, Plaintiff appears to allege that Williams appeared in Cortland County Family Court with Johanna Kuhn posing as Nicole Cruz. (Dkt. No. 1-2 at 15.)

Attorney James Taylor, Esq. was Plaintiff's counsel prior to April 2016. (Dkt. No. 1 at 40.) In his civil rights complaint, Plaintiff alleges that Judge Dowd had his brother-in-law, the Chenango County Public Defender, and his assistant, an associate of Taylor, pay a staff member at the Public Defender's Office "to impersonate a child care provider at a non-profit childcare center" paid for by Plaintiff. (Dkt. No. 1-2 at 19.)

Attorney James Fertig was appointed as Guardian ad Litem for Plaintiff's children in connection with the child support and visitation proceedings. (Dkt. Nos. 1 at 6; 1-2 at 1.) In his civil rights complaint, Plaintiff alleges that Fertig, as law guardian, engaged in misconduct and malpractice by: (1) violating the Child Abuse Prevention and Treatment Act ("CAPTA"), 42 U.S.C. §§ 5101-5106, thereby denying Plaintiff due process and several other privileges, rights, services and protections under the Act; and (2) violating 18 U.S.C. § 3509, and the Sex Offender Registration and Notification Act ("SORNA"), 42 U.S.C. §§ 16911 *et seq.*, transferred to 34 U.S.C. § 20911 (eff. September 1, 2017), thereby denying Plaintiff the services and privileges he deserved. (Dkt. No. 1-2 at 21-22.)

#### 6. Sheila Poole, Acting Commissioner of OCFS

WESTLAW   © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Cruz v. New York, Not Reported in Fed. Supp. (2017)

Case 6:24-cv-01367-AMN-ML    Document 8    Filed 04/07/25    Page 148 of 186

2017 WL 6021838

Plaintiff has alleged that Sheila Poole, the Acting Commissioner of the OCFS (Dkt. No. 1-2 at 4), released three indicated reports of child abuse and two indicated reports of child maltreatment, including sealed reports, from December 2012 to the present to Plaintiff. *Id.* at 12.

### 7. Chenango County Department of Social Services

**\*12** It is not clear from Plaintiff's complaint that he named the Chenango County Department of Social Services ("Chenango County DSS") as a Defendant. He has, however, named Chenango County. (Dkt. No. 1-2 at 4.)

Plaintiff alleges that the Chenango County DSS and CPS (1) violated CAPTA, thereby denying Plaintiff due process and several other privileges, rights, services and protections under the Act by failing to prosecute defendants; and (2) violated 18 U.S.C. § 3509 and 34 U.S.C. § 20911, *et seq.*, formerly 42 U.S.C. §§ 16911 *et seq.*, thereby denying Plaintiff the protection, safety, services, and privileges he deserved by failing to prosecute defendants. (Dkt. No. 1-2 at 21-22.)

### 8. Cortland County Department of Social Services, Commissioner Kristen Monroe, and Director of Administrative Services David Knickerbocker

It is also not clear from Plaintiff's complaint that he named the Cortland County Department of Social Services ("Cortland County DSS") as a Defendant. He did, however, name Kristen Monroe, Commissioner; David Knickerbocker, Director of Administrative Services; and employees in CPS. (Dkt. No. 1-2 at 2, 5.) Plaintiff alleges that Commissioner Monroe and Knickerbocker tried to trick and then force Plaintiff to rent Monroe's parents' house and stole $1000 from Plaintiff's grandmother, who last he knew was left in a home with no shower or means to take one. (Dkt. No. 1-2 at 2, 19.)

Plaintiff also alleges that the Cortland County DSS and CPS, which is within the Department: (1) violated CAPTA, thereby denying Plaintiff due process and several other privileges, rights, services and protections under the Act by failing to prosecute defendants; and (2) violated 18 U.S.C. § 3509 and 34 U.S.C. § 20911, *et seq.*, formerly cited at 42 U.S.C. §§ 16911 *et seq.*, thereby denying Plaintiff the protection, safety, services and privileges he deserved by failing to prosecute defendants. *Id.* at 21-22.

### 9. DCMO BOCES and Unadilla Valley Central School District

Plaintiff alleges that he was illegally transferred from DCMO BOCES to Unadilla Valley Central School District ("Unadilla"). Plaintiff's employment at Unadilla was terminated effective October 3, 2016. (Dkt. No. 1-1 at 15.) Plaintiff alleges that the termination was unlawful, and that he was denied tenure and rights under the Taylor Law, and section 75. (Dkt. No. 1-2 at 13.)

Plaintiff's complaint includes no factual allegations against named Defendants Mike Lyn or Lynch, Unadilla Principal Chris Harper, Superintendent Robert Mackey, Business Officer Mike Brown, Food Service Director Kim Corcoran, and Cook Manager Pamela Rowe. In his affidavit in support of his notice of removal and petition for habeas corpus, Plaintiff states that when he was illegally transferred to Unadilla, he was stripped of his benefits and forced to fill two full time management positions at Unadilla while he had custody of his children. (Dkt. No. 1 at 33.) Plaintiff also claims that following his termination, Superintendent Robert Mackey, named as a Defendant, and unidentified members of the administration at Unadilla, began to make false allegations against Plaintiff. *Id.*

Furthermore, in his motion papers on his motion for a TRO and preliminary injunction, Plaintiff claims that Lyn or Lynch was involved in denying Plaintiff a hearing, tenure, and section 75 rights. (Dkt. No. 8-7 at 8.) Plaintiff also claims that he

Cruz v. New York, Not Reported in Fed. Supp. (2017)

2017 WL 6021838

was subjected to involuntary servitude and peonage, purposefully harassed at work, and bullied by Harper, Mackey, Brown, Corcoran, and Rowe. *Id.*

### 10. Conspiracy

**\*13** Plaintiff alleges in conclusory fashion that Defendants acted in a premeditated conspiracy for the one objective of covering up the sexual abuse by an elementary school special education teacher somehow connected to Terry and Johanna Kuhn. (Dkt. No. 1-2 at 23.) Plaintiff has identified the membership in the conspiracy as follows:

> The Defendants constructed a conspiracy, this conspiracy was premeditated, and it was 5 counties wide, including the total of three states, 3 School Districts, BOCES, my Superiors at work, teachers, administrators, DA, ADA, DDS, Chenango County Sheriff's Office, City of Norwich PD[,] City of Norwich FD. City of Norwich, Chenango County Family Courts, Chenango Count (sic) Child Support DDS, Chenango County Child Protective Services, Cortland County Child Protective Services, Onondaga County Regional offices for Child Welfare, the defendant N. Cruz Attorney, The OFCA Albany, NY, the Law Guardian Ad Litem, my own Self hired attorneys, with constant ex parte all attorney's communication with the judges, Hon. Dowd and Hon. Dunshee. Defendants continually denied the complainant(s) (sic) rights.

*Id.* Plaintiff alleges that the conspirators are "guilty of intentionally interfering, denying, absolutely stripping the complainant of [his] Constitutional privileges, rights, and protections, and did so with malice. The complainant[ ]'s 1st, 2nd, 4th, 5th, 6th 8th, 9th, 10th, 13th (sec. 1) and 14th (equal protection of the law)." (Dkt. No. 1-2 at 23-24.)

### C. Claims and Relief Requested

Plaintiff has identified "actions" against the Defendants under: (1) 42 U.S.C. § 1983 civil action for deprivation of rights, including violation of Amendments 1, 4-8, 10, and 14 to the Constitution; (2) 42 U.S.C. § 1985 (1)-(3) for conspiracy to interfere with civil rights; (3) 42 U.S.C. § 1986 for neglect to prevent action; (4) 42 U.S.C. § 3631 for criminal interference with right to fair housing; (5) 18 U.S.C. § 245 federally protected activities; (6) 42 U.S.C. § 14141 for pattern and practice; and (7) 18 U.S.C. § 2258 for failure to report child abuse. [12] (Dkt. No. 1-2 at 16.) Plaintiff also claims to have been the victim of sex discrimination in his employment and to have filed a complaint with the New York State Division of Human Rights. (Dkt. No. 1-2 at 17, 29.)

Plaintiff seeks monetary damages for sex discrimination; defamation; retaliation and prevention of his business venture in Norwich; loss of tier 4 State retirement benefits; loss of family and loved ones; destruction of social relationships, friendships, and his family relationship; unlawful labor practices; unlawful termination; disruption of the parent child relationship; past, present, and future medical expenses, court and attorney's fees; and the cost of providing a nanny for the children until age eighteen. *Id.* at 30. Plaintiff also seeks damages in the amount of $60,000,000, with the ability to seize retirement and properties for illegal actions. *Id.*

**\*14** In addition, Plaintiff seeks appropriate injunctive and declaratory relief in his complaint. *Id.*

### V. MOTION TO AMEND

Prior to the Court's initial review of his original filings under 28 U.S.C. § 1915(e), Plaintiff submitted to the Clerk an ex parte motion to amend. On September 11, 2017, Plaintiff filed a "Motion to Amend due to failure to comply By the State of New York, *et al.*" (Dkt. No. 9 at 1.) Plaintiff's request to amend his complaint arises out of: (1) New York State's stonewalling his

Cruz v. New York, Not Reported in Fed. Supp. (2017)
Case 6:24-cv-01367-AMN-ML    Document 8    Filed 04/07/25    Page 150 of 186
2017 WL 6021838

request under the State Freedom of Information Law ("FOIL"), N.Y. Pub. Off. L. §§ 84-90, his appeals, and his requests for crucial information necessary to amend his complaint; (2) the Defendants/Respondents' failure to return a waiver of service of the summons, object to removal, seek remand, file an answer, file Plaintiff's requests, file any motions; and (3) an unidentified Defendant's actions in exceeding his or her jurisdiction by repeatedly and irreparably injuring Plaintiff, unlawfully kidnaping his children, and seizing his property. *Id.* at 2.

Plaintiff also filed a document entitled "Motion to Amend State Action for violation of a man's I, IV, V, XIV, VI amendments of the US constitution, 42 U.S.C. 1983." (Dkt. No. 9-1.) In the motion, Plaintiff has added as Defendants New York State Governor Andrew Cuomo; Attorney General Eric Schneiderman; Cortland County Sheriff Mark E. Helms; Budd Rigg, Cortland County Undersheriff; Captain Robert Derkson; Sgt. Paul Knapp; and Jane Doe, Deputy. *Id.* at 1. Plaintiff alleges in what he has identified as a "complaint" in the motion to amend that he has served three notices, three requests for waiver of summons, electronic and certified mailings to all of the Defendants in the action, and that because this Court ordered a stay "this means ALL matters pursuant of the case, if this court Cortland County Family Court or Chenango County Family Court or either County department of Social Services Proceed any further in any more unlawful and fraudulent actions against the complainant the complainant will take this matter to the United States Attorney's Office Immediately proceeds any further this will be yet another trespass on the complainant and his people." (Dkt. No. 9-1 at 2.)

Plaintiff also alleges that the Defendants have all been served with FOIL requests and requests pursuant to Rule 34 of the Federal Rules of Civil Procedure, as well as the complaint, and that State has stonewalled his FOIL requests and is engaged in a conspiracy to cover up the abuse of his children by a special education teacher and a Norwich fireman in violation of the Federal Child Kidnaping laws. [13] *Id.* at 3.

## VI. MOTION FOR A TRO AND PRELIMINARY INJUNCTION

On September 11, 2017, Plaintiff submitted to the Clerk a "Motion for Verbal Argument and ORDER to Show Cause, before Honorable Daniel J. Stewart ... for Preliminary ORDER and Judgement RULE 72 Pretrial Order." [14] (Dkt. No. 8.) Included among Plaintiff's submissions in support of his motion for a TRO and preliminary injunction are: (1) Table of Authorities with father's rights case law (Dkt. No. 8-1); (2) Table of Authorities with case law involving removal of children from the home (Dkt. No. 8-2); (3) "DEMANDANTS DEMAND WRIT OF QUO WARRANTO DEMAND TO VACATE CPLR 5015(a)(4)," in which Plaintiff demands that Respondents vacate and dismiss immediately any New York State matters for lack of subject matter jurisdiction pursuant to CPLR 5015(a)(4) (Dkt. No. 8-3); (4) "NOTICE: Ex parte Motion for Order to Show Cause for a Writ of Mandamus for Writ of Habeas Corpus; Ex Parte motion for Order to Show Cause for Writ of Mandamus; Order to Show Cause for preliminary injunction and Temporary Restraining order; prayer for remedies for irreparable harm pursuant to Invidious Gender Discrimination, 18 U.S. Code § 1201, Kidnaping, 18 U.S. Code § 242 Deprivation of rights under color of law, and 18 U.S. Code § 241 Conspiracy against rights (RUL 72 Pretrial Order)" (Dkt. No. 8-4); (5) Plaintiff's "Declaration, Proclamation and Reclamation to His natural rights as Son of the revolution & The Original Republic of 1789" (Dkt. No. 8-5); (6) "Written Objections to Chenango and Cortland County Family Court for Lack of Subject Matter & Personal Jurisdiction & Cross Claim" (Dkt. No. 8-6); (7) "Affidavit in support of written objections to the State of New York et al. For Lack of Subject Matter Jurisdiction, Personal Jurisdiction, and Cross Claim" (Dkt. No. 8-7); (8) "NOTICE: ex parte Motion Order to Show Cause for Writ of Habeas Corpus ex parte motion for Order to Show Cause for Writ of Mandamus" (Dkt. No. 8-8); (9) July 15, 2017, "Actio Contrcto Actio Vi Bono Rum Raptorum Actio Ex Contractu Actio Mixta Actio Personum Actio Ex Delicto" to Governor Andrew Cuomo (Dkt. No. 8-9); (10) records from the SCR labeled by Plaintiff as "!!CONFIDENTIAL!! [,] !! SEALED!![,] *PRIVACY PROTECTION*" (Dkt. No. 8-10); (11) "Order to Show Cause for Injuries of Irreparable Injury caused by Trespass exceeding Jurisdiction Discrimination, and Malice (Ex Parte)" (Dkt. No. 8-11); (12) "Memorandum of the Law and Laws of a Writ of Quo Warrento (Rule 72 Pretrial order)" (Dkt. No. 8-12); (13) "Affidavit and Memorandum of the law in Support of a Writ of Quo Warrento and Complaint pursuant to US federal Codes: 18 U.S.Code § 1201 Kidnaping, 18 U.S. Code 242 Deprivation of rights under color of law, 18 U.S. Code § 241 Conspiracy against rights 28 U.S.C. § 1343(a) (3)" (Dkt. No. 8-13); and (14) collection of statutory provisions labeled by Plaintiff as "!!CONFIDENTIAL!![,] !! SEALED!! [,] *PRIVACY PROTECTION*" (Dkt. No. 14.)

Case 6:24-cv-01367-AMN-ML    Document 8    Filed 04/07/25    Page 151 of 186

**Cruz v. New York, Not Reported in Fed. Supp. (2017)**
2017 WL 6021838

**\*15** Unfortunately, Plaintiff's voluminous submissions consist largely of irrelevant material, repetitive accusations, conclusory assertions, and hard to follow open ended allegations against frequently unidentified Defendants, with few nonconclusory assertions of wrongdoing by specific Defendants, and an ill-defined request for the injunctive relief being sought. As best the Court can ascertain, Plaintiff's request for injunctive relief is based at least in part on his mistaken belief that the Court's earlier Order staying this action stayed all state court proceedings and in essence enjoined any actions by the multitude of Defendants named by him with regard to matters about which Plaintiff complains herein. (*See* Dkt. No. 9-1 at 2.) Plaintiff, failing to understand that his notice of removal, petition for a writ of habeas corpus, and civil rights complaint have yet to be accepted for filing by the District Court, also appears to justify his request for injunctive relief on the absence of any response to those papers by Defendants, for whom summonses will not be issued unless and until those papers are accepted by the District Court and Defendants are directed by the District Court to respond in some fashion. (*See* Dkt. No. 9 at 2.)

Plaintiff may be seeking a mandatory injunction directing Defendants to respond to his notice of removal habeas petition, and civil complaint. (Dkt. 8-3 at 2.) Plaintiff has also raised the State Defendants' failure to respond to his FOIL requests and may be seeking a mandatory injunction directing a response. (Dkt. Nos. 8-11 at 5; 8-13 at 2-3.) Plaintiff claims that the day after he commenced this action/proceeding, his children were unlawfully seized and taken to Florida by unidentified "respondents" in violation of federal kidnaping laws, and he may be seeking injunctive relief with regard to the allegedly illegal seizure. (Dkt. 8-11 at 2.) Plaintiff also claims he is being harassed, defamed, and attacked; he has had false allegations placed against him on the SCR; and the State has black balled him from future state employment. (Dkt. No. 8-11 at 3-4.) Plaintiff may be seeking injunctive relief with regard to those claims as well. In addition, Plaintiff is seeking a mandatory injunction directing the payment of back wages and health care benefits; placing him back on the payroll with benefits; and returning various property taken from him. *Id.* at 5-7.

## VII. LEGAL ANALYSIS OF PLAINTIFF'S CIVIL RIGHTS COMPLAINT, MOTION TO AMEND, AND MOTION FOR A TRO AND PRELIMINARY INJUNCTION

### A. Elements of a 42 U.S.C. §§ 1983 Claim

Section 1983 provides in relevant part:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured....

42 U.S.C. § 1983. To state a claim under Section 1983, a plaintiff must allege that the challenged conduct (1) was "committed by a person acting under color of state law," and (2) "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir.), *cert. denied*, ––– U.S. ––––, 131 S. Ct. 158 (2010) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)). "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992).

It is well settled that "the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." [15] *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999) (citation and internal quotation marks omitted). A plaintiff must therefore allege facts showing that a defendant was either a state actor or a private party acting under color of state law. *Ciambriello v. County of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002); *see also United States v. Int'l Broth. of Teamsters, Chauffeurs, Warehousemen & Helpers of America*, 941 F.2d 1292, 1295-96 (2d Cir. 1991) ("Because the United States Constitution regulates only the Government, not private parties, a litigant claiming

Case 6:24-cv-01367-AMN-ML    Document 8    Filed 04/07/25    Page 152 of 186

Cruz v. New York, Not Reported in Fed. Supp. (2017)
2017 WL 6021838

that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.' "). Private actors have been found to engage in "state action" when they are "willful participant[s] in joint activity with the State or its agents." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) (citing *United States v. Price*, 383 U.S. 787, 794, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966)).

**\*16** In order to state a § 1983 conspiracy claim against a private actor, a plaintiff must do more than plead in conclusory fashion that a defendant "conspired" with a state actor.[16] *Ciambriello*, 292 F.3d at 324; *see also Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993) ("[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct.") (citations and internal quotation marks and punctuation omitted), *overruled on other grounds, Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993).

The elements of a conspiracy claim under § 1983 are: "(1) an agreement between two or more state actors or between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury on plaintiff; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999).

### B. Personal Involvement Requirement of § 1983

A § 1983 claim must allege the personal involvement of any individual defendant in the purported constitutional deprivation. *See Raspardo v. Carlone*, 770 F.3d 97, 115 (2d Cir. 2014) ("If a defendant has not personally violated a plaintiff's constitutional rights, the plaintiff cannot succeed on a § 1983 action against th[at] defendant ... § 1983 requires individualized, personalized liability on the part of each government defendant."); *Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 135 (2d Cir. 2013) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.")

A complaint in a civil rights action is subject to dismissal against a defendant for failure to state a claim on initial review under 28 U.S.C. § 1915(e)(2)(B)(ii) where a defendant named in the caption is not mentioned in the factual allegations in the body of the complaint. *See McAvoy v. Suffolk County Sheriff DeMarco*, No. 14-CV-6293 (SJF) (AKT), 2015 WL 1802601, at \*5 (E.D.N.Y. April 16, 2015); *McClenic v. Shmettan*, No. 15-CV-00705 (SJF) (SIL), 2015 WL 1930088, at \*5 (E.D.N.Y. April 28, 2015); *Rogue v. Iannotti*, No. 3:11-cv-2012 (SRU), 2012 WL 3939922, at \*2 (D. Conn. Sept. 10, 2012).

Therefore, the Court recommends dismissal of Plaintiff's complaint as against Defendants Onondaga County, Chenango County District Attorney Joseph McBride, Steven M. Dunshee (First Assistant District Attorney), Sabrina Dier, Sheriff Ernest R. Cutting, Joe Warren, Ben Bergman, Alyssa Cogden, Melissa Archer, Colin Supervisor Cortland County Advocacy Center), Cortland County Jane Doe, two Cortland County Officer John Does, Thomas Durkot, Cathy Aitchison, Carnita White, Brian Doliver, Detective John Fern, Sarah Simon, Betty Osborne, Cathy Lavoli, Beth Beers, Patricia Luca, Sarah Fitzpatrick, Irene Flores, Connie Bambino, Joseph Angelino, Norwich Sgt. John Doe, Norwich School District Board of Education President Joseph McBride, Tom Sutton, Howie Sullivan, Gerrard O'Sullivan, Karrie Stainbauer, Christine Bienick, Dr. Alfred Barnes, Kristen Romavicz, Mark Davis, Vicky Gregory, Kim Murray, Frank Johnson, Sherri Houck, Chris Wilkinson, three Jane Doe Cortland County Family Court Clerks, and four John Doe Officers.[17]

**\*17** Although Plaintiff would ordinarily be granted leave to amend to allege facts plausibly showing that the Defendants listed above had violated his constitutional rights under § 1983, for reasons discussed below, the Court finds that allowing amendment in this case would be futile.

### C. Eleventh Amendment Immunity

Case 6:24-cv-01367-AMN-ML   Document 8   Filed 04/07/25   Page 153 of 186
Cruz v. New York, Not Reported in Fed. Supp. (2017)

2017 WL 6021838

Plaintiff has sued New York State. (Dkt. No. 1-2 at 1.) It is well settled that in the absence of consent by the state or abrogation of immunity by Congress under the Fourteenth Amendment, a suit against the State or one of its agencies or departments is proscribed by the Eleventh Amendment. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 55-56, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996); *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 101, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). The Eleventh Amendment also bars suit against state officials when "the state is the real, substantial party in interest." *Ford Motor Co. v. Department of the Treasury*, 323 U.S. 459, 464, 65 S.Ct. 347, 89 L.Ed. 389 (1945), *overruled on other grounds by Lapides v. Board of Regents of the Univ. System of Georgia*, 535 U.S. 613, 122 S.Ct. 1640, 152 L.Ed.2d 806 (2002).

Although the allegations in Plaintiff's complaint are inadequate to provide notice of any claim against the State, in his motion to amend Plaintiff complains of the State's alleged bad faith in stone-walling his FOIL request and his appeals and failing to provide information necessary to finish his complaint. (Dkt. No. 9 at 1.) Federal courts have no jurisdiction to enforce requests for information made under the state FOIL. *See Rios v. New York Executive Dept. of Parole*, No. 07-CV-3598 (DLI) (LB), 2008 WL 150209, at * 2 (E.D.N.Y. Jan. 14, 2008). Plaintiff's recourse is the commencement of a CPLR Article 78 proceeding in state court. *Id.*

In addition, although Plaintiff has not named the OCFS as a Defendant in his complaint, he has alleged that the State agency was a member of a conspiracy to deny Plaintiff of his constitutional rights. (Dkt. No. 1-2 at 23-24.) Were the agency a named Defendant, Plaintiff's conspiracy claim under § 1983 against it would be barred by the Eleventh Amendment.

Finding that Plaintiff has failed to allege any claim against New York State with respect to which there has been consent to suit by the State or an abrogation of Eleventh Amendment immunity by Congress, the Court recommends that Plaintiff's complaint be dismissed with prejudice against the State of New York and to the extent Plaintiff intended to name the OCFS as a Defendant, against the agency as well.

### D. Judicial Immunity

In his original complaint, Plaintiff has named as Defendants the Hon. Kevin M. Dowd, Chenango County Supreme Court; Hon. Steven M. Dunshee, Chenango County Support Magistrate; the Hon. William Ames, Cortland County Family Court; and the Hon. Julie Campbell, Cortland County Family Court. [18] (Dkt. No. 1-2 at 1, 4, 6.) All are sued in connection with the support, visitation, and custody proceedings involving Plaintiff and his estranged wife Nicole. (*See generally* Dkt. Nos. 1, 1-2, and 9-1.)

**\*18** It is well-established that judges have absolute immunity from suit for acts performed in their judicial capacities. *Bradley v. Fisher*, 13 Wall 335, 80 U.S. 335, 20 L.Ed. 646 (1871); *accord, Mireles v. Waco*, 502 U.S. 9, 11, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991) (per curiam) (holding that "judicial immunity is an immunity from suit, not just from the ultimate assessment of damages") (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)). Immunity from suit is overcome in only two narrow circumstances. "First, a judge is not immune from liability for non-judicial actions, i.e., actions not taken in a judge's judicial capacity." *Mireles*, 502 U.S. at 11, 112 S.Ct. 286. "Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id.*

The Supreme Court has "generally concluded that acts arising out of, or related to, individual cases before the judge are judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). Judges enjoy absolute immunity even when a plaintiff offers allegations of "bad faith or malice." *Mireles*, 502 U.S. at 11, 112 S.Ct. 286. A judge cannot "be deprived of immunity because the action he took was in error ... or was in excess of authority." *Id.* at 13, 112 S.Ct. 286 (quoting *Stump v. Sparkman*, 435 U.S. 349, 356, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978)).

Because the allegations in Plaintiff's complaint indicate that his claims against Judges Dowd, Ames, and Campbell, and Support Magistrate Dunshee were all related to the support, visitation, and/or custody proceedings between Plaintiff and Nicole Cruz, the Court finds that they are all entitled to judicial immunity and recommends dismissal of Plaintiff's complaint against them with prejudice on judicial immunity grounds.

Cruz v. New York, Not Reported in Fed. Supp. (2017)

2017 WL 6021838

### E. Plaintiff's Conspiracy Claim

Plaintiff has alleged a conclusory claim for conspiracy against:

> 3 School Districts, BOCES, my Superiors at work, teachers, administrators, DA, ADA, DDS, Chenango County Sheriff's Office, City of Norwich PD[,] City of Norwich FD. City of Norwich, Chenango County Family Courts, Chenango Count (sic) Child Support DDS, Chenango County Child Protective Services, Cortland County Child Protective Services, Onondaga County Regional offices for Child Welfare, the defendant N. Cruz Attorney, The OFCA Albany, NY, the Law Guardian Ad Litem, my own Self hired attorneys, with constant ex parte all attorney's communication with the judges, Hon. Dowd and Hon. Dunshee.

(Dkt. No. 1-2 at 23.)

Plaintiff claims that those Defendants conspired for the sole purpose of covering up the sexual abuse, apparently of Plaintiff's children, by an elementary school special education teacher connected to Terry and Johanna Kuhn, possibly Nicole Cruz. *Id.* at 23-24. Plaintiff's complaint is devoid of facts regarding the alleged sexual abuse, and is equally devoid of facts plausibly showing that the identified parties conspired to interfere with, deny, or strip Plaintiff of his constitutional rights. *Id. See Dwares*, 985 F.2d at 100 (requiring allegations of specific acts of misconduct as a part of the conspiracy). Furthermore, because the rights of Plaintiff's minor children would clearly be implicated in any conspiracy to cover up sexual abuse by a teacher, the Court finds that consideration of the issue without proper representation of the interests of the children would be improper.

Therefore, the Court recommends that Plaintiff's conspiracy claim against 3 School Districts, BOCES, my Superiors at work, teachers, administrators, DA, ADA, DDS, Chenango County Sheriff's Office, City of Norwich PD[,] City of Norwich, Chenango County Family Courts, Chenango Count (sic) Child Support DDS, Chenango County Child Protective Services, Cortland County Child Protective Services, Onondaga County Regional offices for Child Welfare, the defendant N. Cruz['s] Attorney, the OFCA Albany, NY, the Law Guardian Ad Litem, Plaintiff's own Self hired attorneys, and the Hon. Dowd and Hon. Dunshee be dismissed.

### F. Chenango and Cortland Counties

**\*19** Plaintiff has named Chenango and Cortland Counties as Defendants. (Dkt. No. 1-2 at 1.) Plaintiff has asserted claims against both the Chenango and Cortland County Departments of Social Services and Sheriff's Departments. Because the Departments of Social Services and Sheriff's Departments are administrative arms of their respective counties, the Court will treat Plaintiff's claims against the County Departments as claims against the Counties themselves and recommend dismissal of the complaint with prejudice against both the Departments of Social Services and Sheriff's Departments. *See Mulvihill v. New York*, 956 F.Supp.2d 425, 427 (W.D.N.Y. 2013).

### 1. Claims Against the Departments of Social Services

Plaintiff claims in wholly conclusory fashion that the Chenango and Cortland County Departments of Social Services violated CAPTA, 18 U.S.C. § 3509, and SORNA, 34 U.S.C. §§ 20911, *et seq.*, formerly cited as 42 U.S.C. §§ 16911, *et seq.* (Dkt. No. 1-2 at 21-22.) CAPTA does not create a private right of action for sexual and physical abuse, neglect, and maltreatment while in foster care. *See Alger v. County of Albany, New York*, 489 F.Supp.2d 155, 159 (N.D.N.Y. 2006) (collecting cases). Moreover, it if did that would be a claim that should not be addressed in this action in which the interests of Plaintiff's minor children are

Case 6:24-cv-01367-AMN-ML   Document 8   Filed 04/07/25   Page 155 of 186

**Cruz v. New York, Not Reported in Fed. Supp. (2017)**
2017 WL 6021838

not represented by counsel. *See, e.g., Ingrao v. County of Albany, NY,* No.1:01-CV-730 (TJM), 2006 WL 2827856 (N.D.N.Y. Oct. 2, 2006) (counseled lawsuit raising unsuccessful CAPTA claim by plaintiffs as parents and natural guardian of an infant).

18 U.S.C. § 3509, which is entitled "Child victims' and child witnesses' rights," is a criminal statute that provides for the manner in which child victims and their right to privacy is protected in connection with the judicial process in criminal matters involving abuse, including sexual abuse. If by chance a person were found to have a private right of action under the provision, it would be Plaintiff's minor children, whose interests are not before the Court in this litigation. SORNA provides for the registration of convicted sex offenders and appears to have no relevance whatsoever to Plaintiff's lawsuit.

### 2. Claims Against the Sheriff's Departments

The sole claim against the Chenango County Sheriff's Department is that members of the Department conspired with Terry Kuhn to conjure up baseless claims against Plaintiff resulting in the issuance of a temporary protective order against Plaintiff. (Dkt. No. 1-2 at 11-12.) Plaintiff's conclusory claim of conspiracy is inadequate to state a claim under § 1983. *See Pangburn,* 200 F.3d at 72. Plaintiff has alleged no specific facts plausibly showing wrongdoing by the Cortland County Sheriff's Department resulting in the violation of Plaintiff's constitutional rights under § 1983.

Based upon the foregoing, the Court finds that Plaintiff has failed to state a cause of action against either Chenango or Cortland County and recommends that the complaint be dismissed as against them.

### G. Nicole Cruz and Terry and Johanna Kuhn

Although the relationship between Nicole Cruz and Terry and Johanna Kuhn is not well explained in the complaint, the Kuhns appear to be Nicole's friends. The allegations in the complaint indicate that Nicole and Johanna Kuhn are private actors. Terry Kuhn is a member of the City of Norwich Fire Department. (Dkt. No. 1-2 at 14-16.) However, except for wholly conclusory allegations that Terry Kuhn abused his power as a Norwich fireman by conspiring with his friends at the Chenango County Police Department to conjure up baseless false statements against Plaintiff which resulted in issuance of a temporary order of protection against Plaintiff, the allegations against him arise of out his actions as an individual rather than a state actor. [19] *Id.* at 11-12.

**\*20** Nicole Cruz is alleged to have joined with the Kuhns in forcing Plaintiff from his home and causing him to default on a loan Plaintiff and his estranged wife had on a business they were buying. *Id.* at 11. Plaintiff alleges that Nicole fled the State in July of 2016 in the middle of a child abuse trial owing Plaintiff over $8,000 in child support. *Id.* at 13. According to Plaintiff, Nicole and Terry and Johanna Kuhn are guilty of multiple federal felonies and misdemeanors against him including HUD fraud, mail fraud, false impersonation, falsifying government documents, and unlawful termination of Plaintiff's tenured position in the New York State Education Department. ("NYSED"). *Id.* at 14-16.

The factual allegations against the three do not plausibly show that they were acting under color of state law with regard to Plaintiff's claims. *See Cornejo,* 592 F.3d at 127. Moreover, the allegations of conspiracy by Terry Kuhn are wholly conclusory and therefore inadequate to make a plausible showing that he was acting in concert with state actors. *See Dwares*, 985 F.2d at 100. Therefore, the Court recommends that the complaint be dismissed as against Nicole Cruz and Terry and Johanna Kuhn for failure to state a claim under § 1983. The Court further recommends that the dismissal be with prejudice given the absence of factual allegations in the complaint suggesting Plaintiff could state a cause of action against them under § 1983 if given leave to amend.

### H. Attorney Defendants Williams, Taylor, and Fertig

2017 WL 6021838

Attorney S. Francis Williams was Nicole Cruz's attorney in connection with the child support, visitation, and custody dispute and is alleged to have appeared in Cortland County Family Court with Johanna Kuhn posing as Nicole. (Dkt. Nos. 1 at 38; 1-2 at 15.) Attorney Taylor was Plaintiff's attorney in the domestic relations dispute for a period of time. (Dkt. No. 1 at 40.) The sole allegation against Taylor in Plaintiff's complaint is that an associate of his was involved in paying a third party to impersonate a child care provider at the daycare center attended by Plaintiff's children. (Dkt. No. 1-2 at 19.) Attorney James Fertig was appointed as a guardian ad litem for Plaintiff's children, and Plaintiff has alleged that he engaged in misconduct and malpractice in violation of CAPTA, 18 U.S.C. § 3509, and SORNA.

Private attorneys do not act under color of state law and are not state actors for purposes of § 1983 simply by virtue of their state-issued licenses to practice law. *See Fine v. City of N.Y.*, 529 F.2d 70, 74 (2d Cir. 1975) (private attorney not a state actor). Similarly, public defenders and court-appointed counsel do not act under color of state merely by virtue of their position. *Harrison v. New York*, 95 F.Supp.3d 293, 328-29 (E.D.N.Y. 2015) (collecting cases). Guardians ad litem are included among court-appointed counsel who do not act under color of state law by virtue of their position. *Neustein v. Orbach*, 732 F.Supp. 333, 346 (E.D.N.Y. 1990). Furthermore, Plaintiff has failed to plead any nonconclusory facts showing that the three attorneys were conspiring with state actors. *See Dwares*, 985 F.2d at 100.

Moreover, for the reasons set forth above in the analysis of Plaintiff's claims against Defendants Chenango and Cortland Counties, the Court finds that Plaintiff has failed to state a claim against Fertig violation of CAPTA, 18 U.S.C. § 3509, and SORNA.

Based upon the foregoing, the Court recommends that Plaintiff's complaint be dismissed as against Defendants Williams, Taylor, and Fertig with prejudice inasmuch as a better pleading will not correct the deficiencies in Plaintiff claims.

### I. Kristen Monroe and David Knickerbocker

**\*21** Plaintiff claims that Monroe and Knickerbocker, both officials in the Cortland County DSS, attempted to trick and then force Plaintiff to rent Monroe's parents' house. (Dkt. No. 1-2 at 2, 19.) Plaintiff has not alleged facts plausibly showing that Monroe and Knickerbocker were acting under color of state law in connection with the rental of Monroe's parents' house. Nor has he alleged facts showing that Monroe or Knickerbocker deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States. *See Cornejo*, 592 F.3d at 127.

Therefore the Court recommends that the complaint be dismissed as against Monroe and Knickerbocker, and because the allegations against them do not remotely support the existence of a civil rights claim against them under § 1983, that the complaint be dismissed against them with prejudice.

### J. Sheila Poole

While Plaintiff has alleged that Poole, in her capacity as Acting Commissioner of the NYS OCFS, released indicated reports of child abuse and mistreatment of Plaintiff children by him and Nicole Cruz, his complaint is devoid of factual allegations plausibly showing that she deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States by doing so. *See Cornejo,* 592 F.3d at 127.

Therefore, the Court recommends that the complaint be dismissed as against Poole, and that in light of the failure by Plaintiff to allege any facts suggesting he might be able to plead a § 1983 claim against Poole the dismissal be with prejudice. [20]

### K. DCMO BOCES and Unadilla Valley Central School District

Plaintiff claims, *inter alia*, that his transfer from DCMO BOCES to Unadilla was illegal, that his termination was unlawful in that he was denied tenure, rights under the Taylor Law, and Section 75 rights, and that Defendant Lyn or Lynch was involved in the denial. (Dkt. Nos. 1-1 at 15; 1-2 at 13; 8-7 at 8.) Plaintiff also claims that he was harassed, bullied, and forced into

Cruz v. New York, Not Reported in Fed. Supp. (2017)

Case 6:24-cv-01367-AMN-ML    Document 8    Filed 04/07/25    Page 157 of 186

2017 WL 6021838

involuntary servitude by Defendant Harper, Mackey, Brown, Corcoran, and Rowe at Unadilla. (Dkt. No. 8-7 at 8.) According to Plaintiff, he was also the victim of sex discrimination in his employment and has filed a complaint with the New York State Division of Human Rights. (Dkt. No. 1-2 at 17, 29.)

The Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, "does not confer federal jurisdiction over labor disputes among states, their employees, and the unions who represent them." *Baumgart v. Stony Brook Children's Serv., P.C.*, 249 Fed.Appx. 851, 852 (2d Cir. 2007). Public employees covered under the Public Employees' Fair Employment Act ("Taylor Law"), N.Y. Civ. Serv. Law § 201(7) are precluded from filing federal claims under the LMRA. *See Sales v. Clark*, No. 14-CV-8091 (PAC)(SN), 2017 WL 892609, at *5 (S.D.N.Y. Feb. 3. 2017). Plaintiff concedes he is covered under the Taylor Law. (Dkt. No. 1-2 at 13.)

Furthermore, Plaintiff's claims, if any, against the individual Defendants for involuntary servitude, harassment, and bullying are state law claims over which this Court has no jurisdiction. "It is a fundamental precept that federal courts are courts of limited jurisdiction." *Owen Equip. & Erec. Co. v. Kroger*, 437 U.S. 365, 374, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). Federal jurisdiction exists only when a "federal question" is presented (28 U.S.C. § 1331), or where there is "diversity of citizenship" and the amount in controversy exceeds $75,000 (28 U.S.C. § 1332). *See Perpetual Sec., Inc. v. Tang*, 290 F.3d 132, 136 (2d Cir. 2002). Federal question jurisdiction exists if a plaintiff's claim "aris[es] under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331.

**\*22** Plaintiff's claims against DCMO BOCES and Unadilla and the individual Unadilla Defendants do not present a federal question.[21] Moreover, diversity jurisdiction requires complete diversity between Plaintiff and all of the Defendants, which does not exist in this case. *See Cushing v. Moore*, 970 F.2d 1103, 1106 (2d Cir. 1992) ("complete diversity [is required] between all plaintiffs and all defendants.").

In addition, it is not clear from the complaint that the amount in controversy exceeds $75,000. "A party invoking the jurisdiction of the federal court has the burden of proving that it appears to be a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount." *Chase Manhattan Bank, N.A. v. Am. Nat'l Bank and Trust Co. of Chicago*, 93 F.3d 1064, 1070 (2d Cir. 1996) (citation omitted); *see also Tongkok Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994). The amount in controversy is determined at the time action is commenced. *Id.*

Finally, Plaintiff claims to have filed a sex discrimination complaint with the New York Human Rights Division but has provided no information regarding the nature and status of that claim, including whether the EEOC has issued a right to sue letter. Therefore, the Court recommends dismissal.

Based upon the foregoing, the Court recommends that Plaintiff's complaint be dismissed against DCMO BOCES, Unadilla, Harper, Mackey, Brown, Corcoran, and Rowe, and that with the exception of his sex discrimination claim against his employer, that the dismissal be with prejudice.

### L. Domestic Relations Exception

The Court has recommended dismissal on various grounds of all of Plaintiff's claims either with or without prejudice. Even if it had not, with the exception of Plaintiff's employment claims, all of the claims asserted by him in his civil rights complaint fall within the domestic relations exception discussed above, which divests the district court of subject matter jurisdiction because the claims relate, directly or indirectly, to the issues of support, custody, and visitation. *See Ankenbrandt,* 504 U.S. at 703, 112 S.Ct. 2206. Therefore, the Court recommends that Plaintiff's complaint, with the exception of his employment related claims, be dismissed with prejudice under the domestic relations exception.[22]

### M. Plaintiff's Motion to Amend

Cruz v. New York, Not Reported in Fed. Supp. (2017)

Case 6:24-cv-01367-AMN-ML    Document 8    Filed 04/07/25    Page 158 of 186

2017 WL 6021838

Plaintiff's motion to amend his complaint does not change the Court's recommendation that his civil rights action be dismissed. Plaintiff's notice to amend involves the failure of the State and perhaps other Defendants to respond to his FOIL requests, Defendants' failure to return waivers of summonses and to respond to papers he has served on them in the action, and the alleged kidnaping of his children. (Dkt. No. 9 at 2.) As noted above, federal courts have no jurisdiction to enforce requests for information made under the state FOIL. *See Rios*, 2008 WL 150209, at *2. Furthermore, inasmuch as Plaintiff's complaint has not yet been accepted for filing, Defendants are under no obligation to return service waivers or respond to any of Plaintiff's papers.

**\*23**  Finally, there is no private right of action under 18 U.S.C. § 1201, the federal criminal statute relating to kidnaping. *See Giano v. Martino*, 673 F.Supp. 92, 95 (E.D.N.Y.), *aff'd*, 853 F.2d 1429 (2d Cir. 1987) (Table). Moreover, to the extent the alleged kidnaping of Plaintiff's minor children is a part of the custody dispute between Plaintiff and his estranged wife, Plaintiff's claim falls within the domestic relations exception to subject matter jurisdiction. [23]

Therefore, the Court recommends that Plaintiff's motion to amend (Dkt. No. 9) be denied.

### N. Motion for a TRO and a Preliminary Injunction

Inasmuch as the Court is recommending dismissal of Plaintiff's complaint, its recommends that Plaintiff's motion for a TRO and a preliminary injunction be denied as moot. *See Melnitzky v. Lopreto*, No. 06 Civ. 13206 (SHS), 2006 WL 3500016, at *4 (S.D.N.Y. Dec. 4, 2006) (request for a TRO and preliminary injunction moot where underlying complaint dismissed). Even if the request were not moot, the Court would recommend denial because Plaintiff has failed to show that he is likely to suffer irreparable harm and either (1) a likelihood of success on the merits or (2) sufficiently serious questions going to the merits of his claims to make them a fair ground for litigation, and a balance of hardships decidedly tipping in his favor. *See Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010).

Therefore, the Court recommends that Plaintiff's motion for a TRO and preliminary injunction (Dkt. No. 8) be denied as moot, or in the alternative, on the merits.

**ACCORDINGLY**, the Court hereby

**RECOMMENDS** that if there are presently any state court proceedings that arguably could be covered by Plaintiff's notice of removal (Dkt. No. 1) that the District Court issue an order remanding them to state court, and if not, that the Court find that no state court proceedings have been properly removed to state court; and it is further

**RECOMMENDED** that Plaintiff's petition for a writ of habeas corpus (Dkt. No. 1) be **DISMISSED WITH PREJUDICE**; and it is further

**RECOMMENDED** that Plaintiff's motion to amend his complaint (Dkt. No. 9) be **DENIED**; and it is further

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1-2) be **DISMISSED** on initial review under 28 U.S.C. 1915(e)(2) (B)(ii), and that with the exception of Plaintiff's sex discrimination claim which is the subject of his Human Rights Division complaint, the dismissal be **WITH PREJUDICE**; and it is further

**RECOMMENDED** that Plaintiff's motion for a TRO and a preliminary injunction (Dkt. No. 8) be denied as moot or, in the alternative, on the merits; and it is further

**RECOMMENDED** that the District Court order that the determination in this matter have no effect on the legal rights of Plaintiff's minor children; and it is hereby

Cruz v. New York, Not Reported in Fed. Supp. (2017)

Case 6:24-cv-01367-AMN-ML    Document 8    Filed 04/07/25    Page 159 of 186

2017 WL 6021838

**ORDERED**, that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [24] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**All Citations**

Not Reported in Fed. Supp., 2017 WL 6021838

---

**Footnotes**

1   Since Plaintiff has acknowledged there are no pending state court proceedings, remand does not appear to be an option. (Dkt. No. 1 at 40.)

2   Plaintiff also submitted an application for leave to proceed *in forma pauperis* (Dkt. No. 2), which was granted by the Court in its June 13, 2017, Order. (Dkt. No. 6.)

3   Page references to documents identified by docket number are to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office.

4   Plaintiff's complaint also contains factual allegations that his minor children were subjected to repeated sexual, mental, and emotional abuse. (Dkt. No. 1-2 at 15.) Those allegations will be considered solely to the extent, if at all, they are relevant to claims asserted by Plaintiff solely on his own behalf.

5   The applicability of the statutes cited by Plaintiff will be addressed only to the extent, if at all, they are relevant to claims asserted by him solely on his own behalf.

6   The only effect of the Court's ninety-day stay Order was to place the Court's initial review of the lawsuit on hold while Plaintiff pursued legal representation for his minor children. (Dkt. No. 6 at 6.) The stay did not, as Plaintiff appears to claim in his motion papers, have any impact on the ability of those individuals and entities whom Plaintiff has named as Defendants herein to take action or refrain from taking action, or upon the jurisdiction, orders, or other actions of the New York State courts. (See Dkt. Nos. 8-3 at 3; 9-1 at ¶ 1.) Plaintiff's apparent attempted service of summonses and papers to which Defendants would be required to respond was premature and unauthorized.

7   Plaintiff, who describes himself as an American Patriot, has also filed as a part of his motion for a preliminary injunction, a "Declaration, Proclamation and Reclamation to his natural rights as Son of the Revolution & The Original Republic of 1789," in which he describes his ancestors as having included soldiers in the French and Indian War, the American Revolution, and the Civil War. (Dkt. No. 8-5.)

8   Plaintiff's notice of removal also appears to be untimely since it was filed more than thirty-days after he received the petitions in the contempt and custody/visitation proceedings. *See* 28 U.S.C. § 1446(b). However, because the thirty-day requirement, while mandatory, is procedural rather than jurisdictional, and can be waived by the plaintiff/petitioner in the state court action, the Court finds that Plaintiff's failure to file a timely notice of removal does not provide grounds for *sua sponte* dismissal on initial review. *See Flood v. CSX Transp., Inc.*, No. 11-CV-162S (WMS), 2012 WL 464189,

Cruz v. New York, Not Reported in Fed. Supp. (2017)

2017 WL 6021838

Case 6:24-cv-01367-AMN-ML   Document 8   Filed 04/07/25   Page 160 of 186

at * 2 (W.D.N.Y. Feb. 13, 2012) (while the thirty-day time limit under § 1446(b) is mandatory, failure to adhere to it constitutes a procedural rather than a jurisdictional defect) (citing *Phoenix Global Ventures, LLC v. Phoenix Hotel Assocs., Ltd.*, 422 F.3d 72, 75 (2d Cir. 2005)).

9    In *White v. Wellington*, 627 F.2d 582, 585 n.4 (2d Cir. 1980), the Second Circuit opined that the statutory language would also allow removal by federal officials.

10   Copies of all unpublished decisions cited herein will be provided to Plaintiff in accordance with *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

11   The papers do not provide the Court with sufficient information to determine on initial review whether the *Younger* abstention, (*see Younger v. Harris*, 401 U.S. 37, 53-54 (1971)), or *Rooker Feldman* doctrines apply to Plaintiff's filings. *See Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983) (federal courts may not sit in direct review of state court judgments unless directly authorized by Congress).

12   There is no private right of action under 42 U.S.C. § 3631 (*see DeSouza v. Taiman*, No. 3:16-cv-00490 (MPS), 2017 WL 3444672, at *6 (D. Conn. Aug. 10, 2017) (collecting cases); 42 U.S.C. § 14141 (*see Miller v. Carpinello*, No. 06 CV 12940 (LAP), 2007 WL 4207282, at *5 (S.D.N.Y. Nov. 20, 2007)); 18 U.S.C. § 245 (*see, Gunter v. Long Island Power Auth./Keyspan*, No. 08 CV 498 (RRM) (LB), 2011 WL 1225791, at *11 (E.D.N.Y. Feb. 15, 2011)); or 18 U.S.C. § 2258. *See Davis v. City of New Haven*, No. 3:11cv1829 (JBA), 2014 WL 1315660, at *5-6 (D. Con. March 30, 2014).

13   In his complaint, Plaintiff identifies the abuser of his children as N. Cruz. (Dkt. No. 1-2 at 14-16.) However, because Plaintiff never specifically identified the alleged abuser as his estranged wife, Nicole Cruz, the Court is uncertain as to whether that is the case.

14   The undersigned, not Judge Stewart, is the U.S. Magistrate Judge to whom the case has been assigned.

15   A plaintiff is required to allege state action on the part of the defendants in his complaint; and where he fails to do so, a court may dismiss an action under § 1915(e). *See O'Neil v. Bebee*, No. 5:09-CV-1133 (GTS/DEP), 2010 WL 502948, at *5 (N.D.N.Y. Feb. 10, 2010).

16   Plaintiff has also alleged a conspiracy under 42 U.S.C. § 1985(3) and a claim under 42 U.S.C. § 1986. (Dkt. No. 1-2 at 1.) However, under § 1985(3), "the conspiracy must [ ] be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Mian v. Donaldson, Lufkin & Jenrette Securities, Corp.*, 7 F.3d 1085, 1088 (2d Cir. 2d Cir. 2000), *overruled on other grounds by Gonzaga Univ. v. Doe*, 536 U.S. 273, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002). As noted above, Plaintiff has been identified as White, and there are no facts in any of Plaintiff's submissions suggesting any otherwise class-based animus. When a claim under 42 U.S.C. § 1985(3) fails, a claim under 42 U.S.C. § 1986 fails as well. *See Brown v. City of Oneonta*, 221 F.3d 329, 341 (2d Cir. 2000).

17   The Court has not included Defendants Lyn or Lynch, Harper, Brown, Corcoran, or Rowe on the list of those against whom dismissal is recommended for failure by Plaintiff to include any allegations of wrongdoing by them in the complaint because of the allegations against them in his TRO and preliminary injunction papers. (Dkt. No. 8-7 at 8.) The Court has recommended dismissal against school board members and administrators at the Cincinnatus School District and Norwich Central School for lack of factual allegations against them in the complaint. Because it appears that they have been named as Defendants with respect to claims involving Plaintiff's minor children, which should not be addressed by the District Court without the interests of the children being properly represented, the Court would recommend dismissal even if Plaintiff had included allegations to that effect.

18   While Plaintiff did not include specific factual allegations against Judge Campbell in his complaint, he did contend in his habeas corpus petition that Judge Campbell dismissed all of his Cortland County Family Court petitions and "apparently" placed a conditional discharge against Plaintiff. (Dkt. No. 1 at 41-42.)

2017 WL 6021838

19    Plaintiff also alleges that Terry Kuhn's buddy Frank Revoir was involved in the conspiracy. (Dkt. No. 1-2 at 11-2.) That is the sole mention of Revoir in the complaint. He has not been identified as a state actor and the wholly conclusory allegation that he was part of a conspiracy is insufficient to state a claim against him under § 1983. *See Dwares*, 985 F.2d at 100. Therefore the Court recommends dismissal of the complaint against Revoir and that the dismissal be with prejudice since the allegations in the complaint give no indication Plaintiff could state a claim against him.

20    As noted above, Plaintiff has alleged that the OCFS was part of a conspiracy to cover up sexual abuse against Plaintiff's minor children by a special education teacher which the Court has recommended be dismissed. There are no allegations in Plaintiff's complaint suggesting that Poole played any role in the alleged conspiracy.

21    A plaintiff bears the burden of establishing subject matter jurisdiction over his claims, including citing the relevant federal statute. *Cherry v. New York City Dept. of Corr.*, 698 Fed.Appx. 27, 2017 WL 4457140 (Mem), at *1 (2d Cir. Oct. 5, 2017.)

22    The Court intends for its recommendation for dismissal with prejudice to apply solely to Plaintiff and to have no impact on pursuit of the minor children's claims.

23    The Court has refrained from considering the legal rights the minor children may have in connection with the alleged kidnaping.

24    If you are proceeding pro se and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. 6(a)(1)(C).

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Cruz v. New York, Not Reported in Fed. Supp. (2017)

2017 WL 6001833

2017 WL 6001833
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kiplind L. CRUZ, Plaintiff,

v.

The State of NEW YORK, et al., Defendants.

5:17-CV-0510 (BKS/TWD)

|

Signed 12/04/2017

**Attorneys and Law Firms**

Kiplind L. Cruz, Cincinnatus, NY, Plaintiff, pro se

**MEMORANDUM-DECISION AND ORDER**

Hon. Brenda K. Sannes, United States District Judge:

 **\*1** On May 9, 2017, pro se Plaintiff Kiplind L. Cruz initiated this action by filing a document described as a "petition for writ of habeas corpus" and "defendants federal removal from State of New York, County of Cortland, Chenango, Onondaga, New York State Cortland County Combined Court" to this Court (Dkt. No. 1), with an attached "Complaint" under 42 U.S.C. §§ 1983, 1985, and 1986 (Dkt. No. 1-2). Plaintiff later filed a motion for a temporary restraining order and a preliminary injunction (Dkt. No. 8) and a motion to amend (Dkt. No. 9). This matter was referred to United States Magistrate Judge Thérèse Wiley Dancks who, on October 27, 2017, issued an Order and Report-Recommendation recommending that: 1) any state court proceedings arguably covered by Plaintiff's notice of removal be remanded to state court, and the Court find that no state court proceedings have been properly removed; 2) Plaintiff's petition for writ of habeas corpus be dismissed with prejudice; 3) Plaintiff's motion to amend be denied; 4) Plaintiff's complaint be dismissed on initial review under 28 U.S.C. § 1915(e)(2)(B)(ii), and, with the exception of Plaintiff's sex discrimination claim which is the subject of his Human Rights Division complaint, the dismissal be with prejudice; 5) Plaintiff's motion for a temporary restraining order and a preliminary injunction be denied as moot, or in the alternative, on the merits; and 6) the Court order that the determinations in this matter have no effect on the legal rights of Plaintiff's minor children. Dkt. No. 15. Magistrate Judge Dancks advised Plaintiff that, under 28 U.S.C. § 636(b)(1), he had fourteen days within which to file written objections to the report, and that the failure to object to the report within fourteen days would preclude appellate review. *Id.* at 49. No objections to the Report-Recommendation have been filed.

As no objections to the Report-Recommendation have been filed, and the time for filing objections has expired, the Court reviews the Report-Recommendation for clear error. *See Petersen v. Astrue*, 2 F. Supp. 3d 223, 228-29 (N.D.N.Y. 2012); Fed. R. Civ. P. 72(b) advisory committee's note to 1983 amendment. Having reviewed the Report-Recommendation for clear error and found none, the Court adopts it in its entirety.

For these reasons, it is

**ORDERED** that the Report-Recommendation (Dkt. No. 15) is **ADOPTED** in its entirety; and it is further

**ORDERED** that Plaintiff's petition for writ of habeas corpus (Dkt. No. 1) is **DISMISSED WITH PREJUDICE;** and it is further

**ORDERED** that no state court proceedings have been properly removed to this Court; and it is further

**ORDERED** that Plaintiff's motion to amend (Dkt. No. 9) is **DENIED**; and it is further

**ORDERED** that Plaintiff's complaint (Dkt. No. 1-2) is **DISMISSED** under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted, and that, with the exception of Plaintiff's sex discrimination claim which is the subject of his Human Rights Division complaint, the dismissal is **WITH PREJUDICE**; and it is further

**\*2  ORDERED** that Plaintiff is granted leave to file an amended complaint with respect to the sex discrimination claim which is the subject of his Human Rights Division complaint, within thirty (30) days from the date of this Order; and it is further

**ORDERED** that if Plaintiff fails to file an amended complaint within the thirty (30) days, that this action be closed without further Order of the Court; and it is further

**ORDERED** that Plaintiff's motion for a temporary restraining order and a preliminary injunction (Dkt. No. 8) is **DENIED AS MOOT**; and it is further

**ORDERED** that the determinations in this matter have no effect on the legal rights of Plaintiff's minor children, and it is further

**ORDERED** that the Clerk serve a copy of this Order upon the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2017 WL 6001833

---

End of Document

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 6:24-cv-01367-AMN-ML    Document 8    Filed 04/07/25    Page 164 of 186
Reeves v. Department of Children, Youth and Families, Not Reported in Fed. Supp....
2020 WL 5898866

2020 WL 5898866
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Christine Marie REEVES, Plaintiff,

v.

The DEPARTMENT OF CHILDREN, YOUTH AND FAMILIES, Defendant.

1:20-CV-987 (BKS/DJS)
|
Signed 09/04/2020

**Attorneys and Law Firms**

CHRISTINE MARIE REEVES, Plaintiff, Pro Se, 54 The Crossway, Delmar, New York 12054.

### REPORT-RECOMMENDATION and ORDER

DANIEL J. STEWART, United States Magistrate Judge

**\*1** The Clerk has sent to the Court a *pro se* Complaint which Plaintiff originally filed in the Western District of New York. Dkt. No. 1. Plaintiff was granted leave to proceed *in forma pauperis* in the Western District, which then transferred the action to this Court. Dkt. No. 7. In accordance with 28 U.S.C. § 1915(e), the Court will *sua sponte* review the sufficiency of the Complaint.

## I. DISCUSSION

### A. Pleading Requirements

Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed further with his action.

In reviewing a *pro se* complaint, this Court has a duty to show liberality toward *pro se* litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990), and should exercise "extreme caution ... in ordering *sua sponte* dismissal of a *pro se* complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (emphasis in original) (citations omitted). Therefore, a court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 556). Although the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]'–'that

Reeves v. Department of Children, Youth and Families, Not Reported in Fed. Supp....

Case 6:24-cv-01367-AMN-ML    Document 8    Filed 04/07/25    Page 165 of 186

2020 WL 5898866

the pleader is entitled to relief.' " *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)). A pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* at 678 (further citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555, for the proposition that Federal Rule of Civil Procedure 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. *Sheehy v. Brown*, 335 Fed. Appx. 102, 104 (2d Cir. 2009).

**\*2** Furthermore, a court's initial review of a complaint under § 1915(e) must encompass the applicable standards of the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must contain:

(1) a short and plain statement of the grounds for the court's jurisdiction ...;

(2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

(3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

FED. R. CIV. P. 8(a). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer [and] prepare an adequate defense." *Hudson v. Artuz*, 1998 WL 832708, at \*1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995)). Moreover, Rule 10 of the Federal Rules of Civil Procedure provides, in part:

> **(b) Paragraphs; Separate Statements.** A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). The purpose of Rule 10 is to "provide an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" *Sandler v. Capanna*, 1992 WL 392597, at \*3 (E.D. Pa. Dec. 17, 1992) (citing 5 C. Wright & A. Miller, *Federal Practice and Procedure*, § 1323 at 735 (1990)).

A complaint that fails to comply with these Rules "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [the plaintiff's] claims," and may properly be dismissed by the court. *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). "Dismissal, however, is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Hudson v. Artuz*, 1998 WL 832708, at \*2 (internal quotation marks omitted). In those cases in which the court dismisses a *pro se* complaint for failure to comply with these Rules, it should afford the plaintiff leave to amend the complaint to state a claim that is on its face nonfrivolous. *See Simmons v. Abruzzo*, 49 F.3d 83, 86-87 (2d Cir. 1995).

### B. Allegations Contained in Plaintiff's Complaint

What has been docketed as the Complaint in this case is a brief four-paragraph pleading which Plaintiff actually captions as a petition for a writ of habeas corpus. *See* Compl. It alleges that Plaintiff is the mother of a minor child who "has been seized unlawfully from his safe loving home" with his mother. *Id.* at ¶ 2. She alleges in conclusory terms that the she is being improperly denied access to her son. *Id.* at ¶¶ 2-4. The Complaint makes no specific allegation of how her federal constitutional or statutory rights have been violated.

Case 6:24-cv-01367-AMN-ML    Document 8    Filed 04/07/25    Page 166 of 186

Reeves v. Department of Children, Youth and Families, Not Reported in Fed. Supp....

2020 WL 5898866

### C. Analysis of Plaintiff's Claims

**\*3**  At the outset, the Court notes that Plaintiff's Complaint fails to satisfy the basic pleading requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure, making it challenging to assess whether or not she has stated a viable claim for relief. *See generally* Compl. From a purely form perspective, the Complaint fails to provide specific facts relevant to the claims or to relate them to federal causes of action. This alone would be a sufficient basis to dismiss the Complaint upon initial review.

It is well settled that a federal court, whether trial or appellate, is obligated to notice on its own motion the basis for its jurisdiction. *City of Kenosha, Wisconsin v. Bruno*, 412 U.S. 507, 512 (1973); *see also Alliance of Am. Ins. v. Cuomo*, 854 F.2d 591, 605 (2d Cir. 1988) (challenge to subject matter jurisdiction cannot be waived); FED. R. CIV. P. 12(h)(3) (court may raise basis of its jurisdiction *sua sponte*). When subject matter jurisdiction is lacking, dismissal is mandatory. *United States v. Griffin*, 303 U.S. 226, 229 (1938); FED. R. CIV. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). Plaintiff alleges that the Court has federal question jurisdiction over this case. Dkt. No. 1 at p. 3, Civil Cover Sheet. The relief sought in this case appears to be an order directing the return of Plaintiff's minor son to her custody. Compl. at p. 2.

Under the domestic relations exception to the jurisdiction of federal courts, cases involving divorce, alimony, and child custody remain outside federal court jurisdiction. *Marshall v. Marshall*, 547 U.S. 293, 308 (2006). This exception is based upon a policy dictating that the states have traditionally adjudicated marital and child custody disputes, developing "competence and expertise in adjudicating such matters, which the federal courts lack." *Thomas v. N.Y. City*, 814 F. Supp. 1139, 1146 (E.D.N.Y. 1993). Specifically, the Supreme Court has recognized that "[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992) (internal quotation marks omitted) (citation omitted); *Sobel v. Prudenti*, 25 F. Supp. 3d 340, 353 (E.D.N.Y. 2014) (the domestic relations exception "divests the federal courts of power to issue divorce, alimony, and child custody decrees") (internal quotation marks omitted) (citation omitted); *see also Hernstadt v. Hernstadt*, 373 F.2d 316, 317 (2d Cir. 1967). Therefore, insofar as the present *pro se* Complaint seeks the restoration of custody over her son, the federal courts lack jurisdiction to hear that claim, and it should be dismissed. *Amato v. McGinty*, 2017 WL 4083575, at \*5 (N.D.N.Y. Sept. 15, 2017).

"Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once 'when a liberal reading of the complaint gives any indication that a valid claim might be stated.' " *Bruce v. Tompkins Cty. Dep't of Soc. Servs. ex rel. Kephart*, 2015 WL 151029, at \*4 (N.D.N.Y. Jan. 7, 2015) (quoting *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991)). However, where the grounds for dismissal offer no basis for curing the defects in the pleading, dismissal with prejudice is appropriate. *Kunz v. Brazill*, 2015 WL 792096, at \*3 (N.D.N.Y. Feb. 25, 2015). Here, a lack of jurisdiction would normally result in dismissal with prejudice. Given the sparse nature of the pleadings, it is perhaps possible that Plaintiff, who is proceeding *pro se*, may be attempting to assert a claim over which this court would have jurisdiction. *See LeClair v. Vinson*, 2019 WL 1300547, at \*1 (N.D.N.Y. Mar. 21, 2019), *report and recommendation adopted*, 2019 WL 2723478 (N.D.N.Y. July 1, 2019). The Court therefore recommends that the Complaint be dismissed without prejudice to the filing of an Amended Complaint that specifically details Plaintiff's precise claims.

**\*4**  The Court advises Plaintiff that should she be permitted to amend her Complaint, any amended pleading she submits must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure. Any such amended complaint, **which shall supersede and replace in its entirety the previous Complaint filed by Plaintiff**, must contain **sequentially numbered paragraphs containing only one act of misconduct per paragraph**. Thus, if Plaintiff claims that her civil and/or constitutional rights were violated by more than one defendant, or on more than one occasion, she should include a corresponding number of paragraphs in her amended complaint for each such allegation, with each paragraph specifying: (i) the alleged act of misconduct; (ii) the date, including the year, on which such misconduct occurred; (iii) the names of each and every individual who participated in such misconduct; (iv) where appropriate, the location where the alleged misconduct occurred; and, (v) the nexus between such misconduct and Plaintiff's civil and/or constitutional rights.

Case 6:24-cv-01367-AMN-ML    Document 8    Filed 04/07/25    Page 167 of 186

Reeves v. Department of Children , Youth and Families, Not Reported in Fed. Supp....

2020 WL 5898866

Plaintiff is further cautioned that no portion of her prior Complaint shall be incorporated into her amended complaint by reference. Any amended complaint submitted by Plaintiff must set forth all of the claims she intends to assert against the defendant and must demonstrate that a case or controversy exists between the Plaintiff and the defendant which Plaintiff has a legal right to pursue and over which this Court has jurisdiction.

Also pending is Plaintiff's "emergency" motion for return of her son which appears to seek temporary injunctive relief. Dkt. No. 2. In light of this Court's recommendation that the Complaint be dismissed for lack of jurisdiction, the Court recommends that this Motion be dismissed as moot.

## II. CONCLUSION

**WHEREFORE**, it is hereby

**RECOMMENDED**, that Plaintiff's Complaint be **DISMISSED with prejudice as to all claims seeking custody of her minor child, but that Plaintiff be granted leave to replead any additional claim she may be intending to assert in this action**; and it is further

**RECOMMENDED**, that Plaintiff's Emergency Motion be **DENIED** as moot; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14)[1] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

**All Citations**

Not Reported in Fed. Supp., 2020 WL 5898866

## Footnotes

1    If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 6:24-cv-01367-AMN-ML    Document 8    Filed 04/07/25    Page 168 of 186
Reeves v. Department of Children Youth and Families, Not Reported in Fed. Supp. (2020)
2020 WL 5891564

2020 WL 5891564
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Christine Marie REEVES, Plaintiff,

v.

The DEPARTMENT OF CHILDREN YOUTH AND FAMILIES, Defendant.

1:20-cv-0987 (BKS/DJS)
|
Signed 10/05/2020

**Attorneys and Law Firms**

Plaintiff, pro se, Christine Marie Reeves, Delmar, New York.

**MEMORANDUM-DECISION AND ORDER**

Brenda K. Sannes, United States District Judge:

**\*1** Plaintiff *pro se* Christine Marie Reeves commenced this action in the Western District of New York on August 18, 2020, together with an "emergency motion for immediate return of minor child" and a motion to proceed in forma pauperis ("IFP"). (Dkt. Nos. 1-3). Western District of New York Chief United States District Court Judge Frank P. Geraci, Jr. granted Plaintiff's motion to proceed IFP and transferred Plaintiff's action to this Court. (Dkt. No. 7). This matter was assigned to United States Magistrate Judge Daniel J. Stewart who, on September 4, 2020, issued a Report-Recommendation recommending that Plaintiff's complaint be dismissed as to all claims seeking custody of her minor child because this Court lacks subject matter jurisdiction of any such claim, but that Plaintiff be granted leave to replead any additional claims she may be intending to assert in this action. (Dkt. No. 9). Magistrate Judge Stewart also recommended that Plaintiff's emergency motion be denied as moot. (*Id.*). Magistrate Judge Stewart advised Plaintiff that under 28 U.S.C. § 636(b)(1), she had fourteen days within which to file written objections to the report, and that the failure to object to the report within fourteen days would preclude appellate review. (*Id.*, at 9). No objections to the Report-Recommendation have been filed.

As no objections to the Report-Recommendation have been filed, and the time for filing objections has expired, the Court reviews the Report-Recommendation for clear error. *See Petersen v. Astrue*, 2 F. Supp. 3d 223, 229 (N.D.N.Y. 2012) (citing Fed. R. Civ. P. 72(b), Advisory Committee Notes to 1983 amendment). Having reviewed the Report-Recommendation for clear error and found none, the Court adopts the Report-Recommendation. [1]

For these reasons, it is

**ORDERED** that the Report-Recommendation (Dkt. No. 9) is **ADOPTED**; and it is further

**ORDERED** that Plaintiff's Complaint is **DISMISSED without prejudice** for lack of subject matter jurisdiction**, and without leave to amend as to any claim seeking custody of her minor child;** and it is further

**ORDERED** that Plaintiff be granted leave to replead any claim she may be intending to assert in this action that is not seeking custody of her minor child; and it is further

**ORDERED** that Plaintiff may file an amended complaint within thirty (30) days from the date of this Order; and it is further

**ORDERED** that if Plaintiff does not file an amended complaint within thirty (30) days from the date of this Order, or request an extension of time to do so, the Clerk is directed to close this case without further Order of the Court; and it is further

**ORDERED** that Plaintiff's Emergency Motion (Dkt. No. 2) is **DENIED** as moot; and it is further

**ORDERED** that the Clerk serve a copy of this Order upon Plaintiff in accordance with the Local Rules.

**\*2  IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2020 WL 5891564

---

### Footnotes

1       The Court notes that while the Report-Recommendation recommended dismissal of the child custody claim with prejudice, a dismissal for lack of subject matter jurisdiction must be without prejudice. *Katz v. Donna Karan Co.*, 872 F.3d 114, 116 (2d Cir. 2017).

---

**End of Document**                                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Brown v. Peters, Not Reported in F.Supp. (1997)

1997 WL 599355

1997 WL 599355

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.

Kenneth BROWN, Plaintiff,

v.

Andrew PETERS, Warden, Watertown Correctional Facility; Joseph Williams, Warden, Lincoln Work–Release Center; Francis J. Herman, Senior Parole Officer Interstate Bureau; T. Stanford, Senior Parole Officer; Deborah Stewart, Parole Officer; John Doe # 1, Parole Agent, Watertown Correctional Facility; John Doe # 2, Parole Agent, Lincoln Work Release Center; Susan Bishop, Director of Interstate Compact, South Carolina; Cecil Magee, Parole Officer, South Carolina; Frank Barton, Parole Officer, South Carolina; John McMahan, Parole Officer, South Carolina, Defendants.

No. Civ.A. 95CV1641RSPDS.

|

Sept. 22, 1997.

**Attorneys and Law Firms**

Kenneth Brown, State Court Institute–Greene, Waynesburg, PA, plaintiff, pro se.

Dennis C. Vacco, New York State Attorney General, The Capitol Albany, NY, for defendants Peters, Herman Stewart, Doe # 1, Doe # 2, and Williams, Jeffrey M. Dvorin, Assistant Attorney General, Carl N. Lundberg, Chief Legal Counsel, South Carolina Department of Probation, Columbia, SC, for defendants Bishop, Magee, Barton, McMahan, and Stanford, Carl N. Lundberg, of Counsel.

DECISION AND ORDER

POOLER, J.

 **\*1** The above matter comes to me following a Report–Recommendation by Magistrate Judge Daniel Scanlon, Jr., duly filed on April 17, 1997. Following ten days from the service thereof, the Clerk has sent me the entire file, including any and all objections filed by the parties herein.

Plaintiff Kenneth Brown commenced this Section 1983 civil rights action on November 17, 1995. On February 12, 1996, Magistrate Judge Scanlon ordered Brown to submit an amended complaint alleging the specific acts committed by the individuals named as defendants which Brown claimed violated his constitutional rights. Brown filed an amended complaint on March 21, 1996. In his amended complaint, Brown alleged that defendants violated his rights under the Eighth and Fourteenth Amendments by failing to process properly his interstate compact paperwork, resulting in Brown being imprisoned pursuant to a parole hold when in fact he had never violated the conditions of his parole. For a more complete statement of Brown's claims, see his amended complaint. Dkt. No. 5.

On August 5, 1996, defendants Peters and Williams made a motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). Dkt. No. 13; Dkt. No. 14, at 2. On August 19, 1996, defendants Bishop, Magee, Barton, and McMahan made a motion to dismiss the complaint against them or, in the alternative, for summary judgment. Dkt. No. 20. On October 17, 1996, defendants Herman, Stewart, and Stanford made a motion to dismiss for failure to state a claim. Dkt. No 34. On April 17, 1996, Magistrate Judge Scanlon recommended that all defendants' motions to dismiss be granted and that the complaint be dismissed. Dkt. No. 50.

1997 WL 599355

On June 9, 1997, Brown filed objections to the magistrate judge's report-recommendation, having been granted additional time in which to do so. Dkt. No. 52. In addition, Brown filed on June 9, 1997, a motion for leave to file a second amended complaint and a copy of his proposed amended complaint. Dkt. No. 53. I turn first to the last motion filed, Brown's motion for leave to amend his complaint a second time.

Brown seeks to file a second amended complaint "setting forth in detail the personal involvement of each defendant and how their acts of commission and omission served to deprive plaintiff of Constitutionally secured rights." Dkt. No. 53. The district court has discretion whether to grant leave to amend. *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993). In exercising that discretion, the court should freely grant leave to amend when justice so requires. Fed.R.Civ.P. 15(a). However, the court need not grant leave to amend where it appears that amendment would prove to be unproductive or futile. *Ruffolo,* 987 F.2d at 131.

Here, Brown moved to amend his complaint to add additional allegations against the named defendants. However, the additional allegations fail to cure the deficiency which forms the basis of defendants' motion to dismiss—the absence of defendants' personal involvement in a constitutional deprivation. Section 1983 imposes liability upon an individual only when personal involvement of that individual subjects a person to deprivation of a federal right. *See Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A complaint is fatally defective if it fails to allege personal involvement sufficient to establish that a supervisor was "directly and personally responsible for the purported unlawful conduct." *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 886 (2d Cir.1987).

**\*2** Brown's proposed amended complaint alleges in conclusory fashion that defendants acted "in a grossly negligent and concerted manner which breached their duties owed to Plaintiff and is the proximate cause of [the violation of plaintiff's constitutional rights]." Proposed Am. Compl., at 3. Brown continues in the same vein, stating that defendants owed duties to plaintiff to carry out their jobs in a professional manner and they failed to carry out those duties appropriately. The complaint states that defendants held specific responsibilities, such as checking for outstanding warrants, which if performed properly should have alerted them to a problem. However, nowhere does the complaint set forth allegations that these defendants either participated directly in any constitutional infraction or that they were even aware of such an infraction. The proposed amended complaint merely alleges that these defendants failed in performing their supervisory and ministerial functions. "These bare assertions do not state a claim under 42 U.S.C. § 1983." *Smiley v. Davis,* 1988 WL 78306, \*2 (S.D.N.Y.).

This plaintiff previously has had the opportunity to amend his complaint for the same reason asserted here, to allege personal involvement on the part of defendants. Brown's first amended complaint failed to accomplish that task, and it appears that even if allowed to amend again Brown would be unable to make the requisite allegations with sufficient specificity to sustain his complaint. Consequently, I find that amendment would be futile, and I deny Brown's motion for leave to amend his complaint.

I turn now to the magistrate judge's report-recommendation and defendants' motions. The magistrate judge recommends that I grant defendants' motions and dismiss the complaint as to all defendants. The report-recommendation clearly describes the grounds on which the magistrate judge recommends dismissal as to each defendant. Fed.R.Civ.P. 72(b) requires the district judge to make a *de novo* determination on "any portion of the magistrate's disposition to which specific, written objection has been made." Brown's objections fail to address directly any of the analysis. Brown's objections state (1) that he has been deprived of his constitutional rights; (2) that he has stated a cause of action; (3) that the court wrongly refused to appoint an attorney for him and wrongly stayed discovery pending the outcome of these motions; (4) that he seeks to file an amended complaint; (5) the standard of review for a Fed.R.Civ.P. 12(b)(6) motion; (6) that he disagrees with the magistrate judge's recommendation to grant defendants' motions because the allegations in his complaint, which he repeats, show that his rights were violated; and (7) the text of the Fourteenth and Eighth Amendments.

Even affording the objections the liberal reading required for *pro se* pleadings, I find that these objections fail to state any basis whatsoever, much less a specific one, for the court not to adopt the magistrate judge's rulings. They simply re-state the relief sought and the facts on which Brown grounds his complaint and conclude that the magistrate judge's conclusions are

Brown v. Peters, Not Reported in F.Supp. (1997)

1997 WL 599355

wrong. When the parties make only frivolous, conclusive, or general objections, the court reviews the report-recommendation for clear error. *See Camardo v. General Motors Hourly–Rate Employees Pension Plan,* 806 F.Supp. 380, 382 (W.D.N.Y.1992) (court need not consider objections which are frivolous, conclusive, or general and constitute a rehashing of the same arguments and positions taken in original pleadings); *Chambrier v. Leonardo,* 1991 WL 44838, *1 (S.D.N.Y.) (restatement of allegations already before the court and assertion that valid constitutional claim exists insufficient to form specific objections); *Schoolfield v. Dep't of Correction,* 1994 WL 119740, *2 (S.D.N.Y.) (objections stating that magistrate judge's decisions are wrong and unjust, and restating relief sought and facts upon which complaint grounded, are conclusory and do not form specific basis for not adopting report-recommendation); *Vargas v. Keane,* 1994 WL 693885, *1 (S.D.N.Y.) (general objection that report does not address violation of petitioner's constitutional rights is a general plea that report not be adopted and cannot be treated as objection within the meaning of 28 U.S.C. § 636), *aff'd,* 86 F.3d 1273 (2d Cir.), *cert. denied,* 519 U.S. 895, 117 S.Ct. 240, 136 L.Ed.2d 169 (U.S.1996). *See also Scipio v. Keane,* 1997 WL 375601, *1 (1997) (when objections fail to address analysis directly, court reviews report-recommendation for clear error); Fed.R.Civ.P. 72(b), Advisory Comm. Note (when no specific, written objections filed, "court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation").

 **\*3** Because Brown fails to make specific objections or provide any basis for his general objections, I review the report-recommendation for clear error. After careful review, I conclude that the magistrate judge's report-recommendation is well-reasoned and is not clearly erroneous.[1] The magistrate judge employed the proper standard, accurately recited the facts, and reasonably applied the law to those facts. Consequently, I adopt the report-recommendation.

CONCLUSION

Because plaintiff's proposed amendment demonstrates that amendment would be futile, I deny plaintiff's motion for leave to amend his complaint. I approve the magistrate judge's recommendation and grant defendants' motions to dismiss. Plaintiff's complaint is dismissed in its entirety.

IT IS SO ORDERED.

## ORDER and REPORT–RECOMMENDATION

This matter was referred to the undersigned for report and recommendation by the Hon. Rosemary S. Pooler, United States District Judge, by Standing Order dated November 12, 1986. Currently before this Court are a number of motions. Defendants Peters and Williams have filed a motion to dismiss (dkt.13); defendants Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative to dismiss (dkt.20); and defendants Herman, Stewart and Stanford also have filed a motion to dismiss (dkt.34). Plaintiff opposes these three motions (dkts.27, 29, 33, 38). Defendants Bishop, Magee and McMahan have filed a motion to stay discovery (dkt.41) and plaintiff has filed a motion to extend time (dkt.44) in which to file opposition to the latter motion for a stay of discovery.

The Court addresses these issues *seriatim.*

## BACKGROUND

Plaintiff's amended complaint, which he has brought pursuant to 42 U.S.C. § 1983, alleges the following facts. In October, 1991, plaintiff was incarcerated in the Watertown Correctional Facility in Watertown, New York. He applied for an interstate compact because he wanted to return to South Carolina to live with his common law wife, Pamela Reid. During the application process,

Brown v. Peters, Not Reported in F.Supp. (1997)

Case 6:24-cv-01367-AMN-ML    Document 8    Filed 04/07/25    Page 173 of 186

1997 WL 599355

he was interviewed by the facility's parole officer, identified only as defendant John Doe # 1. After signing the necessary papers, his application was forwarded to defendant Andrew Peters, the facility's superintendent, who reviewed, signed and forwarded the papers to the Interstate Bureau. Amend. Compl. at ¶¶ 1–2; Exs. A, B.

On or about January 15, 1992, while his compact was waiting for review at the Interstate Bureau, plaintiff was approved for work release and sent to the Lincoln Work Release Center in New York City. While at the center, plaintiff spoke to a parole officer, defendant John Doe # 2, and told him that he was seeking a compact that would return him to South Carolina upon his conditional release. Plaintiff claims the parole officer told him that he would handle the necessary paperwork, although the officer had had no experience with an interstate compact. Amend. Compl. at ¶¶ 3, 4.

 **4**  Plaintiff, meanwhile, asked Reid whether any officials had contacted her in South Carolina regarding his prospective residence in that state. Upon discovering no one had contacted her, plaintiff asked a lawyer he knew, Navron Ponds, to inquire as to his compact status. In March, 1992, the lawyer spoke with defendant Susan Bishop, who is the director of the interstate compact program in South Carolina. Bishop allegedly told Ponds that plaintiff "was disapproved because there was a discrepancy about approving plaintiff['s] compact." The "discrepancy" was the fact that plaintiff owed the state of South Carolina eighty-six days of confinement from a previous sentence. Plaintiff claims Bishop told Ponds to contact defendants Cecil Magee and Frank Barton, who worked for the South Carolina Parole Department. Sometime in March, 1992, Ponds made some calls to Barton and Magee. A verbal agreement was reached, and plaintiff, upon speaking with Barton and Magee was told that his compact had been approved. He also was told that he should report to the South Carolina Department of Parole upon being released. Amend. Compl. at ¶¶ 5–7.

Prior to leaving the Lincoln Work Release Center, plaintiff processed paperwork related to his interstate compact. His paperwork was sent by Doe # 2 to defendant Joseph Williams, the superintendent of the center. Williams reviewed, signed and returned the paperwork to plaintiff. On May 1, 1992, upon his release from the center, plaintiff traveled to South Carolina. Three days later, he entered a South Carolina parole office and promptly was arrested because of the eighty-six days of confinement that he owed the state. Plaintiff's paperwork was given to defendant John McMahan, a parole officer. Plaintiff claims that McMahan never returned this paperwork to him. On May 20, 1992, the state of South Carolina revoked plaintiff's parole and plaintiff was returned to prison to serve the eighty-six days that he owed. When he asked McMahan what would happen to his one year of parole from New York, the officer allegedly told him that his New York parole would run concurrently with his South Carolina parole, and that when he finished his South Carolina parole, he would not owe any parole whatsoever. Plaintiff served the eighty-six days he owed and was released on July 31, 1992. Amend. Compl. at ¶¶ 8–10.

In February, 1993, plaintiff was arrested on robbery charges in South Carolina. The charges ultimately were dropped, but he apparently encountered some difficulties regarding this arrest as a result of a parole hold that New York state had placed upon him. Bishop's office told him that it had nothing to do with his parole hold and that any problem that he had was between him and the state of New York. He talked to authorities in Albany, New York regarding the parole hold, but was not successful in his efforts to have the hold removed. On September 30, 1993, after had been extradited to New York as a fugitive from justice, plaintiff was given a preliminary hearing at Riker's Island, New York. The hearing officer found no probable cause that plaintiff had violated any condition of parole. He was released. Amend. Compl. at ¶¶ 11–14; Exs. C–J.

 **5**  Plaintiff claims that he would not have suffered hardships if his interstate compact had been handled correctly. He alleges that defendant Deborah Stewart failed to follow up and see whether plaintiff had arrived in South Carolina. If she had, he argues, she would have discovered that he had been arrested upon his arrival. He alleges that defendant Francis Herman, a parole officer at the Interstate Bureau failed to do his job by not investigating plaintiff's violation reports. Amend. Compl. at ¶¶ 15–17; Exs. F–I.

Plaintiff asserts that the foregoing amounts violations of his Eighth and Fourteenth Amendment rights, wherefore he both compensatory and declaratory relief.

Case 6:24-cv-01367-AMN-ML    Document 8    Filed 04/07/25    Page 174 of 186

Brown v. Peters, Not Reported in F.Supp. (1997)

1997 WL 599355

## DISCUSSION

A. Motion to Dismiss by Williams and Peters.

Williams and Peters have filed a motion to dismiss plaintiff's complaint pursuant to FED.R.CIV.P. 12(b)(6) on the grounds that it fails to state a claim upon which relief may be granted. In a Rule 12(b)(6) motion, all factual allegations in the complaint must be taken and construed in plaintiff's favor. *See LaBounty v. Adler,* 933 F.2d 121, 122 (2d Cir.1991) (citing *Ortiz v. Cornette,* 867 F.2d 146, 149 (1989)). The Court's role is not to assess whether plaintiffs have raised questions of fact or demonstrated an entitlement to a judgment as a matter of law, as in a motion made pursuant to FED.R.CIV.P. 56 for summary judgment, but rather to determine whether plaintiff's complaint sufficiently alleges all of the necessary legal elements to state a claim under the law. *See Christopher v. Laidlaw Transit, Inc.* 899 F.Supp. 1224, 1226 (S.D.N.Y.1995), (citing *Ricciuti v. New York City Transit Authority,* 941 F.2d 119, 124 (2d Cir.1991)). Factual allegations in brief or memoranda may not be considered. *Fonte v. Board of Managers of Continental Towers Condominium,* 848 F.2d 24, 25 (2d Cir.1988). The Court now turns to the issues presented.

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994). As superintendents at New York State Correctional facilities, Williams and Peter may be found personally involved in the alleged deprivation of plaintiff's constitutionally protected rights by a showing that they: (1) directly participated in the infraction; (2) knew of the infraction, but failed to remedy the wrong; (3) created or continued a policy or custom under which unconstitutional practices occurred; or (4) were grossly negligent in managing subordinates who caused unlawful conditions or events. *Id.,* (quoting *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986)). Supervisory liability also may be imposed against Williams or Peters with a showing of gross negligence or deliberate indifference to plaintiff's constitutional rights. *Id.* Absent some personal involvement by Williams or Peters in the allegedly constitutionally infirm conduct of their subordinates, neither can be held liable under § 1983. *Gill v. Mooney,* 824 F.2d 192, 196 (2d Cir.1987).

*6 Plaintiff has not provided any evidence linking either Williams or Peters to his alleged constitutional deprivations. All that plaintiff has alleged is that Williams and Peters, as superintendents, have reviewed and signed paperwork relating to plaintiff's compact. Though it has long been held that *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers" for the purpose of a motion to dismiss under Rule 12(b)(6), *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972), plaintiff has not explained how the ministerial conduct of these two defendants was violative of the Constitution. Their motion to dismiss should be granted.

B. Motion for Summary Judgment or to Dismiss by Bishop, Magee, Barton and McMahan.

Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative a motion to dismiss. The Court will treat their motion as a motion to dismiss. "[C]omplaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Adams,* 810 F.2d 358, 363 (2d Cir.1987). Plaintiff has not alleged specifically how the conduct of these four defendants infringed upon his constitutional rights. In his amended complaint, he contends that defendants violated the Constitution by "continuously breaching [[their] duty" to him. This language underscores the defect with the complaint: if it alleges anything at all, it alleges that defendants were negligent in handling plaintiff's interstate compact and parole. To state a cognizable § 1983 claim, the prisoner must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice. *Hayes v. New York City Dept. of Corrections,* 84 F.3d 614, 620 (2d Cir.1996); *Morales v. New York State Dep't of Corrections,* 842 F.2d 27, 30 (2d Cir.1988) (section 1983 does not encompass a cause of action sounding in negligence).

The Court finds that the claims against Bishop, Magee, Barton and McMahan should be dismissed.

C. Motion to Dismiss by Herman, Stewart and Stanford.

Case 6:24-cv-01367-AMN-ML    Document 8    Filed 04/07/25    Page 175 of 186
Brown v. Peters, Not Reported in F.Supp. (1997)
1997 WL 599355

Plaintiff's claim against Stewart is that she failed to follow up and see whether plaintiff had arrived in South Carolina. Herman, he likewise asserts, failed to do his job because he did not investigate plaintiff's violation reports. Plaintiff has not alleged how these actions run afoul of the Constitution; and again, these claims seem to be grounded in negligence, which is not actionable under § 1983. *Hayes,* 84 F.3d at 620.

Plaintiff's claim against Stanford must fail because his complaint literally fails to state a claim against that defendant. Aside from naming Stanford as a defendant, and alleging that he was the appointed Senior Parole Officer at plaintiff's September 30, 1993 revocation hearing at Riker's Island, plaintiff does not detail how Stanford violated his constitutional rights. Absent some personal involvement by Stanford in the allegedly constitutionally infirm conduct of his subordinates, he cannot be held liable under § 1983. *Gill,* 824 F.2d at 196.

**\*7** Accordingly, the Court finds that Stanford, Stewart and Herman's motion to dismiss should be granted.

D. Plaintiff's "John Doe" Claims.
In so far as neither John Doe # 1 nor John Doe # 2 have been identified and served in this matter, the Court does not have jurisdiction over these parties and does not reach the merits of plaintiff's claims against them.

E. Discovery Motions.
Defendants Bishop, Magee and McMahan have filed a motion to stay discovery until the Court has made a ruling on their motion to dismiss. Plaintiff has filed a motion to extend the time in which he may file opposition to defendants' motion. Plaintiff, however, has filed his opposing response (dkt.47), therefore his instant discovery motion is denied as moot. In that the Court recommends granting defendants' motion to dismiss, discovery in this matter would be fruitless. Accordingly, defendants' motion for a stay of discovery pending the resolution of their motion to dismiss is granted.

## CONCLUSION

WHEREFORE, based upon the foregoing analysis, it is hereby

ORDERED, that plaintiff's motion to extend the time to file an opposing reply (dkt.44) is denied as moot; and it is further

ORDERED, that defendants Bishop, Magee and McMahan's motion to stay discovery until their motion to dismiss is decided (dkt.41) is granted; and it is further

RECOMMENDED, that defendants Peters and Williams' motion to dismiss (dkt.13) be granted; and it is further

RECOMMENDED, that defendants Bishop, Magee, Barton and McMahan's motion to dismiss (dkt.20) be granted; and it is further

RECOMMENDED, that defendants Herman, Stewart and Stanford's motion to dismiss (dkt.34) be granted.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. ***FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.*** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 6(a), 6(e) and 72.

Brown v. Peters, Not Reported in F.Supp. (1997)

Case 6:24-cv-01367-AMN-ML    Document 8    Filed 04/07/25    Page 176 of 186

1997 WL 599355

**All Citations**

Not Reported in F.Supp., 1997 WL 599355

---

**Footnotes**

1     I note, however, that the report-recommendation would survive even *de novo* review.

---

**End of Document**       © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 6:24-cv-01367-AMN-ML    Document 8    Filed 04/07/25    Page 177 of 186

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

1995 WL 316935

1995 WL 316935

Only the Westlaw citation is currently available.

United States District Court,

N.D. New York.

Mina POURZANDVAKIL, Plaintiff,

v.

Hubert HUMPHRY, Judisicial Systeam of The State of Minnesota and Olmested County Court Systeam, and State of Minnesota, Saint Peter State Hospital, Doctor Gammel Stephelton, et el Erickson, North West Bank and Trust, Olmested County Social Service, J.C. Penny Insurnce, Metmore Finicial, Traveler Insurnce, Comecial Union Insurnce, Hirman Insurnce, Amrican State Insurnce, Farmers Insurnce, C. O Brown Insurnce, Msi Insurnce, Steven Youngquist, Kent Chirstain, Micheal Benson, United Airline, Kowate Airline, Fordmotor Cridite, First Bank Rochester, George Restwich, British Airways, Western Union, Prudenial Insurnce, T.C.F. Bank, Judge Sandy Kieth, Judge Niergari, Olmestead County Judgering, Judge Mores, Judge Jacobson, Judge Challien, Judge Collin, Judge Thomase, Judge Buttler, Judge Morke, Judge Moweer, Sera Clayton, Susan Mudhaul, Ray Schmite, Defendants. [1]

Civ. A. No. 94-CV-1594.

|

May 23, 1995.

## Attorneys and Law Firms

Hubert H. Humphrey, III, Atty. Gen. of the State of Minn., St. Paul, MN, Jerome L. Getz, Asst. Atty. Gen., of counsel, for Hubert H. Humphrey, III, Judicial System of the State of Minnesota, St. Peter Regional Treatment Center, Gerald Gammell, MD, William Erickson, MD, Thomas Stapleton, MD, the Honorable James L. Mork, Chief Judge Anne Simonett, Judge Jack Davies, Judge Roger Klaphke, Judge Dennis Challeen, and Judge Lawrence Collins.

Condon & Forsyth, P.C., New York City, Stephen J. Fearon, Michael J. Holland, of counsel, for British Airways, P.L.C. and Kuwait Airways Corp.

Dunlap & Seeger, P.C., Rochester, MN, Gregory J. Griffiths, of counsel, for Olmsted County, Raymond Schmitz, Susan Mundahl, Norwest Bank Minnesota, N.A. (the Northwest Bank & Trust), C.O. Brown Agency, Inc.

Arthur, Chapman, McDonough, Kettering & Smetak, P.A., Minneapolis, MN, Eugene C. Shermoen, Jr., of counsel, for J.C. Penney Ins. Co. and Metropolitan Ins. Co.

Shapiro & Kreisman, Rochester, NY, John A. DiCaro, of counsel, for Metmor Financial, Inc.

Costello, Cooney & Fearon, Syracuse, Paul G. Ferrara, Robert J. Smith, of counsel, for Travelers Ins. Companies; Hirman Ins.; Commercial Union Ins. Companies.

Smith, Sovik, Kendrick & Sugnet, P.C., Syracuse, Thomas N. Kaufmann, of counsel, for American States Ins. Co. and Prudential Ins. Co.

Steven C. Youngquist, Rochester, MN, pro se.

Thomas J. Maroney, U. S. Atty., Syracuse, NY, William F. Larkin, Asst. U. S. Atty., of counsel, for Michael Benson, Postmaster N. D. of New York.

George F. Restovich & Associates, Rochester, MN, George F. Restovich, of counsel, for George F. Restovich.

Pourzandvakil v. Humphry, Not Reported in F.Supp. (1995)

1995 WL 316935

Conboy, McKay, Bachman & Kendall, L.L.P, Watertown, NY, George K. Myrus, of counsel, for Western Union.

Richard Maki, Rochester, MN, pro se.

MEMORANDUM-DECISION AND ORDER

POOLER, District Judge.

INTRODUCTION

**\*1** In the four and one-half months since she filed this action, plaintiff Mina Pourzandvakil has filed three amended complaints and ten motions. She also has sought and received entry of default against ten defendants, none of whom she properly served. She twice has sought and been denied temporary restraining orders. She has included in her action defendants with no apparent connection to this forum, that were vindicated in actions she brought in other forums.

In response, several individual defendants and groups of defendants have filed a total of twelve motions, some seeking vacation of the defaults entered against them, some seeking dismissal and others seeking both. We grant defendants' motions insofar as they seek vacation of the clerk's entries of default and dismissal of the complaint. We vacate *sua sponte* the entries of default against the non-moving defendants. Finally, we dismiss the complaint in its entirety against all defendants.

BACKGROUND

Pourzandvakil commenced this action by filing a complaint in the Office of the Clerk on December 9, 1994 (Docket No. 1). The complaint named as defendants the Attorney General of the State of Minnesota, the State of Minnesota and Olmsted County, Minnesota judicial systems, various Minnesota judges and prosecutors, St. Peter State Hospital in Minnesota and various doctors who worked at St. Peter's. Without specifying the time or defendant involved, the complaint accused the defendants of kidnapping Pourzandvakil and her daughter, torturing Pourzandvakil in the Mayo Clinic since April 1985, and causing Pourzandvakil and her daughter to suffer physically, financially and emotionally. Pourzandvakil twice requested that we issue a temporary restraining order. We denied both requests. *See* Order entered December 14, 1994 (Docket No. 4) and Memorandum-Decision and Order entered December 22, 1994 (Docket No. 6).

On December 27, 1994, Pourzandvakil filed an amended complaint (the "first amended complaint") (Docket No. 7) that appears to differ from the original complaint by adding British Airways as a defendant without making any allegations against British Airways. The first amended complaint also differs by requesting additional damages for prior cases and adding descriptions of several previous cases. Annexed to the first amended complaint is another document labeled amended complaint (the "annexed amended complaint") (Docket No. 7) whose factual allegations differ substantially from both the original complaint and the first amended complaint. The annexed amended complaint also adds British Airways as a party but specifies only that Pourzandvakil has travelled on that airline and that British Airways, along with other airlines on which Pourzandvakil has travelled, is aware of all the crimes committed against her.

Pourzandvakil filed yet another amended complaint on January 13, 1995 (the "second amended complaint") (Docket No. 11). The second amended complaint adds as defendants several banks, other financial institutions, insurance companies, insurance agents or brokers, attorneys and airlines as well as the Postmaster of Olmsted County and Western Union. The allegations against these defendants defy easy summarization and will be addressed only insofar as they are relevant to the various motions.

Pourzanvakil v. Humphry, Not Reported in F.Supp. (1995)
Case 6:24-cv-01367-AMN-ML    Document 8    Filed 04/07/25    Page 179 of 186
1995 WL 316935

**\*2**  The Clerk of the Court has entered default against the following defendants: J.C. Penny Insurnce (*sic*)[2] ("J.C. Penney"), British Airways, Kowate (*sic*) Airline ("Kuwait"), MSi Insurnce (*sic*) ("MSI"), Judge Mork, Steven Youngquist ("Youngquist"), Prudncial Insurnce (*sic*) ("Prudential"), Ford Motor Credit ("Ford"), First Bank Rochester, and TCF Bank ("TCF"). Based on the submissions Pourzandvakil made in support of her requests for entry of default, it appears that she served these defendants by certified mail.

The court has received answers from the following defendants: Hubert H. Humphrey III, St. Peter Regional Treatment Center, and Drs. Gerald H. Gammell, William D. Erickson, and Thomas R. Stapleton (joint answer filed January 9, 1995); Olmsted County, Ray Schmitz ("Schmitz"), Susan Mundahl ("Mundahl"), C.O. Brown Agency, Inc. ("C.O. Brown") (answer to amended complaint filed January 23, 1995); George Restovich ("Restovich") (answer to complaint or amended complaint filed January 30, 1995); Norwest Corporation ("Norwest") (answer to amended complaint filed January 31, 1995, amended answer of Norwest Bank Minnesota, N.A. to amended complaint filed February 13, 1995); Travelers Insurance Company ("Travelers") (answer filed February 1, 1995); Michael Benson ("Benson") (answer filed February 6, 1995); Hirman Insurance ("Hirman") (answer filed February 6, 1995); Richard Maki ("Maki") (answer to complaint or amended complaint filed February 17, 1995); Western Union (answer filed February 21, 1995); Steven C. Youngquist ("Youngquist") (answer to complaint or amended complaint filed February 23, 1995); Kuwait (answer filed March 6, 1995); J.C. Penney (answer filed March 22, 1995); Susan E. Cooper[3] (answer to amended complaint filed March 24, 1995); and Chief Judge Anne Simonett, Judge Jack Davies, Judge Roger Klaphke, Judge Dennis Challeen and Judge Lawrence Collins (joint answer filed April 3, 1995).

The court has also received a total of ten motions from Pourzandvakil since February 27, 1995. She moved for a default judgment against defendants J.C. Penney, First Bank Rochester, Prudential, Ford, MSI, British Airways, and TCF. She moved for immediate trial and "venue in a different place" against several defendants and also requested action according to law and criminal charges. Finally, she made motions opposing defendants' motions.

The court also has received a total of thirteen motions[4] from defendants. Several of the defendants moved for dismissal either under Rule 56 or Rule 12 of the Federal Rules of Civil Procedure. For instance, Commercial Union Insurance Companies ("Commercial") moved for dismissal of Pourzandvakil's complaint pursuant to Fed. R. Civ. P. 12(b) or, in the alternative, for a more definite statement. Commercial argued that Pourzandvakil's complaint against it is barred by *res judicata* and collateral estoppel and that this court does not have subject matter jurisdiction over the complaints against Commercial. American States Insurance Company ("ASI") moved for dismissal based on plaintiff's failure to state a claim upon which relief can be granted. ASI further moved for an order enjoining Pourzandvakil from further litigation against it. Maki moved for summary judgment based on lack of personal jurisdiction, improper venue, plaintiff's failure to state a claim upon which relief can be granted, and lack of subject matter jurisdiction. Hubert H. Humphrey, III, the Judicial System of the State of Minnesota, Judge James L. Mork, St. Peter Regional Treatment Center and Drs. Gammell, Erickson and Stapleton (collectively, the "state defendants") moved for summary judgment alleging lack of personal jurisdiction, improper venue, plaintiff's failure to state a claim on which relief can be granted, lack of subject matter jurisdiction, sovereign immunity, and, on behalf of Judge Mork and the judicial system, absolute judicial immunity. The state defendants also requested costs and attorney's fees. Travelers moved for summary judgment based on *res judicata* and/or collateral estoppel, frivolity, lack of subject matter jurisdiction, and improper venue. Travelers sought a transfer of venue to Minnesota in the alternative. Hirman moved for summary judgment based on frivolity, lack of subject matter jurisdiction, and improper venue. Hirman also sought transfer of venue in the alternative. Olmsted County, Schmitz, Mundahl, C.O. Brown and Norwest sought dismissal based on lack of personal jurisdiction, improper venue, and plaintiff's failure to state a claim upon which relief can be granted. With respect to Schmitz and Mundahl, defendants sought dismissal based on absolute prosecutorial immunity, and with respect to C.O. Brown, defendants sought dismissal on *res judicata* grounds. Metmor Financial, Inc. ("Metmor") sought dismissal based on lack of personal jurisdiction, lack of subject matter jurisdiction, improper venue, and plaintiff's failure to state a claim upon which relief can be granted. Finally, Restovich moved for dismissal based on lack of personal jurisdiction.[5]

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)
Case 6:24-cv-01367-AMN-ML    Document 8    Filed 04/07/25    Page 180 of 186
1995 WL 316935

**\*3** Four defendants, British Airways, Kuwait, Prudential, and Youngquist, sought vacatur of the defaults entered against them. Prudential coupled its request with a request for an order enjoining plaintiff from filing or intervening in any litigation against it. Youngquist also requested dismissal of the complaint based on lack of personal jurisdiction and lack of subject matter jurisdiction.

ANALYSIS

The Defaults

We vacate the defaults entered in this matter because plaintiff improperly served defendants. Each application for entry of default shows service by certified mail, which is not permitted by relevant federal, New York or Minnesota rules. Under the Federal Rules of Civil Procedure, service on an individual may be made by (1) delivery to the named defendant; or (2) delivery to a person of suitable age and discretion at the defendant's dwelling house or usual place of abode; or (3) delivery to an agent authorized by law or by the defendant to receive service of process. Fed. R. Civ. P. 4(e)(2). Service on an individual also can be accomplished through a method authorized by the state in which the district court sits or in which the individual is located. Fed. R. Civ. P. 4(e)(1). Service on a corporation may be accomplished in a judicial district of the United States (1) pursuant to a method authorized by the law of the state in which the court sits or in which the corporation is located; or (2) by delivering a copy of the summons and complaint to an officer, managing or general agent, or to any other agent authorized by statute to receive service and, if the statute so requires, by also mailing a copy to the defendant. Fed. R. Civ. P. 4(h)(1) and 4(e)(1). Neither New York nor Minnesota law authorizes personal service on an individual or corporation by certified mail. *See* N.Y. Civ. Prac. L. & R. §§ 308, 311 (McKinney Supp. 1995); N.Y. Bus. Corp. Law § 306 (McKinney Supp. 1995); Minn. Stat. § 543.08 (1995); Minn. R. 4.03 (1995). Finally, service on states, municipal corporations or other governmental organizations subject to suit can be effected by (1) delivering a copy of the summons and complaint to the state's chief executive officer; or (2) pursuant to the law of the state in which the defendant is located. Fed. R. Civ. P. 4(j)(2). Minnesota law does not authorize service on a governmental entity by certified mail. *See* Minn. R. 4.03(d) and (e) (1995).

We therefore grant the motions by British Airways, Prudential, Kuwait, and Youngquist to vacate the defaults entered against them based both on the defective service and also on the meritorious defenses discussed below. We vacate *sua sponte* the entries of default against MSI, Ford, First Bank Rochester and TCF, all of whom were served improperly and preserved the service issue by raising it or declining to waive it. Concomitantly, we deny Pourzandvakil's motion for a default judgment against J.C. Penney, First Bank Rochester, Prudential, Ford, MSI, British Airways and TCF. We vacate *sua sponte* the entry of default against J. C. Penney, which preserved the issue of service in its answer. By moving to dismiss or for summary judgment without raising the issue of service, Judge Mork may have waived the service issue. However Judge Mork objected to personal jurisdiction as inconsistent with due process and otherwise presented meritorious defenses. We therefore treat his motion for summary judgment as including a motion to vacate the entry of default and accordingly grant it.

II. The Jurisdictional Arguments

**\*4** In addition to raising various other grounds for dismissal, such as plaintiff's failure to state a claim on which relief can be granted and *res judicata,* most of the moving defendants urge (1) that this court lacks jurisdiction over either their persons or the subject matter of the controversy or (2) that this action is improperly venued. As we must, we examine jurisdiction and venue first.

A. Personal Jurisdiction

Maki, the state defendants, Olmsted County, Schmitz, Mundahl, C.O. Brown, Norwest, Metmor, Restovich and Youngquist each allege that this court cannot exercise personal jurisdiction over them consistent with due process constraints. In support of their motions, these defendants present affidavits showing that they have had no significant contacts with the state of New York relevant to this lawsuit and that their contacts with Pourzandvakil all occurred in Minnesota. Nothing in plaintiff's voluminous submissions links any of these defendants with New York. Plaintiff's extraterritorial service of process can be effective only

Case 6:24-cv-01367-AMN-ML    Document 8    Filed 04/07/25    Page 181 of 186

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

1995 WL 316935

under any of the following circumstances: (1) if defendants could be subjected to the jurisdiction of a court of general jurisdiction in New York State; (2) if the defendant is subject to federal interpleader jurisdiction; (3) if the defendant is joined pursuant to Rule 14 or Rule 19 of the Federal Rules of Civil Procedure and is served within a judicial district of the United States and not more than 100 miles from the place from which the summons issues; (4) if a federal statute provides for long-arm jurisdiction; or (5) if plaintiff's claims arise under federal law and the defendants could not be subject to jurisdiction in the courts of general jurisdiction in any state of the United States. Fed. R. Civ. P. 4(k). Defendants are not subject to federal interpleader jurisdiction and they were not joined pursuant to Rule 14 or Rule 19. In addition, no federal long-arm statute is argued as a basis for jurisdiction, and the moving defendants all would be subject to jurisdiction in Minnesota. Therefore, we must look to New York's long-arm statute to determine whether plaintiff's extraterritorial service of process could be effective under the one ground remaining pursuant to Rule 4(k). *See* N.Y. Civ. Prac. L. & R. § 302 (McKinney Supp. 1995). This rule provides that in order to obtain jurisdiction over a non-domiciliary, the plaintiff must show both certain minimal contacts between the defendant and the state (such as transacting any business in the state) and that the harm plaintiff suffered springs from the act or presence constituting the requisite contact. *Id.* §302(a). The moving defendants have demonstrated that plaintiff does not claim harm stemming from acts or contacts within the purview of Section 302(a). Therefore, we grant these defendants' motions to dismiss the complaint for lack of personal jurisdiction.


   B. Subject Matter Jurisdiction

Pourzandvakil's complaint does not contain the jurisdictional allegations required by Fed. R. Civ. P. 8(a)(1). Several defendants move for dismissal based either on this pleading defect or on an affirmative claim that no subject matter jurisdiction exists. Commercial, Travelers and Hirman (collectively, the "moving insurance companies") moved for dismissal because plaintiff has not pled the complete diversity of citizenship required for subject matter jurisdiction. The state defendants, relying on *District of Columbia Court of Appeals v. Feldman,* argue that we lack subject matter jurisdiction over any issue that was determined in a state court proceeding to which plaintiff was a party. *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482 (1983). These issues include plaintiff's hospitalization at St. Peter Regional Treatment Center. Finally, Metmor also moved for dismissal based on lack of subject matter jurisdiction because plaintiff has failed to plead a jurisdictional basis.

 **\*5**  The moving insurance companies note correctly that insofar as the claims against them can be deciphered, plaintiff states that Traveler's and Commercial did not pay for damages to Pourzandvakil's property, harassed her and cancelled her policy. Pourzandvakil does not mention Hirman in her complaint, but Hirman's attorney states that Pourzandvakil informed him in a telephone conversation that her complaint against Hirman stemmed from actions it took as an agent of Travelers in denying Pourzandvakil's 1985 property damage claim.

The moving insurance companies argue that this court has no jurisdiction over the state insurance law claims absent complete diversity of citizenship between plaintiff and the defendants. 28 U.S.C. § 1332. They point out that plaintiff lists a Syracuse, New York address for herself and that Kuwait's address as listed in the complaint is also in New York. Therefore, they argue, there is no complete diversity and this court lacks subject matter jurisdiction absent a basis for pendent jurisdiction under 28 U.S.C. § 1367(a). Section 1367(a) requires a relationship between the state and federal claims so that "they form part of the same case or controversy." *Id.* Because plaintiff's claims of denial of insurance coverage bear no apparent relationship to her other claims of rape, torture, harassment and kidnapping, we do not believe that an adequate basis for supplemental jurisdiction exists. *Id.* Plaintiff's complaint therefore shows no basis for subject matter jurisdiction against the moving insurance companies, and we dismiss as against them. [6]

We also agree with the state defendants that state court decisions may render certain of plaintiff's claims against them unreviewable either because of *res judicata* or lack of subject matter jurisdiction. However, because plaintiff's claims are so generally stated and so lacking in specifics, we are unable to discern at this juncture what parts of her complaint would be outside the jurisdiction of the court. In any case, we already have determined that the state defendants are clearly entitled to dismissal on personal jurisdiction grounds. As for Metmor, we believe that plaintiff may be attempting to state a civil rights

Case 6:24-cv-01367-AMN-ML    Document 8    Filed 04/07/25    Page 182 of 186

Pourzandvakil v. Humphry, Not Reported in F.Supp. (1995)

1995 WL 316935

claim by alleging a conspiracy to murder in connection with a judge although she fails to articulate an actionable claim. We note that we already have determined, in any case, that Metmor is entitled to dismissal on personal jurisdiction grounds.

C. Venue

Metmor, Travelers, Maki, Hirman, Norwest, Olmsted County, C.O. Brown, Schmitz and Mundahl also allege that Pourzandvakil's action is not properly venued in this court. Although these defendants are entitled to dismissal on independent grounds, improper venue also would support dismissal as to these defendants. The general venue statute provides that a diversity action, except as otherwise provided by law, may be brought only in

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

**\*6** 28 U.S.C. § 1391(a). Section 1391(b) provides that federal question actions, except as otherwise provided by law, may be brought only in

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

*Id.* § 1391(b). The majority of the defendants in this action are residents of Minnesota and all of the events of which Pourzandvakil complains occurred in Minnesota. No defendant resides in the Northern District of New York, and none of the conduct plaintiff complains of occurred in this district. Therefore, venue in the Northern District of New York is clearly improper. Where venue is laid in the wrong district, the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." *Id.* § 1406(a). Because, as we will explain below, Pourzandvakil's complaint not only fails to state a claim upon which relief can be granted but is also frivolous, we do not deem it to be in the interest of justice to transfer this case to another district. The purpose of the court's discretionary authority to transfer rather than dismiss in cases of improperly laid venue is "to eliminate impediments to the timely disposition of cases and controversies on their merits." *Minnette v. Time Warner,* 997 F.2d 1023, 1027 (2d Cir. 1993) (holding that it was an improper exercise of discretion to dismiss rather than transfer when the statute of limitations on a timely filed complaint ran between filing and dismissal). In this case, as discussed below, a review of the complaint and the plaintiff's submissions on these motions indicates that her claims are frivolous. We therefore dismiss as to the moving defendants both on venue grounds and on the other grounds already identified as applicable. We note also that plaintiff has made claims similar to those in this action against many of the same defendants in the United States District Court for the District of Minnesota. *Pourzandvakil v. Price,* Civ. No. 4-93-207 (D.Minn. 1993). This action was dismissed by Order to Show Cause entered April 12, 1993.

III. Failure to State a Claim on Which Relief Can be Granted and Frivolity

Defendants ASI, Travelers, Hirman, Norwest, C.O. Brown, Olmsted County, Schmitz, Mundahl, Prudential, Metmor, and Youngquist as well as the state defendants have attacked the sufficiency of plaintiff's complaint. Travelers and Hirman urge that the complaint is frivolous while the remaining defendants argue only that the complaint fails to state a claim upon which relief

Case 6:24-cv-01367-AMN-ML    Document 8    Filed 04/07/25    Page 183 of 186

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

1995 WL 316935

can be granted. Fed. R. Civ. P. 12(b)(6). [7] We already have dismissed against all the moving parties except ASI on jurisdictional grounds and therefore have the power to address the Rule 12(b)(6) issue only on ASI's motion. *See Bell v. Hood,* 327 U.S. 678, 682-83 (1946) (subject matter jurisdiction); *Arrowsmith v. United Press Int'l,* 320 F.2d 219, 221 (2d Cir. 1963) (personal jurisdiction). We grant ASI's motion and note in passing that were we empowered to reach the merits regarding the remaining moving defendants, we also would dismiss the complaint against them for failure to state a claim upon which relief can be granted. We also dismiss *sua sponte* as frivolous the complaint against all defendants who have not been granted dismissal previously on jurisdictional grounds.

**\*7** Pourzandvakil has not specified a statutory or constitutional basis for her claims against ASI or any of the other defendants. She alleges that certain of the insurance company defendants denied her claims for damages without alleging that the denial was in any respect wrongful. She also alleges in general terms that the defendants harassed, tortured, kidnapped and raped her and perhaps were involved in a murder plot but does not supply (1) the dates on which these actions occurred, except to say that they began in 1984 and 1985; (2) the names of the specific defendants involved in any particular conduct; or (3) a description of any particular conduct constituting the harassment, torture or kidnapping. She suggests without further detail that ASI was involved in a plot to murder her by placing her in the Mayo Clinic. Although plaintiff does not allege specific constitutional provisions or statutes that defendants have violated, we assume -- largely because many of the defendants involved are state officials or state employees and she appears to complain of certain aspects of various trials -- that she wishes to complain of violations of her civil rights. Complaints that rely on civil rights statutes are insufficient unless "they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir. 1987). A *pro se* plaintiff's complaint must be construed liberally and should be dismissed only "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Estelle v. Gamble,* 429 U.S. 97, 106 (1976) (quotation omitted). Pourzandvakil has not satisfied even this minimal test; her complaint and submissions on this motion demonstrate that she cannot prove any set of facts in support of her claim which would entitle her to relief. Her complaint consists of a "litany of general conclusions" rather than "specific allegations of fact". *Barr,* 810 F. 2d at 363.

Ordinarily we would allow plaintiff an opportunity to replead to state specific allegations against ASI, but three factors militate against this course of action. First, our December 22, 1994, Memorandum - Decision and Order denying plaintiff's request for a temporary restraining order indicated that she had not shown a likelihood of success on the merits of her claim because she had not pled any specific actionable facts. Despite the fact that plaintiff since has filed three amended complaints, she still fails to set forth specific actionable conduct. Second, the defendants' motions themselves have alerted plaintiff to the need to show specific actionable facts, and yet her voluminous submissions in opposition to the motions contain no specific actionable facts. Finally, plaintiff has asserted similar allegations against many of the same defendants sued in this action -- although not ASI -- as well as others in several different jurisdictions. *See Pourzandvakil v. Blackman,* [8] Civ. No. 94-C944 (D.D.C. 1994), *Pourzandvakil v. Doty* (E.D.N.Y. 1993), *Pourzandvakil v. Price,* Civ. No. 7 (D.Minn. 1993). Where the results are known to us these actions resulted in dismissals for failure to state a claim upon which relief can be granted. *Pourzandvakil v. Price,* Civ. No. 4-93-207, Order to Show Cause entered April 12, 1993; *Pourzandvakil v. Blackman,* Civ. No. 94-C-94, Order entered April 28, 1994, *aff'd* Civ. No. 94-5139 (D.C. Cir. 1994) (per curiam). In the Minnesota case, dismissal took place after the district court offered plaintiff an opportunity to amend her pleading and plaintiff still was not able to offer specifics. [9] Even *pro se* complaints must show "some minimum level of factual support for their claims." *Pourzandvakil v. Blackman,* Civ. No. 94-C-94, (quoting *White v. White,* 886 F. 2d 721, 724 (4th Cir. 1989)). We therefore dismiss plaintiff's complaint against ASI for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

**\*8** We note that in *Pourzandvakil v. Blackman,* Judge John H. Pratt dismissed plaintiff's *in forma pauperis* complaint *sua sponte* under 28 U.S.C. §1915(d), holding both that it failed to state a claim on which relief can be granted and that it was frivolous. We consider here whether we have the authority to dismiss *sua sponte* plaintiff's complaint, which was not filed *in forma pauperis,* as frivolous as against all non-moving defendants. The Supreme Court explicitly has acknowledged a district court's power under Section 1915(d) to dismiss as frivolous a complaint which "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). The Supreme Court explicitly declined to rule, however, on whether a district

Case 6:24-cv-01367-AMN-ML     Document 8     Filed 04/07/25     Page 184 of 186

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)
1995 WL 316935

court has the authority to dismiss *sua sponte* frivolous complaints filed by non-indigent plaintiffs. *Id.* at 329 n.8. The law in this circuit is that a district court may *sua sponte* dismiss a frivolous complaint even if the plaintiff has paid the filing fee. *See Tyler v. Carter,* 151 F.R.D. 537, 540 (S.D.N.Y. 1993), *aff'd* 41 F.3d 1500 (2d Cir. 1994); *cf. Pillay v. I.N.S.,* 45 F.3d 14, 17 (2d Cir. 1995) (*per curiam*) (dismissing *sua sponte* appeal for which appellant had paid normal filing fee). We believe that *sua sponte* dismissal is appropriate and necessary here because (1) plaintiff's claims lack an arguable basis in law and fact; (2) plaintiff has repeatedly attempted to replead her claims without being able to articulate actionable conduct; (3) some of plaintiff's claims have been tested in other courts and found to be without merit; and (4) the issue of frivolity has been presented by at least some of the moving defendants.

We therefore dismiss with prejudice plaintiff's complaint as frivolous as to all defendants -- regardless of whether they have moved for dismissal -- that have not been granted dismissal on jurisdictional grounds. We direct the clerk to return plaintiff's filing fee to her. *Tyler,* 151 F.R.D. at 540.

IV. Requests for Sanctions, Costs, Attorney's Fees and Injunction Against Filing Further Actions

Because plaintiff is *pro se* and appears to have a belief in the legitimacy of her complaint, we do not believe that the purpose of Rule 11 would be served by awarding sanctions. *See Carlin v. Gold Hawk Joint Venture,* 778 F. Supp. 686, 694-695 (S.D.N.Y. 1991). Moreover, her litigiousness has not yet reached the point at which courts in this circuit have justified injunctive relief. *See id.* at 694 (and collected cases). We therefore deny the requests of ASI and Prudential for injunctive relief. Our refusal to grant sanctions and injunctive relief, however, is conditioned on this dismissal putting an end to plaintiff's attempts to sue these defendants on these claims in this forum. Any further attempts by plaintiff to revive these claims will result in our revisiting the issue of sanctions. *Id.* at 695.


CONCLUSION

**\*9** All defaults entered by the clerk are vacated. Plaintiff's complaint is dismissed in its entirety against all moving and non-moving defendants. The dismissal of the complaint against Maki, the state defendants, Olmsted County, Schmitz, Mundahl, C.O. Brown, Norwest, Metmor, Restovich, Youngquist, Commercial, Travelers and Hirman is without prejudice as it is premised on this court's lack of power either over the person of the defendant or the subject matter of the controversy. *See Voisin's Oyster House, Inc. v. Guidry,* 799 F.2d 183, 188-9 (5th Cir. 1986) (dismissal for lack of subject matter jurisdiction is not a dismissal on the merits); *John Birch Soc'y. v. National Broadcasting Co.,* 377 F.2d 194, 199 n.3 (2d Cir. 1967) (dismissal for lack of subject matter jurisdiction implies no view of merits); *Orange Theatre Corp. v. Rayherstz Amusement Corp.,* 139 F.2d 871, 875 (3d Cir.) *cert. denied,* 322 U.S. 740(1944) (dismissal for lack of personal jurisdiction is not a dismissal on the merits). The dismissals against the remaining defendants are with prejudice. All requests for sanctions and attorney's fees are denied. The requests of defendants ASI and Prudential for an injunction with respect to future litigation is denied. However, plaintiff is cautioned that any litigation in this forum attempting to revive the claims addressed herein may subject her to sanctions. Plaintiff's motions are denied as moot.

IT IS SO ORDERED.


**All Citations**

Not Reported in F.Supp., 1995 WL 316935

1995 WL 316935

---

### Footnotes

1      Names in the caption are spelled to reflect plaintiff's complaint.

2      Plaintiff's spelling is idiosyncratic, and we preserve the spelling in its original form only where absolutely necessary for accuracy of the record. Otherwise we substitute the word we believe plaintiff intended for the word she actually wrote, e.g., "tortured" for "tureared."

3      Susan E. Cooper is not named as a defendant in the original complaint or any amended complaint filed with this court. From correspondence with Cooper's attorney, it appears that plaintiff sent Cooper a copy of a different version of the complaint. Because the original of this version was not filed with the court, no action against Cooper is pending in this court.

4      The court has also received three additional motions returnable May 22, 1995. The first -- from Judges Davies, Klaphake, Challeen, Collins and Chief Judge Simonett requests summary judgment dismissing the complaint based on lack of personal jurisdiction. The second by Western Union also requests summary judgment based, *inter alia,* on plaintiff's failure to state a claim on which relief can be granted. The third, by British Airways, also requests dismissal based, *inter alia,* on plaintiff's failure to state a claim on which relief can be granted. All three motions are mooted by this memorandum-decision and order which dismisses the complaint in its entirety against non-moving defendants for failure to state a claim on which relief can be granted.

5      The court also received an affidavit and memorandum of law in support of summary judgment from J.C. Penney. However, the documents were not accompanied by a notice of motion.

6      We ordinarily would offer plaintiff an opportunity to amend her complaint because her submissions and Kuwait's answer indicate two bases on which plaintiff might be able to argue diversity of citizenship. First, although plaintiff lists her address in Syracuse, New York, she also has indicated on the civil cover sheet that she is an Iranian Citizen and we are not aware of her residence status. As a permanent resident, she would be deemed a citizen of the state in which she resides. 28 U.S.C. § 1332(a). However, if she lacks permanent resident status, her citizenship would be considered diverse from that of all the defendants. *Id.* § 1332(a)(2). Second, Kuwait has submitted an answer in which it claims to be a foreign state within the meaning of 28 U.S.C. § 1603. If Kuwait is correct, plaintiff may have an independent basis for jurisdiction over Kuwait. *See* 28 U.S.C. § 1330. If Pourzandvakil could show subject matter jurisdiction over Kuwait without resort to diversity of citizenship, then Kuwait's residence in New York may not be relevant to the issue of whether this court has diversity jurisdiction under Section 1332. *Cf. Hiram Walker & Sons, Inc. v. Kirk Line,* 877 F.2d 1508, 1511-1512 (11th Cir. 1989), *cert. denied,* 115 S.Ct. 1362 (1995) (holding that the joinder of a non-diverse defendant sued under federal question jurisdiction did not destroy diversity as to the remaining defendant). Here, however, plaintiff's complaint is subject to so many other meritorious defenses -- including complete failure to state a cause of action -- that an amendment would be an exercise in futility. Additionally, plaintiff has not requested permission to amend, proffered an amended pleading, or indeed even supplied an affidavit stating her residency status or alleging a basis of jurisdiction over her claims against Kuwait other than diversity under 28 U.S.C. § 1332.

7      J.C. Penney also submits an affidavit requesting dismissal on this basis and others, but has not filed or served a notice of motion.

8      Former Supreme Court Justice Harry A. Blackmun.

9      We note also that plaintiff has not requested leave to amend in this action.

**Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)**

1995 WL 316935

---

**End of Document**                              © 2025 Thomson Reuters. No claim to original U.S. Government Works.